IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 26-1231

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

THE STATE OF OREGON, *et al.*,

Defendants-Appellees

OUR OREGON; DAN DIIULIO; EMMA CRADDOCK; STEPHEN GOMEZ,

Defendants-Intervenors-Appellees

ON APPEAL FROM THE ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF OREGON

APPELLANT'S OPPOSED MOTION TO EXPEDITE APPEAL UNDER
CIRCUIT RULE 27-12
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3:
THIS MOTION REQUESTS RELIEF BY MARCH 18, 2026

## INTRODUCTION

Pursuant to 28 U.S.C. 1657 and Ninth Circuit Rules 27-12 and 34-3, plaintiff and appellant United States hereby respectfully requests that this Court expedite the briefing and hearing date on this appeal because it raises an issue of urgency regarding the security of federal elections in the United States. This Court has discretion to "determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action" for good cause. 28 U.S.C. 1657(a). Good cause is shown under Section 1657 "if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Ibid.* In this matter the United States' rights under the Civil Rights Act of 1960 (CRA), Pub. L. No. 86-449, 74 Stat. 86, and the National Voter Registration Act of 1993 (NVRA), Pub. L. No. 103-31, 107 Stat. 77; 52 U.S.C. 20501 *et seq.*, would be inhibited, and the security and sanctity of elections in Oregon would be questioned, absent an immediate ruling on this issue.

Oregon's next federal election is rapidly approaching on November 3, 2026. Weeks before that date, the State will be mailing absentee and

mail-in ballots to millions of Oregon voters, many of them potentially registered nonvoters. Prior to that date, Oregon voters need to know that federal elections in their state are secure and that noncitizens, deceased voters, and voters with multiple records are not registered to vote. Oregon may be further limited in that quest by this Court's holding in *Mi Familia Vota. v. Fontes* that the NVRA's "Quiet Period," 52 U.S.C. 20507(c)(2)(A), applies to efforts by states to remove noncitizens from its voter rolls within 90 days of a federal election. *See* 129 F.4th 691, 717 (9th Cir. 2025), *petitions for cert. pending*, Nos. 25-1017, 25-1019, 25-1022 (filed Feb. 19, 2026). This means that Oregon must finish removal of nonvoters from its rolls in systemic processes by August 4, 2026, which requires that the process begin much sooner. All parties here are interested in removing the possibility of federal court orders requiring reviews or removals from the list of registered voters as the federal election approaches. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam).

This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Oregon's voters and elections officials need a quick answer. The Department of Justice regrets

asking for such speedy work from this Court, but as this Motion details, this timing is not of United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:[1]

• The United States' merits brief would be due on Wednesday, March 18, 2026;

• Oregon's merit briefs would be due on Wednesday, March 25, 2026; and

• The United States' reply brief would be due on Wednesday, April 1, 2026.

The United States also suggests that any *amicus* briefs be due on the same day as the party an *amicus* supports. The United States is also willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place during the April 2026 sitting.

---

[1] The United States plans to move to consolidate this appeal with its appeal from the district court's dismissal of the United States' Complaint in *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026). The United States is filing motions to expedite in both appeals seeking the same briefing schedule.

Counsel for Oregon and defendants-intervenors have indicated that they oppose the United States' Motion to Expedite Appeal.

## PROCEDURAL BACKGROUND

This is an appeal from the district court's Order in *United States v. Oregon*, No. 6:25-cv-1666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026), granting Defendants the State of Oregon and Secretary of State Tobias Read's (collectively, Defendants or Oregon) Motion to Dismiss the United States' Complaint based on Title III of the CRA, and other related claims.

The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any

[federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. The statute criminalizes willfully destroying such documents, reflecting the Jim Crow-era practice of preventing blacks from voting by destroying their registration materials. 52 U.S.C. 20702. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." That section is akin to an administrative

summons that authorizes the Attorney General to obtain the demanded federal election records in a summary proceeding.

In the summer of 2025, the United States Department of Justice (the Department or DOJ) sent a series of letters to Secretary of State Tobias Read, seeking information regarding Oregon's compliance with the NVRA. *See Oregon*, 2026 WL 318402, at *4. In these requests the United States listed alleged irregularities with Oregon's voting rolls inconsistent with compliance with the NVRA and requesting documentation from the state to ensure compliance. *Ibid.*

The NVRA, along with the Help America Vote Act (HAVA) contain provisions designed to help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for states' voting systems and voter registration lists. 52 U.S.C. 21081, 21083. HAVA requires states to

implement a centralized computerized statewide voter registration list (SVRL), and to engage in reasonable efforts at maintaining that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A)-(a)(2)(A). The Attorney General is solely authorized to bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. 21111.

Oregon refused to provide the United States with an electronic copy of its SVRL with sufficient information to ensure that deceased, duplicate, and noncitizen voters were properly removed from voter rolls for federal elections. *See Oregon*, 2026 WL 318402, at *4. On September 16, 2025, the DOJ sued the state of Oregon for failure to produce its SVRL. *United States v. Oregon, et al.*, No. 25-cv-01666, (D. Or. Sept. 16, 2025) Dkt.1, Complaint (Complaint).

On February 5, 2026, Judge Mustafa Kasubhai entered an Order dismissing the United States' Complaint without leave to amend. *Oregon*, 2026 WL 318402, at *13. The district court rejected the DOJ's Title III demand on several grounds after determining as a threshold matter that the demand for federal election records under Title III was governed by the Federal Rules of Civil Procedure. *Id.* at *8. The court first found that the DOJ had failed to provide an adequate basis and purpose of the

demand, *see* 52 U.S.C. 20703, because it sent multiple letters as opposed to putting both its Title III demand and the factual basis and purpose for that demand in a single letter. *See Oregon*, 2026 WL 318402, at *9. The court found that Title III does not entitle the DOJ to obtain sensitive voter information to enforce the NVRA or HAVA but instead "that the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." *Id.* at *9-10 (citing 52 U.S.C. 20703). The district court similarly rejected the DOJ's NVRA and HAVA claims. *Id.* at *5-7.

The United States appeals from the Order of Dismissal regarding the Court's findings on the CRA. This ruling is contrary to the law as written and the facts of the case. An expedited appeal is necessary to secure the elections in Oregon, and permit Oregon the time to clean its voter rolls prior to the election this fall.

## ARGUMENT

The United States recognizes that it seeks a tight window for briefing and decision but urges that the Court should expedite the appeal because time is short, and Oregonians deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue

this appeal presents, irreparable harm will occur to voters of Oregon and the United States in enforcing laws designed to protect the sanctity of federal elections and the appeal will become moot considering the impending federal election. *See* 9th Cir. R. 27-12. Indeed, the federal courts of appeals, including this Court, routinely expedite appeals in election cases like this one, given their time-sensitive nature. *See, e.g.*, *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 951 (9th Cir. 2020) (setting expedited appeal in case involving voter registration law); *TGP Commc'ns, LLC v. Sellers*, No. 22-16826, 2022 WL 17484331, at *2 (9th Cir. Dec. 5, 2022) (expediting appeal in a case involving vote tabulation); *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014); *Northeast Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 583 (6th Cir. 2012) ("Given the time-sensitive nature of these appeals with the November election approaching, we ordered expedited briefing.").

**First**, this appeal presents the important purely legal question of how a court is to adjudicate the United States' demand for federal election records to enforce the CRA and in full compliance with federal privacy laws.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (transferred from 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying . . . by the Attorney General or [her] representative." 52 U.S.C. 20703. The "usual notions under the Federal Rules of Civil Procedure" do not apply to the CRA's "special statutory proceeding" to compel production of federal election records. *Lynd*, 306 F.2d at 225-226; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp.

848, 852 (M.D. Ala. 1960) (same), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). Instead, the written demand need only "contain a statement of the basis and the purpose therefor." 52 U.S.C. 20703; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (*Coleman II*). "[T]he factual foundation for, or the sufficiency of, the Attorney General's" written demand under Section 303 "is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226.

The United States' demand was more than sufficient to provide the basis and purpose for the information the DOJ requested from Secretary Read. The basis-and-purpose requirement merely requires "the Attorney General identify in a general way the reasons for [her] demand." *Coleman II*, 313 F.2d at 868 (citation omitted). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." *Ibid.* (emphasis added); *see also Coleman v. Campbell*, 208 F. Supp. 200 (S.D. Miss. 1962) (*Coleman I*) (the written demand need only indicate the records were needed "to see if any federal laws were violated"). The United States plainly satisfied that requirement by stating that the purpose of the request is to ascertain Oregon's compliance with the list

- 11 -

maintenance requirements of the NVRA and HAVA and the district court erred in concluding otherwise.

The district court also incorrectly determined the extent of the United States' authority to enforce the NVRA through a request via the CRA. The NVRA is a voting and elections enforcement statute that places requirements upon state entities to ensure that voters can register to vote and that voting lists for federal elections are maintained in a regular fashion. The NVRA "'erects a complex superstructure of federal regulation atop state voter-registration systems'" in pursuit of "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018) (brackets omitted) (quoting *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 5 (2013)). The statute requires States to, among other things, "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or change in residence. 52 U.S.C. 20507(a)(4).

Absent an expedited appeal, the extent to which the United States can exercise its authority under the CRA is in question. States, like

Oregon, that have large discrepancies in their federal voter rolls based on their own reports to the Election Assistance Commission (EAC) put the election in question. *See* pp. 14-15, *infra*. The United States has sent numerous requests to Oregon to help it rectify its reporting failures and SVRL anomalies but to no avail. Absent a final Court determination on this matter there is no other process to ensure a fair election in 2026.

**Second**, an expedited appeal will allow the United States to confirm that Oregon's voter rolls are composed solely of individuals who are eligible to vote in federal elections.

Oregon's next federal election is rapidly approaching on November 3, 2026, and Oregon must finish removing nonvoters from its rolls in systemic processes by August 4, 2026. *See* 52 U.S.C. 20507(c)(2)(A); *Mi Familia Vota, et al. v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025). Moreover, in the Complaint filed in this matter the Department established numerous anomalies in the records presented by Oregon to the EAC in 2024. *See* Complaint 12-13 (¶¶ 39-44). Those anomalies include:

- Oregon reported a registration rate in 2024 of 95.3% of the citizen voting age population. The letter further noted that the EAC report indicated that the ratio of active registered voters to citizen voting age population has been unusually high for several years, with

- Oregon reporting a registration rate of 93.3% of citizen voting age population in 2022 and 93.1% in 2020.

- Oregon had the lowest number of removals in this category as compared to the total number of registered voters, of all NVRA-covered states reporting data to the Election Administration and Voting Survey (EAVS).

- Oregon did not report each county's number of inactive voters.

- Oregon reported to the EAVS survey that the state determined there were 1585 total duplicate registrations on the statewide voter registration list. Yet, in response to the EAVS survey question on the number of voters removed for the reason of a duplicate voter registration record, Oregon reported, "Does not apply," for all counties.

- Oregon sent 357,959 confirmation notices to registered voters. In reporting the results of the confirmation notices, Oregon categorized the results as "Other."

- Oregon removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which was well below the national average of 9.1%.

- Oregon reported that it removed only 4417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice.

*Ibid*. All these anomalies were listed in the letters to the Secretary of State and indicate that Oregon has a significant amount of work to do to ensure a fair and secure federal election in 2026. All states, including Oregon, are required by the NVRA to conduct "a general program that

makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters," 52 U.S.C. 20507(a)(4), and are required by HAVA to remove voters who are "not eligible to vote" from its SVRL, 52 U.S.C. 21083(a)(2)(B)(ii)-(iii).

Oregon would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Oregon to properly conduct a federal election this fall without the specter of noncitizen and other ineligible voters remaining on its voter rolls. Oregon has an interest in operating its elections without having federal Courts ordering last-minute changes. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam).

\* \* \*

Absent a ruling on an expedited basis that the United States may proceed to request Oregon's SVRL under the statutory requirements of the CRA, states with anomalous SVRLs will continue to avoid review of their federal voting lists in a speedy fashion.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case to allow Oregon to clean its federal voter rolls prior to sending ballots to nonvoters. The United States urges the

adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

        Respectfully submitted,

        HARMEET K. DHILLON
          Assistant Attorney General

        JESUS A. OSETE
          Principal Deputy Assistant Attorney General

        <u>s/ Andrew G. Braniff</u>
        ANDREW G. BRANIFF
        DAVID N. GOLDMAN
        CHRISTOPHER C. WANG
          Attorneys
          Department of Justice
          Civil Rights Division
          Ben Franklin Station
          P.O. Box 14403
          Washington, D.C. 20044-4403
          (202) 532-3803

Date: March 3, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3128 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

                                                  s/ Andrew G. Braniff
                                                  ANDREW G. BRANIFF
                                                     Attorney

Date: March 3, 2026