No. 26-1231

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of the State;

*Defendants-Appellees*

OUR OREGON; DAN DIIULIO; EMMA CRADDOCK; and STEPHEN GOMEZ,

*Intervenors-Appellees.*

On Appeal from the United States District Court for the District of Oregon
No. 6:25-cv-01666-MTK
Hon. Mustafa T. Kasubhai

_____

### INTERVENORS' OPPOSITION TO UNITED STATES' MOTION TO
### EXPEDITE APPEAL

_____

Abha Khanna                          Christopher D. Dodge
Walker McKusick                      Branden D. Lewiston
**ELIAS LAW GROUP LLP**              **ELIAS LAW GROUP LLP**
1700 Seventh Ave., Ste. 2100         250 Massachusetts Ave NW, Ste. 400
Seattle, WA 98101                    Washington, D.C. 20001
Tel.: (206) 656-0177                 Tel.: (202) 968-4490
akhanna@elias.law

*(Signature block continues on next page)*

Harry Wilson
Dallas Deluca
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Ste. 1900
Portland, OR 97201
Tel: (503) 295-3085
harrywilson@markowitzherbold.com

*Attorneys for Intervenors-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

BACKGROUND ..................................................................... 4

I.     Federal law has long made voter-list maintenance a state responsibility....... 4

II.    DOJ embarks on a nationwide campaign to collect voter data held by States.................................................................. 6

ARGUMENT ....................................................................... 10

I.     DOJ's failure to act expeditiously is reason alone to deny its Motion........ 10

II.    There is no need to resolve this appeal before the 2026 elections. ............. 12

III.   DOJ cannot force a voter purge before the 2026 elections. ........................ 15

CONCLUSION ..................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017)................................................................15

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014).......................................................3, 19

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013)..........................................................................4

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) .................................................. 14, 15

*Coleman v. Kennedy*,
  313 F.2d 867 (5th Cir. 1963)...........................................................2

*Foster v. Love*,
  522 U.S. 67 (1997).......................................................................4

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015).......................................................3, 11

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018)......................................................................4

*In re Walsh*,
  229 F. App'x 58 (3d Cir. 2007).........................................................11

*Libertarian Party of Ohio v. Husted*,
  751 F.3d 403 (6th Cir. 2014)...........................................................13

*Mi Familia Vota v. Fontes*,
  129 F.4th 691 (9th Cir. 2025)............................................. 3, 5, 18, 19

ii

*Mi Familia Vota v. Hobbs*,
    977 F.3d 948 (9th Cir. 2020) .................................................................13

*Nader v. Land*,
    115 F. App'x 804 (6th Cir. 2004) ....................................................3, 11

*Ne. Ohio Coal. for Homeless v. Husted*,
    696 F.3d 580 (6th Cir. 2012) .................................................................13

*Pub. Int. Legal Found v. Benson*,
    ("*PILF*"), 136 F.4th 613 (6th Cir. 2025) ....................................... 14, 18

*Pub. Int. Legal Found. v. Benson*,
    721 F. Supp. 3d 580 (W.D. Mich. 2024) ...............................................18

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) .................................................................5

*TGP Commc'ns, LLC v. Sellers*
    No. 22-16826, 2022 WL 17484331 (9th Cir. Dec. 5, 2022) .................13

*United States v. Benson*,
    No. 1:25-CV-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) .................1, 9

*United States v. Clarke*,
    573 U.S. 248 (2014) ...............................................................................16

*United States v. Oregon*,
    No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) .................1

*United States v. Powell*,
    379 U.S. 48 (1964) .................................................................................16

*United States v. Weber*,
    No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ............... 1, 9, 17

**Constitution**

U.S. Const. art. I, § 4, cl. 1 .................................................................4

**Statutes**

52 U.S.C. § 20501 ................................................................4

52 U.S.C. § 20507 ......................................................... *passim*

52 U.S.C. § 20703 ................................................................9

52 U.S.C. § 21083 ............................................................5, 15

52 U.S.C. § 21085 ................................................................6

Or. Rev. Stat. § 247.948 ........................................................7

**Rule**

9th Cir. R. 27-12 ................................................................4

**Other Authorities**

H.R. Rep. No. 107-329 (2001) ..................................................6

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, Tracker of
   Justice Department Requests for Voter Information, Brennan Ctr. for Just.
   (Mar. 10, 2026), https://www.brennancenter.org/our-work/research-
   reports/tracker-justice-department-requests-voter-information.........................6, 7

## INTRODUCTION

Over the past year, the U.S. Department of Justice ("DOJ") has haphazardly attempted to collect unredacted copies of nearly every State's full voter registration list. Until the emergency motion it filed last week, however, DOJ has never indicated that it believes its demand for Oregon's file warrants any particular rush.

DOJ's unprecedented data-collection campaign began last summer when it started sending letters to state election officials demanding the disclosure of sensitive voter information. Litigation did not commence until DOJ sued Oregon and Maine on September 16, 2025, and then filed carbon-copy complaints against six other States later that month, alleging claims under the National Voter Registration Act ("NVRA"), Help America Vote Act ("HAVA"), and Civil Rights Act of 1960 ("CRA"). Similar suits against 21 other States and Washington, D.C., followed in a trickle throughout the winter; the most recent batch—against New Jersey, Oklahoma, Utah, Kentucky, and West Virginia—was not filed until February 26, 2026. But as each of the three district courts that have reached the merits thus far has recognized, DOJ has not stated a viable claim under any of its theories. *See United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-CV-1148, 2026 WL 362789, at *11 (W.D. Mich. Feb. 10, 2026).

This Court can review DOJ's demand for Oregon's voter list in the ordinary course. For all its talk of the need for secure elections and pristine voter rolls, DOJ does not allege that Oregon has failed to maintain its list as required by law, and none of the relief that DOJ seeks would require Oregon to remove any voters from its rolls. The abstract desire to "investigat[e] *possible violations*" of federal law, Mot. to Expedite Appeal ("Mot.") at 12 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam)), does not warrant the hair-on-fire emergency briefing DOJ demands.

It would be especially inappropriate to permit DOJ to fast-track appellate review, require Appellees to work around-the-clock to brief novel claims implicating fundamental constitutional principles, and rapidly accelerate this Court's own careful review, when DOJ itself has never exhibited any similar exigency. Not only did DOJ never move to expedite the proceedings below, it twice moved to *stay* the case. DOJ then joined a scheduling proposal under which motions to dismiss would not be fully briefed until over three months after DOJ sued. And once the court granted the motions to dismiss, DOJ took nearly three weeks to notice an appeal and nearly another full week to move to expedite that appeal. Even now, DOJ requests that its opening brief be due nearly six weeks after the district court's opinion and order below. Quite audaciously, however, it asks that the Court order that Appellees' briefs be due just *one* week after that, and then proposes giving itself the same time

2

period to file its reply. Mot. at 3. DOJ's failure to proceed expeditiously justifies denying its Motion. *See Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) ("[The Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *cf. Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc) (explaining that unjustified delay "undercut[s] . . . claim[s] of irreparable harm").

Indeed, since DOJ never moved for summary judgment or affirmative relief below, all that would happen if this Court were to reverse the dismissal is the case would be remanded for further proceedings—DOJ would not *ipso facto* obtain the voter list it seeks. And even if DOJ were to prevail in those remand proceedings and achieve access to Oregon's unredacted voter lists, the calendar and the NVRA's strict procedural safeguards foreclose DOJ's ultimate goal of forcing a mass voter purge on Oregon before the 2026 elections. *See* 52 U.S.C. § 20507(a)(3)–(4), (b)–(d). In fact, the NVRA requires States to proceed "cautiously with respect to systematic cancellation programs in the lead up to an election because such programs can cause inaccurate removal and eligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025) (citation modified) (citing *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014)), *petitions for cert. filed sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, Nos. 25-1017, 25-1017, 25-1022

3

(U.S. Feb. 24, 2026). The Court should reject DOJ's belated effort to manufacture an emergency, particularly given that federal law expressly prohibits rushed attempts at voter purges in the months leading up to an election.

In short, DOJ has failed to show the requisite "good cause" to expedite this appeal or any risk of "irreparable harm" absent "expedited treatment." 9th Cir. R. 27-12. Its Motion should thus be denied.

## BACKGROUND

### I. Federal law has long made voter-list maintenance a state responsibility.

The Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns States the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that States are the custodians of voter registration data. Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Tellingly,

4

that law charges *States*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists, *id.* § 20507(c)(g).

Consistent with its central purposes of encouraging voter registration and preventing improper removals, the NVRA imposes strict restrictions on whether, when, and how a State may cancel a voter's registration. *See id.* § 20507(a)(3)–(4), (b)–(d). The NVRA also imposes a modest, affirmative record-keeping obligation on States to "conduct a general program that makes a reasonable effort to remove" voters ineligible due to death or change in residence. *Id.* § 20507(a)(4). Even so, it requires that "any program . . . to systematically remove" voters from the rolls to be completed 90 days before the next federal "primary or general election." *Id.* § 20507(c)(2)(A); *see also Mi Familia Vota*, 129 F.4th at 717.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how States maintain voter registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1), (2)(A). HAVA is abundantly clear that this list is "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). And more generally, HAVA commands that the "specific choices on the methods of complying with" HAVA

"shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's drafters stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001). And while HAVA requires States to create their own centralized statewide voter registration lists, nothing in the law obligates them to disclose records in any manner, including to the federal government.

## II. DOJ embarks on a nationwide campaign to collect voter data held by States.

Last year, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter typically protected from disclosure by state law. As part of that effort, DOJ sent demands for statewide voter lists to nearly every State in the country, though the vast majority have refused to turn over their full, unredacted lists.[1] In

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Mar. 10, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

response, DOJ has now sued 29 States and the District of Columbia to compel the disclosure of those lists.[2]

Oregon was among DOJ's first targets. DOJ demanded Secretary Read provide the State's voter list on July 16, 2025. Compl. ¶ 4, ECF No. 1.[3] DOJ later asserted that it sought the list "to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* ¶ 51. In an August 21 response, Secretary Read disputed that DOJ could compel production of Oregon's unredacted voter list but offered to provide the State's publicly available list, which includes much of the information DOJ demanded but excludes sensitive voter information protected from disclosure under state law, such as driver's license numbers, partial social security numbers, and full dates of birth. *See id.* ¶¶ 55–56; *see also* Or. Rev. Stat. § 247.948(2). DOJ never responded to Secretary Read's letter or concerns. Instead, on September 16—nearly a month after Secretary Read's response—DOJ sued the Secretary and the State of Oregon. *See* Compl., ECF No. 1.[4] The gist of the Complaint is that Oregon violated the NVRA, HAVA, and CRA by refusing to produce its full, unredacted voter registration list and by failing to

---

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1.

[3] Since excerpts of record are not yet before the Court, Intervenors cite directly to the district court docket below.

[4] Shortly thereafter, Intervenors moved to participate as defendants under Rule 24. Mot. Intervene, ECF No. 12. Over DOJ's objections, the court ultimately granted them intervention. Order at 5, ECF No. 52.

answer to DOJ's satisfaction certain inquiries about the State's list maintenance practices. *See id.* ¶¶ 65–74. Notably absent, however, are allegations that Oregon has failed to comply with the substantive list maintenance requirements of the NVRA or HAVA.

On October 1, DOJ moved to stay the case, citing the government shutdown. Mot. Stay, ECF No. 22. The court granted the stay for 30 days. Order, ECF No. 24. After that, DOJ again moved for a stay, Mot. Stay, ECF No. 25, but the court denied that request. Order, ECF No. 26. DOJ then agreed on October 31, 2025, to a briefing schedule under which motions to dismiss would not be fully briefed until December 22. Joint Statement, ECF No. 28. DOJ did not move to expedite consideration of those motions, nor at any point did it move for summary judgment or any other kind of affirmative relief.

The district court held oral argument on the motions to dismiss in mid-January, Mins. of Mot. Hr'g, ECF No. 63, and then granted the motions from the bench after a supplemental hearing on January 24, Mins. of Mot. Hr'g, ECF No. 68. At no point in these hearings did DOJ express any urgency in obtaining a final, appealable ruling. The court issued a written opinion and order on February 5, 2026. *See generally* Order, ECF No. 73.

In that opinion, the court dismissed DOJ's NVRA claim, concluding there is not "any provision in the NVRA that requires Defendants to disclose the Sensitive

8

Voter Data," and therefore "Defendants' refusal to produce an unredacted voter registration list" did not "violate[] the NVRA's public disclosure provision." *Id.* at 10–12. The court likewise dismissed DOJ's HAVA claim because "HAVA does not contain any disclosure requirements" and DOJ "fails to identify any provision of HAVA that Defendants violated by failing to produce an unredacted voter registration list." *Id.* at 12–13. And the court dismissed DOJ's CRA claim because DOJ's demand failed to provide a "legally sufficient 'statement of . . . basis,'" *id.* at 17 (quoting 52 U.S.C. § 20703), and DOJ's alleged purpose for investigating Oregon's list maintenance efforts was outside the scope of the CRA, *id.* at 20.[5] Two other courts have also dismissed DOJ's largely identical claims seeking California's and Michigan's voter lists. *See generally Weber*, 2026 WL 118807; *Benson*, 2026 WL 362789. Across the thirty cases for States' unredacted voter lists, no court has yet to deny a motion to dismiss or grant DOJ the relief it seeks.

The court below entered judgment against DOJ on February 5. Judgment at 1, ECF No. 74. Rather than immediately appealing, DOJ waited until February 25 to notice its appeal, Notice of Appeal, ECF No. 76, and then waited another six days until March 3 to move to expedite the appeal.[6]

---

[5] DOJ appeals the dismissal of its CRA claim only. *See* Mot. at 9 ("The United States appeals from the Order of Dismissal regarding the Court's findings on the CRA.").

[6] DOJ also moves to consolidate this appeal with the appeal in *United States v. Weber*, No. 26-1232 (9th Cir.). *See* DOJ's Mot. to Consolidate. Intervenors oppose

## ARGUMENT

### I.  DOJ's failure to act expeditiously is reason alone to deny its Motion.

Until this Motion, nothing about DOJ's prosecution of this matter suggested this case presents an emergency or requires expedited resolution. Though DOJ sued nearly six months ago, it *never* moved for affirmative relief or to expedite the proceedings below. To the contrary, DOJ twice moved to stay the case. Mots. to Stay, ECF Nos. 22, 25. The only reason the case continued to move forward is that the district court *denied* DOJ's second stay request. Order, ECF No. 24. Even then, DOJ agreed to a briefing schedule under which it would have a full three weeks to oppose motions to dismiss—and DOJ took every last day. Joint Statement, ECF No. 28; Opp'n to Mots. to Dismiss, ECF No. 57. DOJ did not request an expedited briefing schedule, nor did it request the court expedite consideration of the motions to dismiss. And after they were granted, Order, ECF No. 73, DOJ took nearly three weeks to even notice its appeal and then almost another week to move to expedite. Notice of Appeal, ECF No. 76; Mot. to Expedite. DOJ's leisurely pace undercuts any claim that this case is so urgent that it requires an "immediate ruling" from this Court. Mot. at 1. As courts routinely recognize, expedited proceedings are not warranted where a litigant—as here—has been dilatory. *See Nader*, 115 F. App'x at 806 ("[The

---

that motion but are not opposed to treating the cases as related under Circuit Rule 28-2.6. If the Court grants the motion to consolidate, Intervenors request the same briefing and argument rights that they would enjoy absent consolidation.

Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *In re Walsh*, 229 F. App'x 58, 61 (3d Cir. 2007) (per curiam) (denying motion to expedite appeal when it was not "made promptly"); *cf. Garcia*, 786 F.3d at 746.

Even now, DOJ requests that its opening brief be due *53 days* after the district court's oral ruling granting motions to dismiss, and *41* days after its written opinion and order—while proposing Intervenors only get *seven days* to respond. Mot. at 3. DOJ makes no effort to justify giving itself so much more time than Appellees.

Moving so quickly would not only prejudice Intervenors, it would also give short shrift to the important issues in this case. The CRA was enacted in 1960, but not until last fall has any litigant asked a court to decide whether it can be used as a tool to (purportedly) investigate a State's list maintenance practices under the NVRA and HAVA, as DOJ seeks here. The answer to that question has nationwide implications. DOJ has filed 30 substantially identical suits demanding unredacted copies of the States' voter lists. *See supra* Background § II. To date, three district courts, including the court below, have dismissed those cases for failing to state a claim. Although the outcome has been the same, some of the reasoning has been different. Novel and weighty questions hang in the balance, each of which warrants a full airing and thoughtful consideration. The mad rush that DOJ proposes would be antithetical to that full deliberation. And DOJ's dilatory approach from the start

is reason on its own to ensure that this matter gets the considered time and attention it deserves.

## II. There is no need to resolve this appeal before the 2026 elections.

DOJ's effort to inject artificial urgency before this Court turns on the false assertion that this case concerns "the security and sanctity of elections in Oregon." Mot. at 1. But contrary to such hyperbolic rhetoric, this appeal will in no way determine whether there will be a "fair election in 2026." *Id.* at 13. DOJ never alleged anything in its Complaint to suggest that there is reason to doubt the security and fairness of Oregon's elections. To the contrary, DOJ was clear that it does not have any basis to raise even a run-of-the-mill list maintenance claim against Oregon. Compl. ¶¶ 68, 72 (asserting that DOJ lacks the information necessary to "determine" whether Oregon's list maintenance procedures were noncompliant with federal law). This suit is solely about whether the NVRA, HAVA, or CRA entitles DOJ to demand Oregon's unredacted voter list. And this *appeal* is solely about whether DOJ stated viable claims for relief under those statutes sufficient to survive Rule 12(b) motions—not whether it is entitled to relief. There is no rush to resolve those questions in advance of the 2026 elections.

DOJ correctly notes that courts occasionally expedite appeals, *see* Mot. at 9, but unlike here, the cases DOJ cites involved requests for injunctions that could have directly affected upcoming elections. *See Mi Familia Vota v. Hobbs*, 977 F.3d 948,

951 (9th Cir. 2020) (expediting appeal of injunction extending voter registration deadline within one month of election); *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 411 (6th Cir. 2014) (expediting appeal of denial of injunction to put candidate's name on ballot); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 583 (6th Cir. 2012) (per curiam) (expediting appeal of injunction to count ballots cast in the wrong precinct or with deficient ballot affirmations).[7]

DOJ's Motion also rests on a fundamental misunderstanding of a State's list maintenance obligations under the NVRA. That statute does not require Oregon— and certainly not the federal government—to ensure the State's "voter rolls are composed solely of individuals who are eligible to vote." Mot. at 13. Rather, the NVRA requires Oregon to make only *"reasonable* effort[s]" to remove certain categories of ineligible voters from its rolls. 52 U.S.C. § 20507(a)(4) (emphasis added). Those efforts "need not be perfect, or even optimal," just "within the bounds of rationality." *Pub. Int. Legal Found v. Benson* ("*PILF*"), 136 F.4th 613, 625 (6th Cir. 2025); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019) ("[T]he NVRA only requires . . . a reasonable effort, not an exhaustive one . . . ."). In light of these modest list maintenance obligations, DOJ's suggestion that an expedited

---

[7] Even farther afield, DOJ cites *TGP Communications, LLC v. Sellers*, where the Ninth Circuit expedited an appeal of an order denying a preliminary injunction for a member of the press to attend briefings about an election in which votes were still being counted. No. 22-16826, 2022 WL 17484331, at *1 (9th Cir. Dec. 5, 2022).

appeal is necessary to prevent "ineligible voters remaining on [Oregon's] voter rolls" in elections "this fall," Mot. at 15, would make no sense even if DOJ had actually brought a substantive list maintenance claim under the NVRA or HAVA. But as the Complaint reveals, DOJ is nowhere close to being able to levy such serious accusations against Oregon (or any other State).

DOJ's repeated references to noncitizens on Oregon's voter rolls are not only baseless, but represent a marked departure from DOJ's prior allegations in this litigation, and are further untethered from the statutes that DOJ claims it seeks to enforce. *See id.* at 2, 7, 15. Below, DOJ never alleged noncitizens were registered to vote in Oregon—not in its letters to Secretary Read, not in its Complaint, and not in its brief opposing dismissal. *See generally* Defs.' Mot. Dismiss, Exs. 1–2, ECF No. 33-1; Compl., ECF Nos. 1–2; Opp'n to Mot. Dismiss, ECF No. 57. Nor is such any investigation into Oregon's efforts to remove noncitizens from its rolls plausibly connected to enforcement of the NVRA, which "requires a reasonable effort to remove *only* those voters who become ineligible because of death or change of address." *Bellitto*, 935 F.3d at 1195 (emphasis added) (citing 52 U.S.C. § 20507(a)(4)); *see also Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). In short, DOJ's newly raised and

unsubstantiated concern about the "specter" of noncitizens being registered to vote in Oregon, Mot. at 15, provides no basis to expedite this appeal.[8]

## III. DOJ cannot force a voter purge before the 2026 elections.

DOJ's apparent hope to use Oregon's unredacted voter list to effectuate a mass voter purge before the 2026 elections is a fantasy, both because of the calendar and because of the NVRA's strict procedural safeguards. That reality undermines any need to expedite this appeal.

DOJ's Motion seems to assume that if it succeeds on appeal, it will be entitled to immediate production of Oregon's unredacted voter list. That is wrong as a matter of basic civil procedure. DOJ did not move for summary judgment, nor did it move to compel the production of records, nor did it seek any kind of preliminary relief. Rather, the only pending motions in the district court were the motions to dismiss—which were granted. Intervenors will show in this appeal why that dismissal was appropriate, but even if this Court reversed, all that will happen is that the matter will be remanded to the district court for further trial court proceedings.

And there is little indication those proceedings would be either swift or ultimately successful for DOJ. Indeed, even if the legal deficiencies in DOJ's

---

[8] Since "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations," *Bellitto*, 935 F.3d at 1202, Oregon's list-maintenance obligations under HAVA are the same as under the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(i) (stating list maintenance obligations under HAVA are "in accordance with" the NVRA).

Complaint are overlooked, serious disputes of fact are already apparent. The Supreme Court has directed that courts faced with a government demand for documents must ensure the demand was made in "good faith" and the investigation "will be conducted pursuant to a legitimate purpose." *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *see also United States v. Clarke*, 573 U.S. 248, 254 (2014) (recognizing that recipients of government document demands are entitled to discovery into the government's motive when they can "make a showing of facts that give rise to a plausible inference of improper motive"). DOJ's own shifting explanations as to what it is doing and why provide reason to question its motive for demanding Oregon's unredacted voter list, and the public record exponentially exacerbates those concerns, as the court below and the California court have already suggested. *See* Order at 22, ECF No. 73 (after dismissing DOJ's claims, noting the court's "serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data"); *Weber*, 2026 WL 118807, at *10–11 (finding DOJ's stated purpose in seeking California's unredacted voter list was "contrived" and "pretextual"). Accordingly, even if DOJ prevails on appeal, it is likely to lose on remand; at the very least, resolving the fact-intensive issues on remand will take time and discovery, undermining DOJ's quest for a hurried voter purge.

And even if DOJ ultimately prevailed on remand (and on any further appeals), its only relief would be to obtain and inspect Oregon's unredacted voter list. Even generously assuming that DOJ concluded, after reviewing that list, that it has a claim against Oregon for not complying with the NVRA or HAVA, DOJ would then need to bring a *new* lawsuit alleging a violation of those statutes, and then prevail through any appeals, before Oregon could be ordered to undertake additional, unspecified list-maintenance efforts. And then Oregon would need time to actually implement any such removal program. On top of all that, Oregon would need to comply with the NVRA's 90-day provision, which prohibits systematic removal of registrants from the rolls in the 90-day period leading up to an election. *See* 52 U.S.C. § 20507(c)(2)(A). Given these contingencies and requirements, it is not feasible for DOJ to force a mass voter purge on Oregon—and for Oregon to then conduct the purge—before the before the 2026 elections.

A recent NVRA list maintenance case shows how improbable it is that DOJ could—under any set of events—compel changes to Oregon's list maintenance practices before the 2026 elections. In *PILF*, the plaintiffs brought an NVRA list maintenance claim on November 3, 2021. *See* Compl., *Pub. Int. Legal Found v. Benson*, No. 1:21-cv-929 (W.D. Mich. Nov. 3, 2021). The district court granted summary judgment to the defendant on March 1, 2024—over two years after the suit was filed. *Pub. Int. Legal Found. v. Benson*, 721 F. Supp. 3d 580 (W.D. Mich. 2024).

The Sixth Circuit affirmed on May 6, 2025. *See generally PILF*, 136 F.4th 613. The Supreme Court denied certiorari just last week. *Pub. Int. Legal Found.*, No. 25-437, 2026 WL 568298 (U.S. Mar. 2, 2026). In total, it took nearly four and one-half years to fully resolve that case. And that is without any order directing the State to change its list maintenance program, which would have taken even more time to complete.

As DOJ acknowledges, the NVRA bars any "program . . . to systematically remove" voters from a State's rolls within 90 days of a federal election. 52 U.S.C. § 20507(c)(2)(A); *see also Mi Familia Vota*, 129 F.4th at 716 (holding this prohibition applies to identifying noncitizens for removal based on "comparisons to databases"). Since Oregon's next federal election is the primary on May 19, 2026, systematic list maintenance is already prohibited before that date, and the quiet period will resume in early August for the general election. *See* Mot. at 13 (recognizing "Oregon must finish removing nonvoters from its rolls in systemic processes by August 4, 2026"). Accordingly, for DOJ to force the removal of Oregon voters from the rolls before the 2026 general election, *all* of the steps DOJ apparently seeks to accomplish, *see supra* at pp. 15–17, must occur before August 4. But as this Court has previously recognized, Congress clearly did not intend for voter removals to happen on an expedited timeline in the lead up to an election, but rather only after careful review and multiple checks to prevent improper removals, contrary to DOJ's newfound urgency. *See Mi Familia Vota*, 129 F.4th at 717 (explaining Congress wanted States

to proceed "cautiously with respect to systematic cancellation programs in the lead up to an election" (citation modified) (citing *Arcia*, 772 F.3d at 1344)).

Other NVRA safeguards further foreclose DOJ's effort to force through a rushed voter purge before the 2026 elections. Oregon may not, for instance, remove a voter from its rolls "on the ground that the registrant has changed residence" unless the registrant either confirms the change in writing *or* fails to respond to a duly-transmitted notice *and* has not voted or appeared to vote "in an election during the period beginning on the date of the notice and ending on the day after the date of the **second** general election for Federal office that occurs **after** the date of the notice." 52 U.S.C. § 20507(d)(1)(A)–(B) (emphases added). Accordingly, to systematically remove voters based on changes of residence, Oregon would have to provide notice to voters who may have moved and then *wait two full election cycles* before completing the removal. That, obviously, cannot happen before the 2026 election.

## CONCLUSION

Intervenors respectfully request that the Court deny DOJ's Motion and instead permit the appeal to proceed on the default schedule.

March 12, 2026

Respectfully submitted,

*/s/ Abha Khanna*
Abha Khanna
Walker McKusick
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Ste. 2100
Seattle, WA 98101
Tel.: (206) 656-0177
akhanna@elias.law
wmckusick@elias.law

Christopher D. Dodge
Branden D. Lewiston
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, DC 20001
Tel.: (202) 968-4490
cdodge@elias.law
blewiston@elias.law

Harry Wilson
Dallas Deluca
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Ste. 1900
Portland, OR 97201
Tel.: (503) 295-3085
harrywilson@markowitzherbold.com
dallasdeluca@markowitzherbold.com

*Counsel for Intervenors-Appellees*