No. 26-1231
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellant

       v.

STATE OF OREGON; TOBIAS READ, in his official capacity as the Oregon Secretary of State,

    Defendants-Appellees,

OUR OREGON; DAN DIIULIO; EMMA CRADDOCK; STEPHEN GOMEZ,

    Intervenors-Appellees.
_____

DEFFENDANTS-APPELLEES' COMBINED RESPONSE TO PLAINTIFF-APPELLANT'S MOTIONS TO CONSOLIDATE AND EXPEDITE
_____

Appeal from the United States District Court for the District of Oregon
_____

        DAN RAYFIELD  #064790
        Attorney General
        PAUL L. SMITH  #001870
        Solicitor General
        ROBERT A. KOCH  #072004
        Attorney-in-Charge, Civil &
        Administrative Appeals
        JONA J. MAUKONEN  #043540
        Assistant Attorney-in-Charge, Civil &
        Administrative Appeals
        1162 Court St. NE
        Salem, Oregon 97301-4096
        Telephone:  (503) 378-4402
        robert.a.koch@doj.oregon.gov
        Attorneys for Defendants - Appellees
_____

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................3

ARGUMENT ..........................................................................................................6

    A.    The Court should deny the motion to consolidate but should identify this appeal and *Weber* as related for oral argument. ..........6

    B.    The Court should deny the motion to expedite. ...............................9

CONCLUSION......................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*California v. Mesa*,
    813 F.2d 960 (9th Cir. 1987),
    *aff'd*, 489 U.S. 121 (1989)......................................................................7

*Libertarian Party of Ohio v. Husted*,
    751 F.3d 403 (6th Cir. 2014)...................................................................12

*Mi Familia Vota v. Hobbs*,
    977 F.3d 948 (9th Cir. 2020)...................................................................12

*Nader v. Land*,
    115 F. App'x 804 (6th Cir. 2004)..............................................................9

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985)...................................................................9

*Or. Rest. & Lodging Ass'n v. Perez*,
    816 F.3d 1080 (9th Cir. 2016)..............................................................7, 8

*Texaco P.R., Inc., v. Dep't of Consumer Affs.*,
    60 F.3d 867 (1st Cir. 1995) ......................................................................9

*TGP Commc'ns, LLC v. Sellers*,
    2022 WL 17484331 (9th Cir. Dec. 5, 2022) ............................................12

*United States v. Washington*,
    573 F.2d 1121 (9th Cir. 1978)..................................................................7

*United States v. Weber*,
    No. 26-1232 (9th Cir.) ......................................... 1, 3, 5, 6, 8, 9, 10, 13, 14

## Statutes

28 U.S.C. § 1657(a) .................................................................................5, 6

52 U.S.C. § 20507(a) ....................................................................................3

52 U.S.C. § 20507(a)(3)–(4) .......................................................................11

52 U.S.C. § 20507(a)(4)................................................................................2

52 U.S.C. § 20507(c)(2)(A) .................................................................. 10, 11

52 U.S.C. § 21083.........................................................................................4

52 U.S.C. § 21085 ...........................................................................................4, 11

O.R.S. § 247.948 .....................................................................................................3

O.R.S. § 247.948(1) ..............................................................................................12

O.R.S. § 247.948(2) ..............................................................................................12

O.R.S. § 254.056(2) ..............................................................................................10

U.S. Const., Art. I, § 4, cl. 1 .............................................................................2, 11

## Other Authorities

9th Cir. R. 27-12 ..................................................................................... 1, 2, 9, 12

California law, Cal. Elec. Code § 2194(b)(1) ........................................................5

Fed. R. App. P. 29(a)(6) .......................................................................................13

Fed. R. App. P. 3(b) ...............................................................................................7

Fed. R. App. P. 3(b)(2) ..........................................................................................7

Fed. R. App. P. 31(a)(1) .......................................................................................13

Fed. R. App. P. 34(b) ...........................................................................................13

Press Release, *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-five-additional-states-failure-produce-voter-rolls .............................................................4

Pub. L. No. 86-449, 74 Stat. 86 .............................................................................4

*U.S. Dep't of Justice FY 2026 Contingency Plan* at 2 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl ........................................5

## INTRODUCTION

Plaintiff-Appellant, the United States, moves to consolidate this appeal with *United States v. Weber*, No. 26-1232 (9th Cir.). Dkt. 13. Plaintiff also moves to expedite the appeals, requesting a briefing deadline of one week for the answering brief and asking the Court to forego argument. Dkt. 12. Defendants-Appellees, the State of Oregon and Oregon Secretary of State, oppose both motions.

On consolidation, the two appeals comprise different cases that plaintiff brought in different venues; unsurprisingly, they involve different parties and different rulings from different district courts, the separate judgments from which plaintiff has separately appealed. As discussed below, the appeals likely involve *related* legal issues. Thus, the Court should identify the two appeals as related for purposes of scheduling oral argument; after argument, the Court then can decide whether to consolidate the appeals for disposition.

As to expedition, plaintiff fails to show the good cause required to expedite the appeal under Ninth Circuit Rule 27-12, much less according to the inequitable briefing schedule that plaintiff proposes. As an initial matter, plaintiff did not act expeditiously below. Plaintiff filed suit only in September 2025 and then *twice* moved to stay proceedings; plaintiff also waited three weeks to file a notice of appeal after the district court's dismissal order. (ECF 22; ECF 25; ECF 76). Indeed, in *Weber*, plaintiff waited *six* weeks to appeal after the district court's

order. (*Weber* ECF 131). As such, plaintiff will have had six and nine weeks, respectively, to draft its merits briefs in the two appeals. Plaintiff cannot now use its own delays to short-circuit this Court's appellate procedures and timelines for briefing and argument. No exigency exists, but any that does is of plaintiff's own making, which defeats expedition.

More fundamentally, plaintiff has not demonstrated, or even articulated, the irreparable harm that Rule 27-12 requires. The four cases cited by plaintiff, Dkt. 12 at 10, prove the point. In three, the appellate court evaluated applicable election procedures on the eve of an election; in the fourth, the Court examined press access to briefings on ballot-counting that was ongoing. Here, by contrast, the lawsuit is not about election procedures at all. It is about information: Plaintiff seeks to compel the disclosure of an electronic copy of Oregon's voter roll, including sensitive information about each registered voter that state law otherwise protects. In all, plaintiff has sued 29 states and the District of Columbia for their unredacted voter rolls. But the Constitution and federal law entrust to states the administration of elections that underpin our democracy, including voter roll maintenance. U.S. Const. art. I, § 4, cl. 1; 52 U.S.C. § 20507(a)(4). Plaintiff's vague, unfounded suppositions about election "sanctity" do not evince good cause.

3

At most, the Court should modify the extant briefing schedule and rules by equalizing the merits briefing time here and in *Weber*. Doing so would make the answering brief due 60 days after the opening brief, with no extensions available.

## BACKGROUND

In September 2025, plaintiff sued defendants regarding their election administration efforts under Oregon law. No. 6:25-cv-01666-MTK (D. Or.). Plaintiff had requested Oregon's voter roll data, and defendants had offered to provide the publicly available data allowed by Oregon law, O.R.S. § 247.948, which prohibits disclosure of sensitive information like driver's license and Social Security numbers for each registered voter. (ECF 1 at ¶¶ 34–56). In turn, plaintiff charged that defendants were violating three federal civil-rights laws by not giving plaintiff an electronic, unredacted copy of Oregon's entire voter registration list for more than three million Oregonians. (ECF 1 at 19–21).

Specifically, plaintiff charged that the refusal to give plaintiff an electronic, unredacted copy of Oregon's voter roll—in violation of Oregon law—violated the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and the Civil Rights Act of 1960. The NVRA directs states to: "ensure that any eligible applicant is registered to vote," prevent improper removal of voters from a voter roll, and "make[] a reasonable effort" to remove voters from a roll who are dead or ineligible under state law. 52 U.S.C. § 20507(a). HAVA provides federal

funding for a computerized, statewide voter roll but leaves implementation "to the discretion of the State." 52 U.S.C. §§ 21083, 21085. And the Civil Rights Act of 1960 seeks to remedy race discrimination. Pub. L. No. 86-449, 74 Stat. 86.

Defendants moved to dismiss, arguing that the three civil-rights statutes invoked by plaintiff did not provide a legal basis for plaintiff's unprecedented demand.[1] (ECF 32 at 19–29). Defendants also argued that the demand violated two federal statutes, the Privacy Act of 1974 and the E-Government Act, which prohibit the federal government from collecting or maintaining sensitive citizen data, particularly as to protected First Amendment activity. (ECF 32 at 13–19). Separately, a group of Oregon citizens moved to intervene to protect the privacy of their information under Oregon law, which plaintiff opposed. (ECF 12; ECF 30).

The district court made two separate substantive rulings. First, the court granted the opposed motion to intervene. (ECF 52). Then, the court dismissed plaintiff's complaint for failure to state a claim. (ECF 73). In doing so, the court ruled that plaintiff's request contravened the three civil-rights statutes that they had

---

[1] As noted, plaintiff has sued 29 states and the District of Columbia seeking, for the first time, an electronic, unredacted copy of their voter rolls. Press Release, *Justice Department Sues Five Additional States for Failure to Produce Voter Rolls* (Feb. 26, 2026), https://www.justice.gov/opa/pr/justice-department-sues-five-additional-states-failure-produce-voter-rolls. To date, no suit has been successful.

invoked. (ECF 73 at 9–24). As a result, the court did not reach the Privacy Act and E-Government Act questions. (*See* ECF 73 at 9 (so stating)).

Notably, at no point did plaintiff move to expedite the litigation for "good cause." 28 U.S.C. § 1657(a) (so providing). Instead, plaintiff slowed it down. Twice plaintiff moved to stay proceedings indefinitely due to a lapse in funding. (ECF 22; ECF 25). Plaintiff so moved despite identifying 89% of employees at the U.S. Department of Justice as essential workers who would continue working through any lapse in appropriations. *U.S. Dep't of Justice FY 2026 Contingency Plan* at 2 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl. The district court ultimately stayed proceedings for one month at plaintiff's request. (ECF 24). And plaintiff then waited three weeks to appeal after the district court entered its order and judgment of dismissal. (ECF 76).

Separately, in *Weber*, the United States sued California regarding its election administration under California law. No. 2:25-cv-09149-DOC-ADS (C.D. Cal.). The United States had requested California's voter roll data, and the California defendants had offered to allow a public inspection of the data consistent with California law, Cal. Elec. Code § 2194(b)(1), which similarly would redact sensitive information for registered voters. (*Weber* ECF 1 at ¶¶ 34–44). The United States alleged that California violated the same three federal laws by not giving the federal government an electronic, unredacted copy of California's entire

voter registration list. (*Weber* ECF 1 at 13–16). Further, two sets of citizen groups moved to intervene to protect their data privacy under California law, which the United States opposed. (*Weber* ECF 14; *Weber* ECF 24; *Weber* ECF 27).

The district court in *Weber* issued its own series of substantive rulings. The court granted both intervention motions filed in that case. (*Weber* ECF 70 & 92). The court then dismissed the complaint for failure to state a claim. (*Weber* ECF 128). The court rejected the asserted authority by the United States under the three invoked federal civil-rights laws (*Weber* ECF 128 at 13–27). The court also ruled that the unprecedented request by the United States for electronic, unredacted voter data violated three other federal privacy laws: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act. (*Weber* ECF 128 at 27–31).

Plaintiff similarly acted non-expediently in *Weber*. Plaintiff never moved to expedite the litigation for good cause under 28 U.S.C. § 1657(a). Plaintiff instead moved to stay proceedings due to a lapse in appropriations. (*Weber* ECF 6). Plaintiff also waited six weeks to file a notice of appeal. (*Weber* ECF 131).

## ARGUMENT

**A.     The Court should deny the motion to consolidate but should identify this appeal and *Weber* as related for oral argument.**

Consolidation on appeal generally is governed by Federal Rule of Appellate Procedure 3. That rule provides:

> (1) When two or more parties are entitled to appeal from a district-court judgment or order, and their interests make joinder practicable, they may file a joint notice of appeal. They may then proceed on appeal as a single appellant.
>
> (2) When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals.

Fed. R. App. P. 3(b).

Additionally, this Court has stated that consolidation "may be ordered . . . in the interests of justice." *United States v. Washington*, 573 F.2d 1121, 1123 (9th Cir. 1978). Most pertinently, when multiple appeals appear to "raise the same legal issues," the Court has marked the appeals as related for purposes of oral argument and then, after argument, consolidated them for disposition. *California v. Mesa*, 813 F.2d 960, 961 n.1 (9th Cir. 1987), *aff'd*, 489 U.S. 121 (1989); *see Or. Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1080 (9th Cir. 2016) (same).

Here, plaintiff's request for consolidation fails, particularly at this juncture. As an initial matter, Rule 3(b)(2) is plainly inapt: The two appeals concern different district court proceedings involving different parties, resulting in different rulings and different judgments from which plaintiff has separately appealed.

More fundamentally, consolidation now would not serve the interests of justice. As detailed in the Background above, the two appeals arise out of separate district court proceedings that plaintiff chose to bring in different venues. They involve different parties and different state-election systems and laws. Different

citizen groups in each state intervened in each proceeding, over plaintiff's objections, to protect their privacy interests in their state's confidential voter data. And the dual district courts rejected plaintiff's unprecedent request on varying legal grounds. Until plaintiff briefs both appeals, it is unclear which rulings from each district court plaintiff is challenging and under what legal theories.

To be sure, both appeals likely involve *related* legal questions. In this case, plaintiff challenges how the State of Oregon administers elections under Oregon law; in *Weber*, plaintiff challenges how the State of California administers elections under California law. In doing so, plaintiff seeks confidential voter data from each state invoking three different federal laws. Resolving both appeals thus likely will require interpreting some (or all) of those federal laws. Given the likely overlap, the Court should identify the two cases as related for oral argument; after argument, the Court then can decide whether to consolidate them for disposition. *See, e.g.*, *Or. Rest. & Lodging Ass'n*, 816 F.3d at 1080 (so consolidating).

In moving for consolidation, plaintiff does not cite, much less discuss, any of the above authority. Instead, plaintiff summarily states that the legal issues are "identical" and that, in turn, plaintiff would prefer to file a single brief for both appeals. Dkt. 13 at 2–3. On the latter, plaintiff remains free to do just that with or without consolidation. But the former is belied by plaintiff having brought different suits against different states in different venues challenging different state

election systems, which resulted in different parties and different legal rulings. Plaintiff's motion for consolidation with *Weber*, No. 26-1232, should be denied.

**B.     The Court should deny the motion to expedite.**

Whether to expedite an appeal is governed by Ninth Circuit Rule 27-12. That rule provides that the Court may expedite an appeal for "good cause," which the rule defines to include two incarcerated-defendant scenarios as well as where, "in the absence of expedited treatment, irreparable harm may occur or the appeal may become moot." 9th Cir. R. 27-12. Plaintiff urges expedition due to a threat of irreparable harm and mootness, yet never elucidates any specifics beyond a general notion of election "sanctity." (Dkt. 12 at 10). Plaintiff's argument lacks merit.

First, plaintiff fails to show good cause for expedition because plaintiff has failed to act expeditiously in this litigation. As a rule, if a party waits until weeks after an appealed-from order to file a motion to expedite, that alone warrants denying the motion. *Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) (so holding without examining any merits). That is because "equity ministers to the vigilant, not to those who sleep upon their rights." *Texaco P.R., Inc., v. Dep't of Consumer Affs.*, 60 F.3d 867, 879 (1st Cir. 1995). When a party delays acting, such a delay "implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

Here, plaintiff's lack of expedition abounds. Plaintiff never sought to expedite district court proceedings. Plaintiff instead twice moved to stay the district court proceedings indefinitely. And plaintiff waited until three weeks after the appealed-from order just to file a notice of appeal. Plaintiff moved even less expeditiously in *Weber*, the California case that plaintiff now seeks to consolidate with this appeal. There, plaintiff similarly never moved to expedite the district court proceedings; rather, plaintiff filed a motion to stay proceedings indefinitely and then waited six weeks after the appealed-from order to file a notice of appeal.

Second, plaintiff fails to identify, much less show, irreparable harm (or mootness) that requires expedition of this appeal (or of *Weber*). The clearest statement of alleged harm that plaintiff appears to assert is that the "sanctity" of the 2026 election requires immediate resolution of this appeal given plaintiff's role in any systematic purge of Oregon's voter roll, which would have to be completed more than 90 days before an election under the cooling-off period mandated by the NVRA, 52 U.S.C. § 20507(c)(2)(A). Dkt. 12 at 10, 14. That is wrong several times over, regardless of this Court's ultimate resolution of the merits in this case.

As an initial matter, plaintiff seems unaware that Oregon already has entered a cooling-off period for the 2026 election, as Oregon's federal primary is on May 19, 2026. O.R.S. § 254.056(2). Federal law—particularly the NVRA, which

plaintiff curiously invokes—therefore currently bars the systematic purge of Oregon's voter roll that plaintiff appears to seek. 52 U.S.C. § 20507(c)(2)(A).

In addition, plaintiff ignores that the U.S. Constitution and the civil-rights laws that plaintiff cites leave the administration of Oregon's voter roll to Oregon. Under the separation of powers and federalism principles at the heart of our constitutional design, states are entrusted with administering the elections that underpin our democracy. U.S. Const. art. I, § 4, cl. 1. The NVRA tells *states* to make reasonable efforts to remove from their rolls voters who have moved, died, or are now otherwise ineligible under state law. 52 U.S.C. § 20507(a)(3)–(4). And HAVA similarly leaves implementation of a statewide voter roll "to the discretion of *the State*." 52 U.S.C. § 21085 (emphasis added). If there is a logical or legal connection between plaintiff's data request, and plaintiff's apparent desire to engender a purge of Oregon's voter roll, plaintiff does not elucidate one. More importantly, plaintiff never says how expediting the appeal would accomplish it.

Plaintiff similarly fails to say why expediting *this appeal* is required, even assuming plaintiff has a role to play in the maintenance of Oregon's voter roll. As plaintiff acknowledged in the complaint, Oregon offered to make its voter roll data available to plaintiff as required and provided by Oregon law, which would include a registered voter's name, address, telephone number, birth year, party affiliation, and whether or not the registered voter actually voted in previous elections. (ECF

1 at ¶ 56); *see* O.R.S. § 247.948(1) (so requiring). If plaintiff has a legitimate basis or need for the additional sensitive voter information that plaintiff seeks to have compelled in this case—including the birth date, Social Security number, and driver's license number of every registered voter, all of which are protected from disclosure by O.R.S. § 247.948(2)—plaintiff never plausibly identifies one, much less why irreparable harm (or mootness) would occur absent expediting the appeal.

Moreover, plaintiff cites four cases to support expedition. Dkt. 12 at 10. None are apposite. In three, the appellate courts examined the applicable election procedures on the eve of an election. *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 950 (9th Cir. 2020) (voter registration deadline); *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 405 (6th Cir. 2014) (candidate's removal from ballot); *Ne. Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 583 (6th Cir. 2012) (ballot disqualification rules). In the fourth, the Court examined press access to briefings on ballot-counting that was ongoing. *TGP Commc'ns, LLC v. Sellers*, 2022 WL 17484331, at *1 (9th Cir. Dec. 5, 2022). By contrast, this case is not about election procedures at all; nor is it about whether certain registered voters are eligible to vote or even whether plaintiff can access Oregon's public voter roll. Instead, it is about plaintiff's desire for specific, sensitive voter *information* that Oregon law protects from disclosure, O.R.S. § 247.948(2), and for which plaintiff has never explained a legitimate need. The election-specific cases are inapt.

13

Finally, if this Court disagrees or is otherwise inclined to alter the extant briefing schedule, Dkt. 2, the Court should issue a more equitable briefing schedule than the one requested by plaintiff. The substantial privacy interests at stake, the bedrock separation-of-powers principles that plaintiff seeks to disturb, and general notions of fairness and fair play all warrant providing the parties with equal briefing time in this appeal. Assuming that this case and *Weber* are related, such a modified briefing schedule could be:

- March 18, 2026: opening briefs due at plaintiff's request, Dkt. 12 at 4

- May 18, 2026: answering briefs due, given plaintiff's nine weeks of briefing time since the district court's order in *Weber*

- June 8, 2026: optional reply briefs due, Fed. R. App. P. 31(a)(1)

- Amicus briefs: due 7 days after the principal brief of the party being supported, Fed. R. App. P. 29(a)(6)

- Oral argument: at an appropriate time after briefing is complete, Fed. R. App. P. 34(b)

Nevertheless, for the above reasons, the Court should deny plaintiff's motion to expedite in its entirety and thereby leave undisturbed the Court's existing briefing schedule for this appeal.

## CONCLUSION

The Court should deny plaintiff's motion to consolidate this appeal with *Weber*, No. 26-1232 (9th Cir.). However, the Court should identify this appeal and

14

*Weber* as related cases for purposes of oral argument.  In addition, the Court should deny plaintiff's motion to expedite.

                                        Respectfully submitted,

                                        DAN RAYFIELD #064790
                                        Attorney General
                                        PAUL L. SMITH  #001870
                                        Solicitor General

                                        /s/  Robert A. Koch
                                        _____
                                        ROBERT A. KOCH  #072004
                                        Attorney-in-Charge, Civil &
                                        Administrative Appeals
                                        JONA J. MAUKONEN  #043540
                                        Assistant Attorney-in-Charge, Civil &
                                        Administrative Appeals
                                        robert.a.koch@doj.oregon.gov
                                        jona.j.maukonen@doj.oregon.gov

                                        Attorneys for Defendants-Appellees
                                        State of Oregon and Tobias Read

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d), I certify that **Error! Reference source not found.**is proportionately spaced, has a typeface of 14 points or more, and contains 3,111 words.

DATED: March 12, 2026

/s/ Robert A. Koch
_____
ROBERT A. KOCH #072004
Attorney-in-Charge, Civil &
Administrative Appeals
robert.a.koch@doj.oregon.gov

Attorneys for Defendants-Appellees
State of Oregon and Tobais Read

# CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, I directed the Combined Response To Plaintiff-Appellant's Motions To Consolidate And Expedite to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Robert A. Koch
_____
ROBERT A. KOCH #072004
Attorney-in-Charge, Civil &
Administrative Appeals
robert.a.koch@doj.oregon.gov

Attorney for Defendants-Appellees
State of Oregon and Tobias Read

RAK:kw5/1015456993