No. 26-1231

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

THE STATE OF OREGON, *et al.*,

Defendants-Appellees

OUR OREGON; DAN DIIULIO; EMMA CRADDOCK; STEPHEN GOMEZ,

Defendants-Intervenors-Appellees

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

————————————

BRIEF FOR THE UNITED STATES AS APPELLANT

————————————

HARMEET K. DHILLON
  Assistant Attorney General
JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION................................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................2

STATEMENT OF JURISDICTION.......................................................2

STATEMENT OF THE ISSUES...........................................................3

STATEMENT OF PERTINENT AUTHORITIES ...................................4

STATEMENT OF THE CASE ..............................................................4

    A.    Statutory Background..............................................................4

    B.    Factual Background.................................................................9

SUMMARY OF ARGUMENT.............................................................12

STANDARD OF REVIEW..................................................................13

ARGUMENT

The DOJ request was sufficient under the CRA for unredacted voter files................................................................................................14

    A.    The Court improperly inquired into the motive of the DOJ's request for Oregon's SVRL ...........................................................14

    B.    The DOJ's assertion that it was investigating Oregon's possible non-compliance with the NVRA sufficiently stated a factual basis for its demand..................................................20

- i -

**TABLE OF CONTENTS (continued):**                     **PAGE**

C.  The DOJ's request could be read in concert
    to establish a basis under the CRA .............................24

D.  The DOJ's stated purpose of ensuring
    NVRA and HAVA compliance was sufficient
    under the CRA ..........................................................26

E.  The DOJ's is entitled to the unredacted SVRLs. ........31

    1.  The unredacted SVRL is a record under
        the CRA............................................................33

    2.  Privacy concerns do not outweigh the DOJ's
        interest in enforcing federal law........................38

CONCLUSION ...................................................................42

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alabama ex rel. Gallion v. Rogers,*
187 F. Supp. 848, 854 (M.D. Ala. 1960) ........................................ 16

*Arizona All. for Cmty. Health Ctrs. U. Arizona Health Care Cost
Containment Sys.,* 47 F.4th 992 (9th Cir. 2022) ............................ 13

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
570 U.S. 1 (2013) ........................................................................ 41

*Burgert v. Lokelani Bernice Pauli Bishop Tr.,*
200 F.3d 661 (9th Cir. 2000) ....................................................... 13

*Coleman v. Kennedy,* 313 F.2d 867 (5th Cir. 1963) (per curiam) ..... 21, 28

*Commissioner v. Tellier,* 383 U.S. 687 (1966) .......................................... 32

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ..... 40, 41

*Dinkens v. Attorney General of the U.S.,*
285 F.2d 430 (5th Cir. 1961) ....................................................... 16

*Engine Mfrs. Assn. v. South Coast Air Quality
Management Dist.,* 541 U.S. 246 (2004) ....................................... 27

*Ex parte Siebold,* 100 U.S. 371 (1880) ................................................. 41

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000) .................................................................... 29

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) .............................. 27

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ........................................... 28

*Heckler v. Chaney,* 470 U.S. 821 (1985) ............................................... 20

**CASES (continued):**                                **PAGE**

*In re Coleman,* 208 F. Supp. 199 (S.D. Miss. 1962) ............................... 21

*Judicial Watch v. Lamone,*
    399 F. Supp. 3d 425 (D. Md. 2019) .......................................... 34, 35

*Kennedy v. Bruce,* 298 F.2d 860 (5th Cir. 1962) .............................. 16, 21

*Kennedy v. Lynd,* 306 F.2d 222 (5th Cir. 1962) ............................. *passim*

*Knox v. Brnovich,* 907 F.3d 1167 (9th Cir. 2018) .................................. 41

*Morton Salt Co.,* 338 U.S. 632 (1950) ................................................... 20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    572 U.S. 545 (2014) ................................................................... 27

*Parker Drilling Mgmt. Servs., Ltd. v. Newton,*
    587 U.S. 601 (2019) ................................................................... 39

*Project Vote v. Kemp,* 208 F. Supp.3d 1320 (N.D. Ga. 2016) ................. 35

*Project Vote/Voting for Am., Inc. v. Long,*
    682 F.3d 331 (4th Cir. 2012) ...................................................... 35

*Prometheus Radio Project v. FCC,*
    373 F.3d 372 (3d Cir. 2004) ........................................................ 33

*Public Interest Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) .......................................................... 39

*South Carolina v. Katzenbach,* 383 U.S. 301 (1966) .............................. 5

*United States v. Benson,* No. 1:25-cv-1148,
    2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ....................... *passim*

**CASES (continued):** **PAGE**

*United States v. Corinthian Colls.,*
　　655 F.3d 984 (9th Cir. 2011) ......................................................13

*United States v. Lillard,* 935 F.3d 827 (9th Cir. 2019) ..........................27

*United States v. Lynd,* 301 F.2d 818 (1962) .................................... 17, 20

*United States v. McDuffy,* 890 F.3d 796 (9th Cir. 2018) ........................27

*United States v. Powell,* 379 U.S. 48 (1964) ............................... 18, 19, 20

*WaterKeepers N. Cal. v. AG Indus. Mfg.,*
　　375 F.3d 913 (9th Cir. 2004) .......................................................25

*Whitney v. G. Harvey Kennington Revocable Tr.,*
　　62 F. App'x 794 (9th Cir. 2003) ...................................................26

*Webster v. Doe,* 486 U.S. 592 (1988) .......................................................20

*Wyeth v. Levine,* 555 U.S. 555 (2009) ......................................................41

**STATUTES:**

Civil Rights Act of 1960 (Title III)
　　52 U.S.C. 20701 *et seq* .........................................................*passim*

Help America Vote Act of 2002 (HAVA),
　　52 U.S.C. 20901 *et seq* .........................................................*passim*

National Voter Registration Act of 1993 (NVRA),
　　52 U.S.C. 20501 *et seq.* .........................................................*passim*

8 U.S.C. 1445(f) ....................................................................................38

8 U.S.C. 1449 ........................................................................................38

**STATUTES (continued):**                                                 **PAGE**

10 U.S.C. 130c(d)(2)(C) ..................................................................36

13 U.S.C. 214 ...............................................................................36

18 U.S.C. 611 .................................................................................6

18 U.S.C. 1015 ...............................................................................6

28 U.S.C. 1291 ................................................................................2

28 U.S.C. 1331 ................................................................................2

30 U.S.C. 1732(b) .........................................................................36

42 U.S.C. 2000e-2 .........................................................................28

42 U.S.C. 3604 *et seq.* ................................................................28

44 U.S.C. 3572(f) ..........................................................................36

52 U.S.C. 10301 *et seq.* ...................................................... *passim*

Oregon Rev. Stat.
        247.948(2) ................................................................. *passim*
        254.465 ............................................................................24
        254.470 ............................................................................24

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 329, 107th Cong., 1st Sess. (2001) ...................................7

**RULES:** **PAGE**

Fed. R. App. P.
    2 ....................................................................................... 42
    41(b). ................................................................................. 42

**MISCELLANEOUS:**

Election Administration and Voting Survey 2024
    Comprehensive Report: A Report from the U.S. Election
    Assistance Commission to the 119th Congress
    (https://tinyurl.com/yc26fnj5)..................................................... 9, 10

The Federalist No. 59 (C. Rossiter ed. 1961) .......................................... 41

Webster's New World Dictionary of the
    American Language (8th coll. ed. 1960) ........................................ 35

Webster's Third New International
    Dictionary (1966 ed. unabridg.) ................................................... 36

## INTRODUCTION

In the summer of 2025, the United States Department of Justice (DOJ) sent two letters to the State of Oregon alleging a number of inconsistencies and indications of irregularities in the maintenance of its statewide voter registration lists (SVRLs). In violation of federal law, Oregon refused to provide the unredacted versions of these lists, which would have allowed the DOJ to conduct normal review of the files for duplicate registrations, deceased voters, non-resident voters or otherwise improperly registered voters. The United States subsequently brought this case against the State of Oregon and Oregon Secretary of State Tobias Read (collectively, Oregon) alleging, *inter alia*, that Oregon violated Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. 20701 *et seq.*, which requires state election officials to retain certain federal election records and allows the federal government to demand such records. Specifically, the DOJ alleged that Oregon violated the CRA by refusing the Attorney General's demand for an electronic, unredacted copy of its SVRL, which DOJ needed to determine Oregon's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C.

20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.*

On February 5, 2026, the district court dismissed the United States's complaint. ER-5.[1] In doing so, it made several reversible errors. The clear text of the CRA, HAVA, and NVRA, as well as judicial precedent, show that the United States is entitled to relief under the CRA.

## STATEMENT REGARDING ORAL ARGUMENT

The United States requests oral argument. This appeal raises important issues regarding the proper application of Title III, Section 303, of the Civil Rights Act of 1960 (CRA) (52 U.S.C. 20703). Oral argument likely would assist the Court in understanding the record and resolving the issues presented.

## STATEMENT OF JURISDICTION

This appeal is from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331 and 52 U.S.C. 20705. That court entered final judgment on February 5, 2026. ER-4. The United

---

[1] "ER-__" refers to the pages in the Excerpts of Record filed with this brief.

States filed a timely Notice of Appeal. ER-192. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

The United States sued Oregon under the CRA to compel the State and its chief election official to produce records and documents that the Attorney General has a right to demand, and did demand, under the CRA. The district court held that the Attorney General failed to state a satisfactory "basis and purpose" for her request, discrediting the basis and purpose articulated by the Attorney General and the United States, and that privacy laws foreclosed that request in any event.

The United States raises the following issues on appeal:

1. Whether the CRA process allows a court to conduct an evidentiary hearing to determine the underlying reasons for a request under the CRA.

2. Whether the United States sufficiently stated a basis and purpose for the records requested under the CRA.

3. Whether the CRA permits the United States to obtain the unredacted electronic SVRLs of Oregon.

## STATEMENT OF PERTINENT AUTHORITIES

Pertinent statutes, regulations, and rules are included in an addendum to this Brief.

## STATEMENT OF THE CASE

### A. Statutory Background

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) *(Lynd I)*. Section 301 provides, in pertinent part, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying…by the Attorney General or [her] representative." 52 U.S.C. 20703. Such demand

- 4 -

"shall contain a statement of the basis and the purpose therefor." *Ibid.* The Attorney General and her representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704.

Congress passed the CRA to eliminate racial discrimination in voting. The statute strengthened the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach,* 383 U.S. 301, 313 (1966). To that end, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.* The statute also criminalizes willfully destroying such documents, reflecting a contemporary practice of preventing black people from voting by destroying their registration materials. 52 U.S.C. 20702.

Since the passage of the CRA, Congress has passed multiple laws that affect what "records and papers . . . come into [election officials'] possession," 52 U.S.C. 20701. Relevant here are the NVRA and the HAVA, which help the federal government ensure that States are

- 5 -

overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3), and to do so in a nondiscriminatory manner. 52 U.S.C. 20507(b)(1), 21803(a)(1)(A).

The NVRA's requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B). Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death of the registrant or "a change in the residence of the registrant, in accordance with" particular procedures. 52 U.S.C. 20507(a)(4)(A)-(B); *see* 52 U.S.C. 20507(b)-(d).

The NVRA requires attestation of citizenship status when registering at State motor vehicle offices. 52 U.S.C. 20504(c)(2)(C).[2] Section 8(i) of the NVRA provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists

---

[2] Federal law prohibits non-citizen voting outright. 18 U.S.C. 611, 1015.

of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. 20507(i)(1). Section 8(i)(2) further specifies:

The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. 20507(i)(2).

HAVA works in conjunction with the NVRA. The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. No. 329, 107th Cong., 1st Sess. 31 (2001). "Historically, elections in this country have been administered at the state and local level[,]" but Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32. To this end, HAVA requires States to implement a centralized computerized SVRL, and to engage in reasonable efforts at maintaining that list by removing ineligible voters. 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). HAVA also

- 7 -

mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements … in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

These laws also reflect congressional intent that SVRLs should be accurately maintained and reflect only current eligible voters. *See* 52 U.S.C. 21083(a)(2)(A)(iii). HAVA requires that registrants must be citizens. *See* 52 U.S.C. 21083(b)(4). HAVA further established a "[m]inimum standard for accuracy of State voter registration records[.]" 52 U.S.C. 21083(a)(4). It provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and

- 8 -

"[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. 21083(a)(4)(A)-(B).

## B. Factual Background

In the summer of 2025, the DOJ sent two letters to Secretary of State Tobias Read. The first letter requested information about Oregon's compliance with the NVRA's provisions governing maintenance of its statewide voter-registration list. Pursuant to Section 20507(i) of the NVRA, the letter demanded a copy of the voter-registration list, including "all fields contained within the list." ER-11. The July 16 letter included six detailed inquiries based on the data and answers that the State of Oregon provided in response to the United States Election Assistance Commission (EAC) Election Administration and Voting Survey (EAVS), biannual questionnaire.[3] Among these, the letter identified:

---

[3] The EAC's most recent report, "Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" (2024 EAVS Report), explains that as part of the 2024 EAVS, states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from its voter lists. The period for the inquiries was the close of registration for the November 2022 general election through the close of registration for the

1. Based on a review of the most recent EAVS report, there are nearly as many registered voters listed as active as the citizen voting age population in Oregon, with a registration rate in 2024 of 95.3% of the citizen voting age population.

2. The EAVS report indicated that the ratio of active registered voters to citizen voting age population in Oregon has been unusually high for several years, with Oregon reporting a registration rate of 93.3% of citizen voting age population in 2022 and 93.1% in 2020.

3. The July 16 letter also noted that Oregon sent 357,959 confirmation notices to registered voters. In reporting the results of the confirmation notices, Oregon categorized the results as "Other." The letter asked Oregon to explain what "Other" means for the results of these confirmation notices.

4. In the EAVS data for Question A12a, Oregon removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which was well below the national average of 9.1%.

---

November 2024 general election. EAC, 2024 EAVS Report, https://tinyurl.com/yc26fnj5 at 7.

5. Oregon reported that it removed only 4,417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice. The July 16 letter noted that the State of Oregon had the lowest number of removals in this category as compared to the total number of registered voters, of all NVRA-covered states reporting data to the EAC's survey.

ER-103-106. DOJ's second letter reiterated its request that defendants provide an electronic copy of "all fields" contained in Oregon's voter-registration list. ER-11. It invoked Section 11 of the NVRA, its enforcement authority under HAVA, and Title III of the CRA as the basis for its authority. ER-12.

On August 21, 2025, Secretary Read replied and refused to produce the SVRL. ER-12. He insisted that DOJ lacks authority to compel Oregon to produce the list. He further argued that Oregon law prohibits the disclosure of "a voter's birth month, birthday, Social Security number, and driver's license number." ER-12. He offered to produce publicly available portions of the list if DOJ made a formal request pursuant to state administrative procedures. ER-12.

- 11 -

On September 16, DOJ sued the State of Oregon and Secretary Read, alleging that their refusal to provide the United States an electronic, unredacted copy of its statewide voter-registration list violated the NVRA, HAVA, and Title III of the CRA. ER-167. Defendants moved to dismiss under Rule 12(b)(6). ER-107. The district court granted the motion to dismiss. ER-5.

## SUMMARY OF ARGUMENT

The district court erred in dismissing the DOJ's Title III claim on the grounds that the DOJ failed to state an adequate basis and purpose of its demand for an electronic, unredacted copy of Oregon's SVRL. The Court's inquiry into the motives behind the request was improper and beyond the statutory mandate. The DOJ's assertion that it was investigating Oregon's possible non-compliance with the NVRA sufficiently stated a basis of its demand. This assertion also sufficiently stated a purpose of the DOJ's demand, as the NVRA is a voting-related statute. The DOJ's demand for an electronic, unredacted copy of Oregon's SVRL also did not violate federal privacy laws and the CRA and NVRA supersede state privacy laws.

- 12 -

## STANDARD OF REVIEW

This Court reviews orders granting motions to dismiss for failure to state a claim—and the legal questions those motions raise—de novo. *See Arizona All. for Cmty. Health Ctrs. U. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992, 998 (9th Cir. 2022). "As a general rule, [courts] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) (citation omitted). However, courts may "consider materials that are submitted with and attached to the Complaint" as well as "unattached evidence on which the complaint 'necessarily relies.'" *Id.* at 999 (citation omitted). When considering whether a complaint sufficiently states a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Burgert v. Lokelani Bernice Pauli Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

## ARGUMENT

**The DOJ request was sufficient under the CRA for unredacted voter files.**

### A. The Court improperly inquired into the motives of the DOJ's request for Oregon's SVRL.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) *(Lynd I)*, to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly sweeping power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the State election officer has rejected it, the Attorney General may seek an order from a federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

Notwithstanding the plain language of these provisions, the district court dismissed the DOJ's Title III claim on the ground that its demand for an electronic, unredacted copy of California's SVRL failed to state an adequate basis and purpose. ER-16-23. This was error.

First the Court extended inquiry into the evidence behind the requests, even going so far as to declare what it perceived as DOJ's motives for the requests as impermissible under the statute. CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Read, as an officer of election for Oregon, must produce the voter-registration lists and other federal election records demanded by the Attorney General. *Lynd I*, 306 F.2d at 225. The court in *Lynd* reasoned that a special proceeding was necessary to obtain federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for

- 15 -

> interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Lynd I*, 306 F.2d at 225-226. The DOJ's filing of a request for federal election records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings," but rather "comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.* at 225. The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative process could be completely disrupted if investigative hearings were transformed into trial-like proceedings." *Kennedy v. Bruce,* 298 F.2d 860, 863 (5th Cir. 1962). Accordingly, a State official responding to the Attorney General's demand for federal election records may not utilize litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the

- 16 -

Attorney General considers the records essential." *Lynd I*, 306 F.2d at 226. Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (1962) (*Lynd II*).

To institute this investigation, the United States need only file a "simple statement" describing its written demand for the federal election records and explaining that Secretary Read, acting as an officer of election for Oregon, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd I*, 306 F.2d at 226 (citation omitted). Once presented with this evidence, a district court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Ibid.* The Attorney General's right to reproduction and copying of federal election records is not dependent upon any other showing. *Ibid.*

In its letters to Secretary Read, the DOJ listed alleged irregularities with Oregon's voting rolls and stated that its demand was to obtain the "VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"),

- 17 -

52 U.S.C. § 20501, *et seq.*" ER-95. Title III's plain language and relevant precedents compel the conclusion that the DOJ's demand provided the basis and purpose of the information it requested from Secretary Read sufficient to survive a motion to dismiss.

The district court eschewed this limited review process by wrongly relying on the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964). ER-19. *Powell* applied the Federal Rules of Civil Procedure to an IRS administrative summons. There, the Supreme Court made the unremarkable observation that because Section 7604(b) of the Internal Revenue Code (IRC) "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. at 58 n.18. However, the district court applied a much broader construction of *Powell* than warranted.

The court found that *Powell* involved interpretation of "a similar statute" to Title III of the CRA, and the decision's admonition that "the court may 'inquire into the underlying reasons for the examination [of records]'" therefore applied to the CRA. ER-19 (quoting *Powell*, 379 U.S. at 58). Although the quoted language from *Powell* is correct, ER-19, the court omitted any explanation that the quoted language referred to a

process expressly provided in the IRC that is missing from the CRA. The Supreme Court explained that judicial inquiry was appropriate where asked to enforce an administrative summons under the IRC to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was permitted because it was specifically authorized by section 7605(b) of the IRC, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). However, no similar language limits the Attorney General's authority to compel records under the CRA. *See* 52 U.S.C. 20701-20706. Nor does the CRA provide any process for officers of election to object to Title III proceedings being initiated against them. *See ibid*.

Moreover, even with language in the IRC limiting records to "necessary" investigations, the Supreme Court noted that strong deference is given to the Government to investigate, and "'does not depend on a case or controversy for power to get evidence but can

- 19 -

investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not.'" *Powell*, 379 U.S. at 57 (quoting *Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)) (emphasis added). *Powell* is completely consistent with *Lynd I* and in no way restricts records demands under the CRA to the statutory limitations that Congress included in the IRC.

> **B.** **The DOJ's assertion that it was investigating Oregon's possible non-compliance with the NVRA sufficiently stated a factual basis for its demand.**

The district court compounded its initial error of applying the Federal Rules of Civil Procedure to the DOJ's demand by grafting on Section 303's minimal basis-and-purpose requirement the mandate that the DOJ allege "a factual basis for investigating a violation of a federal statute." ER-21. But there is "no justification" for such a requirement. *Lynd II*, 301 F.2d at 822.

Nothing in CRA purports to authorize courts to second-guess the sufficiency or sincerity of the Attorney General's statement. Indeed, the statute provides no meaningful standards that would permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope

of the "records and papers" that she may demand, 52 U.S.C. 20701, and a requirement that she communicate "the basis and the purpose" for her request, 52 U.S.C. 20703—not any standard against which to measure her stated basis or purpose.

Instead, the Attorney General need only "identify in a general way the reasons for [her] demand" for federal election records. *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible* violations of a Federal [voting-related] statute." *Ibid.* (emphasis added); *see, e.g.*, *Bruce*, 298 F.2d at 861 ("The purpose of this demand is to examine the aforesaid records to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962) (verbatim), *aff'd sub. nom. Coleman v. Kennedy*, *supra*; *cf. Morton Salt*, 338 U.S. at 642-643 (concluding that an administrative body to which a statute delegates investigative and accusatory duties may take steps to inform itself as to whether there is probable violation of the law). Accordingly, the only "matters open for determination" when a recipient of the Attorney General's demand

challenges that demand are "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd I*, 306 F.2d at 226.

Another district court recently—and correctly—applied these principles in concluding that the DOJ asserted a proper basis for its similar demand for an electronic, unredacted copy of Michigan's SVRL. In *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal filed*, No. 26-1225 (6th Cir. February 25, 2026), the district court held that the DOJ's citation of "the State's obligations under the NVRA and HAVA," "several purported anomalies within Michigan's voter registration data," and the DOJ's receipt of a "complaint regarding Michigan's compliance with HAVA's requirements relating to the provision of unique voter identifiers" were "sufficient to comply with the CRA." *Id.* at *8. Citing *Lynd I*'s statement that courts lack the power "to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand," 306 F.2d at 226, the *Benson* court reasoned that "the CRA does not allow courts to evaluate the substance

of the DOJ's purported basis and purpose." *Benson*, 2026 WL 362789, at *8. The court rejected Michigan's contention that the DOJ's request was made in bad faith as going to the truth of the DOJ's allegations and not addressable on a motion to dismiss. *Ibid.*[4]

The *Benson* decision makes clear that the district court missed the mark on this issue. The court did not cite any case to support its position that the Attorney General was required to allege "a factual basis for investigating a violation of a federal statute" to explain why it believed that the NVRA was violated and why California's unredacted SVRL was necessary for its investigation in its Title III demand. ER-21. The DOJ's statement that its demand for an electronic, unredacted copy of Oregon's SVRL was to obtain the "VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*." (ER-95) sufficiently stated a basis of the demand. The district court erred in concluding otherwise.

Even if the district court's standard for a "basis" were correct, the

---

[4] The district court in *Benson* granted the defendants' motion to dismiss for a different reason, which the United States addresses below (pp. 33-38, *infra*).

- 23 -

DOJ met that standard. In its letters to Oregon, the DOJ identified numerous anomalies concerning Oregon's voter rolls. This includes excess registrations, failure to remove voters who have moved or died, and record-keeping that includes categories like "Other." *See* p. 10, *supra.* Because Oregon has instituted statewide mail-in balloting for federal elections, ORS 254.465, every single registered voter will be receiving a federal election ballot this November, ORS 254.470, despite evidence that Oregon has failed to conduct proper maintenance of its SVRL as required under the NVRA and HAVA.

### C. The DOJ's requests should be read in concert to establish a basis under the CRA.

Among the final reasons for denying that the United States had stated a proper basis in its requests, the District Court noted that the requests were included in multiple letters and "Plaintiff's patchwork and post hoc effort to stitch together a legally sufficient "statement of the basis" fails. This element of the decision cannot be upheld under a normal reading of the law.

Under 52 U.S.C. 20703, the Attorney General may issue a written demand for records or papers required to be retained under the Civil Rights Act. While the statute itself does not explicitly address whether

multiple demands can be read together as one, courts should consider the context of multiple related demands to determine their collective purpose and effect.

The fundamental purpose of a demand or notice requirement is to provide the recipient with effective and timely notice that enables them to understand the basis for the complaint and take corrective action. The key consideration is whether the notice contains sufficient information to permit the recipient to identify the alleged violations and bring itself into compliance. *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 916-917 (9th Cir. 2004). Notice is sufficient if it is reasonably specific and if it gives the accused party the opportunity to correct the problem. *Ibid.* Although *Waterkeepers* addresses notice requirements of the Clean Water Act under 33 U.S.C. 1251, it demonstrates that even where a "notice requirement is 'strictly construed,' plaintiffs are not required to list every specific aspect or detail of every alleged violation." *Id.* at 917 (citations omitted). In that case, this Court went even further and explained that a second notice letter was not required for additional violations. *Id.* at 920.

When multiple demand letters address the same underlying

records or issues and are sent as part of a coordinated effort to provide notice and seek compliance, they should be construed together as a single demand under this established principle. *See Whitney v. G. Harvey Kennington Revocable Tr.*, 62 F. App'x 794, 795 (9th Cir. 2003) (mem.) (explaining that parties can form a contract through "an exchange of letters" that collectively contain the necessary elements). The fact that the letters may have been sent at different times does not preclude their being read together, particularly when the recipient was aware of all communications and they were intended to accomplish the same purpose—compliance under federal law. The district court in Michigan found as such when denying the State's arguments on this exact issue. *Benson*, 2026 WL 362789, at *8, n.3

### D. The DOJ's stated purpose of ensuring NVRA and HAVA compliance was sufficient under the CRA.

The district court erred in concluding that the DOJ failed to state an adequate purpose of its demand for an electronic, unredacted copy of Oregon's SVRL because Title III's purpose "required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights." ER-24. The court's error was two-fold.

First, the district court's conclusion that Title III solely targets racial discrimination finds no support in the statute itself. Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (quoting *Engine Mfrs. Assn. v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 252 (2004)). "To determine plain meaning, [this Court] examine[s] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *United States v. Lillard*, 935 F.3d 827, 833 (9th Cir. 2019) (citation and internal quotation marks omitted). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *United States v. McDuffy*, 890 F.3d 796, 801 (9th Cir. 2018) (alteration in original; citation omitted).

Here, no language limiting Title III to individual voting-rights violations appears anywhere in the statutory text. *See* 52 U.S.C. 20701-

- 27 -

20706. In contrast, Congress *did* make clear elsewhere in the CRA that it intended a remedy to be limited to redressing racial discrimination. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101). That language is consistent with express limitations Congress made to remedies in other civil rights statutes. *See, e.g.*, 42 U.S.C. 2000e-2 (prohibiting employment practices "because of such individual's race, color, . . . or national origin" in Title VII of the CRA of 1964); 52 U.S.C. 10301-10306, 10309 (prohibiting discrimination "on account of race, color," or language minority status in the Voting Rights Act of 1965); 42 U.S.C. 3604-3606, 3617 (prohibiting discrimination in housing or rentals "because of "race, color, . . . or national origin" in the Fair Housing Act of 1968). This Court should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute," *Coleman*, 313 F.2d at 868, constitutes a valid purpose of a demand for federal election records under the statute. *See also Benson*, 2026 WL 362789, at *8 (concluding that "the DOJ may

- 28 -

use the CRA to investigate possible violations of the NVRA," which is "a federal election law that protects voting rights").

Non-compliance with the NVRA can also be a valid purpose of a CRA demand despite the fact that the NVRA's passage post-dated Title III's passage by several decades. As the *Benson* district court correctly observed, "[t]here is no rule of statutory interpretation that prevents a statute from interacting with, or being used in conjunction with, subsequently enacted statutes." 2026 WL 362789, at *8. Indeed, the opposite is true: "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Once the NVRA—a statute devoted to increasing voting by eligible citizens in federal elections and protecting the integrity of the electoral process, *see* 52 U.S.C. 20501(b)—was passed, its enforcement certainly became a permissible "purpose" under Title III of the DOJ's demand for a State's SVRL.

Even if the court allows the type of inquiry defendants seek—and it should not—the United States can demonstrate its factual basis. HAVA

requires that voter registration applicants provide a driver's license and SSN4 if they have one. *See* 52 U.S.C. 21083(a)(5)(A)(i). The United States needs to verify that states are collecting these numbers by looking at an unredacted voter list. The Attorney General is not claiming any new authority to revise or maintain Oregon's voter rolls. Rather, the Attorney General wants to verify that Oregon is complying with specific federal law requirements like the requirement for HAVA identifiers to be filled in on a voter registration application. *See* 52 U.S.C. 21083(a)(5)(A). The only way that the Attorney General can assess whether Oregon is actually collecting the driver's license and SSN4 information required by 52 U.S.C. 21083(a)(5)(A) on the voter registration application is to examine those election records. That information is not provided in the redacted or public voter list.

The lack of a comparable tool for records inspection by the Attorney General in the subsequently enacted NVRA and HAVA supplies additional support for the DOJ's position. Both statutes impose record-keeping requirements and may be enforced by the Attorney General. 52 U.S.C. 20501(a), 20507(a)(4); 52 U.S.C. 20183, 21111. Yet neither provides its own equivalent to 52 U.S.C. 20703.

### E. The DOJ is entitled to the unredacted SVRLs.

The district court further erred in concluding that, even if assessing NVRA compliance could legally be a sufficient "purpose," "Plaintiff fails to state a claim that Oregon violated Title III by failing to produce an *unredacted* copy of its voter registration." ER-28 (emphasis added). Just as with the basis for the demand (pp. 10-11, *supra*), the CRA does not leave "open for determination" the "scope of the order to produce insofar as it concerns the nature of the records or papers." *Lynd I*, 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress." *Ibid.*

The statutory text of Title III itself makes clear that the records that must be produced under the CRA are not limited to only those that are public. Section 304 of the CRA explicitly requires the nondisclosure of records produced to the Attorney General under the Act:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. 20704. Section 304's privacy protection only has meaning if the records covered by the CRA include non-public information. Yet the district court rewrites the CRA to exclude all non-public records and information. Congress rejected the position that they advance by its broad reference to "all records and papers." 52 U.S.C. 20701. In sharp contrast, where Congress intended to require a smaller class of records to be produced in a statute, it has said so. *See* 52 U.S.C. 20507(i) (providing in the NVRA that voter records to be produced to the public for assessment of list maintenance "shall include lists of the names and addresses" of voters sent confirmation notices and any responses). To put it succinctly: Section 301 means what it says in requiring production of "all records and papers" relating to registration to vote in a federal election, including Oregon's SVRL. 52 U.S.C. 20701. As *Lynd I* made clear, "[a]ll means all." 306 F.2d at 230.

In any event, the DOJ explained why it believed the unredacted SVRL to be "necessary" to carry out its enforcement obligations under the NVRA. *See, e.g., Commissioner v. Tellier*, 383 U.S. 687, 689 (1966) (explaining that "necessary" in a tax statute means "appropriate and helpful"); *Prometheus Radio Project v. FCC*, 373 F.3d 372, 394 (3d Cir.

- 32 -

2004) (interpreting "necessary" to mean "convenient, useful, or helpful, not essential or indispensable" (quotation marks omitted)). The identifiers required by HAVA for every applicant are necessary for the DOJ to make a verified finding as to the various voter roll registrations that may have problems. Absent these identifiers, the DOJ's ability to assess the State's compliance with its recordkeeping requirements under the NVRA is drastically reduced.

## 1.    The unredacted SVRL is a record under the CRA.

The CRA, 52 U.S.C. 20701, requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered election, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." Those same records or papers are subject to demand by the Attorney General. 52 U.S.C. 20703. However, one district court has held that the unredacted SVRL is not such a "record or paper" because it is self-generated by the State and therefore it does not "come into [the] possession" of election officials. *Benson*, 2026 WL 362789, at *9.

- 33 -

The district court based in *Benson* based its holding entirely on the words "come into his possession," which it contended "means to receive or acquire [something] from someone else." 2026 WL 362789, at \*9. Under that formulation, individual voters' applications to register fall within Title III, but the State's compilation of those applications in a consolidated SVRL does not. *Ibid.* Such a reading would effectively carve out vast numbers of federal election records, including SVRLs, which was plainly not the intention of Congress in passing such "sweeping" legislation. *Lynd I*, 306 F.2d at 226. Until *Benson*, *supra*, no federal court had adopted such a limitation—and *Benson* today stands alone. And even the *Benson* court acknowledged that "the distinction between voter registration applications and voter registration lists is overly pedantic." 2026 WL 362789, at \*10.

Federal courts have rejected similar attempts to limit the scope of voting records under other statutes. In *Judicial Watch v. Lamone*, the defendants argued that a "voter list is not a 'record' under Section 8(i)" of the NVRA, and even if it was, Maryland law allowed election officials to "limit the production of voting-related records more strictly than the NVRA." 399 F. Supp. 3d 425, 434 (D. Md. 2019). The court disagreed. It

- 34 -

explained that Maryland misunderstood the NVRA's requirements and the plaintiff was entitled to the registered voter list because "a voter list is simply a partial compilation of voter registrations" encompassed by the Act. *Id.* at 442. The court also was persuaded that the "focus on the information sought" was significant "rather than the particular language used to characterize that information." *Id.* at 440 (citing *Project Vote v. Kemp*, 208 F.Supp.3d 1320, 1329 (N.D. Ga. 2016) (court rejected defendant's argument that plaintiff could not obtain voter list)); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 337 (4th Cir. 2012) (finding "all records" under Section 8(i)(1) included voter registration records).

Moreover, there is no reason to attribute such a "pedantic distinction" to Congress. *Benson*, 2026 WL 362789, at *10. The plain terms of Section 20701 dictate otherwise. An officer "come[s] into … possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). Secretary Weber acquired the

relevant records in the course of carrying out her duties as Secretary of State.

The word "come" cannot create a carve-out for self-generated documents. Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the officer gains possession of the records or documents in the first instance. *See Webster's Third New International Dictionary* 453 (1966 ed. unabridg.) ("to enter upon or into possession of: acquire esp. as an inheritance"). Numerous statutes use similar phrases to regulate acquiring information or property *through improper means* or trigger duties to act based on acquiring information or property *at a particular time*.[5] Following this focus on the *when* and *how* an individual gains possession of a record or paper, 52 U.S.C. 20701 places a duty of retention

---

[5] *See, e.g.*, 44 U.S.C. 3572(f) ("comes into possession of such information by reason of his or her being an officer"); 13 U.S.C. 214 (similar); 30 U.S.C. 1732(b) ("as soon as practicable after it comes into the possession of the Secretary"; "30 days after such information comes into the possession of the Secretary"); 10 U.S.C. 130c(d)(2)(C) (prescribing disclosure timing rules for sensitive information that "came into possession or under the control of the United States more than 10 years before the date on which the request is received").

and preservation only on those officers who acquire a record or paper in the course of administering one of the elections mentioned in that provision—and then only "for a period of twenty-two months from the date" of that same election.

The distinction between records "com[ing] into [one's] possession" and being "in [one's] possession," then, is a temporal one—not a distinction between obtaining records from an outside source and through self-generation—as shown by the very example that the *Benson* court cites. *See Benson*, 2026 WL 362789, at *9. Section 1454(a) of Title 8 imposes dual obligations: If a certificate of naturalization is declaration of intention is lost, "the applicant or any other person who shall have" the certificate or declaration at that time "is required to surrender it to the Attorney General," but so too "the applicant or any other person who … may come into possession of it" at a later time must likewise surrender the document. Reading that distinction as one between documents that a person obtains from an outside source and documents that a person generates for himself, in contrast, would make little sense because no applicant or private person can create a certificate of naturalization nor

- 37 -

can any "other person" create a declaration of intention for a separate declarant. *See* 8 U.S.C. 1445(f), 1449.

### 2. Privacy concerns do not outweigh the DOJ's interest in enforcing federal law.

The Court similarly errs in citing privacy concerns, including state privacy law, to preclude Oregon from providing an unredacted SVRL to the DOJ. First, the ability of states to redact sensitive voter information applies only to public inspection of those records. Second, the production in this case is consistent with state law and if not, state law must yield to federal law.

The NVRA has a *public*-inspection requirement. It requires a State, with minor exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. 20507(i)(1). Because of the privacy concerns associated with public inspection, courts have read into the public-inspection provision an option for States to redact "uniquely or highly sensitive personal information," *Public Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases)—a limitation

that may apply even when the Attorney General seeks to inspect those same records. And HAVA has no explicit inspection provision, by the Attorney General or otherwise. However, it strains plausibility that Congress intended for the Attorney General to lack the ability to inspect records so pertinent to her enforcement authority under the NVRA and the HAVA. Because it is well-settled that "Congress legislates against the backdrop of existing law," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019), a better inference is that Congress saw no need to provide an inspection provision for the Attorney General in these later-enacted statutes, because the CRA provided a pre-existing investigative tool.

Second, this production is consistent with ORS 247.948(2). As the district court noted, "[u]nder ORS 247.948(2), the birth day, month, social security number, and driver license numbers in voter registration files 'may not be disclosed by the Secretary of State or a county clerk' except as "otherwise required by law." ER-27. But as is clearly denoted by the letters and requests in this case, these requests are required by federal law. The DOJ cannot verify whether Oregon is accurately maintaining its lists unless it can distinguish voters on those lists who may have the

- 39 -

same name, or address, or other aspect of the limited information provided on the public lists.

Oregon Revised Statute 247.948(2), which prohibits the Secretary of State or a county clerk from disclosing certain information contained in elector registration files, is no barrier to the relief that the United States seeks. First, Section 247.948(2) does not prohibit disclosures that are, like here, "required by law." *See* Or. Rev. Stat. 247.945. The Court should therefore reject any argument to the contrary. But even if section 247.948(2) purports to bar Oregon from disclosing the information that the United States seeks, preemption would apply and federal law would control.

A "state law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000). Conflict preemption applies both "where it is impossible for a private party to comply with both state and federal law" and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ibid.* (citation omitted). Whether a state law poses a sufficient obstacle to

implicate preemption is determined "by examining the federal statute as a whole and identifying its purpose and intended effects." *Ibid.*; *see also Knox v. Brnovich*, 907 F.3d 1167, 1173-74 (9th Cir. 2018) ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009))). A state law that "undermines the intended purpose and 'natural effect'" of federal law is preempted. *Crosby*, 530 U.S. at 373.

Here, if Section 247.948(2) prohibits Oregon from disclosing the requested information to the United States, then it is impossible for Oregon to comply with both state and federal law, and state law is preempted. Alternatively, even if Section 247.948(2) only provides an obstacle to the accomplishment and execution of the federal election law under the circumstances of this case, it is still preempted. Because "[e]very government ought to contain in itself the means of its own preservation," the Constitution's Elections Clause vests in Congress "paramount" authority over federal elections, state laws to the contrary notwithstanding. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013) (quoting The Federalist No. 59, at 362-63 (C. Rossiter ed. 1961) (A. Hamilton), then *Ex parte Siebold*, 100 U.S. 371, 392 (1880)).

- 41 -

- 42 -

Congress has exercised that authority in no less than the three federal statutes relevant to this suit, each of which regulates states' maintenance of election and voting records. So, to the extent that Section 247.948(2) undermines the collective purpose and natural effect of these federal laws to preserve the integrity of elections, it is preempted.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Read to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above. Finally, because the district court's application of an erroneous framework has deprived the DOJ of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court [should] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962) *(Lynd I)*; *see* Fed. R. App. P. 2, 41(b).

- 43 -

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

Date: March 18, 2026

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐  complies with the word limit of Cir. R. 32-1.

☐  is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐  is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐  is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐  complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
　　☐  it is a joint brief submitted by separately represented parties.
　　☐  a party or parties are filing a single brief in response to multiple briefs.
　　☐  a party or parties are filing a single brief in response to a longer joint brief.

☐  complies with the length limit designated by court order dated　　　　　　　　　　.

☐  is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**　　　　　　　　　　　　　　　　　　　　**Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Rev. 12/01/22*