No. 26-1231

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

THE STATE OF OREGON, *et al.*,

Defendants-Appellees

OUR OREGON; DAN DILULIO; EMMA CRADDOCK;
STEPHEN GOMEZ,

Defendants-Intervenors-Appellees

ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF OREGON

**APPELLANT'S EXCERPTS OF RECORD
(VOLUME 1 OF 1)**

HARMEET K. DHILLON
 Assistant Attorney General

JESUS A. OSETE
 Principal Deputy Assistant Attorney
 General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
 Attorneys
 Department of Justice
 Civil Rights Division
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C. 20044-4403
 (202) 532-3803

# INDEX

**Page**

Judgment, filed February 5, 2026
(Doc. 74) ..........................................................................................4

Opinion and Order Granting Defendants' and
Intervenors' Motions to Dismiss, filed February 5, 2026
(Doc. 73) .......................................................................................5-30

Defendants' Reply in Support of Motion to Dismiss,
filed December 22, 2025
(Doc. 61) ......................................................................................31-49

Intervenors' Reply in Support of Motion to Dismiss,
filed December 22, 2025
(Doc. 60) .....................................................................................50-69

Government's Response in Opposition to Motion to Dismiss,
filed December 8, 2025
(Doc. 57) ......................................................................................70-93

Government's Letter to Defendant (Read) Requesting
Statewide Voter Registration List, dated August 14, 2025,
filed November 17, 2025
(Doc. 33-2) .....................................................................................94-97

Defendant's (Read's) Letter in Response to Government's Request for
Statewide Voter Registration List, dated August 21, 2025,
filed November 17, 2025
(Doc. 33-3) ..................................................................................98-102

Government's Letter to Defendant (Read) Requesting
Statewide Voter Registration List, dated July 16, 2025,
filed November 17, 2025
(Doc. 33-1) ................................................................................103-106

Defendants' Motion to Dismiss, filed November 17, 2025
(Doc. 32) ................................................................................ 107-136

Intervenors' Motion to Dismiss and Memorandum in Support,
filed November 17, 2025
(Doc. 31) ................................................................................ 137-167

Government's Complaint, filed September 16, 2025
(Doc. 1) ................................................................................. 168-191

Government's Notice of Appeal, filed February 25, 2026
(Doc. 76) ............................................................................... 192-193

District Court Docket Sheet, No. 6:25cv1666
(as of March 17, 2026) ......................................................... 194-209

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:25-cv-01666-MTK |
| Plaintiffs, | **JUDGMENT** |
| v. | |
| STATE OF OREGON; and TOBIAS READ, *in his official capacity as the Oregon Secretary of State*, | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

Based on the record, IT IS ORDERED AND ADJUDGED this action is dismissed without leave to amend. Pending motions, if any, are denied as moot.

DATED this 5th day of February 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

Page 1 — JUDGMENT

ER-4

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:25-cv-01666-MTK |
| Plaintiff, | |
| | **OPINION AND ORDER** |
| v. | |
| STATE OF OREGON; and TOBIAS READ, *in his official capacity as the Oregon Secretary of State*, | |
| Defendants. | |

**KASUBHAI,** United States District Judge:

Plaintiff United States of America brings claims against Defendants State of Oregon and Oregon Secretary of State Tobias Read for alleged violations of the National Voter Registration Act, the Help America Vote Act, and Title III of the Civil Rights Act of 1960. On December 5, 2025, the Court granted Our Oregon, Daniel DiIulio, Stephen Gomez, and Emma Craddock's ("Intervenors") Motion to Intervene as Defendants. ECF No. 52. Before the Court are Defendants' Motion to Dismiss (ECF No. 32) and Intervenors' Motion to Dismiss (ECF No. 31). For the reasons discussed below, Defendants' and Intervenors' motions are granted.

**BACKGROUND**

Plaintiff filed this action pursuant to the National Voter Registration Act, the Help America Vote Act, and Title III of the Civil Rights Act of 1960, asking the Court to order Defendants to provide an unredacted electronic copy of the State of Oregon's complete voter

Page 1 — OPINION AND ORDER

ER-5

registration list. Defendants contend the three federal statutes Plaintiff relies upon simply fail

provide a legal basis for the requested relief. The Court agrees.

## I.    Legal Background

Because this action implicates principles of federalism and separation of powers in

federal election oversight, the Court begins by describing the respective roles of the states and

the federal government in election regulation and administration. The relevant constitutional and

statutory provisions include: (A) The Elections Clause and (B) three federal statutes that provide

specific narrows roles for the federal government involvement in election regulation—the

National Voter Registration Act, the Help America Vote Act, and Title III of the Civil Rights Act

of 1960.

### A.    States' Roles in Elections

The Constitution explicitly empowers, in the first instance, the states to regulate and

administer elections. The Elections Clause provides: "The Times, Places and Manner of holding

Elections for Senators and Representatives, shall be prescribed in each State by the Legislature

thereof; but the Congress may at any time by Law make or alter such Regulations . . . ." U.S.

Const. art. I, § 4, cl. 1. "[T]imes, places and manner . . . [are] comprehensive words [that]

embrace authority to provide a complete code for congressional elections, not only as to times

and places, but in relation to notices, registration, supervision of voting, protection of voters,

prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers,

and making and publication of elections returns." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). The

United States Constitution through the Elections Clause entrusts the broad, regulatory authority

over elections to the states.

In addition to the responsibility of enacting regulations and procedures for federal

elections, the Elections Clause tasks states with administering elections. *Gonzalez v. Arizona*,

Page 2 — OPINION AND ORDER

677 F.3d 383, 391 (9th Cir. 2012) ("[A] state's role … under the Elections Clause is to administer the elections through its own procedures . . . ."); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 796 (7th Cir. 1995) ("Article I section 4 . . . places the burden of administering federal elections on the states."). The Framers of the Constitution chose to entrust the states with administering elections because local governments are best acquainted with the situations of the people they govern. *United States v. Gradwell*, 243 U.S. 476, 484 (1917). "All other things being equal, it is generally better for states to administer elections. . . . [L]ocal administration . . . allows for great individual input and accountability." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 715-16 (4th Cir. 2016).

While the Election Clause recognizes the states' first right to manage and administer elections, Congress may preempt state laws governing elections. *See* U.S. Const. art. I, § 4, cl. 1 ("Congress may at any time by Law make or alter such Regulations . . . ."). Congress exerts its preemptory authority through "positive and clear statutes." *Gradwell*, 243 U.S. at 485.

## B.     Statutory Provisions

Plaintiff invokes the supposed authority under the National Voter Registration Act, the Help America Vote Act, and Title III of the Civil Rights Act of 1960 to compel Defendants to disclose to it Oregon's unredacted voter registration list. These three statutes, however, create specific and narrow roles for the federal government in the states' regulation of elections and cannot give Plaintiff what it seeks.

### 1.     National Voter Registration Act ("NVRA")

In 1993, Congress enacted the NVRA and created a limited role for the federal government relating to state voter registration systems. 52 U.S.C. § 20501 *et seq*. Through the NVRA, Congress sought to balance two "competing interests:" "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate

Page 3 — OPINION AND ORDER

ER-7

voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). Congress was wary of "the devastating impact purging efforts previously had on the electorate" and the misuse of such mechanisms that could deprive citizens of their fundamental right to cast a ballot. *Am. Civil Rights Union v. Phila. City Comm'n*, 872 F.3d 175, 178 (3rd Cir. 2017).

The NVRA contains four stated purposes: (1) "to increase the number of eligible citizens who register to vote" in federal elections, (2) "to enhance[] the participation of eligible citizens as voters," (3) "to protect the integrity of the electoral process," and (4) "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). The main provisions of the NVRA direct states to ensure that any eligible applicants are registered to vote, ensure registrants are not removed except under specified circumstances, and conduct a general program to remove ineligible voters from official voter registration lists. 52 U.S.C. § 20507(a). States must make "a reasonable effort" to remove ineligible voters from the official voter list upon request, ineligibility due to a criminal conviction or mental incapacity, death, or change of address. 52 U.S.C. § 20507(a)(3)-(4). The NVRA also requires states to maintain "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," for at least two years, and to make such records available for public inspection. 52 U.S.C. § 20507(i)(1).

The NVRA provides for civil enforcement actions by the Attorney General in the appropriate district court "for such declaratory or injunctive relief as is necessary" to carry out the obligations provided by statute. 52 U.S.C. § 20510(a). The federal government may seek an injunction commanding compliance with the NVRA when a state does not comply with its provisions. *ACORN*, 56 F.3d at 798.

Page 4 — OPINION AND ORDER

2.       Help America Vote Act ("HAVA")

Congress enacted HAVA "[i]n the wake of the 2000 presidential election." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012). Congress intended HAVA "to alleviate a 'significant problem voters experience [, which] is to arrive at the polling place believing that they are eligible to vote, and then to be turned away because the election workers cannot find their names on the list of qualified voters.'" *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 569 (6th Cir. 2004) (quoting H.R. Rep. No. 107–329 at 38 (2001)).

Through HAVA, Congress established standards for states' voting systems and voter registration lists. 52 U.S.C. § 21081, 21083. HAVA requires states to implement a centralized computerized statewide voter registration list, and to maintain that list by removing ineligible voters. 52 U.S.C. § 21083(a)(1)(A), (a)(2)(A). The federal government provides states with the necessary funding to ensure compliance with these standards. 52 U.S.C. § 20901. However, Congress deferred to the states in the implementation of HAVA, with "[t]he specific choices on the methods of complying with the requirements . . . left to the discretion of the State." 52 U.S.C. § 21085.

Albeit limited in scope, the Attorney General may bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. § 21111.

3.       Title III of the Civil Rights Act of 1960 ("Title III")

Title III contains provisions requiring elections officials to retain certain records and allowing the federal government to demand such records. The Civil Rights Act of 1960 was a key follow up to the Civil Rights Act of 1957. Congress first enacted voting provisions in the Civil Rights Act of 1957 to aid the federal government in carrying out its responsibilities under the Fourteenth and Fifteenth Amendments. *United States v. Mayton*, 335 F.2d 153, 159 (5th Cir.

Page 5 — OPINION AND ORDER

1964). However, Congress "found it necessary to legislate again in 1960 with respect to this problem of assuring full rights of suffrage to all Americans." *Id.* Title III was part of that legislation. As best described in the Congressional Record:

> Proof of denial or threatened denial of the right to vote because of racial discrimination requires a showing not only that qualified persons are not permitted to register or vote, but that the denial is based on racial discrimination. This calls for evidence that individuals of a particular race had in fact either satisfactorily demonstrated their qualifications under State law or that they were able to demonstrate their qualifications and had offered to do so and were, nevertheless, not allowed to register or vote, while individuals of another race no better qualified, had been permitted to register or vote.
>
> To assemble the necessary proof of discrimination is impracticable, if not impossible, without access to detailed information concerning applications, registrations, or other acts, tests, and procedures requisite to voting. From such information, it becomes possible to determine who has been permitted to register or vote and who has not, and to make a breakdown on the basis of race. The only source of such comparative information—necessary for proper evaluation of complaints and in the preparation of cases—is the records of registrations or other action required for exercise of the franchise.
>
> The Department of Justice has no existing power in civil proceedings to require the production of such records during any investigation it conducts as to complaints that qualified persons have been denied the right to vote in violation of Federal law. The need for this power is evident from the refusal of some State and local authorities to permit inspection.
>
> Title III is designed to fill this need.

Castelli Decl. Ex. 9 at 4, ECF No. 33-9.

Title III requires election officers to retain and preserve all records related to "any application, registration, payment of poll tax, or other act requisite to voting" for a period of twenty-two months after any federal election. 52 U.S.C. § 20701. The Attorney General must make a demand in writing, containing a statement of "the basis and the purpose therefor" to inspect state voting records. 52 U.S.C. § 20703. District courts in which the demand is made have jurisdiction "by appropriate process" to compel record production required under the statute. 52 U.S.C. § 20705. Title III prohibits the Attorney General and employees of the Department of Justice from disclosing records produced under its provisions "except to Congress

and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury." 52 U.S.C. § 20704.

## II.    Factual Background

This case arises from demands by way of correspondence between Plaintiff and Defendants in which Plaintiff expected Defendants to provide it with an unredacted electronic copy of the State of Oregon's voter registration list. Defendants refused.

### 1.    Plaintiff's July 16 Letter

On July 16, 2025, Plaintiff sent a letter to Defendant Oregon Secretary of State Tobias Read (hereinafter "Defendant Read") requesting information regarding Oregon's compliance with the statewide voter registration list maintenance provisions of the NVRA. Castelli Decl. Ex. 1 ("July 16 Letter"), ECF No. 33-1. In that letter, Plaintiff demanded an electronic copy of Oregon's computerized, statewide voter registration list, including "all fields contained within the list." *Id.* at 1. Plaintiff asserted this request was pursuant to Section 20507(i) of the NVRA. *Id.* The letter also requested clarification of Oregon's responses to the 2024 Election Assistance Commission's Election Administration and Voting Survey, raising concerns about Oregon's "unusually high" voter registration rate and unusually low voter removal rate. *Id.* at 2. Plaintiff asked Defendant Read to explain what actions Oregon was taking to remove ineligible voters from official voter lists. *Id.* Plaintiff provided a fourteen-day deadline for Oregon to produce the requested information. *Id.* at 3.

### 2.    Plaintiff's August 14 Letter

Plaintiff sent an updated letter on August 14, 2025, demanding that Defendants provide an electronic copy of the state's voter registration list containing "*all fields*, which . . . must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number . . . ." Castelli

Page 7 — OPINION AND ORDER

Decl. Ex. 2 at 1 ("August 14 Letter"), ECF No. 33-2 (emphasis in original). Plaintiff relied on three authorities to support this demand. First, Plaintiff asserted the request for information was "pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions." *Id.* Second, Plaintiff cited its enforcement authority under HAVA. *Id.* at 1-2. Finally, Plaintiff cited Title III for the Attorney General's authority to request the unredacted records. *Id.* at 2. Plaintiff's stated purpose for the Title III demand was "to assess [Oregon's] compliance with the statewide VRL maintenance provisions of the National Voter Registration Act." *Id.* at 1.

> 3.     Defendants' Letter

Defendant Read replied on August 21, 2025. Ex. 3 ("Read Letter"), ECF No. 33-3. He declined to produce the statewide voter registration list with all fields, declaring federal authorities do not have the authority to compel Oregon to disclose an unredacted voter registration list. Castelli Decl. Defendant Read invoked Or. Rev. Stat. § ("ORS") 247.948, which prohibits the disclosure of "a voter's birth month, birth day, Social Security number, and driver's license number." *Id.* at 2. He agreed to produce the publicly available portions of the voter registration list if Plaintiff complied with applicable provisions of the Privacy Act of 1974 and followed the process outlined in Or. Admin. Reg. § 165-002-0020 to request that data. *Id.* Plaintiff rejected Defendant Read's offer and sued.

## STANDARD

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe

ER-12

them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *L.A. Lakers,* 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants and Intervenors move to dismiss Plaintiff's action because they contend that (1) none of the three statutes on which Plaintiff leans in its Complaint require Defendants to disclose sensitive, personal voter information; and (2) Plaintiff has not complied with the Privacy Act of 1974 or the E-Government Act. Because the Court agrees on the first argument for the reasons addressed below, it does not reach the second.

Before turning to the merits, it is important to clarify what is and is not at issue here. What is not at issue in this case is whether Defendants must produce voter registration list at all; Defendants acknowledge that Oregon law allows for some limited production of this

Page 9 — OPINION AND ORDER

ER-13

information. *See* Read Letter 2. Defendants' response to Plaintiff's demand made clear that Defendants stand ready to produce voter registration data as allowed by state law, provided Plaintiff complies with applicable privacy laws. *Id*. However, Defendants have also made clear that they will not produce voters' birth dates, birth months, driver's license numbers, and the last four digits of voters' Social Security numbers (for ease of reference throughout this Opinion, the Court refers to this information as "Sensitive Voter Data"). The question before the Court is whether any of the federal laws Plaintiff relies on entitle it to Defendants' *unredacted* voter registration lists (i.e., the Sensitive Voter Data). With that framework in mind, the Court explains why Plaintiff has failed to state a claim that Defendants refused to provide Sensitive Voter Data in violation of the NVRA, HAVA, or Title III.

I.     NVRA

Count I of Plaintiff's Complaint alleges that Defendants' failure to produce an unredacted voter registration list violated the NVRA. Defendants and Intervenors argue that this claim should be dismissed because the NVRA does not mandate the disclosure of the Sensitive Voter Data.

Importantly, this is not an action to enforce substantive NVRA provisions. Plaintiff has not alleged, for example, that Defendants have failed to make a "reasonable effort" to remove ineligible voters as the NVRA requires. Instead, Plaintiff seeks the voter registration list to pursue an investigation into possible substantive NVRA violations. The question before the Court is whether there is any provision in the NVRA that requires Defendants to disclose the Sensitive Voter Data.

The NVRA's public disclosure provision mandates states to maintain "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" for at least two years and make such

Page 10 — OPINION AND ORDER

records available for public inspection. 52 U.S.C. § 20507(i)(1). Per the statute, records "shall include lists of the names and addresses of all persons to whom notices . . . are sent, and information concerning whether or not each such person has responded to the notice." 52 U.S.C. § 20507(i)(2). The NVRA contains no other provisions for the disclosure of voter data.

Numerous courts have addressed whether the NVRA requires the disclosure of personal or sensitive information contained in records subject to the NVRA's public disclosure provision. For example, in *Pub. Int. Legal Found., Inc. v. Bellows*, the First Circuit held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" contained in voter registration lists. 92 F.4th 36, 56 (1st Cir. 2024). Similarly, the Fourth Circuit has explained that redaction is appropriate under the NVRA as "necessary to protect sensitive information." *Pub. Int. Legal Found., Inc. v. N. C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021); *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) ("the NVRA Public Disclosure Provision does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates").

While Plaintiff attempts to distinguish the above case law on the basis that the parties requesting the data in those cases were private organizations rather than the United States Government, Plaintiff does not explain why that distinction warrants a different result in this case. There is no separate disclosure provision applicable to the federal government, and the federal government does not enjoy any intrinsic authority to compel disclosure of these records. Those cases, and this one, all concern states' obligations under the NVRA's public disclosure provision. In fact, at least one court has already applied the reasoning in that case law to a similar

request by Plaintiff in California. *United States v. Weber*, 2026 WL 118807, at *12 (C.D. Cal. Jan. 15, 2026) ("There is longstanding precedent that states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA and that this information is not relevant to the removal of ineligible voters from voting rolls"). And, as explained in more detail later in this Opinion, Oregon law clearly prohibits Defendants from disclosing the Sensitive Voter Data. *See infra* III.B.2.

Plaintiff fails to state a claim that Defendants' refusal to produce an unredacted voter registration list violated the NVRA's public disclosure provision. That claim is dismissed.

## II.     HAVA

Count II of Plaintiff's Complaint alleges that Oregon's failure to produce an unredacted voter registration list violated HAVA. Defendants and Intervenors contend that this claim should be dismissed because HAVA does not contain any disclosure requirements.

As with its NVRA claim, Plaintiff's HAVA claim is not an action to enforce substantive requirements under HAVA. Instead, Plaintiff claims that Defendants' failure to disclose information Plaintiff believes necessary to investigate HAVA compliance is *itself* a HAVA violation. Plaintiff cites no provision of HAVA that Defendants violated by failing to produce an unredacted voter registration list, nor could it because HAVA contains no record disclosure provision. HAVA grants the Attorney General the ability to bring a civil action for enforcement, not disclosure. Congress knows how to include disclosure provisions, as it did so in both the NVRA and Title III. It did not do so here, and the Court will not play the role of Congress by adding one where it does not exist. *See Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) ("we are reluctant to assume the existence of the power to issue third-party subpoenas directed at unidentified targets where Congress has not provided for them specifically, nor provided procedural safeguards").

Because Plaintiff fails to identify any provision of HAVA that Defendants violated by failing to produce an unredacted voter registration list, Plaintiff has failed to state a claim under HAVA and that claim is also dismissed.

## III.     Title III of the Civil Rights Act of 1960

Count III of Plaintiff's Complaint alleges a violation of Title III of the Civil Rights Act of 1960. The relevant portion of the statute provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703. Defendants move to dismiss this claim, arguing that Plaintiff did not make a valid demand under Title III and that the statute does not entitle Plaintiff to the records it seeks. The Court agrees that Plaintiff fails to state a claim for relief under Title III because (A) Plaintiff's Title III demand fails to adequately state a basis and purpose; and (B) Title III does not entitle Plaintiff to the Sensitive Voter Data.

### A.     Inadequate Basis and Purpose

Defendants and Intervenors argue that Plaintiff's Title III claim should be dismissed because Plaintiff's demand for the unredacted voter registration list failed to contain a statement of the basis for the demand, and because the stated purpose fails to relate to Title III's purpose of investigating the infringement or denial of voting rights. Plaintiff seeks to convince the Court that demanding voting records under Title III is a "special statutory proceeding" which limits the Court's role in evaluating the basis and purpose of the demand. Pl.'s Opp. 7, ECF No. 57 (citing *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). Before turning to the question of whether Plaintiff's demand contained an adequate statement of basis and purpose, the Court addresses the

Page 13 — OPINION AND ORDER

ER-17

threshold question of the scope of the court's judicial review of the adequacy of Plaintiff's demand.

### 1.    Judicial Review of a Title III Demand

Plaintiff argues that a Title III written demand requires only a superficial statement that its demand for records is made for the purpose of investigating a violation of a federal statute, and that the Court is precluded from evaluating the legal sufficiency of the statement of basis and purpose. In support of this argument, Plaintiff relies on several Fifth Circuit cases from the early 1960s: *Lynd*, 306 F.2d 222, *Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962), and *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). In *Lynd*, the Fifth Circuit considered its role in evaluating a Title III demand by the Attorney General for voter records he believed to be necessary to investigate the infringement or denial of constitutional voting rights. The court explained that Title III creates a "special statutory proceeding . . . [that] does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Lynd*, 306 F.2d at 225-26. Because the procedure is a creature of statute, the Fifth Circuit reasoned, "[t]here is no place for any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226.

Here, however, the Court concludes that its role in evaluating Plaintiff's statement of basis and purpose is not so limited. Plaintiff has cited no binding authority for its proposition, nor even any cases which apply *Lynd* and the other Fifth Circuit decisions within the last sixty years. Instead, the starting point is the relevant language of Title III: "The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel

Page 14 — OPINION AND ORDER

the production of such record or paper." 52 U.S.C. § 20705. The statute does not define what that "appropriate process" is.

As Defendants and Intervenors point out, the Supreme Court interpreted a similar statute just two years after *Lynd*, in *United States v. Powell*, 379 U.S. 48 (1964). Like Title III, the statute at issue in *Powell* confers jurisdiction on district courts "by appropriate process to compel" compliance with federal document demands. *See* 26 U.S.C. § 7604(a). Interpreting that statute, the Supreme Court explained, "Because [§] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply" and the court may "inquire into the underlying reasons for the examination [of records]." *Powell*, 379 U.S. at 58 & n. 18.

The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*.[1] Accordingly, the Court applies the Federal Rules of Civil Procedure as in any other case. There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place. Accordingly, the Court moves on to address Defendants' and Intervenors' arguments that Plaintiff failed to state a claim under Title III because Plaintiff's demand failed to state an adequate basis and purpose.

---

[1] Even if *Lynd* applied here, the Court doubts its applicability here where Plaintiff made an affirmative choice to file a complaint and proceed through ordinary litigation. By contrast, *Lynd* appears to contemplate an application directly to the court for the records. 306 F.2d at 225 ("*the filing of the application* by the Attorney General is not the commencement of an ordinary, traditional civil action with all of its trappings") (emphasis added).

Page 15 — OPINION AND ORDER

2.     Plaintiff's "Basis"

As previously noted, a Title III demand must be accompanied by "a statement of the basis and the purpose" for the demand. 52 U.S.C. § 20703. Plaintiff's Title III demand here occurred in its August 14 Letter. Defendants argue that, while the August 14 Letter contained a statement of purported purpose for the demand, it did not contain any separate statement of the basis for it. Plaintiff, in turn, contends (1) that "basis" refers to a legal basis rather than a factual one, and its citation to the NVRA and HAVA was sufficient; and (2) that even if a factual basis were required under Title III, the basis for the demand can be found in its prior July 16 Letter.

Plaintiff first argues that "basis" refers to the *legal* basis for the investigation (i.e. the federal statute giving rise to the investigation) rather than a *factual* basis for pursuing that investigation. The Court is not persuaded. Other than *Lynd*[2], Plaintiff identifies no authority supporting its argument that "basis" means merely identifying any federal statute, regardless of its relation to civil rights violations, that Plaintiff believes may have been violated. Such a reading would give Plaintiff virtually limitless access to records required to be maintained under Title III. Even the demand in *Lynd* included a factual basis separate from its stated purpose: "This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." 306 F.2d at 229 n. 6.

Reading "basis" in the way Plaintiff suggests collapses its meaning with that of "purpose." Title III explicitly requires a statement of "the basis *and* the purpose." 52 U.S.C. §

---

[2] To the extent that Plaintiff's argument depends on the Fifth Circuit's general conclusion in *Lynd* regarding the limited scope of judicial review (and it is unclear because this argument was only clearly articulated for the first time at oral argument), the Court has already explained why the Supreme Court's decision in *Powell* requires the Court to exercise full judicial review and evaluate the reasons for the demand with more scrutiny than *Lynd* suggests.

20703 (emphasis added). When "'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'" *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 58 (1930)). The problem with Plaintiff's interpretation is patently evident from the statement in its own demand, which Plaintiff contends comprises both the purpose and the basis: "The purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." August 14 Letter 2. If the purpose is to investigate violations of a statute, the basis must be something else; the statute underlying the investigation is nothing more than a component of the purpose. Plaintiff's interpretation fails to give full meaning to both "basis" and "purpose." The Court understands "basis" to mean a factual basis for investigating a violation of a federal statute.

Plaintiff's August 14 Letter contains no statement of a factual basis for believing Oregon violated the NVRA or HAVA. Plaintiff urges the Court to look instead to its July 16 Letter for that factual basis. But the July 16 Letter contains no Title III demand, and the August 14 Letter's Title III demand does not identify the information in the July 16 Letter as its factual basis. Plaintiff's patchwork and post hoc effort to stitch together a legally sufficient "statement of the basis" fails.

### 3.    Plaintiff's "Purpose"

Plaintiff's August 14 Letter did contain an explicit statement of the purpose for its Title III demand: "to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." August 14 Letter 2. Defendants and Intervenors argue that Plaintiff's stated purpose is insufficient because it is unrelated to the purpose of Title III, which is to protect against the infringement or denial of voting rights. Plaintiff argues that Title III's text does not constrain the purposes for which Plaintiff may use its investigatory power to demand voting

Page 17 — OPINION AND ORDER

records under the statute, and that it may demand such records for the purpose of investigating the violation of any federal statute.

Whether "purpose" can be read as broadly as Plaintiff suggests is a question of statutory interpretation. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Words in a statute are interpreted "not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.'" *Abramski v. United States*, 573 U.S. 169, 179 (2014) (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)).

Congress specifically required that demands for records under Title III "shall" be accompanied by a statement of the purpose for that demand. 52 U.S.C. § 20703. If *any* purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function. The Court cannot read "purpose" so broadly that it would "sap the interpreted provision of all practical significance." *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025). This concern is especially true here, where Plaintiff's reading would grant it unfettered authority to demand voting records for *any* purpose. Ironically, while also arguing that Defendants are attempting to "engraft[] a requirement of racial discrimination that does not exist in the statute," Pl.'s Opp. 8, Plaintiff's argument engrafts its own requirement that does not appear in the statute. Plaintiff contends that the purpose must relate to an investigation into a violation of a federal statute, but that limitation on "purpose" does not appear in the statute, either. Following Plaintiff's reading of the statute to its logical conclusion, Title III would allow Plaintiff access to those records for *any* purpose it put into writing in its demand. Here, the Court cannot conclude

Page 18 — OPINION AND ORDER

that Congress intended to grant Plaintiff such expansive and unfettered authority to invade citizens' right to keep their sensitive information private. *See West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) ("Where the statute at issue is one that confers authority upon an administrative agency, that inquiry must be shaped, at least in some measure, by the nature of the question presented—whether Congress in fact meant to confer the power the agency has asserted") (internal quotations and citation omitted). "Purpose" must have some constraints, or its requirement would be meaningless.

In determining what "purpose" is sufficient for a Title III demand, the Court considers the larger framework of Title III and the historical context in which it was enacted. *See County of Amador v. U.S. Dep't of the Interior*, 872 F.3d 1012, 1022 (9th Cir. 2017) ("understanding the historical context in which a statute was passed can help to elucidate the statute's purpose and the meaning of statutory terms and phrases"). The Court offered some historical context for Title III earlier in this Opinion, and a review of its history directs the conclusion that it was intended to protect against the infringement of voting rights.

*Lynd*, the very same case on which Plaintiff so heavily relies, is consistent with this interpretation of Title III's purpose. *Lynd* explains that the purpose of Title III's record demand provision is "to enable the Attorney General to determine whether § 1971 [voting rights] suits or similar actions should be instituted . . . [and] to enable him to obtain evidence for use in such cases if and when filed." 306 F.2d at 228. In *Lynd* and other cases of that era, Plaintiff's then use of Title III remained consistent with this Court's current interpretation of "purpose." *See, e.g., id.* at 229 n. 6 ("The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred"); *In*

Page 19 — OPINION AND ORDER

*re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman*, 313 F.2d at 868; *Bruce*, 298 F.2d at 861 (same).[3]

Reading Title III's text within its larger statutory and historical context, and consistent with the case law and legislative history explained above, the Court concludes that the "purpose" required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights. But here, Plaintiff's stated purpose was to investigate list maintenance procedures. Plaintiff's state purpose lacked any reference or relation to the purposes for which Title III was enacted.[4] Plaintiff's demand for records is deficient and cannot trigger any duty to produce such records. Plaintiff fails to state a claim under Title III.

## B.    Entitlement to Unredacted Records[5]

Defendants and Intervenors also contend that, even if Plaintiff's Title III demand contained an adequate statement of its basis and purpose, Title III does not require the disclosure of unredacted records. As explained above, Defendants have already conceded that Plaintiff is entitled to voter registration lists in compliance with Oregon law; Defendants seek only to redact the Sensitive Voter Data. Plaintiff, nevertheless, contends that Title III does not limit the records so long as they are those required to be retained and preserved under 52 U.S.C. § 20701.

---

[3] While Plaintiff provides some supplemental authority identifying two cases in 2006 and 2008 in which it sought records under Title III for NVRA-compliance purposes, ECF No. 67, neither case required any court to decide whether that was a permitted use of Title III.

[4] Even if investigating NVRA or HAVA compliance were valid purposes for seeking voter registration lists under Title III, neither Plaintiff's Title III demand nor any of its pleadings before this Court provide any reasonable explanation for why the Sensitive Voter Data in particular serves those purposes.

[5] Although it is not strictly necessary for the Court to address this argument in light of its conclusion that Plaintiff failed to include an adequate statement of basis and purpose for its demand, the issues raised by the scope of Plaintiff's demand here are deeply troubling and are an important alternative basis for granting Defendants' and Intervenors' motions.

1.    Interest in Protection of Sensitive Voter Data

Before addressing the parties' specific legal arguments on the motions to dismiss on this basis, the Court begins by addressing Defendants' and Intervenors' interests in protecting the Sensitive Voter Data. A consistent theme in Plaintiff's briefing and oral argument was its assurance that the information would be protected by applicable privacy laws as well as by Title III's prohibition on disclosure of records obtained by the Department of Justice. Plaintiff also assures that it only seeks the records to investigate compliance with the NVRA and HAVA. In the face of these assurances, the Court must respond.

Although Plaintiff's Complaint discusses Oregon-specific concerns about voter list maintenance, Compl. ¶¶ 39-44, ECF No. 1, Plaintiff has in fact requested the same statewide voter registration lists in states across the country. As of December 22, 2025 (when the replies in this case were filed), Plaintiff filed lawsuits against 20 states plus the District of Columbia seeking the same information. *See* Intervenors' Reply 1 n. 1, ECF No. 60 (collecting cases). The Court is aware of at least two more cases Plaintiff has filed against states since then. *United States v. Fontes*, No. 2:26-cv-00066-SMB (D. Ariz. Jan. 6, 2026); *United States v. Thomas*, No. 3:26-cv-00021-KAD (D. Conn. Jan. 6, 2026). As U.S. District Judge Carter recently noted in one of these parallel cases in California, "[i]t appears that DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 2026 WL 118807, at *10. The court there cited numerous sources raising significant concerns about the true purpose of Plaintiff's voter data requests across the states. *Id.* at *10-12. In particular, the court expressed concerns that the data was in fact being aggregated in part for the purposes of immigration enforcement and that Plaintiff's assertions that the data was being requested for NVRA or HAVA compliance were "pretextual." *Id.* at *11-12.

Even since the decision in *Weber* was issued, Plaintiff has continued to engage in conduct raising suspicion about the purposes for which it seeks statewide unredacted voter registration lists. On January 24, 2026, Attorney General Pamela Bondi sent a letter to Minnesota Governor Tim Walz regarding immigration enforcement in Minnesota. Letter from Pamela Bondi, Att'y Gen., to Tim Walz, Governor of Minn. (Jan. 24, 2026).[6] The letter details the Attorney General's views about the state of "lawlessness" regarding immigration enforcement in Minnesota and concludes with a list of demands to "restore the rule of law" through "common sense solutions." *Id.* Among those is a demand for Minnesota to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960." *Id.* The context of this demand within a letter about immigration enforcement casts serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data.

While the Court's decision granting Defendants' and Intervenors' motions to dismiss are firmly grounded on the application of law, Plaintiff's conduct and written demands on states for disclosure of their highly sensitive voter information should not be ignored. Defendants' and Intervenors' expressed concerns about Plaintiff's ulterior motives for seeking the sensitive data require attention. The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds. When Plaintiff, in this case, conveys assurances that any private and sensitive data

---

[6] available at https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html (Last accessed Feb. 2, 2026).

will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary.

### 2.    Defendants' Disclosure Obligation under Title III

Defendants and Intervenors argue that Title III does not obligate Defendants to disclose the Sensitive Voter Data and that they are in fact prohibited from doing so under Oregon law. Under ORS 247.948(2), the birth day, month, social security number, and driver license numbers in voter registration files "may not be disclosed by the Secretary of State or a county clerk" except as "otherwise required by law." The question is whether that information is required under Title III. Plaintiff's only response to this argument is a conclusory footnote in which it states without substantive argument or citation to binding legal authority that "to the extent Oregon law purports to bar the United States from obtaining federal election data necessary to enforce the NVRA, that conflicting law is preempted." *See* Pl.'s Opp. 14 n. 6 (citing *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025)).

Plaintiff fails to establish that Title III preempts Oregon's prohibition on producing the Sensitive Voter Data. The sole, non-precedential case Plaintiff cites for its undeveloped preemption theory, *Voter Reference Found.*, is inapposite. There, the Tenth Circuit held that the NVRA preempted a New Mexico state law restricting the use and sharing of voter data subject to disclosure under the NVRA. *Voter Reference Found.*, 160 F.4th at 1082-84. In particular, the Court explained that restricting public access to voter data obstructed the NVRA's "enumerated purposes of public inspection and circulation of voter data" and was therefore preempted. *Id.* at 1083.

The mere citation to *Voter Reference Found.* does not do the work of explaining how preemption applies here, where both the federal statute and state statute at issue are different. Plaintiff does not explain how Oregon law's prohibition on disclosure of certain sensitive

Page 23 — OPINION AND ORDER

information conflicts with the purposes of Title III. In fact, when the difference between the law at issue in New Mexico and that at issue here is accounted for, *Voter Reference Found.* supports Defendants' and Intervenors' positions, not Plaintiff's. The law at issue in that case categorically prohibited the use and sharing of voter data under certain circumstances; it did not pertain to redaction of private information within that data. Although the question was not before it, the Tenth Circuit explicitly addressed whether the NVRA precludes redaction of private voter data. Citing New Mexico's version of ORS 247.948(2), the court explained that "[t]o the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation." *Voter Reference Found.*, 160 F.4th at 1083 n. 14.

Other case law supports Defendants' redaction of this data as well. The Fifth Circuit in *Lynd* was clear about the types of records available under Title III, explaining that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection. . . ." 306 F.2d at 231. Likewise, the vast array of cases cited above addressing the propriety of redaction in the context of the NVRA confirm that such redaction is appropriate and permissible. *See supra* I. Plaintiff fails to provide any persuasive argument that Title III requires Defendants to disclose specific types of information they are prohibited from disclosing under Oregon law.

Because Title III does not require Defendants to disclose the Sensitive Voter Data, Plaintiff fails to state a claim that Oregon violated Title III by failing to produce an unredacted copy of its voter registration list. Count III is dismissed for that additional reason.

## IV.    Leave to Amend

Ordinarily, when a court dismisses a case for failure to state a claim, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852

Page 24 — OPINION AND ORDER

ER-28

F.3d 859, 863 (9th Cir. 2017). Here, there can be no allegations of additional facts that could cure the deficiencies identified in this Opinion. First, Defendants have already offered to provide Plaintiff with the information required under the NVRA subject to redactions of the Sensitive Voter Data, and no additional facts could alter this Court's conclusion that the NVRA allows such redactions. Second, no additional facts could cure the absence of any disclosure provision in HAVA. Finally, the deficiencies in Plaintiff's Title III demand are plain on the face of Plaintiff's August 14 Letter, and additional facts cannot alter the contents of that letter. Because amendment would be futile, the Court denies leave to amend.

## CONCLUSION

Plaintiff's claims in this case are troubling for several reasons. First, the law upon which Plaintiff relies to compel Oregon to disclose the Sensitive Voter Data is unavailing and its claims fail as a matter of law.

Second, and as discussed earlier, the Constitution specifically left the regulation and administration of elections to the states, understanding that states are in the best position to do so. While the Constitution provides for Congress to preempt the role of the states in elections, Congress has only done so in limited ways. Plaintiff's claims here represent an overreach and misuse of those limited constitutional exceptions designed to ensure decentralized election regulation. Plaintiff's claims disturb the framework of federalism envisioned and enshrined in our Constitution.

Lastly, Plaintiff's words and actions outside of the four corners of its Complaint in this case, including statements that it intends to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts, is chilling. The possibility that Oregon's voter registration list could be used to further these efforts

Page 25 — OPINION AND ORDER

in the absence of congressional action, may very well lead to an erosion of voting rights and voter participation.

For the reasons discussed in the body of this Opinion, Defendants' and Intervenors' Motions to Dismiss (ECF Nos. 31, 32) are GRANTED. This case is DISMISSED WITHOUT LEAVE TO AMEND.

DATED this 5th day of February 2026.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge

DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI  #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
           kate.e.morrow@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>     v.<br><br>STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State,<br><br>       Defendants. | Case No.  6:25-cv-01666-MTK<br><br>DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

ER-31

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT ................................................................................................... 1

  A.   The United States has not complied with the applicable privacy laws. ............................. 2
    1.   The Privacy Act prevents Plaintiff's indiscriminate data collection. ............................ 2
    2.   The E-Government Act's procedural safeguards apply. .................................................. 4
    3.   The Driver's Privacy Protection Act bars Plaintiff's collection of driver's license
         numbers. ..................................................................................................... 5

  B.   The Court should dismiss Plaintiff's NVRA claim. ............................................................. 6

  C.   The Court should dismiss Plaintiff's HAVA claim. ............................................................. 8

  D.   The Court should dismiss Plaintiff's claim under Title III of the CRA ............................ 10
    1.   The United States has not pled a Title III claim because its asserted purpose falls
         outside the scope of Title III, which is limited to investigations of civil rights
         violations. ................................................................................................... 11
    2.   The United States has not pled a Title III claim because it has not provided a statement
         of basis and purpose for its demand. ............................................................... 12
    3.   Even if the United States had a valid Title III demand for records, it would not be
         entitled to receive an unredacted voter list. ................................................. 15

III.  CONCLUSION ............................................................................................... 16

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-32

## TABLE OF AUTHORITIES

**Cases**

*Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017) .......................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 6, 8

*Becker v. United States*, 451 U.S. 1306 (1981) ............................................................ 10

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ......................................................... 13

*Coal. for Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ............................................................................................................... 15

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ............................................... 11

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982 (9th Cir. 2020) ............................................................................................................................. 12

*Garris v. F.B.I.*, 937 F.3d 1284 (9th Cir. 2019)................................................................. 2

*Judicial Watch, Inc. v. Adams*, 485 F. Supp. 3d 831 (E.D. Ky. 2020) ........................................ 13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)............................................................... 10, 11, 14

*MacPherson v. I.R.S.*, 803 F.2d 479 (9th Cir. 1986) .............................................................. 2

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ................................................................ 12

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ...................................................... 3

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ........................................ 13

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36  (1st Cir. 2024)................................... 7

*Ruell v. McDonough*, No. 2:23-cv-03513-JDW, 2024 WL 4771390 (E.D. Pa. Nov. 13, 2024) .... 3

*Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) ............................................. 6

*United States v. Kentucky*, No. 3:17-cv-00094 (E.D. Ky. June 21, 2018).................................. 13

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ...................................................... 11

*United States v. Powell*, 379 U.S. 48 (1964) ............................................................... 10

*United States v. Torrey*, 523 F. App'x 467 (9th Cir. 2013) ................................................ 5

*Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300 (10th Cir. Nov 25, 2025) ......................................................................................................... 7, 8, 15

**Statutes**

Or. Rev. Stat. § 247.945........................................................................................... 14

**Rules**

68 Fed. Reg. 47,610 ................................................................................................. 3
70 Fed. Reg. 43,904 ................................................................................................. 3
82 Fed. Reg. 24,147 ................................................................................................. 3
82 Fed. Reg. 24,151 ................................................................................................. 3
Fed. R. Civ. P. 81(a)(5)............................................................................................. 10

**United States Code**

5 U.S.C. § 552a...................................................................................................... 2, 4
26 U.S.C. § 7604……………………………………………………………………………………10
52 U.S.C. § 20507.................................................................................................... 7
52 U.S.C. § 20703………………………………………………………………………………12, 15
52 U.S.C. § 20705………………………………………………………………………………...10
52 U.S.C. § 21083.................................................................................................... 9
52 U.S.C. § 21111.................................................................................................... 9
E-Government Act, Pub. L. No. 107-347 § 208, 116 Stat. 2899 (2002) .................................. 4, 5

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-33

## I.     INTRODUCTION

Through this lawsuit, the United States ("Plaintiff") attempts to require the Oregon Secretary of State and the State of Oregon ("Defendants") to turn over voter registration records that include Oregonian's sensitive data and protected First Amendment activity. Plaintiff, however, is prohibited from collecting or maintaining the requested information by federal privacy laws. Even if Plaintiff satisfied the requirements of the privacy laws, the three laws the United States relies on, the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act ("CRA" or "Title III"), do not allow Plaintiff to obtain that private and sensitive information about Oregon voters. Plaintiff misunderstands the purpose, application, and scope of those laws, and it has not stated a claim for relief under any of them. This Court should grant Defendants' Motion to Dismiss.

## II.     ARGUMENT

Plaintiff does not state a claim for relief. First, it has not complied with the applicable privacy laws, and that alone is grounds for dismissal.[1] Second, it has not alleged a claim under the NVRA because the NVRA does not require Defendants to disclose an unredacted copy of the electronic statewide voter list. Third, it has not stated a claim under HAVA because it, like the NVRA, does not require disclosure of sensitive information and because Plaintiff has not alleged a plausible violation of HAVA. Finally, Plaintiff has not stated a claim under the CRA because Title III applies only to investigations about discrimination in voting under the civil rights laws, because Plaintiff has not alleged the basis and the purpose for its records demand, and because,

---

[1] Plaintiff, without factual support, claims that their initial demand for the unredacted voter list was "met by delay, obfuscation, and finally a refusal by Defendants to produce records." Pl.'s Resp., ECF 57, at 5. This statement is both unfair and untrue. In Plaintiff's August 14, 2025 letter, it acknowledged that the Defendant's response has "not reached it deadline." Castelli Decl. at Ex. 2, ECF 32-2. That letter asked for a response by August 21, 2025. *Id*. Defendants responded on August 21 with some of the information requested and offered to provide the redacted voter list and other protected data if Plaintiff complied with the applicable privacy laws. *See* Castelli Decl. Ex. 3, ECF 32-3. Plaintiff responded with this lawsuit.

Page 1 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
       TC3/nk1/1006714358

even if it had, Title III does not entitle Plaintiff to the records that it seeks in the form it seeks them. Therefore, Plaintiff has not stated a claim for relief and this Court should dismiss its claims.

## A.    The United States has not complied with the applicable privacy laws.

The Court should dismiss this case because Plaintiff has failed to plead that it is in compliance with federal privacy laws.

### 1.    The Privacy Act prevents Plaintiff's indiscriminate data collection.

Plaintiff fails to rebut Defendants Privacy Act arguments. The Privacy Act prohibits Plaintiff from seeking "record[s] describing how any individual exercises rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7). Plaintiff does not dispute the records it seeks fall within that description. Rather, it asserts that it can nonetheless obtain the protected records because "[l]ist maintenance is an authorized enforcement activity." Pl.'s Resp. at 20, ECF 57.

Plaintiff cites no authority to support its assertion. The Ninth Circuit takes "a *narrow* reading of 'law enforcement activities' [to] better serve[] the goal of privacy and avoid[] infringing on the overall First Amendment concerns of section (e)(7)." *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986). Accordingly, courts review "on an individual, case-by-case basis," *id.* at 484, and courts require the government to show "good reason to believe" the records are "relevant" to the claimed law enforcement basis, *Garris v. F.B.I.*, 937 F.3d 1284, 1299 (9th Cir. 2019) (citation omitted). By contrast, Plaintiff seeks to collect individualized data from *all* Oregon voters, supposedly to enforce (1) HAVA's requirement that states collect driver's license numbers or social security numbers, and (2) the NVRA's requirement that states conduct a general voter list maintenance program. Pl.'s Resp. at 19–20, ECF 57. The full, unredacted voter registration list is neither "pertinent to" nor "within the scope" of either enforcement purpose. Plaintiff does not plead a "good reason to believe" otherwise. *Garris*, 937 F.3d at 1299 (explaining that the government's burden is not met by a "remote possibility" that records would provide a "minuscule" "potential advantage" in an investigation); *see* 5 U.S.C. § 552a(e)(1).

Page 2 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Even if Plaintiff passes that barrier, it identifies no qualifying System of Records Notice ("SORN"), as the Privacy Act requires. Plaintiff identifies three preexisting SORNs, but it provides no context describing why they apply. Pl.'s Resp. at 18, ECF 57. Even if this Court considers Plaintiff's bare assertion of "routine use" under the NVRA, HAVA, and Title III of the CRA, that assertion does not authorize Plaintiff's broad request for unredacted data. One SORN, concerning records "indicat[ing] a violation or potential violation of law," covers "[s]ubjects of investigations, victims, [and] potential witnesses." 68 Fed. Reg. 47,610, 47, 611 (Aug. 11, 2003). That SORN fails to "put [the] reader on notice" that Plaintiff will seize and maintain all voters' private and sensitive data nationwide. *See Ruell v. McDonough*, No. 2:23-cv-03513-JDW, 2024 WL 4771390, at *8 (E.D. Pa. Nov. 13, 2024). Plaintiff cannot rest a data-grab of this magnitude—encompassing all or nearly all registered voters in Oregon or nationwide—on a SORN limited to discrete investigations. *See Peters v. United States*, 853 F.2d 692, 699–700 (9th Cir. 1988) (blocking federal data-gathering as unreasonably overbroad).

The other SORNs Plaintiff cites fare no better. The second SORN Plaintiff relies on is an update to that first SORN, and it allows public disclosure of information after "the investigation is closed," among other irrelevant conditions. 70 Fed. Reg. 43,904, 43,904 (July 29, 2005). Those circumstances do not apply here, and the citation of that SORN suggests that Plaintiff may eventually seek to disclose registered voters' social security numbers "[t]o the local community or public." *Id.* That would certainly be inappropriate and unlawful under various privacy laws. The third SORN concerns disclosure of information after a data breach. 82 Fed. Reg. 24,147, 24,147 (May 25, 2017); *see also* 82 Fed. Reg. 24,151, 24,151 (May 25, 2017). Again, that is an irrelevant provision on which to base Plaintiff's collection of private and sensitive information related to voting.

Plaintiff next argues that because Oregon is a member of the Electronic Registration Information Center ("ERIC") and provides voter information to that organization, this somehow assuages the Privacy Act concerns. Pl.'s Resp. at 20, ECF 57. Oregon's participation is irrelevant

Page 3 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

to whether Plaintiff can receive the unredacted voter list under the Privacy Act. As Plaintiff points out, the Privacy Act is a limitation placed on the federal government by the federal government. *Id*. at 18 ("The Privacy Act regulates federal agencies collection, maintenance, and disclosure of information[.]"); 5 U.S.C. § 552a. Whether Oregon provides the information requested does not alleviate the restrictions the Privacy Act places on Plaintiff. Moreover, the data is provided to ERIC "after applying a cryptographic one-way hash to these data points." Compl. ¶ 57, ECF 1 (quoting https://ericstates.org/security/). Plaintiff alleges in its Complaint that ERIC is "an organization comprised of states whose stated mission 'is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens.'" *Id*. (quoting https://ericstates.org/faq/). The ERIC website, cited and quoted in the Complaint, explains further that "[t]he hashing application converts these data into what appears to be a string of random characters, making the data significantly more difficult for a potential hacker to utilize." *See https://ericstates.org/security/* (last visited December 17, 2025). If Oregon provides Plaintiff, or anyone else, the encrypted and hashed information it provided ERIC, they would not be able to read or understand it. The information Plaintiff seeks is not encrypted or "hashed."

Finally, Plaintiff's argument that the Privacy Act does not apply to states misses the point. *See* Pl.'s Resp. at 18–19, ECF 57. The Privacy Act governs Plaintiff's collection of records. 5 U.S.C. § 552a. If a federal agency has not satisfied the Privacy Act's requirements, it cannot lawfully receive the records. The Court should not make the State complicit in Plaintiff's unlawful collection of sensitive data.

### 2.      The E-Government Act's procedural safeguards apply.

Plaintiff claims that the E-Government Act, Pub. L. No. 107-347 § 208, 116 Stat. 2899 (2002), is inapplicable because Plaintiff is "not initiating a new process" of "contacting individuals for information." Pl.'s Resp. at 20–21, ECF 57. Plaintiff argues that it is seeking voter information that Defendants already maintain. *Id.* But that argument misreads the statute,

Page 4 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

which requires federal agencies to conduct a privacy impact assessment before *the federal government* "initiat[es] a new collection of information" permitting "the contacting of a specific individual." Pub. L. No. 107-437 § 208(b). Plaintiff's request for private and sensitive voter information fits squarely in that description and it is thus governed by the E-Government Act. OMB Guidance also makes clear that privacy impact assessments must be "updated" when agencies obtain qualifying information "from public sources" and incorporate it "into existing information systems." OMB Guidance, M-03-22 (Sept. 26, 2003).[2] The only privacy impact assessment that Plaintiff cites is related to software it uses, not to its current effort to collect massive amounts of sensitive data related to Oregon voters. Pl.'s Resp. at 21 n.11, ECF 57. Thus, that privacy impact assessment does not satisfy the E-Government Act's requirement for Plaintiff's information collection in this case.

Plaintiff also appears to suggest that Defendants lack standing to raise the E-Government Act as an affirmative defense. Pl.'s Resp. at 21, ECF 57. But "Article III standing is a requirement that applies 'almost invariably' to plaintiffs and [Defendants] [are] in a purely defensive posture." *United States v. Torrey*, 523 F. App'x 467, 468 n.1 (9th Cir. 2013) (citation omitted). Additionally, Plaintiff claims, without supporting authority, that the E-Government Act is inapplicable to HAVA and NVRA enforcement. Pl.'s Resp. at 21, ECF 57. The E-Government Act does not exempt voter data from the privacy impact assessment requirement. It protects personal information "as agencies implement citizen-centered electronic Government." Pub. L. No. 107-437 § 208(a).

### 3. The Driver's Privacy Protection Act bars Plaintiff's collection of driver's license numbers.

Plaintiff asserts that its collection of private and sensitive voter data is permissible under the governmental-function exception to the Driver's Privacy Protection Act. Pl.'s Resp. at 21–22,

---

[2] Available at https://perma.cc/E6PW-YQTP (last visited, December 18, 2025).

Page 5 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

ECF 57 (DPPA).[3] Plaintiff alleges no plausible governmental use for full driver's license numbers under Plaintiff's stated purpose to use the requested voter data to evaluate compliance with the NVRA and HAVA. *See* Compl. ¶ 51, ECF 1. Plaintiff asserts only that a "government agency performing a statutorily mandated function" constitutes a governmental function for purposes of the exception. But that assertion does not address how driver's license numbers will be "*used* for the identified purpose." *See Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc) (describing scope of DPPA's disclosure authorization). Without alleging facts that show what driver's license numbers will be used for, Plaintiff fails to comply with the DPPA.

In short, Plaintiff fails to plead compliance with the Privacy Act and the E-Government Act. On those grounds alone, this Court should dismiss this case for failure to state a claim because Plaintiff would violate federal law by collecting the requested information.

**B.    The Court should dismiss Plaintiff's NVRA claim.**

Plaintiff's defense of its NVRA claim fails. It asserts that it "properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts." Pl.'s Resp. at 14, ECF 57. First, those assertions are legal conclusions that should not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, nowhere in its Complaint does Plaintiff assert that Defendants have failed to engage in reasonable list maintenance efforts. Plaintiff has not alleged a claim under the list maintenance provision of the NVRA; Plaintiff's only NVRA claim is that Defendants allegedly failed to comply with the public records disclosure requirement set out in 52 U.S.C. § 20507(i). Compl. ¶¶ 65–68, ECF 1. The sole factual basis for Plaintiff's alleged NVRA claim is that Defendants have not produced the records that Plaintiff

---

[3] Defendants noted in their motion that the request for the unredacted voter list, including full driver's license numbers, would likely violate the DPPA. Mot. to Dismiss at 12 n.8, ECF 32. Because Plaintiff responded to that footnoted observation, Defendants respond in kind.

Page 6 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

seeks. But Plaintiff has no right under the NVRA to an unredacted version of all fields of the Oregon voter list, which contains sensitive and private information. *See* Mot. to Dismiss at 13–15, ECF 32. Plaintiff has not stated a claim under the NVRA because nothing in the NVRA requires a state to provide sensitive and private information to the federal government.[4]

This Court should also reject Plaintiff's assertions that the NVRA public records provision somehow applies differently to the federal government than to other litigants. Plaintiff cites no authority to support its premise. The NVRA requires states to make certain records "available for public inspection." 52 U.S.C. § 20507(i). Nothing in the text of the statute suggests that the records available for inspection vary depending on the identity of the requester. *See id.* Anyone can make a request under that provision, and courts have appropriately limited the disclosure of a voter's sensitive and private information under that provision based on a proper interpretation of the NVRA, not a plaintiff-by-plaintiff analysis. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases interpreting the NVRA as not prohibiting states from redacting sensitive data).

Moreover, even if Plaintiff complied with applicable federal privacy laws, the NVRA would still not require Defendants to turn over that information, and Oregon law prohibits Defendants from producing certain sensitive data. In a footnote, Plaintiff asserts that any Oregon law "bar[ring] the United States from obtaining federal election data necessary to enforce the NVRA" is preempted. Pl.'s Resp. at 14 n.6, ECF 57 (citing *Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300, at *7–10 (10th Cir. Nov 25, 2025)). Plaintiff's reliance

---

[4] Plaintiff states that "Oregon's voter registration metrics are strongly suggestive of list maintenance violations. It is wholly improper to determine, based upon the pleadings alone, that Defendants have 'complied with the requirements of the NVRA.'" Pl.'s Resp. at 14, ECF 57 (quoting Mot. to Dismiss at 15, ECF 32). But Plaintiff's selective quotation mischaracterizes Defendants' argument, which is that "Defendants have complied with the [public records] requirements of the NVRA by offering voter list information without the sensitive, personal information" that Plaintiff seeks. Mot. to Dismiss at 15, ECF 32. Defendants said nothing about the propriety of determining compliance with list maintenance requirements on the pleadings alone. This Court should reject Plaintiff's attempt at turning this lawsuit about the public records provision into a claim under the list maintenance requirements.

Page 7 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

on *Voter Reference Foundation* is inapposite. In that decision, the Tenth Circuit held that the NVRA preempted state laws prohibiting data sharing and certain uses of the voter list. *Voter Reference Found.*, 2025 WL 3280300 at \*8–\*9. In reaching that conclusion, the court expressly stated that the NVRA does not prohibit the redaction of sensitive data. *See id.* at n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."). *Voter Reference Foundation* not only undermines Plaintiff's preemption assertion, but it expressly supports Defendants', and every other court's, interpretation that the NVRA does not prohibit states from redacting private and sensitive voter data before releasing the voter file. This Court should reject Plaintiff's bare assertion that Oregon laws prohibiting Defendants from disclosing certain sensitive voter information are preempted.

Because the NVRA allows sensitive and personal voter information to be redacted from the voter list, Plaintiff has not stated an NVRA claim that entitles it to the requested voter information.

## C.    The Court should dismiss Plaintiff's HAVA claim.

Plaintiff fails to allege a plausible HAVA violation. Plaintiff's HAVA allegations are conclusory and lack factual support. Plaintiff alleges that Defendants "failed to take the actions necessary" to comply with HAVA and "failed to provide sufficient information" in response to Plaintiff's letters requesting information. Compl. ¶ 70, ECF 1. Plaintiff asked questions about alleged issues with Oregon's Election Administration and Voting Survey (EAVS) data in its letters to the Secretary prior to this litigation. *Id.,* ¶¶ 38–44. Plaintiff also claims that Defendants' failure to provide the requested information "prevents the Attorney General from determining Oregon's compliance" with HAVA's list maintenance requirements. *Id*., ¶ 72. Even accepted as true and taken in the light most favorable to Plaintiff, those allegations do not bring a HAVA claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citation omitted). At most, they indicate that Plaintiff is skeptical of Defendants' compliance with HAVA's list

Page 8 -    DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-41

maintenance requirements and is considering investigating. *See* 52 U.S.C. § 21083(a) (describing requirements for maintaining the computerized list). Those facts do not establish a violation of HAVA's requirement that states have a system of list maintenance procedures.

Plaintiff itself characterizes the HAVA claim as "Oregon is failing to provide information that would allow the United States to determine compliance with HAVA." Pl.'s Resp. at 15, ECF 57. Nothing in HAVA requires Defendants to answer Plaintiff's narrative questions or provide the requested information.[5] Nor has Plaintiff identified a HAVA provision that requires disclosure. *See* 52 U.S.C. § 21111 (providing authority to the Attorney General to bring a civil action); Compl. ¶¶ 69–72, ECF 1 (alleging a claim under 52 U.S.C. § 21083). Certainly, if Plaintiff plausibly alleged a violation of a specific provision of HAVA's list maintenance requirements, Plaintiff could seek a copy of the voter list in discovery through the normal course of civil litigation, as Plaintiff admits. *See* Pl.'s Resp. at 17, ECF 57 (describing the HAVA demand for records as within the "conventional realm of discovery"). But Plaintiff does not allege facts constituting a list maintenance claim, nor does Plaintiff seek relief that would redress a list maintenance violation: Plaintiff alleges only that it cannot currently determine Defendants' compliance with HAVA and asks this Court to require Plaintiff to provide the requested records. Compl. ¶¶ 70–72 & Prayer for Relief, ECF 1. Failure to provide records *prior* to litigation is not an independent violation of HAVA actionable in this Court. *See* Mot. to Dismiss at 16–17, ECF 32. Defendants, as co-equal sovereigns, cannot be bullied into providing sensitive voter information to the United States simply because Plaintiff demands it. Because no legal authority requires Plaintiff to provide the requested records, Plaintiff cannot state a claim on which relief may be granted.

---

[5] As explained above regarding the NVRA, Oregon law prohibits the disclosure of certain sensitive voter information. As with the NVRA, HAVA does not preempt those state laws because HAVA imposes no duty to provide an unredacted voter list. *See Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 186 (3d Cir. 2017) (finding information sharing provisions in the NVRA and HAVA did not override state law related to felony disenfranchisement). Thus, HAVA does not conflict with Oregon's laws protecting sensitive voter information.

Page 9 -   DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

**D.      The Court should dismiss Plaintiff's claim under Title III of the CRA.**

The United States has not stated a claim under Title III because its records request is outside the scope of Title III and it has not provided a statement of basis and purpose. Even if it had complied with Title III, Plaintiff is not entitled to receive an unredacted copy of the voter list. Thus, this Court should grant Defendants' Motion to Dismiss.

As a threshold matter, this Court may review Plaintiff's compliance with Title III. Plaintiff argues that a records demand under Title III "is not the commencement of an ordinary, traditional civil action" and that "it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure."[6] Pl.'s Resp. at 8–9, ECF 57 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–226 (5th Cir. 1962)). But Title III's text states only that a district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Title III does not mention any "special statutory proceeding" or other abbreviated procedure that diminishes this Court's role to issuing a rubber-stamp approval of a records request.

In fact, since Title III was enacted in 1960, the Supreme Court confirmed that the Federal Rules of Civil Procedure govern the federal government's document demands even if a summary proceeding is authorized by statute. *See Becker v. United States*, 451 U.S. 1306, 1307–08 (1981); *see also* Fed. R. Civ. P. 81(a)(5). Two years after the Fifth Circuit's decision in *Lynd*, the Supreme Court applied the normal civil process under the federal rules to a similarly worded statute that contained "no provision specifying the procedure to be followed in invoking the court's jurisdiction." *United States v. Powell*, 379 U.S. 48, 57–58 & n.18 (1964) ("Because [§] 7604(a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). *Compare* 26 U.S.C. § 7604(a) *with* 52 U.S.C. § 20705. Thus, contrary to Plaintiff's assertions, the appropriate process under the

---

[6] Plaintiff did not assert any special procedural limitations in the Complaint in this case.

Page 10 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

Federal Rules of Civil Procedure is for this Court to ensure that Plaintiff has satisfied Title III's statutory requirements and that its demand satisfies a baseline level of rationality.

### 1. The United States has not pled a Title III claim because its asserted purpose falls outside the scope of Title III, which is limited to investigations of civil rights violations.

Plaintiff asserts that its purpose in demanding records is to "evaluate the state's compliance with its list maintenance requirements under federal law." Pl.'s Resp. at 9, ECF 57 (citing Compl. ¶¶ 47–51, ECF 1). By confirming that alleged purpose, Plaintiff concedes that it is not conducting an investigation into voting discrimination. As explained in the Motion to Dismiss, nothing in Title III nor the CRA addresses voter list maintenance or removing registered voters from the voter rolls due to death or relocation. Mot. to Dismiss at 19–20, ECF 32 (discussing the text and legislative history of Title III). Title III was enacted as a tool to enforce the voting rights laws that protect against race discrimination in exercising the right to vote. *Id.* No allegations suggest that Plaintiff is concerned about race discrimination in voting in Oregon, nor that it is investigating any discriminatory conduct.

In arguing to the contrary, Plaintiff asserts that, so long as it uses certain words in its demand—that the demand is "made for the purpose of investigating possible violations of a Federal statute"—it can demand records relating to federal elections, without limitation. Pl.'s Resp. at 7, ECF 57 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). Plaintiff is incorrect. That reading of Title III ignores the case law construing its text, which informs what constitutes a valid statement of the basis and purpose for a Title III demand. As a comprehensive review of that case law and legislative history shows, Title III was enacted to permit review of voting records for "question[s] concerning infringement or denial of [a person's] constitutional voting rights." *Lynd*, 306 F.2d at 228; *see also* Mot. to Dismiss at 20–21, ECF 32 (quoting *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962)); *Lynd*, 301 F.2d at 822 (explaining that, under Title III, the United States is entitled to a court order to inspect voting records upon asserting "reasonable grounds for belief that certain voters are being discriminatorily denied their

Page 11 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-44

voting rights in a given county"). Because a fair reading of the statute's text is consistent with the case law and legislative history, this Court should reject Plaintiff's limitless interpretation and find that Plaintiff's demand for records exceeds the scope of Title III.

### 2. The United States has not pled a Title III claim because it has not provided a statement of basis and purpose for its demand.

Even if Plaintiff's request were in the scope of Title III, the statute requires a statement of the basis and the purpose for a records demand. 52 U.S.C. § 20703 ("This demand shall contain a statement of the basis and the purpose therefor."). The statute's use of the definite article "the," followed by a singular noun, together with its use of the conjunctive "and" demonstrates that the Attorney General must offer "a discrete thing" to meet the "basis" requirement and a second "discrete thing" to meet the "purpose" requirement. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021) (describing how to interpret definite articles in a statute); *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) (describing how to interpret "and" in a statute); *see also* Mot. to Dismiss at 21, ECF 32. Plaintiff fails to satisfy those statutory requirements.

Plaintiff's alleged purpose is implausible because it invokes the NVRA and HAVA list maintenance requirements, and the facts alleged fall short of substantiating Plaintiff's broad request. *E.g.*, Compl. ¶ 51, ECF 1 (alleging that "the purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA"). Plaintiff does not need access to the unredacted voter list to assess compliance with NVRA and HAVA list maintenance requirements, as courts have consistently held when addressing NVRA list maintenance issues. *See* Mot. to Dismiss at 13–15, ECF 32; *supra* at Section II.B. For example, voter-specific personal information, such as full birth date, social security number, or driver's license number, is not needed to assess whether Defendants are complying with the NVRA's requirement to remove voters upon death or change in residence. Nor is that line-by-line information needed to assess Defendants' HAVA list maintenance requirements. In fact,

Page 12 - DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-45

compliance with list maintenance requirements is principally assessed by evaluating a state's

procedures, not each individual voter's data.[7]

*See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 618, 624–25 (6th Cir. 2025); *Bellitto v.

Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019). Because unredacted access to the statewide voter

list is not necessary to assess compliance with NVRA or HAVA list maintenance requirements,

that alleged purpose does not satisfy Title III's purpose requirement for Plaintiff's requested

records.

Plaintiff's assertions about the "basis" for its request fare no better. First, Plaintiff

concedes that the Complaint contains no basis for its request. Pl.'s Resp. at 10, ECF 57. It relies

entirely on its July 16, 2025 letter to the Secretary to support its position that it has sufficiently

stated grounds for its request. *Id.* That letter did not mention Title III or the CRA generally.

Castelli Decl. Ex. 1, ECF 33-1. It requested the unredacted voter list and asked questions about

Oregon's list maintenance processes based on EAVS data, which was a separately numerated list

of questions from the request for the unredacted statewide voter list under the NVRA and

HAVA. *See id.* A second letter, sent August 14, 2025, invoked Title III but did not mention the

EAVS data. Castelli Decl. Ex. 3, ECF 33-3. A demand that does not reference "the basis" for the

demand is insufficient under Title III. This Court should reject Plaintiff's post hoc justification of

its deficient demand.

Moreover, it is implausible that alleged concerns about Oregon's EAVS data establish a

ground for demanding the unredacted voter list. As explained above, the sensitive data of

---

[7] Plaintiff's alleged purpose and request are particularly puzzling because Plaintiff has
investigated NVRA and HAVA compliance for decades without requiring states to produce an
unredacted statewide voter registration list. *See, e.g.*, *United States v. Kentucky*, No. 3:17-cv-
00094 (E.D. Ky. June 21, 2018), ECF 35 (DOJ Complaint in intervention); *Judicial Watch, Inc.
v. Adams*, 485 F. Supp. 3d 831, 834 (E.D. Ky. 2020) (describing procedural history and
intervention of United States in 3:17-cv-00094). The United States' complaint in that case
alleged NVRA violations by describing the state's program, alleging specific programmatic
deficiencies, and accurately articulating the NVRA's requirements. The initial information
request sent to Kentucky—a letter attached as an exhibit to the complaint (ECF 35-1)—did not
demand access to the state's voter registration list.

Page 13 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

Oregon's voters is not necessary or relevant to assessing list maintenance compliance under either HAVA or the NVRA. *See supra* Section II.D.2. Questions about list maintenance processes do not establish a ground for a demand for the unredacted voter registration list because the unredacted voter list would not answer those process and systems-based questions. Nor would it provide any information relevant to those alleged list maintenance issues that the publicly available list would not also provide.[8] Because private and sensitive voter data is irrelevant to assessing list maintenance compliance, it does not provide a basis for Plaintiff's request under Title III.[9]

Rather than explain the legitimate purpose and basis for its request, Plaintiff contends that this Court cannot scrutinize the basis of its request. Pl.'s Resp. at 10–11, ECF 57 (citing *Lynd*, 306 F.2d at 226). According to Plaintiff, "the statistics included in [its] July 10, 2025, letter became immaterial beyond satisfying [Title III's] requirement for a basis for the request."[10] *Id.* at 11. But Title III is clear—Plaintiff must provide "*the* basis" in its demand for records, not merely "*a* basis" to satisfy Title III's requirement for a valid demand. Plaintiff's demand is deficient because it does not assert a purpose or basis that supports the breadth of its demand for records. This Court should thus reject Plaintiff's Title III claim.

---

[8] Plaintiff, like any member of the public, may request a copy of a redacted statewide voter list after complying with applicable privacy laws. *See* Castelli Decl. Ex. 3 at 2, ECF 33-3; Or. Rev. Stat. § 247.945.

[9] The breadth of the request and its lack of a basis or purpose related to the CRA is particularly troubling in light of the Federal Government's efforts to obtain and aggregate similar information for every state. *See* Brief of Amici Curiae Bipartisan Former Secretaries of State at 22, ECF 56; Mem. of Amicus Curiae Democratic National Committee at 7, ECF 35. As discussed in the Brief of Amici Curiae filed by sixteen other States, each state has received a request for their unredacted voter lists. Brief of Amici Curiae Maryland, et al, at 6, 11. ECF 55-1. The Amici Curiae states have also received requests for information from Medicaid and the Supplemental Nutrition Assistance Program, and the March 25, Executive Order charged federal agencies to review voter registration data and compare it to federal immigration databases. *Id.* at 7-11.

[10] Plaintiff refers to the July 10 letter in its response. No letter was sent to Oregon on July 10, 2025. The Secretary received the first letter dated July 16 and the second dated August 14. *See* Castelli Decl., Ex. 1; Ex. 2, ECF 33-1; 33-2.

Page 14 - DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

**3.     Even if the United States had a valid Title III demand for records, it would not be entitled to receive an unredacted voter list.**

Even if Plaintiff was entitled to records under Title III, it is not entitled to the entire unredacted computerized list. Title III requires only that the Secretary make certain records "available for inspection, reproduction, and copying at the principal office of such custodian[.]" 52 U.S.C. § 20703. By its text, Title III does not require that the Secretary send Plaintiff an unredacted copy of the electronic voter list. Nothing in Title III requires Defendants to violate state law by providing the unredacted voter list to Plaintiff, and Plaintiff has not cited any authority to support its position to the contrary.[11]

The only authority that Plaintiff cites to support its position is a recent NVRA case and a motion to compel decision, neither of which address Title III. Pl.'s Resp. at 12, ECF 57. Plaintiff mischaracterizes the privacy implications in both cases. In the NVRA case, the court specifically explained that the NVRA allowed redaction of private and sensitive information. *Voter Reference Found., LLC*, 2025 WL 3280300 at *9 n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."). Reliance on the motion to compel case gets Plaintiff no further. That decision involved a discovery dispute where any sensitive information was subject to a protective order in a case challenging the constitutionality of changes to state voter registration laws. *See Coal. for Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937, at *5 & n.5 (D.N.H. May 27, 2025) (rejecting the state's argument that concerns about protecting critical infrastructure warranted withholding the voter list and related documents from discovery "especially" because "the plaintiffs are willing to enter into a strict protective order"). Those cases, properly characterized, further support Defendants' position that it must comply with state law to protect private and sensitive information prior to sharing the voter file with Plaintiff.

---

[11] Plaintiff does not assert that the CRA preempts state laws prohibiting the disclosure of private information. *See* Pl.'s Resp. at 12, ECF 57. It relies only on its assertion that the NVRA preempts those state laws, which is incorrect. *See supra* Section II.B.

Page 15 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Plaintiff has not stated a claim under Title III because the records demand falls outside the scope of Title III and it has not alleged a valid statement of either the basis or the purpose of its demand. Even if it had, Title III does not require Defendants to violate state law by disclosing an unredacted version of the electronic voter list. Because Plaintiff is not entitled to the records that it requests under Title III, it has not stated a claim for relief and this Court should dismiss the Title III claim.

### III.    CONCLUSION

Plaintiff has not complied with the Privacy Act, which is a prerequisite for Plaintiff—the federal government—to collect the requested information. Plaintiff attempts to collect and maintain information related to protected First Amendment activity and failed to issue the necessary System of Records Notice. Plaintiff's CRA claim fails because Plaintiff has not validly requested information relating to a civil rights investigation under the CRA. Plaintiff's claims also fail because the NVRA, HAVA and CRA do not require Defendants to produce unredacted copies of the voter file, nor do they authorize Plaintiff to demand the sensitive information it seeks. For the reasons above, and in Defendants' Motion to Dismiss, the Court should dismiss Plaintiff's claims.

DATED December 22, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

    s/ Thomas H. Castelli
THOMAS H. CASTELLI #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
Of Attorneys for Defendants

Page 16 -  DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
TC3/nk1/1006714358

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

**CHRISTOPHER D. DODGE**
D.C. Bar. No. 90011587
**BRANDEN LEWISTON**
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**ABHA KHANNA**
WA Bar No. 42612
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

*Attorneys for Intervenors*
*Our Oregon, Dan DiIulio, Stephen Gomez,*
*and Emma Craddock*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

        Defendants.

Case No. 6:25-CV-01666-MTK

**INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS**

ER-50

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT .................................................................................................... 3

I.   DOJ fails to state a claim under the Civil Rights Act of 1960................................. 3

     A.   DOJ's demand failed to state a proper basis and purpose. ............................... 3

     B.   Title III permits redacting sensitive voter information. .................................. 7

     C.   The voter list DOJ seeks is not a record or paper that came into Oregon election
          officials' possession. .................................................................... 8

II.  DOJ fails to state a claim under the NVRA. .................................................... 9

III. DOJ fails to state a claim under HAVA........................................................ 10

CONCLUSION................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases:**

*Alabama ex rel. Gallion v. Rogers*,
    187 F Supp 848 (M.D. Ala. 1960) ...................................................................... 4

*Am. C.R. Union v. Phila. City Comm'rs*,
    872 F3d 175 (3d Cir. 2017)........................................................................... 12

*Arizona v. Inter Tribal Council of Ariz.*,
    570 US 1 (2013)............................................................................................ 12

*Bellitto v. Snipes*,
    935 F3d 1192 (11th Cir. 2019) ...................................................................... 8

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F3d 683 (D.C. Cir. 2017)........................................................................ 5

*CFPB v. Source for Pub. Data, L.P.*,
    903 F3d 456 (5th Cir. 2018) .......................................................................... 5

*Coleman v. Kennedy*,
    313 F2d 867 (5th Cir. 1963) ....................................................................... 3, 4

*Connell v. Lima Corp.*,
    988 F3d 1089 (9th Cir. 2021) .................................................................... 9, 10

*Davis v. Mich. Dep't of Treasury*,
    489 US 803 (1989)......................................................................................... 6

*Deal v. United States*,
    508 US 129 (1993)......................................................................................... 6

*Gonzalez v. Arizona*,
    677 F3d 383 (9th Cir. 2012) ........................................................................ 12

*Home Depot U.S.A., Inc. v. Jackson*,
    587 US 435 (2019)......................................................................................... 6

*In re Admin. Subpoena No. 25-1431-019*,
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ........... 5

*In re Coleman*,
    208 F Supp 199 (S.D. Miss. 1962)................................................................. 3

*In re Subpoena No. 25-1431-014*,
No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ............................................ 5

*Just. v. Rockwell Collins, Inc.*,
117 F Supp 3d 1119 (D. Or. 2015) ...................................................................... 8

*Kennedy v. Bruce*,
298 F2d 860 (5th Cir. 1962) .......................................................................... 3, 4

*Kennedy v. Lynd*,
306 F2d 222 (5th Cir. 1962) ........................................................................ 3, 4, 7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F3d 988 (9th Cir. 2018) ............................................................................ 1

*Leupold & Stevens, Inc. v. Lightforce USA, Inc.*,
501 F Supp 3d 987 (D. Or. 2020) ...................................................................... 8

*McCloskey v. Mueller*,
446 F3d 262 (1st Cir. 2006) ......................................................................... 13

*Navarro v. Block*,
250 F3d 729 (9th Cir. 2001) ........................................................................ 13

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F4th 36 (1st Cir. 2024) ............................................................................ 7

*RNC v. Benson*,
754 F Supp 3d 773 (W.D. Mich. 2024) ............................................................ 12

*Robinson v. Shell Oil Co.*,
519 US 337 (1997) ....................................................................................... 6

*Schneider v. Cal. Dep't of Corrs.*,
151 F3d 1194 (9th Cir. 1998) ......................................................................... 11

*United States v. Ass'n of Citizens Councils of La.*,
187 F Supp 846 (W.D. La. 1960) ..................................................................... 4

*United States v. Baldon*,
956 F3d 1115 (9th Cir. 2020) .......................................................................... 8

*United States v. Evans*,
2025 No. 1:25-cv-4403 (D.D.C. 2025) .............................................................. 1

*United States v. Galvin*,
    2025 No. 1:25-cv-13816 (D. Mass. 2025) ............................................................ 1

*United States v. Matthews*,
    2025 No. 3:25-cv-3398 (C.D. Ill. 2025) ............................................................... 1

*United States v. Powell*,
    379 US 48 (1964) ................................................................................................ 4

*United States v. Raffensperger*,
    2025 No. 5:25-cv-0548 (M.D. Ga. 2025) ............................................................ 1

*United States v. Wis. Elections Comm'n*,
    2025 No. 3:25-cv-1036 (W.D. Wis. 2025) .......................................................... 1

*Util. Air Regul. Grp. v. EPA*,
    573 US 302 (2014) .............................................................................................. 6

*Voter Reference Found., LLC v. Torrez*,
    Nos. 24-2133, 24-2141, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) ............ 7

*Webb v. Trader Joe's Co.*,
    999 F3d 1196 (9th Cir. 2021) ........................................................................... 13

*West Virginia v. EPA*,
    597 US 697 (2022) .............................................................................................. 6

*Yates v. United States*,
    574 US 528 (2015) ............................................................................................. 6

**Statutes:**

52 U.S.C. § 20501 .................................................................................................... 3

52 U.S.C. § 20507 .............................................................................................. 10, 12

52 U.S.C. § 20701 .................................................................................................... 8

52 U.S.C. § 20703 .................................................................................................... 3

52 U.S.C. § 21083 .................................................................................................... 8

N.M. Stat. Ann. 1.5.5 ............................................................................................... 7

Or. Rev. Stat. § 247.948(2) .................................................................................. 7, 10

**Federal Rules:**

Fed. R. Civ. P. 12 ................................................................................................................ 13

**Other Authorities:**

Liz Landers & Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sep. 26, 2025, https://perma.cc/7V2J-QY9V ................................................................................................................... 10

## INTRODUCTION

DOJ has yet to identify a single instance in the history of the NVRA, HAVA, or the Civil Rights Act of 1960 in which a court read those statutes to compel a state to turn over its full, *unredacted* voter list—notwithstanding state laws protecting that underlying data—in response to demands from the federal government. This is unsurprising—not only is DOJ's demand unprecedented, those statutes simply do not authorize the relief DOJ seeks.

Indeed, since filing this suit, DOJ appears to have realized the NVRA and HAVA offer it no support. In its most recent lawsuits to obtain other states' unredacted voter lists, DOJ has jettisoned its NVRA and HAVA claims and pinned its hopes solely on the Civil Rights Act.[1] But DOJ's claim under Title III of the Civil Rights Act fails as a matter of law. Even if Title III did extend to Oregon's internally generated voter list (and DOJ makes no effort to respond to the argument that it does not—or to any arguments made uniquely in Intervenors' motion to dismiss

---

[1] DOJ has now sued 20 states plus D.C., including Oregon. In its first seven suits, DOJ alleged claims under the NVRA, HAVA, and the Civil Rights Act. In the most recent fourteen suits, it proceeds under the Civil Rights Act only. *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-0548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-3398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (internal quotations marks and citation omitted)).

REPLY IN SUPPORT OF MOTION TO DISMISS                                          Page 1

at all, thereby conceding them), DOJ's claim still fails.[2] Its demand for Oregon's voter list lacked a valid statement of basis and purpose, as the statute requires, and nothing in Title III prohibits states from redacting sensitive, personal voter information that is nearly universally protected by state law, including in Oregon.

DOJ's NVRA and HAVA claims fare no better. DOJ is wrong to suggest it has special inspection rights under the NVRA—the statute has a single disclosure provision, which grants DOJ and the general public the exact same inspection rights. And because states may redact sensitive personal information before exposing registration records to public inspection, it follows that states may redact the same personal information before inspection by DOJ. No statutory basis exists for aggrandizing DOJ's NVRA inspection rights over the general public's. As to HAVA, DOJ has no choice but to admit that the law does not contain *any* disclosure provision whatsoever. Nonetheless, DOJ tries to resurrect its HAVA claim by arguing that Oregon has violated the NVRA's *substantive* list-maintenance requirements. But that is simply not the claim DOJ pleaded. DOJ cannot recast its claim in its opposition brief. In any event, nothing in DOJ's complaint or papers offers any plausible allegations that Oregon has violated any list maintenance obligation.

At bottom, no federal law authorizes DOJ's demand to intrude on the privacy rights of Oregon voters. The Court should thus dismiss DOJ's complaint for failure to state a claim.

---

[2] DOJ absolutely was required to respond to Intervenors' motion to dismiss—if it had any arguments to make in opposition. That motion was filed (initially as a proposed motion to dismiss) on the same day that the State Defendants moved to dismiss. *See* ECF Nos. 31 & 32. The Court then granted intervention and scheduled a hearing on both motions to dismiss before DOJ filed its opposition. *See* ECF Nos. 52, 54, & 57. And even if DOJ's opposition to Intervenors' motion to dismiss were due 14 days after intervention was granted on December 5, *see* D. Or. L.R. 7(e), DOJ would have been required to respond—at the latest—by December 19.

## ARGUMENT

**I.    DOJ fails to state a claim under the Civil Rights Act of 1960.**

**A.    DOJ's demand failed to state a proper basis and purpose.**

Title III imposes a key limitation that DOJ gives short shrift—it requires DOJ to provide "the basis and the purpose" of its demand to election officials. 52 U.S.C. § 20703. DOJ's demand to Oregon fails on both fronts.

DOJ's demand to Oregon did not provide *any* basis for believing Oregon violated any federal voting rights law—or any federal law, for that matter. *See* Mot. at 18–19; *see also* Compl. ¶ 51 (alleging DOJ stated the purpose for its demand was to "ascertain Oregon's compliance" with the NVRA and HAVA, but failing to allege DOJ stated any basis for its demand). That immediately distinguishes this case from the authorities DOJ cites—in each, DOJ provided an explicit statement of "basis" *and* "purpose" as required by Title III. In *Kennedy v. Lynd*, for instance, DOJ's demand letter to election officials said:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (internal quotation marks omitted); *see also Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). That demand clearly stated a basis for believing the recipient counties had infringed on the right to vote *and* a purpose for the demand for records. DOJ's failure here to plead that it stated any comparable basis for its demand to Oregon election officials is fatal to its claim.[3]

---

[3] DOJ attempts to manufacture an after-the-fact—and highly implausible—basis for its request.

DOJ's opposition also confirms it lacks a proper "purpose" for its demand. It acknowledges that the alleged purpose of its demand is to assess Oregon's voter list maintenance under the NVRA and HAVA, *see* Opp. at 9—statutes passed decades after the Civil Rights Act of 1960 that have nothing to do with the denial of the right to vote and, in the case of the NVRA, have distinct and carefully calibrated disclosure requirements designed by Congress. That dooms DOJ's Title III claim. As DOJ's cited cases show, Title III authorizes investigations into *the denial of the right to vote. See Lynd*, 306 F.2d at 228; *Bruce*, 298 F.2d at 861; *Coleman*, 313 F.2d at 868; *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). DOJ does not cite any authority supporting its attempt to use Title III for different purposes entirely.

DOJ's only response is to seize on an out-of-circuit opinion arising out of Mississippi and Louisiana in 1962 to claim that DOJ's asserted purpose in making a Title III demand is "not open to judicial review," no matter how implausible or how disconnected it may be from the statute it claims to seek to enforce. Opp. 11–12 (quoting *Lynd*, 306 F.2d at 226). That bold assertion flies in the face of decades of precedent. Just two years after *Lynd*, the Supreme Court squarely rejected the Fifth Circuit's reasoning in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), which concerned a government request for a district court to enforce a tax subpoena. *See id.* The Supreme Court held that to invoke the powers of a federal court to enforce the subpoena, the government

---

Opp. at 10–11 (suggesting Oregon's voter registration levels are too high). This is insufficient for numerous reasons, including because high levels of voter registration alone do not suggest a violation of federal law—particularly since one of the NVRA's purposes is to *encourage* voter registration, *see* 52 U.S.C. § 20501—and because Title III requires DOJ's initial "demand" to contain the statement of basis and purpose and so does not permit DOJ to concoct a basis in response to a motion to dismiss. *Id.* § 20703.

must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *See id.* As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in judicial review of government document requests is thus simply not the law.

Since *Powell,* courts—including the circuit court that issued *Lynd*—have regularly subjected government document requests to judicial review, including probing the basis and purpose for the requests. *E.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the basis and purpose of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (internal quotation marks and citation omitted). Just in the past few months, multiple district courts have quashed subpoenas when DOJ sought to assert subpoena authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at \*12, \*17 (E.D. Pa. Nov. 21, 2025) (striking subpoena demands for records relating to gender-affirming care when DOJ "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at \*5 (D. Mass. Sep. 9, 2025) (quashing subpoena for records relating to gender-affirming care

REPLY IN SUPPORT OF MOTION TO DISMISS                                                     Page 5

when DOJ "failed to show proper purpose" and rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). This Court should do the same here.

DOJ's attempt to read "purpose" in a vacuum to mean *any conceivable purpose* also fails as a matter of statutory interpretation. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Accordingly, "the meaning of a word cannot be determined in isolation." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). And even where a statutory term "standing alone[] is broad," it "cannot be construed in a vacuum." *Home Depot U.S.A.*, 587 U.S. at 441 (quoting *Davis*, 489 U.S. at 809). Rather, "reasonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Statutory context is particularly critical where courts are asked to determine "whether Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022).

These principles require reading the term "purpose" in the specific context of the Civil Rights Act of 1960—a law Congress enacted "to secure a more effective protection of the right to vote." *Gallion*, 187 F. Supp. at 853; *see also* H.R. Rep. No. 86-956, at 7 (1960) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote because of race"). DOJ's reading eschews this essential statutory context, ripping the term "purpose" from its statutory mooring, all in an unfounded effort to claim that Title III

permits blanket inspection of state voter files for any conceivable purpose. This Court should reject such an unprecedented effort.

> **B.     Title III permits redacting sensitive voter information.**

Just as "nothing in the text of the NVRA prohibits" redacting sensitive voter information before disclosure, *Pub. Int. Legal Found., Inc. v. Bellows* ("*PILF*"), 92 F.4th 36, 56 (1st Cir. 2024), nothing in the text of Title III of the Civil Rights Act prohibits such redactions. DOJ points to nothing in the text of Title III to the contrary.

The two cases DOJ cites to support its claim that Title III compels the production of sensitive voter information each cut against DOJ's demand. It again cites *Lynd*—but that court explained that Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added). DOJ here is unsatisfied with Oregon's *public* voter list and instead seeks confidential, *private* information on all voters in the state, which Oregon—like most states— protects from disclosure. *See* Or. Rev. Stat. § 247.948(2).

DOJ's cite to a recent Tenth Circuit decision is even more confused. *See* Opp. at 12–13. Echoing the First Circuit's decision in *PILF*, the Tenth Circuit in *Voter Reference Found., LLC v. Torrez* held that a New Mexico law restricting the *use* of records subject to disclosure under the NVRA was preempted by federal law. Nos. 24-2133, 24-2141, 2025 WL 3280300, at *9–14 (10th Cir. Nov. 25, 2025). But the court also held that to "extent the State wishes to *redact* appropriate personal information before providing the voter data, *the NVRA does not prohibit that limitation*." *Id.* at *9 n.14 (emphasis added). Citing a New Mexico privacy law that resembles Oregon's here, *Torrez* endorsed the state redacting "sensitive information" such as voters' social security numbers, full birth dates, and telephone numbers before disclosing its voter list. *Id.* (citing N.M.

Stat. Ann. § 1-4-5.5(B)). Just as the NVRA does not prohibit redacting sensitive voter information, neither does the Civil Rights Act of 1960.

### C. The voter list DOJ seeks is not a record or paper that came into Oregon election officials' possession.

Finally, DOJ offers no response at all to the textual limitation on the scope of Title III. *See generally* Opp'n to Defs.' Mot. Dismiss ("Opp."). Since DOJ "fail[ed] to counter" this point, the Court "may treat that argument as conceded." *Just. v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1134 (D. Or. 2015) (citation omitted), *aff'd*, 720 F. App'x 365 (9th Cir. 2017); *see also United States v. Baldon*, 956 F.3d 1115, 1126 (9th Cir. 2020) (government "concedes the point" by "not contest[ing]" argument); *Leupold & Stevens, Inc. v. Lightforce USA, Inc.*, 501 F. Supp. 3d 987, 1007 (D. Or. 2020) ("The Court will not attempt to develop the parties' arguments for them[.]").

DOJ claims Title III of the Civil Rights Act of 1960 authorizes the Attorney General to demand *any* record or paper concerning voter registration in the possession of state election officials. *See, e.g.*, Compl. ¶ 30. But the statute is narrower than DOJ suggests. Congress required state election officials to grant access in certain circumstances to only those "records and papers which *come into* [*their*] *possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). As Intervenors explained, dictionaries and courts equate "coming into possession" with receiving or acquiring something from an outside source. *See* Intervenors' Mot. to Dismiss ("Mot.") at 14–17, ECF No. 31. The plain language of the statute thus forecloses DOJ's claim for Oregon's voter list because it is not a record that it *received* or *acquired* from others—it is a record that Oregon election officials *created*.[4] Because an internally generated statewide database like Oregon's voter

---

[4] Though DOJ does not suggest otherwise, HAVA makes clear that state voter lists are created by state election officials. *See* 52 U.S.C. § 21083(a) (directing "each State, acting through the chief

registration list is not the sort of record covered by Title III, DOJ fails to state a viable claim that Oregon violated Title III by declining to provide DOJ its unredacted voter list.

DOJ's concession on this textual limit is particularly ironic given that DOJ repeatedly harps on the importance of obeying "statutory text" in response to *other* arguments. Opp. at 7–8. It insists, for instance, that the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Id.* at 8 (quoting *Connell v. Lima Corp.*, 988 F.3d 1089, 1108 (9th Cir. 2021)). Quite so. But as DOJ fails to dispute, applying the plain text of Title III as Congress wrote it requires this Court to conclude that Oregon's voter list is outside the scope of Title III, meaning that DOJ's expansive Title III claim fails as a matter of law and must be dismissed.

## II.     DOJ fails to state a claim under the NVRA.

DOJ's NVRA claim also conflicts with the plain language of the statute and the weight of case law. It should thus come as no surprise that DOJ has abandoned this claim in its recent waves of suits for states' voter lists, *see supra* note 1, and offers only a half-hearted, nearly citation-free defense of its NVRA claim in its opposition here, *see* Opp. at 14.

As Intervenors explained, courts have consistently read the NVRA's disclosure provision to permit states to redact sensitive voter information protected by state law prior to disclosure. *See* Mot. at 9–10 (citing cases). Rather than addressing that mountain of case law head-on, DOJ tries to wave it all away by asserting that DOJ gets *special* inspection rights beyond what is permitted to public. *See* Opp. at 14. DOJ points to no authority—not in the statute, and not in the case law—

---

State Election official" to "implement . . . a single, uniform, official, centralized interactive computerized statewide voter registration list defined, maintained, and administered at the state level"); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1199 (11th Cir. 2019) (explaining that HAVA "mandated that the states *create* computerized statewide voter registration lists" (emphasis added)).

to support that conclusion. That is because there is none. The NVRA contains but one disclosure provision, which requires states to "make available for public inspection" certain records relating to voter registration. 52 U.S.C. § 20507(i). That is it. There is no special carve-out for DOJ; under the NVRA's plain text, whatever inspection rights DOJ has extends to the public as well, and vice versa. Accordingly, there is no reason to read the NVRA's "public inspection" provision to extend to voters' sensitive personal information, including driver's license numbers, partial social security numbers, and full dates of birth, which together constitute the "holy trinity of identity theft"[5] and should remain private—as Oregon law requires. *See* Or. Rev. Stat. § 247.948(2).

DOJ's request for special inspection rights is particularly bold considering the NVRA's public inspection provision specifies only two pieces of personal information a state must retain for inspection: the "names and addresses" of voters sent cancellation notices. 52 U.S.C. § 20507(i)(2). Congress could have chosen to require more, but it did not—and as DOJ argues, the Court must "apply statutes on the basis of what Congress has written, not what Congress might have written." Opp. at 8 (quoting *Connell*, 988 F.3d at 1108). DOJ also fails to explain why it specifically requires sensitive, private information on voters—*in addition* to their names, addresses, and other information Oregon has already made available—to "ascertain Oregon's compliance" with the NVRA in the first place. Compl. ¶ 51; *see also* Opp. at 14. DOJ thus fails to state a claim under the NVRA.

### III.   DOJ fails to state a claim under HAVA.

DOJ concedes, as it must, that HAVA has no "public disclosure provision." Opp. at 16. That concession dooms its HAVA claim, which alleges Oregon violated the statute by "fail[ing]

---

[5] Liz Landers & Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sep. 26, 2025, https://perma.cc/7V2J-QY9V.

to provide sufficient information" to DOJ. Compl. ¶ 70; *see also id.* ¶¶ 71–72. DOJ offers no explanation how Oregon could have violated HAVA by failing to provide DOJ information if HAVA does not require Oregon to disclose any information to anyone in the first place. DOJ's HAVA claim should thus be summarily dismissed.

DOJ attempts to resuscitate the claim by alleging in its opposition brief that Oregon violated HAVA's *substantive* list maintenance requirements. *See* Opp. at 16. But that is not what DOJ pleaded in its complaint. Far from alleging Oregon violated any list maintenance requirement, the complaint alleges instead that Oregon's "refusal to provide the requested information ***prevents*** the Attorney General from evaluating Oregon's procedures to ensure that duplicate names are eliminated from the computerized list" and "***prevents*** the Attorney General from determining Oregon's compliance with the list maintenance requirements of HAVA." Compl. ¶¶ 71–72 (emphases added).[6] DOJ cannot now claim the Court should read its allegations to support a claim that Oregon substantively violated HAVA when DOJ's own complaint expressly states that DOJ is unable to reach any determination on that precise issue. Nor should the Court countenance this attempt to rewrite DOJ's HAVA claim in its opposition brief. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (explaining that the Federal Rules do not permit a plaintiff to amend pleadings in a "memorandum . . . in opposition to a defendant's motion to dismiss").

Even if DOJ could morph its HAVA disclosure claim into something else entirely, it still does not come close to plausibly alleging that Oregon violated its obligations under HAVA. DOJ references so-called "anomalies" in Oregon's voter registration data and questions its efforts to

---

[6] Even while trying to argue for a substantive HAVA violation in its opposition, DOJ continues to admit that *it needs additional information* to "allow the United States to determine [Oregon's] compliance with HAVA." Opp. at 15.

remove inactive voters. Opp. at 10, 16. But the NVRA—not HAVA—governs states' responsibility to remove ineligible names from voter rolls. *See* Compl. ¶ 68 (citing 52 U.S.C. § 20507); *see also Gonzalez v. Arizona*, 677 F.3d 383, 402 (9th Cir. 2012) (en banc) (explaining "the NVRA regulates voter registration, whereas HAVA is concerned with updating election technologies and other election-day issues at polling places"), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1 (2013); *Bellitto*, 935 F.3d at 1202 ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."). And under the NVRA, Oregon need only make "reasonable efforts" to remove two categories of registrants from its rolls: those who are no longer eligible due to death or change in residence. 52 U.S.C. § 20507(a)(4); *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) (holding that only removals under subsection (a)(4) are mandatory and criticizing any suggestion to the contrary as a "blatant misrepresentation of the statute"). DOJ makes no allegation that Oregon failed to make "reasonable efforts" to remove such registrants, and DOJ's questions about Oregon's efforts to remove *other* categories of voters from the rolls—such as inactive voters—are beside the point because the NVRA and HAVA do not obligate Oregon to remove such voters in the first place. *See Bellitto*, 935 F.3d at 1195 ("[T]he statute could not be clearer: the states and their subsidiaries are required to conduct a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible on account of death or change of residence, and only on those two accounts."); *see also RNC v. Benson*, 754 F. Supp. 3d 773, 792 (W.D. Mich. 2024) (dismissing NVRA claim premised solely upon allegedly high registration rates where plaintiff did not allege any "breakdown" in state's removal program), *aff'd*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sep. 25, 2025). DOJ thus fails to state a claim that Oregon violated its list maintenance obligations.

In a last-ditch effort, DOJ asserts "the demand for records that the United States has made under HAVA falls into the conventional realm of discovery." Opp. 17. DOJ suggests it will seek Oregon's voter list in discovery in this case and *then* "determine whether Defendants are violating the list maintenance requirements" of HAVA. *Id.* But that gets things precisely backwards: To get to discovery, DOJ must first allege "sufficient facts" "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). DOJ does not get to jump to discovery in the hopes of finding facts from which it could then state a claim. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (holding litigants may not use litigation as a "fishing expedition" with "no basis other than gross speculation" (citation omitted)); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) (holding litigants may not "conduct fishing expeditions in hopes of discovering claims that they do not know they have"). The Court should thus dismiss DOJ's HAVA claim.

## CONCLUSION

The Court should dismiss DOJ's complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b).

December 22, 2025

Respectfully submitted,

*/s/ Abha Khanna*
**ABHA KHANNA***
WA Bar No. 42612
**WALKER McKUSICK***
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

**CHRISTOPHER D. DODGE***
D.C Bar. No. 90011587
**BRANDEN LEWISTON***
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

*Appearing Pro Hac Vice*

*Attorneys for Intervenors*
*Our Oregon, Daniel DiIulio, Stephen*
*Gomez, and Emma Craddock*

**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division

**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
Civil Rights Division
**TIMOTHY F. MELLETT**
**DAVID D. VANDENBERG**
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
David.Vandenberg@usdoj.gov
Tel. (202) 307-2767
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Case No. 6:25-cv-01666-MTK |
| Plaintiff, | |
| v. | Plaintiff United States of America's MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS |
| STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | |
| Defendants. | |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

ER-70

**TABLE OF CONTENTS**

BACKGROUND ................................................................................................. 5

LEGAL STANDARDS ..................................................................................... 5

ARGUMENT ..................................................................................................... 6

   I.     The United States Has a Valid Legal Claim Under the Civil Rights Act of 1960.......... 7

      A.    The language of the Civil Rights Act of 1960 unambiguously permits the requests ..... 7

      B.    The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act. ....................................................................................... 8

      C.    The United States is entitled to unredacted "copying" and "reproduction" of Defendants' federal election records ....................................................... 11

   II.    The United States Has a Valid Legal Claim Under the NVRA. .................................. 14

  III. The United States Has a Valid Legal Claim Under HAVA.................................. 15

      A.    Defendants have failed to engage in reasonable list maintenance practices resulting in an inaccurate voter roll........................................................... 15

      B.    HAVA does not have a public disclosure requirement, because, unlike the NVRA, there is no private right of action under the Act ...................................... 16

   IV.   The United States is Complying with Applicable Privacy Laws ................................. 17

      A.    The United States is Complying with the Privacy Act. ................................ 18

      B.    The First Amendment does not Prohibit NVRA and HAVA Enforcement.................. 19

      C.    The E-Government Act does not bar Claims by the United States.............................. 20

      D.    The Driver's Privacy Protection Act does not Bar Claims by the United States.......... 21

CONCLUSION.................................................................................................. 23

ER-71

## TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ...................................... 7

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 6, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 6, 8

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) .............................................................. 16

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ........................................................................................................................... 13

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) .......................................................... 7, 11, 13

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) .................................................................. 15

*Connell v. Lima Corp.*, 988 F.3d 1089 (9th Cir. 2021) ................................................................ 8

*Ebert v. Poston*, 266 U.S. 548 (1925) ..................................................................................... 8

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd,* 878 F.3d 371(D.C. Cir. 2017) .................................................. 21

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 356 F. Supp 85 (D.D.C. 2019) ....................... 20

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95 (D.C. Cir. 2019) .................... 11, 20

*Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) ..................................................... 6

*In re Dumont*, 581 F.3d 1104 (9th Cir. 2009) ............................................................................. 8

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ....................................................................... 11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................................................. passim

*Landers v. Quality Commc'ns., Inc*., 771 F.3d 638 (9th Cir. 2015) ............................................... 6

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) ....................................................... 5

*Mi Familia Vota v. Fontes,* 129 F.4th 691 (9th Cir. 2025) ......................................................... 19

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988) ............................................................... 15

*Reno v. Condon*, 528 U.S. 141 (2000) ................................................................................... 22

*Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) ................................................................. 5, 16

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) ............... 17

*United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) ............................................. 8

*Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) ..................................................................................................................... 12, 14

*Voting Rts. Coal. v. Wilson,* 60 F.3d 1411 (9th Cir. 1995) ............................................ 19

**Statutes**

18 U.S.C. § 2721 ....................................................................................... 21, 22

18 U.S.C. § 2725 ............................................................................................. 21

28 C.F.R § 0.51 ............................................................................................... 18

28 C.F.R. § 0.50 ............................................................................................. 18

44 U.S.C. § 3101 ............................................................................................ 18

5 U.S.C. § 552 ................................................................................................ 19

5 U.S.C. § 552a .......................................................................................... 18, 19

52 U.S.C. § 20507 .................................................................................. 13, 14, 19

52 U.S.C. § 20701 ........................................................................................ 7, 12

52 U.S.C. § 20703 ....................................................................................... passim

52 U.S.C. § 21083 ............................................................................ 13, 15, 17, 19

52 U.S.C. § 21111 ........................................................................................... 16

Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 (1960) ................................ 7

E-Government Act of 2002, Pub. L. No. 107–347, § 208 ....................................... 20, 21

The Privacy Act of 1974, Pub. L. No. 93–579, § 2, 88 Stat. 1896 (1974).................................. 19

**Regulations**

64 Fed. Reg. 73585-02 (Dec. 30, 1999).......................................................................... 18

66 Fed. Reg. 8425-02 (Jan. 31, 2001).......................................................................... 18

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ...................................................................... 18

70 Fed. Reg. 43904-01 (July 29, 2005) ...................................................................... 18

74 Fed. Reg. 57194 (Nov. 4, 2009)............................................................................. 18

82 Fed. Reg. 24147-01 (May 25, 2017)....................................................................... 18

82 Fed. Reg. 24151 (May 25, 2017) .......................................................................... 18

**Legislative Materials**

106 Cong. Rec. 7767............................................................................................... 7

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ......................................................... 16

H.R. Rep. 107-329(I) (2001)..................................................................................... 15

## BACKGROUND

The Attorney General of the United States brought this straightforward case to enforce the requirements of three complimentary federal statutes. Those laws, the Civil Rights Act of 1960 ("CRA"), the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"), govern voter registration and voting records pertaining to federal elections.[1] Oregon reported voter registration data to the U.S. Election Assistance Commission in the Commission's 2024 Election Administration and Voting Survey ("EAVS"), released in late June 2025. *See* Compl., ECF No. 1, at 11-12. Some of Oregon's significant data was missing. *Id.* at 12-14. The data Oregon did report to the Commission exhibited significant deficiencies on several metrics and is inconsistent with reasonable list maintenance efforts under federal law. *See id.* The United States engaged in repeated correspondence with Defendants, requesting Defendants' cooperation to address the U.S. Department of Justice's ("Department") data requests in a manner consistent with federal privacy law. Those efforts were met by delay, obfuscation, and, finally, a refusal by Defendants to produce records mandated by federal law and necessary to assess Oregon's compliance with federal civil rights laws. *See id.* at 15-19. This litigation followed.

Defendants now move to dismiss the United States' Complaint on several grounds, none of which have merit. *See* Defs.' Mot. to Dismiss & Decl. in Support, ECF Nos. 32, 33. Defendants begin with a thread-bare recitation of what they describe as the "legal standard." Defendants then ask the Court to decide this case on the merits at the pleading stage after rewriting the statute to encompass requirements omitted by Congress. This Court should decline Defendants' invitation and deny their motion to dismiss.

## LEGAL STANDARDS

When considering a motion to dismiss, a court must read the complaint in the light most favorable to the non-moving party and accept all material allegations in the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court's inquiry is confined to the allegations in the complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A

---

[1] The United States has set out a detailed background of this litigation previously. *See* Mem. of Law in Opp. to Mot. To Intervene by Our Oregon, Dan DiIulo, Stephen Gomez and Emma Craddock ("Pl.'s Opp. Br."), ECF 30 at 6-11.

motion to dismiss must be denied, if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, dismissal under Rule 12(b)(6) is proper only when the complaint either: (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Iqbal*, 556 U.S. at 678. In evaluating whether a complaint states a plausible claim for relief, a court relies on its "judicial experience and common sense." *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 639 (9th Cir. 2015). A motion to dismiss is viewed with disfavor and is rarely granted. *Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1196 (9th Cir. 2022).

## ARGUMENT

The three claims brought by the United States each offer overlapping and complimentary statutory authority for obtaining records from Defendants to enforce federal voter list maintenance requirements. Defendants seek dismissal of these claims ostensibly because, they argue, none of them have a plausible basis. To arrive at that conclusion, Defendants ask the Court to: (1) disregard the plain language of the statutes by injecting ambiguities that do not exist and thereby allow the Court to legislate from the bench to rewrite the provisions in a manner that suits them; (2) selectively ignore relief specified in the statutes that foreclose their defenses; and (3) make merits findings that are not only inappropriate at the motion-to-dismiss stage, but are barred altogether by one of the statutes. The clear text of the CRA, HAVA, and NVRA, and interpretative case law require that, accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Finally, the privacy arguments are also not grounds on which to dismiss the Complaint. Accordingly, Defendants' Motion to Dismiss should be denied.

I.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960.

A.    The language of the Civil Rights Act of 1960 unambiguously permits the requests.

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Section 301 provides, in pertinent part, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying…by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendants argue that the Court must go outside the text of the statute to the legislative history and find that Title III is limited "to investigations of civil rights violations, namely, efforts to prevent eligible voters from voting or registering to vote for illegal reasons like racial discrimination." Defs.' Mot. to Dismiss, ECF No. 32, at 24. No such language appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701-20706. Moreover, in a decision cited by Defendants, *see* Defs.' Mot. to Dismiss, ECF No. 32, at 6, 9, the court concluded "that the prescribed standard of Section 301 is *clear and unambiguous*…." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).

Requiring more by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Where, like here, "the language of an enactment is clear…the words employed are to be taken as the final expression of the meaning intended." *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)). Well established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *Missouri Pac.*, 278 U.S. at 278-79 (citations omitted). In that manner, the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *Connell v. Lima Corp.*, 988 F.3d 1089, 1108 (9th Cir. 2021).

As a result, the United States respectfully submits that the Court must decline Defendants' invitation to rewrite the statute to add a requirement of racial discrimination. *See Ebert*, 266 U.S. at 554 ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").[2]

**B.    The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act.**

The filing of a request for federal election records under Title III by the Attorney General "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Instead, "it is … comparable to the form of a traditional order to show cause, or

---

[2] Defendants' recitation of what they describe as legislative history for which they seek judicial notice is, therefore, not helpful to the Court in its consideration of Defendants' Motion to Dismiss.

to produce in aid of an order of an administrative agency." *Id.* The Fifth Circuit has described in detail what the Attorney General must allege to satisfy the statute:

> Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying….

*Id*. at 225-26 (quoting 52 U.S.C. § 20703).

Under the plain language of the statute, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226. Likewise, there is no basis in the proceedings to challenge "the reasons why the Attorney General considers the records essential…." *Id.* Rather, if the Attorney General has stated in writing the basis and the purpose of the demand, Title III is satisfied, and the records must be produced. 52 U.S.C. § 20703.

The United States has met those requirements. On July 16, 2025, the Attorney General requested that Oregon, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include the HAVA identifying numbers. Compl. ¶ 34. On August 14, 2025, the Attorney General made a written demand pursuant to Title III for a current copy of Oregon's computerized Statewide Voter Registration List ("SVRL"), including each registrant's full name, date of birth, residential address, and the HAVA identifying numbers. The demand explained that the purpose was to evaluate the state's compliance with its list-maintenance requirements under federal law and described how the privacy of data would be protected and could be transmitted securely. *Id.* ¶¶ 47-51. Defendants tacitly acknowledge that DOJ provided the "statement of its purpose," required by Section 303. Defs.' Mot. to Dismiss, ECF No. 32, at 21. In a letter dated August 21, 2025, the Secretary refused to cooperate and declined to produce the requested voter records. *Id.* ¶ 55.

Conversely, Defendants argue that the United States failed to describe the basis for its request. Defs.' Mot. to Dismiss, ECF No. 32, at 21. To arrive at that conclusion, Defendants erroneously employ a hyper-technical reading of Section 303. In doing so, they deliberately ignore the detailed basis the United States provided in writing to them in its July 16, 2025, letter. That basis will be restated briefly here.

As the United States explained to Defendants in that letter, the 2024 EAVS Report revealed several anomalies in Oregon's voter registration data inconsistent with reasonable list maintenance efforts. The letter described how Oregon reported nearly as many registered voters as the entire citizen-voting-age population in Oregon, with a registration rate in 2024 of 95.3 percent of the citizen-voting-age population. Compl. ¶ 39. Further, the letter noted that the ratio of active registered voters to the citizen-voting-age population has been unusually high for several years, with Oregon reporting a registration rate of 93.3 percent of citizen voting age population in 2022 and 93.1 percent in 2020. *Id*. Oregon reported that it had removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which is well below the national average of 9.1%. *Id*. ¶ 41. Even more notable, Oregon reported that it removed only 4,417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice. *Id*. ¶ 42. Oregon had the lowest number of removals in this category, compared to the total number of registered voters of all states in the survey. *Id*. In Oregon's second letter to the Department, the State still had not explained what its current data-collection, data-entry, and reporting procedures were across all Oregon's counties and what changes were being implemented, how, or when. *Id*. at ¶¶ 38-45. Taken together, the data that Oregon reported to the EAC raised several red flags that necessitated further investigation. Therefore, the Attorney General requested that Oregon, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and produce its complete voter registration list to include the HAVA identifying numbers. *Id*. ¶ 51.

Defendants deride the serious gaps and red flags in their own voter registration data as being somehow insufficient to "fall within Title III's scope." Defs.' Mot. to Dismiss, at 21. As support for their contention, they take out of context a quote from a Fifth Circuit decision that

statistical evidence "was 'a matter which does not bear any particular importance to the present inquiry.'" *Id.* (quoting *Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962)). What Defendants leave out is the reason why evidence bearing on the Attorney General's purpose and basis is immaterial. In *Lynd,* the Fifth Circuit explained, "On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding." 306 F.2d at 226. By doing so, the statistics included in the Department's July 10, 2025, letter became immaterial beyond satisfying Section 303's requirement for a basis for the request. Under the language of the statute, "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand, [Section 303], *is not open to judicial review or ascertainment*." *Id.* (emphasis added). [3]

To summarize, the United States identified the basis for its request for federal election records by identifying, in its July 16, 2025, letter to Defendants, voter registration metrics reported by Oregon that raise serious concerns regarding the state of its SVRL. When Defendants failed to produce those records, the United States followed up with a written statement of its purpose: to evaluate Oregon's compliance with list-maintenance requirements under federal law in its August 14, 2025, letter. That correspondence satisfies the plain language in Section 303 of the CRA for a "demand in writing by the Attorney General or [her] representative" including "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. *See generally Coleman*, 313 F.2d at 868 (a written demand "made for the purpose of investigating possible violations of a Federal statute," such as HAVA and the NVRA, is sufficient to comply with Section 303).

**C.** **The United States is entitled to unredacted "copying" and "reproduction" of Defendants' federal election records.**

Section 303's language provides that "[a]ny record or paper required by [Section 301] of this title to be retained and preserved shall" upon written demand by the Attorney General or her

---

[3] Amici also speculate that the Department is collecting the SVRL for nefarious purposes.  As explained in Section IV of this brief, the United States is complying with the Privacy Act, and the use of the data is limited to the enforcement of the list maintenance requirements in HAVA and the NVRA. "[I]t is pure speculation to suggest that the Census Bureau will not comply with its legal obligations to ensure the privacy of respondents' data…." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 928 F.3d 95, 102 (D.C. Cir. 2019) (citation omitted).

ER-80

representative, stating the basis and purpose, "be made available for inspection, *reproduction, and copying…*" 52 U.S.C. § 20703 (emphasis added). Records that must be produced to the United States pursuant to this demand cannot be contested as long as the records fall within Section 301's broad definition: "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a federal election "for a period of twenty-two months from the date of any general, special or primary election" for federal office. 52 U.S.C. § 20701. As the Fifth Circuit explained in *Lynd*, "the scope of the order to produce" is "not open to judicial review or ascertainment." 306 F.2d at 226. "This is so because the papers and records subject to inspection and demand have been specifically identified by Congress," as set out in Section 301. *Id.* "The incorporated standard of [Section 301] is *sweeping*." *Id.* (emphasis added). The question is only "open for determination" by the Court, if "a genuine dispute … arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers … relating to any … act requisite to voting….'" *Id.*

Defendants do not contest that the request by the United States for Oregon's SVRL for the statutory 22-month period comes within Section 301's "sweeping" scope. *Id.* Apparently acknowledging the futility of their position, Defendants again ask the Court to legislate two limitations that are conspicuously absent from Title III: that the Attorney General be restricted to "inspection" that is limited to "a redacted version of Oregon's voter registration list…." Defs.' Mot. to Dismiss, ECF No. 32, at 22. The Tenth Circuit recently ruled against New Mexico's use restrictions on voters' data when disclosure was demanded by a non-profit party. *Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300, at *7-10 (10th Cir. Nov. 25, 2025). The court held that New Mexico's use restrictions and data restriction ban were obstacles to the accomplishment and execution of the full purposes and objections of Congress and were preempted by the NVRA. *Id.* at *10, *14. The weakness of Defendants' position is so transparent that they are not even troubled to explain how the Court can limit the United States to "inspection" in the face of Section 303's references to "reproduction" and "copying." Defs.' Mot. to Dismiss, ECF No. 32, at 22. Were Defendants' position to be adopted, it would eviscerate Title III. The

Attorney General can only meaningfully investigate and enforce the list maintenance requirements of HAVA and the NVRA by having access to the voter identification numbers required by federal law. For each voter, that includes their driver's license number, last four digits of their social security number, or other identifying number. *See* 52 U.S.C. § 21083(a)(5)(A). That information is necessary to identify duplicate registration records, registrants who have moved, ineligible registrants, and registrants who have died or otherwise are no longer eligible to vote in federal elections.[4] There is no question that enforcement of the list maintenance requirements of HAVA and the NVRA are for "the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the data the United States has requested under the CRA is the same that twenty-five states and the District of Columbia routinely share through the Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements.[5] Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

Consequently, United States is entitled to production of Oregon's unredacted SVRL under the plain language of Section 303 of the CRA. *See* 52 U.S.C. § 20703.

---

[4] *See generally* 52 U.S.C. § 20507(a)(4) ("In the administration of voter registration for elections for federal office, each State shall – (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant…."); 52 U.S.C. § 21083(a)(4) ("The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including… (A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters….").

[5] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Dec. 3, 2025).

**II.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE NVRA.**

Defendants' motion to dismiss the NVRA claim must be denied. The plain text of Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which necessarily must be used to ensure the accuracy of the official list of eligible voters, and is the some of the best evidence of a state's voter list maintenance efforts. The United States has properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts. For the same reasons described in the preceding discussion, all the well-pled allegations in the Complaint must be accepted as true. As stated repeatedly throughout this brief, Oregon's voter registration metrics are strongly suggestive of list maintenance violations. It is wholly improper to determine, based upon the pleadings alone, that Defendants have "complied with the requirements of the NVRA." Defs.' Mot. to Dismiss, ECF No. 32 at 15.

Finally, it is unnecessary to address in any detail the citations of authority that Defendants can deny the United States what they describe as "highly sensitive personal information" of voters. *Id.* at 22. All the decisions that Defendants summarize involved efforts by *private organizations* to obtain that data and accordingly are distinguishable from this action. Here, the United States is seeking certain data in the SVRL in its efforts to enforce the NVRA in Oregon. As discussed in the final section, federal privacy laws that apply to the Attorney General and the Department of Justice ensure that no sensitive voter data or information will be used, disseminated, nor disclosed in a way inconsistent with the law. Private plaintiffs are not subject to those federal privacy laws, which makes the analysis of whether to redact some personally identifiable information different. Consequently, Defendants' motion to dismiss the NVRA claim should be denied.[6]

---

[6] Contrary to what Defendants argue on page 15 of their brief, to the extent Oregon law purports to bar the United States from obtaining federal election data necessary to enforce the NVRA, that conflicting law is preempted. *Voter Reference Found., LLC*, at *7-10.

### III. THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER HAVA.

#### A. Defendants have failed to engage in reasonable list maintenance practices resulting in an inaccurate voter roll.

Congress enacted HAVA "to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). The Act recognizes that "the federal government can play a valuable [role]" in assisting states modernize their elections systems. *Id.* at 32. HAVA requires states to implement a computerized SVRL that is coordinated with other state agency databases. *See* 52 U.S.C. § 21083(a)(1)(A). It also establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Under HAVA Section 303, a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* HAVA's list maintenance requirements apply to all states, including Oregon. *See Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (collecting citations).

Defendants acknowledge HAVA includes list maintenance requirements that apply to all states, which includes Oregon. *See* Defs.' Mot. to Dismiss, ECF No. 32, at 22. Nevertheless, Defendants assert that the United States "cites no HAVA provision for authority to demand documents." *Id.* at 17. Defendants cite to *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) to assert that the "authority of government agency to issue document request 'created solely by statute.'" *Id. Peters* is inapposite. *Peters* concerns subpoena authority, not a request for information the United States did here. *Peters*, 853 F.2d at 696 ("authority of an administrative agency to issue *subpoenas for investigatory purposes* is created solely by statute.") (emphasis added).

The balance of Defendants' arguments asks the Court to determine that Defendants comply with HAVA on the face of the incomplete and self-serving responses they provided in their correspondence with the United States. Compl. ¶¶ 52-64. Defendants misunderstand the HAVA count in the Complaint. The allegation is that Oregon is failing to provide information that would allow the United States to determine compliance with HAVA.

The United States has reason to be concerned about whether there may be HAVA violations. The Complaint identified numerous anomalies from voter registration data that Oregon reported in the 2024 EAVS Report, which show that Defendants' list maintenance program may not comply with HAVA. Id. ¶¶ 38-44. The Court must read these allegations in the Complaint in the light most favorable to the United States and accept all those material allegations as true. *Sanders*, 794 F.2d at 481. At this early juncture, the Court can reasonably conclude that the incomplete data provided by Oregon to the EAC makes the request for the SVRL "plausible on its face" to help determine compliance with HAVA. *Iqbal*, 556 U.S. at 678. The United States plainly has stated a cognizable legal theory under HAVA and pled sufficient facts to support that theory. As a result, dismissal is inappropriate. *Id.* Defendants' motion to dismiss the HAVA claim, therefore, must be denied.

**B.    HAVA does not have a public disclosure requirement, because, unlike the NVRA, there is no private right of action under the Act.**

Defendants further argue that the HAVA claim must be dismissed because HAVA has no standalone, public disclosure provision. Defs.' Mot. to Dismiss, ECF No. 32, at 16. That is true, and it explains why the United States is entitled to the federal election records it has demanded through its HAVA claim. The only enforcement provision in HAVA authorizing a cause of action in federal court is found at Section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce Section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce

HAVA.

At the same time, however, that does not leave the United States without recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary investigative process necessary to enforce Section 303 of HAVA. The only way to determine compliance with HAVA's requirement to provide the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A) is to review the SVRL to determine whether that information is being collected consistently. *See* 52 U.S.C. § 21083(a)(5)(A). Here, the CRA cases are also instructive. Under the CRA, election officials are required to preserve and produce federal election records "to facilitate the investigation … before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] … is to give a party litigant the right to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks the necessary records to establish its claim under HAVA to determine whether Defendants are violating the list maintenance requirements in Section 303 of the Act.

Accordingly, Defendants' motion to dismiss the HAVA claim should be denied.

## IV.   THE UNITED STATES IS COMPLYING WITH APPLICABLE PRIVACY LAWS.

Oregon fails to raise legitimate privacy issues to mandate a dismissal. The United States does not dispute that the Privacy Act applies here, and the United States is complying with those requirements. The First Amendment does not prohibit the Department's collection of voter information to assess compliance with the NVRA and HAVA. The requirement for a Privacy Impact Assessment under E-Government Act does not apply to the list maintenance activities being conducted by the United States under the NVRA and HAVA. Similarly, the Driver's Privacy Protection Act does not limit the United States' ability to conduct list maintenance activities.

Opposition to Defendants' Motion to Dismiss   17

ER-86

### A.    The United States is Complying with the Privacy Act.

Defendants argue that the United States must comply with the Privacy Act, in spite of the fact that the United States has been doing just that. However, there is no requirement that the United States needs to plead its compliance with the Privacy Act in every complaint that may contain personally identifiable information.

The voter information that the Department is collecting is maintained consistent with Privacy Act protections as explained at Civil Rights Division - Department of Justice - Privacy Policy.[7] The full list of routine uses for this collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the NVRA, HAVA, and the Civil Rights Act of 1960, and the United States made its requests pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

Similarly, to the extent that Defendants are concerned about the transport of such data to the United States, the Department uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS").  That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs. [8]

Moreover, the Privacy Act does not bar the disclosure of Oregon's SVRL to the United States. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department,

---

[7] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[8] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." 5 U.S.C. § 552(f)(1). State and local entities fall outside that definition. The Privacy Act erects "certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(5)(B), 88 Stat. 1896 (1974), only within the scope of federal agency record systems. There is no basis for Oregon to fail to disclose information to a federal agency for law enforcement purposes, particularly here, where the United States is complying with the provisions of the Privacy Act.

**B.     The First Amendment does not Prohibit NVRA and HAVA Enforcement.**

The United States is not violating 5 U.S.C. § 552a(e)(7) of the Privacy Act by requesting Oregon's SVRL. Defendants contend that the United States violates the First Amendment, because the request for the SVRL is not "pertinent to and within the scope of an authorized law enforcement activity" under 5 U.S.C. § 552a(e)(7). Defs.' Mot. to Dismiss, ECF No. 32, at 9.

Initially, the United States made it clear that it seeks the SVRL to enforce Section 8 of the NVRA and Section 303 of HAVA regarding list maintenance. Both of those statutes were enacted pursuant to the Elections Clause and have broad mandates. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1,7-9, n.1 (2013) (discussing broad scope of Elections Clause); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 712 (9th Cir. 2025) (citing *Voting Rts. Coal. v. Wilson,* 60 F.3d 1411, 1413-14 (9th Cir. 1995) as rejecting a challenge to the constitutionality of the NVRA in part because "the Supreme Court has read the grant of power to Congress in Article I, section 4 [of the U.S. Constitution] as quite broad"). HAVA requires the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A), and the Attorney General will be assessing Oregon's compliance with that provision. *See* 52 U.S.C. § 21083(a)(5)(A). Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … the death of the registrant," or "a change in the residence of the registrant…" 52 U.S.C. § 20507 (a)(4). A registered voter list that includes all fields will allow for more accurate matching when determining whether a person on the voter registration list is

ER-88

deceased or in finding duplicate registrations.

The work of ERIC supports this proposition. ERIC is a private organization whose mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls," and Oregon is a member of ERIC.[9] According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC…." *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from their MVD [motor vehicle departments] to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address, driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record "active" or "cancelled"), phone number, and email address when available. These fields improve the quality of the data matching process." *Id.* List maintenance is an authorized enforcement activity, and Oregon's voter registration list is integral to that effort.

### C.    The E-Government Act does not bar Claims by the United States.

The E-Government Act neither authorizes dismissal of this case nor limits the United States' ability to bring suit. The E-Government Act is not applicable to the United States' enforcement of NVRA and HAVA.  The United States is not initiating a new process whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government." [10]  The request is made to the State of Oregon to provide a voter registration list they already maintain, pursuant to federal law to

---

[9] *FAQ's*, ERIC, (Dec. 4, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/; "Security" https://ericstates.org/security/

[10] The Census collects information from individuals and therefore, regularly conducts privacy impact assessments.  The court found collection did not begin until the Census was mailed out to individuals in *Elec. Priv. Info. Ctr. v. U.S. Dep't of Commerce*, 356 F. Supp 85, 90 (D.D.C. 2019) dismissed on other grounds 928 F.3d 95 (D.C. Cir. 2019).

analyze their federally required list maintenance.[11]

Applying the E-Government Act to the enforcement of voting statutes would lead to an absurd result, whereby the Department of Justice would need to do thousands of Privacy Impact Assessments whenever the Department gathered any voter data to enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens Voting Act (UOCAVA).  Nor does the purpose of the privacy provision in the E-Government Act suggest it was meant to encompass the enforcement provisions of all voting laws where voter data is examined.  *See* Pub. L. No. 107–347, § 208(a).

Even if the Court found the E-Government Act applies here—and it should not—Defendants' reliance on *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017), *aff'd.,* 878 F.3d 371 (D.C. Cir. 2017) ("EPIC"), does not support dismissal of a complaint based on an alleged failure to conduct a PIA. The plaintiff in *EPIC* sought to enjoin a federal commission's collection of state voter information, claiming the commission had failed to prepare a PIA under Section 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds, finding that "As we read it, the provision is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind." *EPIC*, 878 F.3d at 378 (D.C. Cir. 2017).

**D.     The Driver's Privacy Protection Act does not Bar Claims by the United States.**

The Driver's Privacy Protection Act (DPPA) generally prohibits the disclosure of "personal information" obtained by a state Department of Motor Vehicles in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1), (3), (4). The statute explicitly contains

---

[11] When the Civil Rights Division began use of ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it conducted a Privacy Act Assessment ("PIA") as required by the E-Government Act. *See* Office of Privacy and Civil Liberties | DOJ Privacy Impact Assessments (visited December 4, 2025).

exceptions that permit certain governmental uses. Under 18 U.S.C. § 2721 (b)(1), disclosure is allowed "for use by any government agency … in carrying out its functions," including law enforcement or other regulatory enforcement purposes. This statutory language demonstrates that the DPPA was not intended to block all government access to DMV records.

The Supreme Court in *Reno v. Condon*, 528 U.S. 141 (2000) confirmed this principle. In that case, the court upheld the DPPA against a Tenth Amendment challenge, emphasizing that the statute regulates the use of DMV information rather than the state itself. *Id*. at 151. The court explicitly recognized that the DPPA does not restrict a state agency's use of personal information for its own functions, including enforcement and other official governmental activities. As the court stated, "The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes." *Id*. at 145.

The DPPA's prohibition is clearly not implicated in the present case. The DOJ is a government agency performing a statutorily mandated function —verifying the accuracy of voter registration records maintained by state and local entities. Under the governmental-function exemption in § 2721(b)(1), the DOJ's use of DMV-provided information is permissible, even though the information originates from a motor vehicle record.  Transfers of DMV data to government agencies for official functions, including voter registration administration, are therefore consistent with the DPPA and fall squarely within the statute's exceptions.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Dismiss by Defendants.

DATED: December 8, 2025

                                     Respectfully submitted,

                                     HARMEET K. DHILLON
                                     Assistant Attorney General
                                     Civil Rights Division

                                     */s/David D. Vandenberg*
                                     MAUREEN RIORDAN
                                     Senior Counsel, Voting Section

                                     TIMOTHY F. MELLETT
                                     DAVID D. VANDENBERG
                                     Trial Attorneys, Voting Section
                                     Civil Rights Division
                                     U.S. Department of Justice
                                     4 Constitution Square
                                     150 M Street NE, Room 8.143
                                     Washington, D.C. 20002
                                     Telephone: (202) 307-2767
                                     Maureen.Riordan2@usdoj.gov
                                     Timothy.F.Mellett@usdoj.gov
                                     David.Vandenberg@usdoj.gov
                                     *Attorneys for the United States*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

<u>/s/ David D. Vandenberg</u>
David D. Vandenberg

# United States of America v. State of Oregon, et al.
## USDC NO: 6:25-cv-01666-MTK
## State Defendants Motion to Dismiss
## Exhibit 2

ER-94



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*          *Washington, D.C. 20530*

August 14, 2025

<u>Via Mail and Email</u>

The Honorable Tobias Read
Secretary of State
900 Court Street NE, Capitol Room 136
Salem, OR 97301
oregon.sos@sos.oregon.gov

Re:     **Complete Oregon's Voter Registration List with All Fields**

Secretary Read:

We understand that the time the Justice Department has provided your state to respond to the request for a statewide voter registration list ("VRL") and other information has not reached its deadline.

Given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We have requested Oregon's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list.  Any statewide prohibitions are clearly preempted by federal law.

General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Oregon's complete and current VRL. The purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Oregon must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department by the date set for your delivery by our original letter, or by August 21, 2025, whichever is later.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:     Dena Dawson
        Elections Director
        Public Service Building, Suite 126
        255 Capitol St. NE
        Salem, OR 97310
        elections.sos@sos.oregon.gov

---

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

# United States of America v. State of Oregon, et al.
## USDC NO: 6:25-cv-01666-MTK
## State Defendants Motion to Dismiss
## Exhibit 3

ER-98





**Tobias Read**
*Oregon Secretary of State*

August 21, 2025

U.S. Department of Justice
Civil Rights Division
Voting Section
950 Pennsylvania Ave, NW -4CON
Washington, DC 20530

Dear Mr. Gates, Ms. Dhillon, and Ms. Riordan:

I am in receipt of your letters requesting information regarding Oregon's compliance with the list-maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq*.  I understand that the U.S. Department of Justice ("DOJ") has concerns about Oregon's procedures for removing ineligible persons from our voter lists.

As the state's chief elections officer, I take my responsibilities under the NVRA and HAVA seriously.  Each of Oregon's 36 counties administers its own voter-registration program and maintains its own voter list.  Historically, this created challenges for statewide data reporting and analysis, including in connection with the Election Assistance Commission's Election Administration and Voting Survey ("EAVS").  Since taking office in January, my administration has been working to improve our statewide data-collection practices by developing uniform data-entry standards and reporting procedures across all counties.  These changes will improve the quality, consistency, and transparency of the data, allowing Oregon to produce more detailed statewide reports moving forward.

Your requests, however, exceed the scope of both the NVRA and HAVA.

**Voter Registration List**

You have requested the current electronic copy of Oregon's computerized statewide voter-registration list, to include each voter's name, birthdate, residential address, and state driver's license number or partial Social Security number.  However, no federal law compels the production of state voter rolls.  The Attorney General's right to bring enforcement actions under the NVRA and HAVA does not create a corollary right to the personal data of Oregonians.

255 Capitol St NE, Ste 180
Salem, Oregon 97310

Information (503) 986-1523
sos.oregon.gov                                              oregon.sos@sos.oregon.gov

**Exhibit 3, Page 1 of 4**

ER-99

*Executive Office*
**Page 2**

Given the limits of the NVRA and HAVA, you also cite to the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq*. While the CRA does require the production of certain voter-registration records upon demand by the Attorney General, your request seeks more and different data than that allowed by 52 U.S.C. § 20703. That section of the CRA requires a state to retain and produce to the Attorney General "any application, registration, payment of poll tax, or other act requisite to voting in such election" dating back 22 months. In other words, the CRA could support a request for voter-registration applications submitted during the statutory period. *See Penn. State Conference v. Sec'y Com. of Penn*., 97 F.4th 120 (3rd Cir. 2024) (interpreting similar phrase in section 10101(a)(2)(B) of the Civil Rights Act of 1964 and concluding that it is "best read to refer to paperwork used in the voter qualification process"). But the statute does not entitle the Attorney General to obtain a state's entire current voter-registration list, especially one that includes sensitive personal data.

And even if it did, the Attorney General is not seeking the data for a permissible purpose. The CRA requires that any demand for records "contain a statement of the basis and the purpose therefor." The federal government's self-identified purpose is to "ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." But the purpose of the CRA — and its associated record-retention and demand provision — was to protect access to the ballot. *State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961), *cert. den.*, 366 U.S. 913, 81 S. Ct. 1085 (1961), *and cert. den.*, 366 U.S. 913, 81 S. Ct. 1086 (1961). The Attorney General cannot exploit the voter-protection provisions of the CRA to pursue the administration's anti-voter goals under the NVRA and HAVA.

In short, I see no federal authority for your request. Nonetheless, if the DOJ complies with the applicable provisions of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a,[1] then my office will produce the voter-registration data required by state law. Oregon allows for public access to certain voter-registration data, including a voter's residence address and birth year, for a fee. There is no exception for the federal government. If the DOJ intends to follow the process outlined in OAR 165-002-0020, and pay the fee mandated by ORS 247.945, then my agency will arrange to securely produce the publicly available portions of its statewide voter-registration list. Please note that ORS 247.948 prohibits the disclosure of, among other things, a voter's birth month, birth day, Social Security number, and driver's license number.

---

[1] While I appreciate your assurances that Oregonians' sensitive personal information will be protected by the Privacy Act, I cannot release the data unless and until the DOJ publishes a System of Records Notice in the Federal Register that explains what data your agency is collecting, why you need it, and how you intend to use and store it.

*Executive Office*
**Page 3**

**Election Officials**

You also asked for the names of the election officials that implemented Oregon's program of voter-list maintenance between November 2022 and the present.  At this agency, the program is implemented by Oregon's Elections Director and Deputy Elections Director.  During the relevant period, the Elections Director position was held by Deborah Scroggin (2022–2023), Molly Woon (2023–2024), and Dena Dawson (2025–present); and the Deputy Elections Director position was held by Luke Belant (2022–2024) and Alma Whalen (2025–present).  With respect to local elections officials, the county clerks that have served Oregon from 2022 to present are listed on the attached spreadsheet.

**EAVS Survey and Confirmation Notices**

The remainder of your inquiries relate to the most recent EAVS data from Oregon.  For your reference, Oregon's "general program for removing ineligible voters from the official lists of eligible voters" is outlined in ORS chapter 247 and, specifically, in ORS 247.555 through ORS 247.580.  Those statutes prescribe, among other things, the process by which county election offices send confirmation notices to potentially ineligible voters.  Consistent with both ORS 247.580 and section 20507(i) of the NVRA, my office could provide a list of the voters to whom such confirmation notices are sent for a period of two years.  As permitted by section 20507(i), this agency charges a fee for copies of that list, which is treated as a "less-than-statewide" voter list for purposes of OAR 165-002-0020.  There is no exception for the federal government.  Again, if the DOJ intends to comply with the applicable provisions of the Privacy Act and also follow the process outlined in, and pay the fee mandated by, OAR 165-002-0020, then my agency will arrange to securely produce the publicly available portions of this less-than-statewide voter list for the previous two years.

Finally, you asked that my office provide narrative explanations regarding certain aspects of Oregon's EAVS data.  I am not aware of anything in the NVRA or HAVA that would require this.  And with respect to disclosing the registration information for ineligible voters in particular, that would both exceed my obligations under federal law and almost certainly violate state law.

In short, I am confident that Oregon has complied with its disclosure obligations under the NVRA and HAVA.  As my administration works to standardize and improve statewide data collection and reporting, that process will necessarily improve the quality of our EAVS data.  I look forward to contributing more thorough and detailed information to future EAVS reports.

Sincerely,

**Tobias Read**
*Oregon Secretary of State*

*Executive Office*
**Page 4**

**Enclosure**

# United States of America v. State of Oregon, et al.
## USDC NO: 6:25-cv-01666-MTK
## State Defendants Motion to Dismiss
## Exhibit 1

**U.S. Department of Justice**

Civil Rights Division

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC  20530*

July 16, 2025

<u>Via Mail and Email</u>

The Honorable Tobias Read
Secretary of State
900 Court Street NE, Capitol Room 136
Salem, OR 97301
oregon.sos@sos.oregon.gov

Dear Secretary of State Read:

We write to you as the chief election official for the State of Oregon to request information regarding the state's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*.

Please provide a list of the election officials who are responsible for implementing Oregon's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA. Please include both the actions taken by Oregon officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions. *See* 52 U.S.C. § 20510.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of Oregon's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format.  Please specify what delimiter is used, if applicable, or provide a file layout along with a database user manual, coding list, or other materials that define or explain how a voter record is coded into the statewide voter

registration list and reported in the electronic copy of the statewide voter registration list.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. A review of the most recent EAVS report indicates that in response to Question A1b, there are nearly as many registered voters listed as active as the citizen voting age population in Oregon, with a registration rate in 2024 of 95.3 percent of the citizen voting age population. Furthermore, the EAVS report indicates that the ratio of active registered voters to citizen voting age population has been unusually high for several years, with Oregon reporting a registration rate of 93.3 percent of citizen voting age population in 2022 and 93.1 percent in 2020. Please explain Oregon's general program for removing ineligible voters from the official lists of eligible voters.

2. In the EAVS data for Question A10a, Oregon sent 357,959 confirmation notices, and 100% of the "Result of Confirmation Notice" is categorized under "Other." Please explain what "Other" means for the results of the 357,959 confirmation notices that Oregon sent. Please also describe Oregon's process for keeping track of the results of Confirmation Notices.

3. In the EAVS data for Question A12a, Oregon removed 111,621 voters, or 3.6% of registered voters, which is well below the national average of 9.1%. For each category of removal, except for A12e discussed below, please explain what actions Oregon is taking to ensure that ineligible voters are removed from the official lists of eligible voters. Please explain why the number of removals is so low.

4. In the EAVS data for Question A12e, Oregon reported that it removed only 4,417 voters of a total of 3,060,374 registered voters for failure to respond to a sent confirmation notice and not voting in the two most recent federal elections. Oregon, by far, has reported the lowest numbers of removals for this category of all NVRA covered states reporting data. Please explain how Oregon uses the confirmation notice process to remove voters and why the number of removals is so low.

5. In the EAVS data for Question A1c, total inactive voters, Oregon did not report any number for any county. Please explain if Oregon has any processes for determining if a voter should be listed as inactive and explain how voters are tracked when they fail to respond to a confirmation notice.

6. In the EAVS data for Question A3d, Oregon reported 1,585 total duplicate registrations. In the EAVS data for Question A12h, the number of voters removed for the reason of a duplicate voter registration record, Oregon reported "Does not apply" for all counties. In the EAVS data for Question A13a, Oregon reported 1,256 voter records were merged. Please explain what actions Oregon took with respect to the 1,585 duplicate registrations and Oregon's process for removing duplicate registrations and merging records. Please explain

2

whether Oregon checks the voter rolls for duplicate registrations, and if so, how often that check is performed.

Please provide a description of the steps that Oregon has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures Oregon used to remove those ineligible voters from the registration list. Please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

1. Non-citizen

2. Adjudicated incompetent

3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

Cc:    Dena Dawson
       Elections Director
       Public Service Building, Suite 126
       255 Capitol St. NE
       Salem, OR 97310
       elections.sos@sos.oregon.gov

3

DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI  #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
        kate.e.morrow@doj.oregon.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  6:25-cv-01666-MTK |
| Plaintiff, | STATE DEFENDANTS' MOTION TO DISMISS |
| v. | |
| STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | |
| Defendants. | |

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTION ........................................................................................................................ 1

MEMORANDUM IN SUPPORT .................................................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 3

III.    LEGAL STANDARD .......................................................................................... 5

IV.    ARGUMENT ....................................................................................................... 6

        A.    The Federal Government must comply with the Privacy Act of 1974 and
             other federal privacy laws to collect and maintain a system of records and
             is prohibited from collecting information relating to protected First
             Amendment activity like voting ................................................................. 7

             1.    Plaintiff's Request for information from Defendants violates the
                    Privacy Act of 1974. ...................................................................... 7

                    a.    The Privacy Act prohibits Plaintiff from collecting or
                              maintaining records of an individual's First Amendment
                              activity .................................................................................. 9

                    b.    The Privacy Act requires Plaintiff to issue a System of
                              Records Notice for collecting and maintaining information
                              on individuals ..................................................................... 10

             2.    Plaintiff's demand for information violates the E-Government Act. ....... 12

        B.    Plaintiff does not assert a cognizable claim for relief under the NVRA
             because the NVRA does not require Oregon to produce the requested
             sensitive and private information. .......................................................... 13

        C.    HAVA does not require Oregon to produce any information beyond that
             required by the NRVA. .......................................................................... 15

        D.    Plaintiff has not posed a valid request for information under the Civil
             Rights Act. ............................................................................................ 18

              1.    Plaintiff may not invoke Title III to investigate issues unrelated to
                      civil rights. ................................................................................... 18

              2.    Plaintiff's demand for records fails to satisfy an essential statutory
                      requirement. ................................................................................. 21

              3.    Plaintiff is entitled to only in-person, redacted inspection of
                      records covered by Title III ............................................................ 22

V.     CONCLUSION .................................................................................................. 23

Page i

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-108

**TABLE OF AUTHORITIES**

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.,* 285 F.2d 430 (5th Cir. 1961) ........................................... 18

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025) ................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ........................................................... 6

*Avila v. Spokane Sch. Dist*. 81, 852 F.3d 936, 941 (9th Cir. 2017) ............................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ............................................................. 5

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) ..................................................... 9

*Bufkin v. Collins*, 604 U.S. 369, 379 (2025) .................................................................. 18

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty*., 963 F.3d 982, 990 (9th Cir. 2020).................................................................................................. 21

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est*., 470 F.3d 827, 846 (9th Cir. 2006) ............................................................................................................ 19

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) ............................................................................ 12

*Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1295–96 (9th Cir. 2019) ..................... 7, 9

*Greater Birmingham Ministries v. Sec'y of State*, 105 F.4th 1324, 1333 (11th Cir. 2024).......... 14

*In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).................................................................. 20

*In re Coleman*, 208 F. Supp. at 199–200 ...................................................................... 21

*In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024).................................................... 22

*Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).............................................................. 20, 21

*Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011) ....................................... 3, 6

*MacPherson v. I.R.S.*, 803 F.2d 479, 484 (9th Cir. 1986) ................................................... 9

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ......................................... 6

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).................................................... 5

*Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022)................................................. 16

*Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025).................................................................................................. 18

Page ii

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-109

*Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) ............................................................ 16

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) .................................... 14

*Project Vote/Voting For America, Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012) ........................................................... 14, 17

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025) ........................................ 13

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ........................... 14, 15, 22

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267–68 (4th Cir. 2021) ...................................................................................................... 14

*Reno v. Condon*, 528 U.S. 141, 143 (2000) ................................................................................. 6

*Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025) ..................................................................... 7

*Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ....................................... 12

*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990) ................................................. 9

*Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ........................................................... 7

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) .................................................................... 6

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734, 739 (S.D. Miss. 2014) ............................ 14

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) .................................................................................................................. 7

*United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) ........................................................... 20

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ..................................................... 3, 6

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) ................ 19

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ........................................... 6

**Statutes**

ORS 192.826(3)(a) ...................................................................................................................... 4

ORS 247.014 ............................................................................................................................... 6

ORS 247.017 ............................................................................................................................... 6

ORS 247.945(1) ................................................................................................................... 1, 4, 8

ORS 247.948(1)(a) ............................................................................................................. 4, 8, 15

ORS 247.948(2) ............................................................................................................. 1, 4, 8, 15

ORS 247.965(2) ........................................................................................................................... 4

Page iii

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 1

Rule 12(b)(6)............................................................................................................. 5

**Regulations**

68 Fed. Reg. 47610-01 ............................................................................................ 11

68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003) ......................................................... 11

68 Fed. Reg. at 47611 ............................................................................................. 11

70 Fed. Reg. 43904-01 ............................................................................................ 11

70 Fed. Reg. 43904-01 (July 29, 2005) .................................................................. 11

82 Fed. Reg. 24147 ................................................................................................. 11

82 Fed. Reg. 24147-01 ............................................................................................ 11

82 Fed. Reg. 24147-01 (May 25, 2017).................................................................. 11

OAR 165-002-0020 .................................................................................................. 4

**Constitutional Provisions**

Oregon Const. art. II ................................................................................................. 3

**United States Code**

18 U.S.C. §§ 2721(a), 2725(1), (3), & (4) ............................................................... 6

5 U.S.C. § 552a........................................................................................................ 7

5 U.S.C. § 552a(a)(3)............................................................................................... 8

5 U.S.C. § 552a(a)(4)............................................................................................... 8

5 U.S.C. § 552a(e)(4)(D) ........................................................................................ 11

5 U.S.C. § 552a(e)(7)............................................................................................ 9, 12

5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f)..................................................... 8

52 U.S.C. § 20501(b) .............................................................................................. 13

52 U.S.C. § 20507(a)(4)................................................................................... 10, 13, 21

52 U.S.C. § 20507(a)–(f) ........................................................................................ 13

52 U.S.C. § 20507(b) .............................................................................................. 13

52 U.S.C. § 20507(i) ............................................................................................... 13

Page iv

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-111

52 U.S.C. § 20507(i)(1) ............................................................................................... 13

52 U.S.C. § 20507(i)(2) ............................................................................................... 13

52 U.S.C. § 20701 ................................................................................................... 18, 19

52 U.S.C. § 20703 ................................................................................................... 21, 23

52 U.S.C. § 20706 ........................................................................................................ 18

52 U.S.C. § 20901–21145 ............................................................................................ 16

52 U.S.C. § 21083(a)(1)(A) ......................................................................................... 16

52 U.S.C. § 21083(a)(2), (a)(4) ................................................................................... 10

52 U.S.C. § 21111 .................................................................................................. 16, 17

52 U.S.C. § 21145(a)(4) ............................................................................................... 17

52 U.S.C. § 552a(a)(5) ................................................................................................. 10

52 U.S.C. § 552a(a)(5), (e) .......................................................................................... 10

52 U.S.C. §§ 20701, 20703 .......................................................................................... 22

52 U.S.C. §§ 20901–21145 .......................................................................................... 16

52 U.S.C. §§ 21081–21085 .......................................................................................... 16

52 U.S.C. §§ 21083(a)(2), (4) ...................................................................................... 16

52 U.S.C.§ 20507(i)(1) ................................................................................................ 15

E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002)..................... 12

National Voter Registration Act, 52 U.S.C. § 20501 *et seq.* ......................................... 3

Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II).............................................................. 12

Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974) ...................................................... 11

Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701, *et seq* ("CRA")............... 4

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

### LR 7-1 CERTIFICATION

In compliance with LR 7-1(a), undersigned counsel for Oregon have conferred in good faith with all counsel regarding the issues presented by this Motion to Dismiss. Plaintiff opposes the motion.

### MOTION

Defendants State of Oregon and Tobias Read in his official capacity as Secretary of State for the State of Oregon (together, Defendants or Oregon) move the Court for an order dismissing Plaintiff United States of America's Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The grounds for this Motion to Dismiss are set forth in the accompanying Memorandum.

### MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

Plaintiff United States of America, through the Department of Justice, seeks an order directing the Defendants Secretary of State and the State of Oregon to turn over a copy of Oregon's computerized voter registration list of its nearly 3.8 million registered voters. *See* Compl. ¶ 35. It demands Oregon do so "with all fields" of information associated with each individual voter's registration record. *Id*. ¶ 51. Plaintiff also demanded that Defendants answer several narrative questions about data provided to the Election Assistance Commission and generally about Oregon's practices related to unauthorized registrants. *Id*. ¶¶ 38, 45.[1] Oregon law provides that any person may request a list of voters; however, that list cannot contain a voter's birth month, birthday, social security number, or driver's license number. ORS 247.945(1); ORS 247.948(2). Defendants offered to provide the publicly available list under its normal procedures,

---

[1] While the Complaint alleges that Defendants did not adequately respond to these narrative questions, Plaintiff's Prayer for Relief asks only that the Court order Defendants to provide the unredacted voter list and does not ask the Court to compel Defendants to provide answers. Nevertheless, for the reasons set forth in this brief, the statutes cited by Plaintiff contain no such authority.

Page 1 -   STATE DEFENDANTS' MOTION TO DISMISS
       TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

if Plaintiff met certain requirements of federal law. Plaintiff responded by filing this lawsuit. *See* Declaration of Thomas H. Castelli at Ex. 3.

Plaintiff is not legally entitled to the sensitive voter information it demands. Plaintiff fails to adequately allege compliance with federal laws protecting citizens' personal information: the Privacy Act and the E-Government Act. Without compliance with these acts, Plaintiff is prohibited from collecting the information in the voter list. Each of Plaintiff's three claims fail.

In its first count, DOJ claims it is entitled to the protected voter information under the National Voter Registration Act's ("NVRA") public inspection provision. However, nothing in NVRA's disclosure provision requires the production of highly sensitive information, and numerous courts have found that the NVRA permits redactions of sensitive voter information. In its second count, Plaintiff claims its generic enforcement authority under the Help America Vote Act ("HAVA") empowers it to demand and receive the sensitive data requested. No legal authority supports that proposition. In its third count, DOJ attempts to invoke Title III of the Civil Rights Act of 1960 ("CRA"), a civil rights era tool that allows the Attorney General to make demands to inspect elections records to enforce voting rights laws related to discrimination in voter registration based on race. Plaintiff fundamentally misunderstands the CRA's purpose and operation. Plaintiff cannot provide a statement of the basis and the purpose for its records demand for a purpose consistent Title III's narrow scope. Additionally, like the NVRA and HAVA, nothing in the CRA requires the production of sensitive information or prevents its redaction.

For the reasons set forth below, the Court should therefore grant Oregon's Motion to Dismiss the Complaint

Page 2 -   STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## II.    BACKGROUND

The Plaintiff United States of America asks the Court to order the Defendants to provide confidential, sensitive information regarding Oregon voters.[2] On July 16, 2025, Plaintiff sent Oregon Secretary of State Tobias Read a letter requesting "[t]he current electronic copy of Oregon's computerized statewide voter registration list." Castelli Decl., Ex. 1 (July 16, 2025 Letter)[3]; Compl. ¶ 34–35, ECF 1. The July letter also asked Defendants to provide narrative answers to broad, often vague, questions "in electronic form." Compl. ¶¶ 36–45; Castelli Decl., Ex. 1 at 2–3. Six numbered questions asked the Secretary to "explain" or "describe" certain information that Oregon provided to Election Assistance Commission's (EAC) Election Administration and Voting Survey (EAVS). *See* Compl. ¶¶ 36–44; Castelli Decl., Ex. 1 at 2–3. A seventh, unnumbered question asked the Secretary to "provide a description of the steps that Oregon has taken" to remove ineligible voters from its voting rolls and identify registered voters deemed ineligible because they were non-citizens, adjudicated incompetent, or had felony convictions. *See* Compl. ¶ 45; Castelli Decl., Ex. 1 at 3. Plaintiff claimed that it is entitled to this information under the NVRA, 52 U.S.C. § 20501 *et seq.* Castelli Decl., Ex. 1 at 1.

By letter dated August 14, 2025, Plaintiff stated that it requires the voter list "to assess your state's compliance with the statewide VRL maintenance provisions of the [NVRA]." Castelli Decl., Ex. 2 at 1 (August 14, 2025 Letter)[4]; Compl. ¶¶ 47–51. The letter expanded Plaintiff's request, specifying that the voter list must contain "*all fields*, which includes either the

---

[2] Oregon's Constitution and laws refer to voters as "electors." *See e.g.*, Oregon Const. art. II. For clarity, Defendants will use the term voters in this motion.

[3] Plaintiff refences and quotes from the July 16, 2025 letter in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 34–35. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011).

[4] Plaintiff also refences and quotes from the August 14, 2025 letter in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 34–35. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *Ritchie*, 342 F.3d at 908; *Lonberg*, 776 F. Supp. 2d at 1206.

Page 3 -    STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Compl. ¶ 51 (quoting the August 14, 2025 letter, Castelli Decl., Ex. 2 at 1) (emphasis in original). For the first time in this second letter, Plaintiff invoked HAVA, 52 U.S.C. § 20501 *et seq*., and the CRA, 52 U.S.C. § 20701, *et seq*., as a basis for its demand.

Oregon law provides that any person may request a list of voters. ORS 247.945(1). The publicly available information of a voter is limited to the name, address, phone number, year of birth, party affiliation, if any, whether the person voted in previous elections, the voter's precinct, and the administrative number for the voter that is used by the Secretary of State's office. ORS 247.948(1)(a). The publicly available list may not include a voter's birth month, birthday, social security number, or driver's license number. ORS 247.948(2). The list must also exclude information about participants in the Address Confidentiality Program[5] or is otherwise deemed confidential.[6] ORS 247.945(1). The procedures to request a copy of the statewide voters list, or a less than statewide list are set forth in OAR 165-002-0020.

On August 21, 2025, Secretary of State Read sent a letter responding to Plaintiff's July 16 and August 14 demands for information. Compl. ¶ 52; Castelli Decl., Ex. 3 (August 21, 20225 Letter).[7] The Secretary's letter responded to the requests to explain Oregon's voter maintenance program by providing references to Oregon's statutes governing its general program for list maintenance, including the removal of ineligible voters. Defendants also responded to Plaintiff's request that they list current and prior election officials responsible for

---

[5] The Address Confidentiality Program applies to a "victim of domestic violence, a sexual offense, stalking, bias or human trafficking and that the applicant fears for the applicant's safety or the safety of the applicant's child or ward." ORS 192.826(3)(a).

[6] ORS 247.965 allows a voter to request their address be confidential for personal safety reasons or if the voter has been identified as an election worker. ORS 247.965(2).

[7] Plaintiff refences and quotes from the Secretary's August 21, 2025 letter responding to Plaintiff in its Complaint and its contents form the basis of Plaintiff's factual allegations. *See* Compl. ¶¶ 52–56, 59–60. Because the letter is incorporated by reference into the Complaint, it is properly considered on a motion to dismiss. *Ritchie*, 342 F.3d at 908; *Lonberg*, 776 F. Supp. 2d at 1206.

Page 4 -   STATE DEFENDANTS' MOTION TO DISMISS
        TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

implementing that Program. Castelli Decl. at Ex. 3 at 3. Defendants also stated that Plaintiff lacked federal authority for its request for the voter list or to require Defendants to provide narrative responses to Plaintiff's questions. Compl. ¶ 56; Castelli Decl., Ex. 3 at 2. Defendants noted that, as a condition to Plaintiff's demand for sensitive information related to Oregon voters, Plaintiff must comply with the Privacy Act of 1974 ("Privacy Act"), U.S.C. § 552a. Compl. ¶ 56; Castelli Decl., Ex. 3 at 2. Once Plaintiff issued the required System of Records Notice (SORN) in the Federal Register, Defendants offered to provide the publicly available voter list pursuant to the requirements of applicable state laws and rules. Compl. ¶ 56; Castelli Decl., Ex. 3 at 2. Although not specifically requested, and on the same conditions, Defendants also offered to provide a list of registered voters to whom a confirmation notice was sent in response to some of Plaintiff's narrative questions. Castelli Decl., Ex. 3 at 3.

Plaintiff has not issued a SORN related to its request for Oregon's voter list. Nor did plaintiff respond to Secretary Read's August 21, 2025 letter. Instead, it filed the Complaint asking the Court find that Oregon has violated the NVRA, HAVA, and Title III of the CRA, and order that Defendants provide "a current electronic copy of Oregon's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." Compl. at 21 (Prayer for Relief).

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, if accepted as true, are sufficient to "raise a right to relief above the speculative level" and to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Courts should grant Rule 12(b)(6) motions when there is no cognizable legal theory to support the claim. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). At the motion to dismiss stage, courts must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668

Page 5 -    STATE DEFENDANTS' MOTION TO DISMISS
        TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

F.3d 1136, 1140 (9th Cir. 2012). A court may consider documents not physically attached to a complaint where they are incorporated by reference and the complaint relies on them. *See Lonberg v. Freddie Mac*, 776 F. Supp. 2d 1202, 1206 (D. Or. 2011); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). To be entitled to a presumption of truth, however, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Courts need not credit a plaintiff's legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV.     ARGUMENT

This Court should dismiss Plaintiff's claims. First, Plaintiff has not complied with the Privacy Act of 1974 or the E-Government Act,[8] which are a prerequisite for Plaintiff—the federal government—to collect the requested information. Second, Plaintiff's claims under the NVRA and HAVA fail because neither statute requires Defendants to produce unredacted copies of the voter file, nor do they authorize Plaintiff to demand the sensitive information it seeks. Finally, Plaintiff's CRA claim fails because Plaintiff has not validly requested information

---

[8] Plaintiff's demand also likely violates the Driver's Privacy Protection Act ("DPPA"). In Oregon, the Driver and Motor Vehicle Services Division ("DMV") electronically provides to the Secretary certain information associated with each person who applies for, renews, or replaces a driver's license, permit, or identification card and who is qualified to register to vote. ORS 247.014;247.017. The DPPA prohibits disclosing "personal information" that is obtained by the DMV in connection with a "motor vehicle record." 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000). Plaintiff alleges no reason why driver's license numbers for millions of registered voters would be necessary to determine whether Oregon's general program of list maintenance is adequate. Plaintiff certainly has not alleged how it would use those driver's license numbers.

Page 6 -   STATE DEFENDANTS' MOTION TO DISMISS
          TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

relating to a civil rights investigation under the CRA. None of the statutes cited authorize Plaintiff to require defendant to answer narrative questions.

A.    **The Federal Government must comply with the Privacy Act of 1974 and other federal privacy laws to collect and maintain a system of records and is prohibited from collecting information relating to protected First Amendment activity like voting.**

Plaintiff demands that Defendants produce an unredacted voter list with sensitive personal identifying information as well as information related to Oregon voters' First Amendment activity. Congress, however, has limited federal agencies on when and what information it may request and store. Compliance with Plaintiff's request violates federal law. The Court should not order Defendants to be complicit in that violation. If the Court determines that the Privacy Act or other privacy issues raised should be treated as an affirmative defense, it may consider them at the motion to dismiss phase. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Specifically, if the Court finds an "obvious bar to securing relief on the face of the complaint," it can dismiss based on an affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quotation omitted). The Complaint shows three such obvious bars to relief: failure to comply with the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act.

1.    **Plaintiff's Request for information from Defendants violates the Privacy Act of 1974.**

The Privacy Act of 1974, as codified at 5 U.S.C. § 552a, bars DOJ's claim for Oregon voter information. "The Privacy Act exists to protect individuals from disclosure of government-collected information." *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025). "The passage of the Privacy Act was spurred by congressional concern in response to the explosion of computer technology, which allowed for compilation and storage of data in quantities not seen before, coupled with rightful and broad condemnation of government surveillance programs including Watergate and the FBI's COINTELPRO." *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1295–96 (9th Cir. 2019) (citing Steven W. Becker, *Maintaining Secret Government*

Page 7 -    STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-119

*Dossiers on the First Amendment Activities of American Citizens: The Law Enforcement Activity Exception to the Privacy Act,* 50 DePaul L. Rev. 675, 679 (2000)). "[T]he Act was 'designed to set in motion a long-overdue evaluation of the needs of the federal government to acquire and retain personal information on Americans, by requiring stricter review within agencies of criteria for collection and retention' of such information." *Id.* at 1296 (quoting S. Rep. No. 93-1183, at 2 (1974) (Conf. Rep.), as reprinted in 1974 U.S.C.C.A.N. 6916, 6917) (emphasis removed). The law created "certain safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974). Federal agencies are prohibited from collecting or maintaining records related to an individual's First Amendment activities (unless narrow exceptions apply), and they must follow specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

The Privacy Act applies to the detailed voter data requested by Plaintiff. A "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(4). The requested voter list meets this definition. The limited voter lists available under ORS 247.945(1) contain personal information like addresses, phone numbers, party registration, voting participation history, and year of birth. ORS 247.948(1)(a). The expanded list demanded by Plaintiff contains even more sensitive personal identifying information protected as confidential under Oregon law, such as drivers' license numbers, social security numbers, and full birth dates. *See* ORS 247.948(2); *see also* Compl. ¶ 51 (requesting the statewide voter registration list with "all fields," including sensitive personal data). If Plaintiff collects these records through this suit, it will result in a covered collection of records under the Privacy Act. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

Page 8 -   STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

**a.     The Privacy Act prohibits Plaintiff from collecting or maintaining records of an individual's First Amendment activity.**

The Privacy Act governs Plaintiff's request for records from Oregon and precludes collection of this data. The Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Plaintiff's demand conflicts with this statutory bar. The voter list contains voter registration information, party affiliation, and a voter's choice to participate or not in an election. This conduct by Oregon voters is a form of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression"); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990) (the expression of political beliefs and association through political affiliation is protected by the First Amendment). The Ninth Circuit has "recognize[d] that even 'incidental' surveillance and recording of innocent people exercising their First Amendment rights may have the 'chilling effect' on those rights that section (e)(7) was intended to prohibit. . . . Blanket allowance of such 'incidental' surveillance and recording under the guise of general investigation could permit the exception to swallow the rule." *MacPherson v. I.R.S.*, 803 F.2d 479, 484 (9th Cir. 1986).

No exception applies. No statute authorizes Plaintiff to maintain Oregonians' full, unredacted voter registration records. Plaintiff does not allege, nor could it, that it has received the express authorization of the millions of voters whose records it seeks. The information must, therefore, be "pertinent to and within the scope of an authorized law enforcement activity" to allow its collection and maintenance. *See* 5 U.S.C. § 552a(e)(7); *Garris*, 937 F.3d at 1295 ("[A]n agency may not 'collect' a record describing any individual's protected First Amendment activity 'unless pertinent to and within the scope of an authorized law enforcement activity.'").

Page 9 -   STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-121

Any law enforcement activity must be relevant at the time of collection of the records and at the time of maintaining any such record. *Garris*, 937 F.3d at 1295.

Plaintiff alleges that its purpose in demanding the unredacted voter list is to investigate whether Defendants are "complying with the statewide voter registration list maintenance provisions of the NVRA." Compl. ¶ 34; *see also* Castelli Decl., Ex. 1 at 1. The First Amendment protected information in the voter list is not pertinent to or within the scope of Plaintiff's purported investigation of Oregon's list maintenance program and practices under the NVRA and HAVA. *See* 52 U.S.C. § 20507(a)(4) (NVRA provision requiring states to "conduct a general program that makes a reasonable effort" to remove ineligible voters due to death or change in residence), cited in Compl. ¶¶ 10–14; 52 U.S.C. § 21083(a)(2), (a)(4) (similar provision in HAVA), cited in Compl. ¶ 21. Plaintiff does not allege that it is investigating any individual voter for any criminal or civil violation. The complete voter list, with all the sensitive information and information related to protected First Amendment activity are not pertinent or within the scope of an investigation into list maintenance practices. If a record "has at best only speculative relevance to an unstated law enforcement purpose," this exception is not satisfied. *Garris*, 937 F.3d at 1299. Because no exception applies, the statutory bar on maintaining records on First Amendment activities prohibits Plaintiff from collecting the requested records.

### b. The Privacy Act requires Plaintiff to issue a System of Records Notice for collecting and maintaining information on individuals.

Even if Plaintiff were to meet the standard for collecting information related to First Amendment activity or limit its request to information that does not contain that information, heightened protections apply when an agency establishes or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 52 U.S.C. § 552a(a)(5), (e). The Privacy Act requires Plaintiff to publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id.* § 552a(e)(4).

Page 10 - STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

The attempt to obtain unredacted voter records from multiple states is an example of a "system of records." *See* 52 U.S.C. § 552a(a)(5). The Complaint identifies no SORN allowing it to collect this data, nor are Defendants aware of any applicable SORN. Plaintiff alleges that the records requested would be collected and maintained under the "SORN titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003) ; 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)." Compl. ¶ 62. The SORN found at 68 Fed. Reg. 47610-01 states that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. The regulation does not cover a voter list complete with names, addresses, party affiliation, and voting history, much less driver's license numbers, social security numbers, and full dates of birth. The other regulations cited by Plaintiff amended certain US DOJ SORNs. 70 Fed. Reg. 43904-01 adds a new routine use of records maintained under the SORN for disclosing information related to closed investigations of public concern. 82 Fed. Reg. 24147-01 modified all US DOJ SORNs related to responses to a breach of personally identifying information. 82 Fed. Reg. 24147.

Plaintiff cannot shoehorn collecting records of Oregon voters, and other state's voter information, under the existing 2023 SORN for maintaining investigatory files. Plaintiff's efforts to collect and maintain this data are barred under the Privacy Act. By requiring a SORN to be filed in the federal register, the Privacy Act requires Plaintiff to put any new system of records up to public notice and comment regarding the nature, scope, and routine uses of the records before the government collects Americans' data. 5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin*., 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025). The Privacy Act was meant to establish "safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974). Allowing Plaintiff to collect and maintain the personal and

Page 11 -  STATE DEFENDANTS' MOTION TO DISMISS

First Amendment protected information in Oregon's voter list without public notice and comment and full disclosure of what use and disclosure the data might be subjected to frustrates the purpose of the Privacy Act.

Because Plaintiff's demand for the unredacted voter list violates the Privacy Act, the Court should address this problem now. The Court may consider this Privacy Act issue on a Motion to Dismiss because the violations "are apparent on the face of the complaint." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Plaintiff seeks Privacy Act-protected information but fails to include allegations explaining how this request for massive amounts of information on all voting Oregonians would comply with that law. Nor can this deficiency be cured. Plaintiff is statutorily barred from collecting records, such as these, that describe individuals' protected First Amendment activity. *See* 5 U.S.C. § 552a(e)(7). And even if it could collect such records, no SORN satisfies Plaintiff's rigorous procedural duties under the Act. *Id*. § 552a(e)(4). Plaintiff cannot, therefore, make a cognizable legal claim for the information requested from Defendants and the Court should dismiss the Complaint.

### 2. Plaintiff's demand for information violates the E-Government Act.

The Court should also dismiss the Complaint for failure to comply with the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies to conduct a "privacy impact assessment" (PIA) prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id*. § 208(b). The PIA and its procedural requirements must be completed "before the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis in original).

Plaintiff is seeking information protected by the E-Government Act. The names, addresses, and sensitive voter information contained in the data and applications constitute

Page 12 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

personal information protected by the Act, triggering the PIA requirement. See Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003) The Complaint does not allege that Plaintiff completed a PIA applicable to this data on individual voters. Because Plaintiff, again, failed to comply with federal laws limiting its collection of sensitive data, the Court should dismiss the Complaint.

**B.     Plaintiff does not assert a cognizable claim for relief under the NVRA because the NVRA does not require Oregon to produce the requested sensitive and private information.**

The NVRA establishes nationwide standards for enhancing voter participation and protecting the integrity of elections. *See* 52 U.S.C. § 20501(b). One way the NVRA achieves those goals is through requiring states to conduct voter list maintenance. 52 U.S.C. § 20507(a)(4) ("[E]ach State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."). That list maintenance program must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965," and it must not result in the removal of a person registered to vote in a federal election for failure to vote except in specific circumstances. 52 U.S.C. § 20507(b). List maintenance activities include removing individuals from the official list of voters upon death or a change of residence, as well as sending confirmation notices to voters upon a change in residence to ensure accurate voter lists. 52 U.S.C. § 20507(a)–(f). A state "need not . . . go to 'extravagant or excessive' lengths in creating and maintaining such a program." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025).

In addition to requiring list maintenance activities, the NVRA requires states to maintain records relating to each state's list maintenance program and permit public inspection of those records. 52 U.S.C. § 20507(i). The NVRA requires that each state maintains "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The records that each state maintains pursuant to that provision "shall include lists of the names and

Page 13 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-125

addresses of all persons to whom [confirmation notices] are sent, and information concerning whether or not each such person has responded to the notice." 52 U.S.C. § 20507(i)(2). The NVRA requires states to make list maintenance program records available for "public inspection" and "where available, photocopying at a reasonable cost." 52 U.S.C. § 20507(i)(1). The NVRA only requires "inspection." There is no requirement that Oregon provide an electronic version of the records. *Greater Birmingham Ministries v. Sec'y of State*, 105 F.4th 1324, 1333 (11th Cir. 2024) ("'[P]ublic inspection' as used in the . . . [NVRA] does not include electronic disclosure"). This limitation to providing for the inspection of records likewise invalidates any argument by Plaintiffs that Defendants are required to provide narrative answers to its questions.

The public inspection provision of the NVRA does not require states to disclose sensitive information when producing a voter file. States may redact personal or sensitive information from a voter file before producing it, and in fact, should do so. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[T]he proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated by the public release of the Voter File."). Courts have held that certain categories of information should be redacted prior to publicly releasing the voter file. *See id.* Those categories include social security numbers, full birthdates, personal information of individuals subject to criminal investigations and those who potentially failed to meet citizenship requirements, and other personal information contained in the voter file. *Project Vote/Voting For America, Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012) ("[A]ny voter registration application containing an applicant's SSN should be redacted before public exposure of the application."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734, 739 (S.D. Miss. 2014) ("[T]he NVRA Public Disclosure Provision does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267–68 (4th Cir. 2021) (requiring NVRA records to be redacted "to

Page 14 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-126

protect exonerated potential noncitizens and their sensitive information" including "the identities and personal information of those subject to criminal investigations"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016) (requiring redaction of all digits but the final four digits of a registrant's phone number and social security number, all characters preceding the "@" symbol in a registrant's email address, and a registrant's birth date). The NVRA does not require the disclosure of sensitive information. No court has held otherwise. *See id.*

This court should reach the same conclusion—that any public disclosure of records under the NVRA does not require disclosure of sensitive information. Oregon law limits the publicly available information on a voter list. ORS 247.948(1)(a). The publicly available list may not include a voter's birth month, birthday, social security number, or driver's license number. ORS 247.948(2). The NVRA does not compel production of such sensitive information. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 56; 52 U.S.C.§ 20507(i)(1). Oregon's voter information protections do not frustrate the NVRA's purpose and operate harmoniously with the NVRA's public disclosure requirements.

Defendants offered Plaintiff the opportunity to acquire the list made available to members of the public, subject to Plaintiff's compliance with the Privacy Act. Compl. ¶ 56. Defendants also offered to provide a list of the voters to whom such confirmation notices are sent for a period of two years. *Id*. at ¶ 60; Castelli Decl. Ex. 3 at 3. Again, the provision of the information was a condition on Plaintiff's compliance with federal privacy laws and state procedures. Plaintiff have not responded to these offers to provide information under the NVRA and, instead, filed this lawsuit. Defendants have complied with the requirements of the NVRA by offering voter list information without the sensitive, personal information. The NVRA compels nothing more.

**C.    HAVA does not require Oregon to produce any information beyond that required by the NRVA.**

HAVA does not provide an independent authority under which states must provide information about the voter registration list, or the list itself, to Plaintiff. Plaintiff argues that

Page 15 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-127

HAVA "also provides authority for the Justice Department to seek the State's VRL," Compl. ¶ 49; that Oregon's failure to comply with the information requests in the July 16 and August 14, 2025 letters "prevents the Attorney General from enforcing the list maintenance procedures required by . . . HAVA," Compl. ¶ 71; and that failure to comply with those letters also "prevents the Attorney General from determining Oregon's compliance with the list maintenance requirements of HAVA," Compl. ¶ 72. Plaintiff incorrectly interprets HAVA. HAVA does not provide Plaintiff with any authority to require states to disclose the voter registration list to Plaintiff.

HAVA establishes requirements for states to follow in running federal elections. It includes voting technology requirements, voter registration requirements, and voter registration management requirements, among others. *See* 52 U.S.C. §§ 20901–21145. It requires states to implement and administer a computerized statewide voter registration list. 52 U.S.C. § 21083(a)(1)(A). HAVA requires states to maintain that list, including removals of ineligible voters, in accordance with the NVRA. 52 U.S.C. §§ 21083(a)(2), (4). HAVA does not include any provisions authorizing public inspection of that voter list or maintenance practices, nor does it include any other standalone public disclosure provision. *See* 52 U.S.C. §§ 21081–21085 (providing the requirements that states must implement).

The provision that authorizes the Attorney General to enforce the requirements of HAVA contains only a cause of action for the Attorney General, and it does not contain any information sharing requirements as part of that provision. *See* 52 U.S.C. § 21111. Nor does any other provision of HAVA require states to share information about the statewide voter registration list with the federal government. *See generally* 52 U.S.C. § 20901–21145. Thus, HAVA is not an independent legal authority under which Plaintiff may compel states to produce records and information pertaining to the statewide voter registration list.

HAVA works together with the NVRA, but unlike the NVRA, it does not have a public inspection provision. HAVA's statutory text includes no requirement to produce information

Page 16 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

about specific registered voters, and its text must control. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). Plaintiff cites no HAVA provision for authority to demand documents. *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (authority of government agency to issue document request "created solely by statute"). Instead, Plaintiff makes conclusory allegations that Defendants violate HAVA by failing to provide the unredacted voter lists. Compl. ¶¶ 71–72. HAVA, however, specifically states that "nothing in this [Act] may be construed . . . to supersede, restrict, or limit the application of . . . The [NVRA]." 52 U.S.C. § 21145(a)(4); *see also Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 338 (4th Cir. 2012) ("Thus, by its own terms, HAVA cannot restrict or limit the application of the NVRA's public disclosure requirement.").

Any information required by HAVA may be requested under the NVRA's public inspection provision, subject to the redaction of sensitive information as discussed above. Because nothing in HAVA entitles the federal government, or the public generally, to documents relating to the statewide registration list, HAVA does not provide any standalone authority for Plaintiff to compel Oregon to provide the statewide voter registration list or other information that Plaintiff requested in its letters. Accordingly, this Court should dismiss Count II.

If Plaintiff seeks to "evaluate the State of Oregon's compliance with HAVA pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111," Compl. ¶ 70, then it must go through the normal process for requesting records under the NVRA's public inspection provision and comply with the Privacy Act, as described above. As with the NVRA, assessing compliance with HAVA does not require an unredacted copy of the statewide voter list, nor does it require the disclosure of personal and sensitive voter information including full birth dates, driver's license numbers, or social security numbers. Therefore, Plaintiff has no authority under the HAVA enforcement provision to compel Oregon to produce that information, or any other information, under HAVA.

Page 17 -  STATE DEFENDANTS' MOTION TO DISMISS
        TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

**D.      Plaintiff has not posed a valid request for information under the Civil Rights Act.**

Title III of the Civil Rights Act of 1960 ("CRA" or "Title III") was "designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.,* 285 F.2d 430 (5th Cir. 1961). As part of this effort, Title III requires retention of certain documents by elections officials: "[e]very officer of election[9] shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election[.]" 52 U.S.C. § 20701 (alteration added). If certain conditions are met, Plaintiff may inspect these records. *Id*. § 20703. The Attorney General must present "a statement of the basis and the purpose therefor." *Id*.

**1.      Plaintiff may not invoke Title III to investigate issues unrelated to civil rights.**

Plaintiff's demand for records also fails to satisfy Title III's requirements because the stated purpose falls outside the scope of the CRA. The CRA's text and history limit Title III to investigations of civil rights violations, namely, efforts to prevent eligible voters from voting or registering to vote for illegal reasons like racial discrimination. As shown below, for the "statement of the basis and the purpose" of a Title III demand to be valid, it must relate to a civil rights investigation.

Title III's text provides that the "statement of the basis and the purpose" "shall" be included in a records demand, demonstrating that it is an explicit requirement and precondition. *See Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command. 'Shall' means 'must.'" (citation omitted)). But a statement of bases or

---

[9] An "officer of election" is "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates" in federal elections. 52 U.S.C. § 20706.

Page 18 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

purposes unrelated to voting cannot not suffice as it would "sap the interpreted provision of all practical significance." *See Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1271, 1273 (9th Cir. 2025). Indeed, "[i]t is a 'familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers.'" *United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) (concluding that the "prohibition against racial discrimination in . . . Title VII must therefore be read against the background of [its] legislative history . . . and the historical context from which the Act arose"); *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 846 (9th Cir. 2006) (applying *Weber*).

The Court must read that text alongside Title III's context and history. *See Avila v. Spokane Sch. Dist.* 81, 852 F.3d 936, 941 (9th Cir. 2017). The overwhelming evidence shows that Title III of the CRA was enacted to facilitate investigation into civil rights violations related to discrimination in voting. A valid "statement of the basis and purpose," then, is one that relates to such an investigation.

First, the text of the relevant portions of the CRA reveal that the intent was to force recalcitrant county or state election officials to maintain registration records and records that might pertain to some bar to voting. The CRA requires retention of records "relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election[.]" 52 U.S.C. § 20701. The CRA does not discuss voter list maintenance or removing voters from the rolls due to death or relocation.

Both congressional reports and President Eisenhower's signing statement indicate that the CRA focused on the "key constitutional right of every American, the right to vote without discrimination on account of race or color." Castelli Decl. Ex. 4 at 1; Ex. 5 at 2 (under "Summary"); Ex. 6 at 1–3. Title III was enacted to further that overarching goal of the CRA. The year before the CRA's enactment, the President's recommendations to Congress emphasized the "serious obstacle" that insufficient access to voter registration records posed to safeguarding the

Page 19 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ER-131

right to vote under the Civil Rights Act of 1957. Castelli Decl. Ex. 7 at 2. Once enacted, the President's signing statement recognized that Title III "requires the retention of voting records, [which] will be of invaluable aid in the successful enforcement of existing voting rights statutes." *Id*. Ex. 4 at 1–2.

In fact, all contemporaneous records related to the CRA's enactment strongly indicate that Title III was enacted to build upon the Civil Rights Act of 1957. As a House committee report explained, "Title III is a necessary supplement to part IV of the Civil Rights Act of 1957," and "would implement Federal enforcement" of this prohibition. *Id*. Ex. 6 at 26; *see also* Ex. 10 at Part IV. And the congressional record repeatedly shows that Title III was meant to facilitate the enforcement of the voting rights protections codified in the Civil Rights Act of 1957. *Id*. Ex. 8 at 3683, 3692; Ex. 9 at 5193, 5209; *see also Rogers*, 187 F. Supp. at 853 (finding that the CRA's legislative history "leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote").

Courts construing Title III shortly after it was enacted confirm that its aim was to facilitate protection of the right to vote through the Civil Rights Act of 1957 and the CRA itself. *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (explaining that the Attorney General "is entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960"). Valid statements of basis and purpose from the time of enactment were "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Id*. at 231 n.6; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). Repeatedly addressing the issue, the Fifth Circuit "laid down the rule that the government is entitled to have an order of the trial court authorizing it to inspect the voting records" based on Plaintiff's "reasonable grounds for belief that certain voters are being

Page 20 -  STATE DEFENDANTS' MOTION TO DISMISS
     TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

discriminatorily denied their voting rights in a given county." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).

No valid civil rights purpose is alleged in the Complaint. Plaintiff's alleged purpose concerns assessing compliance with the voter registration list maintenance provisions of the NVRA, which requires each state to "conduct a general program that makes a reasonable effort to remove the names of" voters who are ineligible due to death or a change in residence. 52 U.S.C. § 20507(a)(4); Compl. ¶ 51. Any alleged failure to purge voter registration lists of ineligible voters does not automatically fall within Title III's scope. *See Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962) (noting that statistical evidence in a Title III proceeding indicating a failure to remove voters who moved away or died was "a matter which does not bear any particular importance to the present inquiry"). Plaintiff must articulate a purpose and basis that relates to an investigation into civil rights, specifically, discrimination in voting.

Here, Plaintiff has failed to allege any basis for its demand that any discrimination in voting is occurring in Oregon. Plaintiff's alleged purpose is not valid either because it has not articulated how its assessment of Oregon's compliance with 52 U.S.C. § 20507(a)(4) relates to an investigation into civil rights, and more specifically, discrimination in voting. Nothing in Plaintiff's Complaint or letters to the Secretary suggests that any of these kinds of allegations could be made.

## 2. Plaintiff's demand for records fails to satisfy an essential statutory requirement.

Plaintiff failed to provide both "a statement of the basis" for its demand and a statement of "the purpose therefor," as required by 52 U.S.C. § 20703. In the past, Plaintiff has treated "purpose" and "basis" separately. *See Lynd*, 306 F.2d at 231 n.6 (showing a demand by the Attorney General where it stated a basis and a purpose); *In re Coleman*, 208 F. Supp. at 199–200 (same). *See Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ("[W]hen 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'").

Page 21 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Plaintiff alleges that "[t]he purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 51 (quoting August 14, 2025 letter); Castelli Decl. Ex. 1. Plaintiff's statement amounts, at best, only to a statement of its purpose, meaning the object of the request. *See Purpose*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/purpose (defining "purpose" as "something set up as an object or end to be attained: intention"). In contrast, a "basis" is "something on which something else is established or based." *Basis*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/basis. Plaintiff's request fails to provide any statement of its grounds for suspecting that Oregon was violating the NVRA or to explain how the requested records are relevant to its inquiry. Allowing Plaintiff to obtain records without such a showing would ignore the canon against surplusage and ignore Congress's choice in establishing this requirement. *In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024).

### 3. Plaintiff is entitled to only in-person, redacted inspection of records covered by Title III.

Even if the Court concludes that Title III authorizes Plaintiff's demand, Plaintiff may only inspect a redacted version of Oregon's voter registration list at the Secretary's office. Plaintiff is not entitled to inspect an unredacted version of Oregon's voter list, which includes voters' "state driver's license number, or the last four digits of their Social Security number." Compl. at 21 (Prayer for Relief). Title III does not preclude Oregon's confidentiality protections of voter's sensitive information for several reasons. Title III requires, in response to a proper demand, that the recordkeeper make available "all records . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §§ 20701, 20703. Title III's text does not prohibit the redaction of sensitive voter information. *Cf. Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th at 56 (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the Voter File" was permissible where the NVRA did not prohibit such redactions). Moreover, Title III's purpose is to enable civil rights investigations into discrimination in voting, but there is no articulated connection between the

Page 22 -  STATE DEFENDANTS' MOTION TO DISMISS

TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

sensitive voter information Plaintiff demands and an allegation of or investigation into discrimination in voting. Plaintiff points to no reason why the investigation into voter list maintenance practices requires unredacted information. Because Title III does not require Defendants to violate state law and produce the full voter list, Plaintiff cannot compel them to do so.

Finally, Plaintiff's demand that it be sent an electronic version of Oregon's statewide voter registration database is contrary to Title III's unambiguous text. Compl. ¶ 51 and p. 21 (Prayer for Relief). A valid demand would require only that the records "be made available . . . at the principal office of such custodian." 52 U.S.C. § 20703 (emphasis added). Plaintiff's demand that Defendants produce an electronic copy is, therefore, beyond the scope of relief that the Court may provide.

## V.     CONCLUSION

Because Plaintiff has not complied with the Privacy Act or E-Government Act, it is not entitled to Oregon's voter list, whether redacted or unredacted. This is particularly the case because the voter list contains information on each individual's First Amendment activity. Even if voter information could be lawfully collected under the Privacy Act, Plaintiff is not entitled to the voter list because it has not issued the required SORN. Were Plaintiff to satisfy the Privacy

Page 23 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

and E-Government Acts, its claims under the NVRA, HAVA, and the CRA fail. Plaintiff is, at most, entitled, to inspect only redacted voter data under the NVRA, HAVA, or the CRA. For those reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

DATED November 17 , 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General


   *s/ Thomas H. Castelli*
THOMAS H. CASTELLI #226448
Senior Assistant Attorney General
KATE E. MORROW #215611
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
kate.e.morrow@doj.oregon.gov
Of Attorneys for Defendants

Page 24 -  STATE DEFENDANTS' MOTION TO DISMISS
TC3/nk1/UDDOJ 1666 PLD Motion to Dismiss

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com
**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

**CHRISTOPHER D. DODGE**
D.C. Bar. No. 90011587
**BRANDEN LEWISTON**
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**ABHA KHANNA**
WA Bar No. 42612
**WALKER McKUSICK**
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

*Attorneys for Proposed Intervenors*
*Our Oregon, Dan DiIulio, Stephen Gomez,*
*and Emma Craddock*

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

        Defendants.

Case No. 6:25-CV-01666-MTK

**PROPOSED DEFENDANT-INTERVENORS' PROPOSED MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT**

ER-137

**TABLE OF CONTENTS**

LOCAL RULE 7-1(A) CERTIFICATION.................................................................. 1

MOTION............................................................................................................. 1

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.............................................. 3

II.  DOJ embarks on a nationwide campaign to collect voter data held by states. ......................... 4

III. DOJ sues Oregon as part of its effort to create a national voter list. ...................................... 6

LEGAL STANDARD............................................................................................ 7

ARGUMENT...................................................................................................... 8

I.   DOJ has not stated any claim entitling it to Oregon's statewide voter registration list............. 8

   A.  The NVRA does not entitle DOJ to Oregon's full unredacted voter list. ........................... 8

   B.  HAVA does not entitle DOJ to Oregon's full unredacted voter registration list. .............. 11

   C.  The Civil Rights Act of 1960 does not entitle DOJ to Oregon's voter registration list. .... 13

      1.   Title III was designed to combat the denial of voting rights based on race.......... 13
      2.   By its plain text, Title III does not cover Oregon's internally-created statewide voter registration list. .............................................................. 14
      3.   DOJ lacks a proper basis and purpose to demand records under Title III. ........... 18
      4.   Title III does not prohibit redacting sensitive voter information.......................... 21

II.  DOJ has not stated any other claim for relief. ........................................................ 22

CONCLUSION.................................................................................................. 23

## TABLE OF AUTHORITIES

**CASES**

*In re Admin. Subpoena* ,
　No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025) ........................... 20

*Advoc. Health Care Network v. Stapleton*,
　581 U.S. 468 (2017)..................................................................................................... 16

*Ala. ex rel. Gallion v. Rogers*,
　187 F. Supp. 848 (M.D. Ala. 1960) .................................................................................. 13

*Am. Tradition Inst. v. Colorado*,
　No. 11-cv-0085, 2012 WL 555513 (D. Colo. Feb 21, 2012).................................................. 3

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
　570 U.S. 1 (2013)............................................................................................................ 3

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)........................................................................................................ 8

*Bobreski v. U.S. EPA*,
　284 F. Supp. 2d 67 (D.D.C. 2003) .................................................................................. 12

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
　854 F.3d 683 (D.C. Cir. 2017)........................................................................................ 19

*CFPB v. Source for Pub. Data, L.P.*,
　903 F.3d 456 (5th Cir. 2018) .......................................................................................... 19

*Donald Trump for President, Inc. v. Benson*,
　No. 1:20-cv-108, 2020 WL 8573863 (W.D. Mich. Nov. 17, 2020) ...................................... 3

*Fischer v. United States*,
　603 U.S. 480 (2024)...................................................................................................... 17

*Foster v. Love*,
　522 U.S. 67 (1997).......................................................................................................... 3

*Found. Fitness Prods., LLC v. Free Motion Fitness*,
　121 F. Supp. 3d 1038 (D. Or. 2015) ................................................................................. 6

*Grand Canyon Univ. v. Cardona*,
　121 F.4th 717 (9th Cir. 2024) ........................................................................................ 16

*Harkless v. Brunner*,
  545 F.3d 445 (6th Cir. 2008) ...................................................................... 22

*Honeycutt v. United States*,
  581 U.S. 443 (2017)..................................................................................... 16

*Huddleston v. United States*,
  415 U.S. 814 (1974)..................................................................................... 16

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018)....................................................................................... 3

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ................................................................. 19, 21

*Loughrin v. United States*,
  573 U.S. 351 (2014)..................................................................................... 15

*McCloskey v. Mueller*,
  446 F.3d 262 (1st Cir. 2006)................................................................. 12, 23

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 US 344 (1999)....................................................................................... 18

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ........................................................................ 8

*Peters v. United States*,
  853 F.2d 692 (9th Cir. 1988) ...................................................................... 12

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016) ...................................................... 10

*Project Vote/Voting for Am., Inc. v. Long*,
  682 F.3d 331 (4th Cir. 2012) ................................................................... 9–10

*Project Vote/Voting For Am., Inc. v. Long*,
  752 F. Supp. 2d 697 (E.D. Va. 2010) ......................................................... 10

*Pub. Int. Legal Found., Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024)....................................................................... 2, 9

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,
  673 F. Supp. 3d 1004 (D. Alaska 2023) ..................................................... 10

*Pub. Int. Legal Found., Inc. v. Matthews*,
   589 F. Supp. 3d 932 (C.D. Ill. 2022) ..................................................... 10

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
   996 F.3d 257 (4th Cir. 2021) ............................................................... 10

*Rainero v. Archon Corp.*,
   844 F.3d 832 (9th Cir. 2016) ............................................................... 14

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*,
   351 F.3d 1229 (D.C. Cir. 2003) ........................................................... 18

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
   120 F.4th 390 (4th Cir. 2024) ............................................................... 3

*True the Vote v. Hosemann*,
   43 F. Supp. 3d 693 (S.D. Miss. 2014) .................................................. 10

*Union Pac. R.R. Co. v. United States*,
   865 F.3d 1045 (8th Cir. 2017) ......................................................... 15–16

*United States v. Mohrbacher*,
   182 F.3d 1041 (9th Cir. 1999) ............................................................. 16

*United States v. Prasad*,
   18 F.4th 313 (9th Cir. 2021) ............................................................... 16

*Webb v. Trader Joe's Co.*,
   999 F.3d 1196 (9th Cir. 2021) ........................................................ 12, 23

## US CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1.................................................................. 2, 3

## FEDERAL STATUTES

5 U.S.C. § 55.......................................................................................... 21

6 U.S.C. § 1502...................................................................................... 15

7 U.S.C. § 12.......................................................................................... 15

13 U.S.C. § 214...................................................................................... 15

18 U.S.C. § 1703.................................................................................... 15

18 U.S.C. § 1709 ................................................................................................ 15

18 U.S.C. § 1968 ................................................................................................ 15

18 U.S.C. § 2721 ................................................................................................ 21

18 U.S.C. § 3500 ................................................................................................ 15

30 U.S.C. § 1732 ................................................................................................ 15

49 U.S.C. § 47124a ............................................................................................ 15

50 U.S.C. § 217 .................................................................................................. 15

52 U.S.C. § 20501 ................................................................................................ 3

52 U.S.C. § 20507 ....................................................................... 3, 8, 11, 20, 22

52 U.S.C. § 20510 .............................................................................................. 22

52 U.S.C. § 20701 ...................................................................... 2, 13–15, 17

52 U.S.C. § 20703 ...................................................................... 14–15, 18, 20

52 U.S.C. § 21083 .......................................................... 4, 12, 17–18, 21–22

52 U.S.C. § 21085 ......................................................................................... 4, 20

52 U.S.C. § 21111 ........................................................................................ 11, 22

**STATE STATUTES**

Or. Rev. Stat. § 247.948 .......................................................................... 1, 9, 21

**OTHER AUTHORITIES**

11 C.F.R. § 9428.7 ........................................................................................ 5, 22

Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Project Vote/Voting for Am. v. Long*, 682 F.3d 311 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283 ..................................................................................... 10

Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) (No. 23-1361), 2023 WL 4882397 ................................................................................. 9, 10

*Come into possession,* Cambridge Dictionary, https://dictionary.cambridge.org/us/thesaurus /come-into-possession-of (last visited Nov. 17, 2025) ........................................................ 14

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD ............................... 4

Fed. R. Civ. P. 12 ................................................................................................................... 7

H.R. Rep. No. 86-956 (1959) ........................................................................................... 13–14

H.R. Rep. No. 107-329 (2001) ...................................................................................... 2, 4, 12

Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ .................................................................. 5

Karen L. Shanton, Cong. Rsch. Serv., IF13056, *The Election Administration and Voting Survey (EAVS): Overview and 2024 Findings* (2025) ........................................................ 5

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (Oct. 28, 2025), https://perma.cc/CZ8S-JRRK ................................................................................ 4

Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ...................................................................................... 20

*Receive,* Black's Law Dictionary (12th ed. 2024) ....................................................... 14

**LOCAL RULE 7-1(A) CERTIFICATION**

Counsel for Proposed Intervenors Our Oregon, Dan DiIulio, Stephen Gomez, and Emma Craddock reached out to counsel for the United States and Oregon to obtain their positions on the proposed motion to dismiss. The United States opposes this motion; Oregon does not.

**MOTION**

Proposed Intervenors move for the Complaint to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  They file this proposed motion to dismiss according to the schedule the Court set for the existing parties, to preserve their right to intervene and to file a Rule 12(b) motion.

**INTRODUCTION**

The United States Department of Justice ("DOJ") seeks to amass a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration. To build this unauthorized and unprecedented federal list, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, social security numbers, and full dates of birth—from disclosure. Oregon law is no exception: it dictates that such sensitive voter information "may not be disclosed" by Oregon election officials. Or. Rev. Stat. § 247.948(2).

Oregon—like nearly every other state contacted by DOJ—has so far refused to comply with its demands. Now, DOJ has amplified its pressure campaign by filing suit to forcibly obtain Oregon's voter registration list. Far from granting such relief, this Court should dismiss this action under Rule 12(b)(6) because DOJ has failed to state a claim. DOJ cites three authorities in support of its demand—the National Voter Registration Act ("NVRA"), the Help America Vote Act

ER-144

("HAVA"), and Title III of the Civil Rights Act of 1960—but none provides DOJ with authority to access Oregon's unredacted voter registration list. Courts have broadly (and recently) recognized that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in [voter files]." *Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36, 56 (1st Cir. 2024) ("PILF")*. HAVA does not contain *any* disclosure provision. And the text of Title III of the Civil Rights Act plainly does not apply here: that long-dormant statute extends only to "records and papers *which come into* [*election officials'*] *possession*," 52 U.S.C. § 20701 (emphasis added), not internally-generated databases *created by* election officials. And even if Title III did reach Oregon's state-created voter registration list, DOJ's demand here is not supported by an adequate basis or purpose. In short, nothing in these federal provisions prevents states from redacting the sensitive voter information DOJ seeks.

Tellingly, DOJ's Complaint nowhere identifies past instances where any of the statutes upon which it purports to rely have been used to obtain the sort of sensitive voter information that DOJ now demands. The reasons why are clear: this unprecedented effort runs contrary to the decentralized structure of our federal electoral system, which is state-focused *by design*. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, at 31–32 (2001). DOJ's lawsuit therefore asserts sweeping federal authority over the management of federal elections that is not only unsupported by the statutes that DOJ cites but also antithetical to the carefully designed system of American elections as reflected by the Constitution, federal law, and the states' rightful administration of elections. The Court should

dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.[1]

## BACKGROUND

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Tellingly, that law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th

---

[1] Proposed Intervenors request that the Court accept this proposed motion to dismiss in the event the Court grants their motion to intervene. *See Donald Trump for President, Inc. v. Benson*, No. 1:20-cv-1083-JTN-PJG, 2020 WL 8573863, at *3 (W.D. Mich. Nov. 17, 2020) (granting motion to intervene and simultaneously accepting for consideration intervenors' proposed motion to dismiss); *Am. Tradition Inst. v. Colorado*, No. 11-cv-00859-WJM-BNB, 2012 WL 555513, at *3 (D. Colo. Feb. 21, 2012) (similar).

Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083(a)(1)(A), (2)(A). HAVA is abundantly clear that this list is "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). And more generally, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving free and fair elections:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (2001). And while HAVA requires states to create their own centralized statewide voter registration lists, nothing in the law obligates them to disclose records in any manner, including to the federal government.

## II.    DOJ embarks on a nationwide campaign to collect voter data held by states.

This spring, DOJ launched an unprecedented campaign to demand broad access to state voter files, which include sensitive and personal information about each registered voter. To date, DOJ has sent demands to at least forty states, with plans to make similar demands on all fifty.[2] It seeks to use the data to create a national voter database that will, in turn, be used to attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted

---

[2] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD; Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Oct. 28, 2025), https://perma.cc/CZ8S-JRRK.

illegally in recent elections.[3] The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive information that is typically protected by state law.[4]

DOJ sent Oregon a letter on July 16, 2025, demanding, among other things, Oregon's "statewide voter registration list." Compl. ¶ 4, ECF No. 1. DOJ also demanded that Oregon produce "*all fields*" from its voter registration database, including "the registrant's full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number." Compl. ¶ 51. DOJ also posed several questions regarding Oregon's responses to Election Administration and Voting Survey ("EAVS") prompts. Compl. ¶¶ 38–45.[5] DOJ reiterated its requests on August 14, explaining that the "purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 51.

Oregon Secretary of State Tobias Read declined to produce a full, unredacted copy of Oregon's voter registration list. Compl. ¶ 55. In an August 21 letter, Secretary Read disputed DOJ's claim that "federal law compels the production of state voter rolls." Compl. ¶ 55. He explained that neither the NVRA nor HAVA require the production of unredacted voter lists and

---

[3] *See* Barrett & Corasaniti, *supra* note 2.

[4] Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-dem and-for-private-voter-data/ (reporting only Indiana has given DOJ everything it sought).

[5] EAVS is a biennial survey of state and local election officials administered by the U.S. Election Assistance Commission ("EAC"). *See* 11 C.F.R. § 9428.7. EAVS asks state and local election officials to answer questions concerning the administration of federal elections, including those involving the voter registration process, military and overseas voting, mail voting, in-person polling operations, provisional voting, and election-related technologies. *Id.* at § 9428.7(b)(6)(i)−(vii). Subsequently, EAC reports its findings to Congress and the public after each regular federal election cycle. *See* Karen L. Shanton, Cong. Rsch. Serv., IF13056, *The Election Administration and Voting Survey (EAVS): Overview and 2024 Findings* (2025).

that Title III of the Civil Rights Act applies only to "voter-registration applications" and similar materials—not statewide voter registrations lists. August 21 Letter from Secretary Read, Ex. F, at 1–2, ECF No. 12-6.[6] He further objected to producing records under Title III because DOJ had not provided a "permissible purpose" for seeking the data under the Civil Rights Act, which he explained was meant to "protect access to the ballot," not permit DOJ to "pursue the administration's anti-voter goals under the NVRA and HAVA." *Id.* at 2. He nonetheless offered to produce Oregon's voter list—excluding full dates of birth, social security numbers, and driver's license numbers, which are protected from disclosure under Oregon law—if DOJ complied with the federal Privacy Act and paid the applicable fee required to access the data under state law. Compl. ¶ 56. Secretary Read also declined to answer DOJ's questions about Oregon's responses to EAVS prompts, explaining he was "not aware of anything in the NVRA or HAVA that would require" him to provide narrative responses to DOJ on these topics. August 21 Letter from Secretary Read, Ex. F at 3.

As far as Proposed Intervenors are aware, DOJ never responded to the concerns Secretary Read raised in his August 21 letter. Instead, DOJ sued.

**III.    DOJ sues Oregon as part of its effort to create a national voter list.**

DOJ filed this suit on September 16, 2025, primarily seeking to compel Oregon to produce its full, unredacted statewide voter registration list. Compl. at 21, Prayer for Relief, ¶ D.

DOJ claims that it is entitled to relief under the NVRA, HAVA, and the Civil Rights Act

---

[6] The Court may properly consider this letter at the motion-to-dismiss stage because it was referenced throughout the Complaint. *See Found. Fitness Prods., LLC v. Free Motion Fitness*, 121 F. Supp. 3d 1038, 1041 n.1 (D. Or. 2015) ("In deciding a motion to dismiss, the Court may consider documents attached to the pleadings or referenced therein without converting the motion into one for summary judgment" (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002))); *see also* Compl. ¶¶ 52–56, 59–60, 63–64.

of 1960. DOJ seeks an order requiring Oregon to produce its unredacted statewide voter registration list. *See* Compl. at 21, Prayer for Relief, ¶ D. DOJ also alleges that Oregon failed to "answer the Department's specific inquiries regarding Oregon's list maintenance procedures," Compl. ¶ 66—seemingly referencing its written questions to Secretary Read regarding Oregon's EAVS responses, not its request for Oregon's statewide voter registration list, but the Complaint does not request relief on the EAVS issue, Compl. at 21, Prayer for Relief, ¶ D.

On the same day that DOJ sued Oregon, it also sued Maine, asserting the same claims under the NVRA, HAVA, and Civil Rights Act. Compl., *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sept. 16, 2025). Days later, it filed largely identical suits against California, Minnesota, New York, New Hampshire, Pennsylvania, and Michigan. Compl*., United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Sept. 25, 2025); Compl., *United States v. Simon*, No. 0:25-cv-3761 (D. Minn. Sept. 25, 2025); Compl*., United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sept. 25, 2025); Compl., *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Sept. 25, 2025); Compl., *United States v. Commonwealth of Pennsylvania.*, No. 2:25-cv-1481 (W.D. Pa.); *United States v. Benson*, No. 1:25-cv-1148 (W.D. Mich. Sept. 25, 2025).

Proposed Intervenors comprise an Oregon-based civic organization and three Oregon voters. To assert and protect their interests, they moved to intervene as defendants on September 26, 2025, the week after DOJ sued. *See* Mot. Intervene, ECF No. 12. That motion remains pending. They file this proposed motion to dismiss according to the schedule the Court set for the existing parties.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true

all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal is required when a complaint fails to allege "sufficient facts" "to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## ARGUMENT

### I.     DOJ has not stated any claim entitling it to Oregon's statewide voter registration list.

DOJ cites three statutes to justify its unprecedented demand for the disclosure of Oregon's entire, unredacted statewide voter list—the NVRA, HAVA, and the Civil Rights Act of 1960—none of which supplies any "cognizable legal theory" for the relief DOJ seeks. *Id.*

### A.     The NVRA does not entitle DOJ to Oregon's full unredacted voter list.

DOJ points to the NVRA to support its demand for Oregon's unredacted voter list, Compl. ¶¶ 65–68, but that law cannot sustain the weight DOJ puts on it. What the NVRA requires is that each state "maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). This "public inspection" requirement is the sole disclosure provision in the NVRA, and by its terms, it does not grant the federal government special inspection rights beyond those available to the public. Moreover, courts across the country have squarely rejected the notion that the public inspection provision obligates states to provide *every* piece of information contained in covered records—up to and including highly sensitive personal information contained within those files. Instead, courts

have recognized that nothing in the NVRA's text prohibits states from redacting sensitive voter information before disclosure and that doing so does not violate that federal law.

For instance, in *PILF*, the First Circuit held that while Maine's voter registration list was a "record" covered by Section 20507(i) and therefore subject to public inspection, *see* 92 F.4th at 45–49, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" such voter files. *Id.* at 56; *see also id.* (citing with approval decisions recognizing that states could redact information such as birthdates and social security numbers). Accordingly, the First Circuit concluded that the "proper redaction of certain personal information" in statewide voter registration lists could "assuage the potential privacy risks implicated by the public release of the [v]oter [f]ile." *Id.* In so holding, the First Circuit effectively recognized that the NVRA's public inspection provisions did not preempt or circumvent the Maine legislature's lawfully enacted privacy requirements, which largely parallel Oregon's state law protection for sensitive voter information and prohibit disclosure of the highly sensitive personal information DOJ seeks. *See* Or. Rev. Stat. § 247.948(2).

That conclusion should come as no surprise to DOJ—it filed an amicus brief in *PILF* urging the First Circuit to reach that result. *See* Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 27–30, *PILF*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27–30. While DOJ opposed Maine's argument that it could place limitations on a requester's ability to use and publish the voter registration list, it recognized that the state's "privacy concerns" were "substantial." *Id.* at *27. To that end, its brief "emphasize[d] the limits on [section 20507(i)'s] preemptive scope." *Id.* Most notably, it conceded that "*the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records.*" *Id.* (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012))

(emphasis added). And it further conceded that the NVRA does not "prohibit [states from] redacting an even broader set of personal information in certain sensitive circumstances." *Id.* at *27–28 (citing *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021)). DOJ made similar arguments previously. *See* Br. for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 11, 25–26, *Project Vote/Voting for Am.*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283, at *11, 25–26. Its current demand that Oregon produce an entirely unredacted voter registration list reflects an unexplained reversal of its longstanding (and correct) view of federal law.

The First Circuit's holding in *PILF* is no outlier—many other courts have reached the same conclusion. *See Project Vote/Voting for Am., Inc.*, 682 F.3d at 339 (affirming district court order to redact social security numbers before disclosure under NVRA); *N.C. State Bd. of Elections*, 996 F.3d at 268 (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1016 (D. Alaska 2023) (holding the NVRA permits "the exclusion of sensitive personal information" from disclosure)*; Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding that the NVRA permits redacting social security numbers). Indeed, DOJ cannot point to

a single case interpreting the NVRA to override similar state privacy laws at the behest of the federal government or anyone else. Although the Ninth Circuit has yet to address the question, this broad and uniform precedent from multiple courts across the country reaffirms that the NVRA does not grant the invasive authority that DOJ claims here. This Court should follow suit.

To hold otherwise would have striking privacy implications. As noted, the NVRA's public inspection provision provides no special inspection privilege to the federal government. 52 U.S.C. § 20507. Thus, any right that DOJ may have to request inspection of records under Section 20507(i) is a right that is equally shared by the general public. Consequently, if it were the case (as DOJ implies) that it has the right under Section 20507(i) to demand the complete, unredacted voter registration list, then any member of the public can do the same. Not only would that conclusion be contrary to the many decisions holding precisely the opposite, it also would work a radical and unexpected harm to voter privacy, allowing any person to demand the driver's license numbers, dates of birth, and partial social security numbers of every registered voter, in every state. That radical outcome could not have been Congress's intent when enacting the NVRA. DOJ's suit here provides no reason for the Court to depart from the judicial consensus about the scope of the NVRA and jeopardize the privacy rights of hundreds of millions of registered voters.

B.    **HAVA does not entitle DOJ to Oregon's full unredacted voter registration list.**

DOJ points to HAVA as another basis for relief, but that statute also does not support its demand. Compl. ¶¶ 69–72. In fact, HAVA contains no disclosure requirements *at all*. DOJ's Complaint and correspondence cite no authority to the contrary, relying instead upon a provision permitting the Attorney General to file suit "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" of HAVA. 52 U.S.C. § 21111. But the underlying statutory provisions DOJ may enforce through Section 21111 say

nothing about permitting DOJ to demand state voter registration lists at will. To the contrary, the sole underlying provision concerning voter registration affirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A); *see also* H.R. Rep. No. 107-329, at 32, 36 (2001) (emphasizing that "local control must be preserved" under HAVA and voter registration databases should be "administered at the state level"). Nothing in HAVA provides any basis for DOJ to compel the disclosure of information that the Constitution and federal law both instruct to be administered at the state level.

Further, it would defy logic to conclude that HAVA implicitly authorizes, let alone *requires*, states to disclose all voter information, including sensitive and personal information protected by state law. Since the NVRA—which has an actual public disclosure provision— permits states to redact sensitive and personal voter information, HAVA—which does not contain *any* disclosure requirement—cannot somehow be read to have broader preemptive effect on state privacy laws than the NVRA. And the mere fact that HAVA grants the Attorney General a cause of action to enforce HAVA's substantive requirements changes nothing because those substantive requirements impose no obligation on states to disclose records to the federal government. *Cf. Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988) (explaining authority to issue document requests "is created solely by statute"); *Bobreski v. U.S. EPA*, 284 F. Supp. 2d 67, 76 (D.D.C. 2003) (rejecting argument that statutes created "implied subpoena authority").

Meanwhile, DOJ does not allege that Oregon has violated HAVA's substantive requirements. The federal government, as much as any litigant, cannot use litigation as a "fishing expedition" with "no basis other than gross speculation." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021); *see also McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) (holding litigants may not "conduct fishing expeditions in hopes of discovering claims that they do not

know they have.").

### C. The Civil Rights Act of 1960 does not entitle DOJ to Oregon's voter registration list.

In its final effort to justify its disclosure demand, DOJ dusts off Title III of the Civil Rights Act of 1960, a long dormant law passed in the civil rights era to combat racial discrimination in voting in Jim Crow states. *See* 52 U.S.C. § 20701. As with the NVRA and HAVA, Title III does not support DOJ's demands.

#### 1. Title III was designed to combat the denial of voting rights based on race.

Congress enacted Title III to buttress protections against racial discrimination in voting contained in the Civil Rights Act of 1957. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957 toward the "elimination of discrimination because of race," there was a "need for additional legislation to implement the enforcement of civil rights"); *Ala. ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote"), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). In the Civil Rights Act of 1957, Congress tasked DOJ with protecting the "right of all qualified citizens to vote without discrimination on account of race." H.R. Rep. No. 86-956, at 7 (1959). Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. *Id.* DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation" concerning "complaints of a denial to vote because of race." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to combat racial discrimination in voting was "rendered relatively ineffective." *Id.* Congress thus enacted Title III to assist DOJ "during any investigation it may

conduct on complaints of a denial to vote because of race." *Id.* (explaining Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))).

Title III has two relevant parts. First, Section 301 requires election officials to retain for twenty-two months "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Second, Section 303 requires election officials to make records covered by Section 301 available for inspection by the Attorney General upon receiving a "demand . . . contain[ing] a statement of the basis and the purpose" for the inspection. *Id.* § 20703.

### 2.     By its plain text, Title III does not cover Oregon's internally-created statewide voter registration list.

DOJ's effort to invoke Title III fails from the start because, by its plain terms, it does not require the production of Oregon's voter registration list—or any internal records created by election officials. *See Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) ("If the statutory language is plain, we must enforce the statute according to its terms." (citing *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)). Title III only permits DOJ to access records that "come into [the] possession" of election officials relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. To "come into possession" of something means to receive or acquire it from someone else. *See, e.g.*, *Receive,* Black's Law Dictionary (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"); *Come into possession,* Cambridge Dictionary, https://dictionary.cambridge.org/us/thesaurus/come-into-possession-of (visited Nov. 17, 2025) (listing synonyms of "come into possession" as "obtain," "acquire," and "receive"). Title III's coverage thus extends only to records that election officials *receive* or *acquire* from voters—not those that election officials *generate* or

*create* themselves. Here, DOJ seeks Oregon's "computerized, statewide voter registration list," Compl. at 21, Prayer for Relief ¶ D—an internal database *created* by Oregon election officials. Simply put, DOJ does not seek a record—like a voter registration application—that "c[a]me into [the] possession" of Oregon's election officials. 52 U.S.C. § 20701. It is therefore not a record "required by section 20701 . . . to be retained and preserved," *id.* § 20703, and thus not within the scope of the Attorney General's demand authority under Title III.

The Court should reject DOJ's effort to recast Title III in a broader fashion than its text can support. The "cardinal principle" of statutory interpretation is "that courts 'must give effect, if possible, to every clause and word of a statute.'" *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). Accordingly, Congress's choice to draft Title III to specifically reach only records and papers that "come into [the] possession" of election officials must be accorded respect and given its plain meaning. That is particularly so since Congress had "obvious alternative" language at its disposal, *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1050 (8th Cir. 2017), namely papers and records "in the possession" of election officials, rather than those that "come into" possession of such officials.

Indeed, Congress frequently employs the phrase "in the possession of" when it means to do so. *See, e.g.*, 30 U.S.C. § 1732(b); 6 U.S.C. § 1502(a); 18 U.S.C. §§ 3500(a)–(b), 1968(f)(3)–(4); 7 U.S.C. § 12(e); 49 U.S.C. § 47124a(b)(1). By contrast, in the comparatively few instances where Congress has employed the phrase "come into his possession," it has done so in contexts where, as here, it was referring to materials that an individual or entity received from an outside source. *See, e.g.*, 18 U.S.C. §§ 1703(a), 1709 (prohibiting a postal employee from stealing or destroying postal material that "comes into his possession"); 50 U.S.C. § 217 (requiring a soldier to turn over captured or abandoned property that "comes into his possession"); 13 U.S.C. § 214

(prohibiting a census worker from publishing or disclosing material that "comes into his possession"). As the Ninth Circuit has noted: "Omitting a phrase from one statute that Congress has used in another statute with a similar purpose virtually commands the . . . inference that the two have different meanings." *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 725 (9th Cir. 2024) (alteration in original) (quoting *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2024)) (internal quotation marks omitted). Congress's meticulous choice to adopt the comparatively rare statutory formulation of "come into [the] possession of" in Title III rather than the broader phrase "in the possession of" carries "the natural implication . . . that it did not intend the alternative." *Union Pac. R.R. Co.*, 865 F.3d at 1050 (citing *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017)). To interpret such phrases identically—which is what DOJ seeks—would strip the Civil Rights Act's text of its intended meaning.

Once the statute is properly construed, DOJ's claim collapses. A legion of federal courts— many relying on dictionaries published contemporaneously with the Civil Rights Act of 1960— have held that to "come into possession" of something means to receive, acquire, or obtain it from some other source. *E.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting *Webster's New International Dictionary* (3d ed., 1966, unabridged))); *United States v. Prasad*, 18 F.4th 313, 319 (9th Cir. 2021) ("The plain meaning of the term 'obtain' is 'to come into possession of'" (quoting *Obtain*, *Oxford English Dictionary* (2d ed. 1989)); *United States v. Mohrbacher*, 182 F.3d 1041, 1048 n.5 (9th Cir. 1999) (defining "receive" as "to come into possession of" or to take "into one's possession (something held out or offered by another)" (first quoting *Oxford English*

PROPOSED MOTION TO DISMISS                                             Page 16

*Dictionary* (2d ed. 1989); and then quoting *Webster's New International Dictionary* (3d ed., 186, unabridged))). DOJ has no plausible argument that the Defendants received, obtained, or acquired—*i.e.*, that they "c[a]me into [the] possession of"—the statewide voter registration list. Instead, those officials *created* that voter list themselves.

Further, in striving to give effect to every word and phrase in a statute, a court must consider the "specific context" of the phrase being interpreted and the "broader context of the statute as a whole." *Fischer v. United States*, 603 U.S. 480, 486 (2024) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). The specific context of "come into [the] possession" in Title III is that it covers a voter's "application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. These qualifiers are important—each describes discrete documents *submitted by a voter* and other things done *by a voter*. Those actions by voters stand in stark contrast to a *state election official's conduct of creating* a computerized statewide voter list by compiling data from many underlying documents submitted to it *by voters*. *See Fischer*, 603 U.S. at 487 ("[A] word is given more precise content by the neighboring words with which it is associated." (citation modified)).

The broader context of the Civil Rights Act of 1960 also supports excluding statewide voter registration lists from the reach of Title III in the circumstances specifically at issue here—where DOJ has never alleged that it is in fact investigating a Civil Rights Act violation, but instead has claimed to be enforcing NVRA or HAVA. Congress created Title III as a tool to detect voting-related racial discrimination—*not to ascertain compliance with the NVRA or HAVA. See supra* Argument § I.C.1. In fact, it was not until 2002—decades after Title III's enactment—when Congress enacted HAVA that states were first tasked with creating and maintaining "a single, uniform, official, centralized, interactive computerized statewide voter registration list," 52 U.S.C.

§ 21083(a)(1)(A), yet this is exactly what DOJ now seeks from Oregon under Title III. And even then, Congress made it clear that the list was to be maintained "at the State level." *Id.* Congress simply could not have foreseen in 1960 the modern explosion in computing technology—and all the privacy and data security problems brought with it—and so could not have crafted Title III with the intent to grant DOJ unfettered access to the vast amount of sensitive voter data now contained on states' secure computer databases, which themselves would not even come to exist until decades after Title III was enacted. *Cf. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 353 n.5 (1999)* (supporting statutory interpretation with observation that "Congress could not have foreseen" technological changes in drafting legislation in the 1940s); *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003) (narrowly reading statutory subpoena power with observation that the technology at issue was "not even a glimmer in anyone's eye" when Congress drafted the statute).

### 3. DOJ lacks a proper basis and purpose to demand records under Title III.

Because its statutory text does not reach Oregon's statewide voter registration list as a covered record or paper, the Court need go no further to deny DOJ's assertion that Title III authorizes its demand for the statewide list. But DOJ's Title III argument fails for an additional and independent reason: the statute requires DOJ to articulate a "basis *and* the purpose" for demanding records. 52 U.S.C. § 20703 (emphasis added). DOJ's demand fails on both counts.

*First*, DOJ has not even bothered to try to articulate any basis to believe that Oregon has denied the right to vote or otherwise violated federal law. The lack of any stated basis for investigating Oregon is further highlighted by the fact that DOJ has made what appear to be near carbon copy demands to over forty other states and has sued eight states with complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background § II. This

nationwide effort to collect state voter registration lists undermines any notion that DOJ has a cognizable "basis" for investigating Oregon specifically that would be recognized as valid under the Civil Rights Act. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018).

*Second*, DOJ's stated purpose for issuing the demand to Oregon—to "ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 51—is not sufficient under Title III, which is meant to permit DOJ to review voting records for "question[s] concerning infringement or denial of [people's] constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689–90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (citation modified). That is, Title III's "purpose is to enable the Attorney General to determine whether" a suit to enforce the Civil Rights Acts is appropriate, *Lynd*, 306 F.2d at 228—not to ascertain compliance with distinct laws with their own enforcement mechanisms including—in the NVRA's case—disclosure provisions.[7] Throughout its correspondence and Complaint, DOJ has yet to cite a single instance in the 65 years of Title III's existence in which the agency issued a demand for records under Title III that did not relate to investigating the "infringement or denial of their constitutional voting rights." *Id.* Proposed Intervenors are aware of no such instance.[8]

_____

[7] Indeed, in its initial letter to Oregon, DOJ never even mentioned the Civil Rights Act of 1960. *See* Compl. ¶ 50–51 (noting DOJ invoked the Civil Rights Act in its second letter).

[8] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records,

Further, even if ascertaining Oregon's compliance with the NVRA and HAVA were a proper purpose for invoking Title III, Oregon's full unredacted voter list is unnecessary for DOJ to evaluate Oregon's list maintenance efforts under the NVRA and HAVA. Both statutes grant states wide discretion: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State." *Id.* § 21085. Secretary Read has already offered DOJ a copy of Oregon's voter file without sensitive personal information protected by Oregon law and exempt from disclosure under the NVRA. *See supra* Background § II. Rather than take him up on the offer, DOJ filed this lawsuit. In doing so, DOJ never bothered to explain why it specifically requires Oregon voters' driver's license numbers, full dates of birth, or social security numbers—*in addition* to all the other information on the voter list that Oregon offered to disclose—to ascertain Oregon's compliance with the NVRA and HAVA. Considering all the circumstances of DOJ's demand, the only conclusion that can be drawn is that DOJ can articulate no reasonable basis to justify a fishing expedition regarding Oregon's compliance with the NVRA and HAVA. *See In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sept. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").[9]

---

*see Lynd*, 306 F.2d at 226 (quoting 42 U.S.C. § 1974b, recodified at 52 U.S.C. 20703), those cases involved circumstances where Title III was being used for its intended purpose: investigations into the potential denial of voting rights on account of race. Those prior cases are thus fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

[9] Indeed, an attorney in DOJ's voting rights section told the New York Times that DOJ was "dishonest" in describing the purpose for its requests for state voter data. Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025),

**4.      Title III does not prohibit redacting sensitive voter information.**

Aside from whether DOJ can validly invoke Title III to demand Oregon's unredacted voter list, Title III does not require the production of sensitive and personal voter information. As the Fifth Circuit has explained, Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not material typically "open to legitimate reasonable inspection." *Id*. To the contrary, it seeks highly sensitive information that is typically safeguarded from prying eyes under both federal and state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; Or. Rev. Stat. § 247.948(2). And since driver's license numbers and partial social security numbers were not required on voter registration forms until HAVA was enacted in 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), the Congress that enacted Title III four decades prior would not have intended the statute's reach to extend to disclosure of such information. That reinforces the fact that, as with the NVRA, states are free to adhere to their own state laws requiring that they redact sensitive, personal information when producing documents under Title III.

---

https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

**II.     DOJ has not stated any other claim for relief.**

The only clear request for relief in the Complaint is DOJ's demand for Oregon's statewide voter registration list. Compl. at 21, Prayer for Relief, ¶ D. But the Complaint also alleges that Oregon "refused to answer the Department's specific inquiries regarding Oregon's list maintenance procedures." *Id.* ¶ 66. This apparently refers to DOJ's questions to Oregon regarding the state's EAVS responses and list maintenance practices. To the extent that these vaguely alleged deficiencies are meant to constitute a claim for relief under the NVRA or HAVA, they fail.

Oregon has no statutory obligation to answer DOJ's questions *at all*. Through the NVRA and HAVA, Congress charged states with making "reasonable efforts" to perform list maintenance, 52 U.S.C. § 20507(a)(4); *see id.* § 21083(a)(4)(A), but Congress never required states to report the results of that maintenance to DOJ or submit to DOJ's inquiries about their list maintenance activities. Regulations instead require states to provide certain information *to the EAC*, not DOJ, *see supra* n.5 (citing 11 C.F.R. 9428.7), and DOJ's NVRA claim does not allege that the information that Oregon provided the EAC was insufficient or otherwise violated this regulation. In fact, DOJ does not cite the regulation, nor claim any authority to enforce it. It certainly does not point to any instance in which it compelled a state to answer its questions about the state's EAVS survey responses. Accordingly, Secretary Read's decision not to answer DOJ's questions does not constitute a violation of the NVRA or HAVA or form a basis for relief.

DOJ attempts to fall back on its general enforcement authority under the NVRA and HAVA, Compl. ¶¶ 7, 66, 70 (citing 52 U.S.C. §§ 20510(a), 21111), but that authority simply permits DOJ to bring suits to address plausibly alleged *violations* of those statutes. *See Harkless v. Brunner*, 545 F.3d 445, 450 (6th Cir. 2008) ("The NVRA authorizes judicial intervention if a state fails to comply with its terms."). Here, DOJ does not allege that Oregon has *violated* any of its obligations under the NVRA or HAVA in connection with its EAVS survey responses; instead,

it claims to seek information to prospectively "*ascertain* Oregon's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 51 (emphasis added), as it has done with dozens of other states, *see supra* Background § II. DOJ's argument gets things backwards—DOJ cannot sue Oregon (or any other state) as part of a fishing expedition to seek out noncompliance with federal law; rather, the Attorney General can file suit when she can plausibly allege that the substantive terms of the NVRA or HAVA have been violated. *See Webb*, 999 F.3d at 1204; *McCloskey*, 446 F.3d at 271. She has plainly not done so here.

### CONCLUSION

For the reasons above, Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

November 17, 2025

Respectfully submitted,

*/s/ Abha Khanna*
**ABHA KHANNA\***
WA Bar No. 42612
**WALKER McKUSICK\***
WA Bar No. 63205
ELIAS LAW GROUP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
akhanna@elias.law
wmckusick@elias.law

**CHRISTOPHER D. DODGE\***
D.C Bar. No. 90011587
**BRANDEN LEWISTON\***
D.C. Bar No. 252550
ELIAS LAW GROUP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
cdodge@elias.law
blewiston@elias.law

**HARRY WILSON**, OSB No. 077214
harrywilson@markowitzherbold.com

**DALLAS DELUCA**, OSB No. 072992
dallasdeluca@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: 503-295-3085

*Appearing Pro Hac Vice

*Attorneys for Proposed Intervenors
Our Oregon, Daniel DiIulio, Stephen
Gomez, and Emma Craddock*

**HARMEET K. DHILLON**
Assistant Attorney General
Civil Rights Division
**MICHAEL E. GATES**
Deputy Assistant Attorney General
Civil Rights Division
**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
Civil Rights Division
N.Y. Bar No. 205880
**TIMOTHY F. MELLETT**
D.C. Bar No. 430968
**DAVID D. VANDENBERG**
Attorneys, Voting Section
Civil Rights Division
Texas Bar No. 24107948
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Case No. _____ |
| Plaintiff, | COMPLAINT |
| v. | |
| THE STATE OF OREGON; and TOBIAS READ, in his official capacity as the Oregon Secretary of State, | |
| Defendants. | |

**COMPLAINT**

As President Trump said earlier this year, "[f]ree, fair, and honest elections unmarred by

1

ER-168

fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Indeed, "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id*. Under our Constitution, States "must safeguard American elections in compliance with Federal laws that protect Americans' voting rights and guard against dilution by illegal voting, discrimination, fraud, and other forms of malfeasance and error." *Id*. Without such safeguards, "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government." Purcell v. Gonzalez, 549 U.S. 1, 4 (2006). And "[v]oters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Id*.

To prevent fraudulent votes from being cast, federal law requires that States conduct routine list maintenance procedures of their statewide voter registration databases. Accurate voter rolls prevent the opportunity for fraud in federal elections. The Civil Rights Division of the Department of Justice is tasked with ensuring that States conduct voter registration list maintenance to prevent the inclusion of ineligible voters on any State's voter registration list. This action seeks to remedy Defendant's violations of federal voting laws. Plaintiff, United States of America ("United States"), brings this action against the State of Oregon and Tobias Read, in his official capacity as Oregon's Secretary of State, and alleges as follows:

## I.  INTRODUCTION

1.  The United States brings this action to enforce provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq.*; the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*; and Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701, *et seq.*

2.  Defendants have failed to comply with the important mandates of the NVRA and HAVA

ER-169

by failing to provide information necessary for the Department of Justice to assess their compliance.  Two of the NVRA's four purposes are "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b)(3)-(4).  Consistent with these purposes, the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of "death of a registrant or change in residence of a registrant.  *Id.* § 20507(a)(4)(A)-(B).

3.    Similarly, HAVA requires the appropriate state or local election official to "perform list maintenance" with respect to the centralized, computerized statewide voter registration list required under HAVA "on a regular basis . . . ."  *Id.* § 21083(a)(1)-(2).  HAVA also requires that states have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters[,]" with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters."  *Id.* § 21083(a)(4)(A)-(B).

4.    The United States brings this action pursuant to its authority under the NVRA, HAVA, and CRA to compel the State of Oregon and its chief state election official, the Secretary of State, to provide information regarding the State of Oregon's voter list maintenance procedures and an electronic copy of its statewide voter registration list including all fields, to allow the Attorney General to effectively assess Oregon's compliance with the requirements of the NVRA and HAVA.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. §§ 20510(a) and 21111; and 52 U.S.C. § 20705.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the

ER-170

events or omissions giving rise to the United States' claims occurred in this District, and the Defendants are located in and conduct election administration activities in this District.

## III. PARTIES

7.    Plaintiff United States, through the Attorney General, has authority to enforce the NVRA, 52 U.S.C. § 20510(a), and Sections 21081, 21082, 21083, and 21083a of HAVA, 52 U.S.C. § 21111.  Both the NVRA and HAVA authorize the Attorney General to bring a civil action in an appropriate district court for such declaratory and injunctive relief as are necessary to carry out the relevant requirements under the statute.  *Id.* §§ 20510(a) and 21111.  Pursuant to 52 U.S.C. § 20705, the Attorney General may compel states to produce certain records and papers relating to the administration of federal elections.

8.    Defendant, the State of Oregon ("Oregon" or "the State"), is a State of the United States of America and is subject to the requirements of the NVRA, HAVA, and CRA.  *Id.* §§ 20502(4), 20503, 20701, and 21141.

9.    Defendant, Tobias Read, is the Secretary of State for the State of Oregon ("Secretary Read") and, under Oregon state law, Or. Rev. Stat. § 246.110, the chief elections officer of the State of Oregon.  Secretary Read is sued in his official capacity only.

## IV. STATUTORY BACKGROUND

 *A.  National Voter Registration Act*

10.  Section 8 of the NVRA, 52 U.S.C. § 20507, establishes requirements for the administration of voter registration for elections for federal office in covered states, including Oregon.  Section 8(a)(4) requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death of the registrant or "a change in the residence of the registrant, in accordance with subsections (b),

(c), and (d)[.]"  52 U.S.C. § 20507(a)(4)(A)-(B).

11.  Subsections (b), (c), and (d) set forth procedures and requirements governing the removal of ineligible voters from official lists of voters as part of a state's "program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[.]" *Id.* § 20507(b).

12.  State voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) . . . ."  52 U.S.C. § 20507(b)(1); *see also* S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); *accord* H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same holding as supra).

13.  Section 8(d) of the NVRA provides that a "State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant" i) "confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered" or "has failed to respond to a notice" described in Section 8(d)(2) and ii) "has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice."  52 U.S.C. § 20507(d)(1).  Section 8(d)(2) sets forth specific requirements for the notice ("Confirmation Notice") to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [subsection 8(d)]." *Id.* §§ 20507(d)(2)-(3).

14.  Section 8 of the NVRA provides an example of a list maintenance program that constitutes

5

a reasonable effort to remove registrants who have become ineligible due to a change of residence. *Id.* § 20507(c)(1). Under this program, a state uses information from the United States Postal Service National Change of Address ("NCOA") program to identify registrants who may have changed residence. *Id.* § 20507(c)(1)(A). Where it appears from the NCOA information that a registrant has moved to a new address in the same jurisdiction, the registration record is updated to show the new address and the registrant is sent a notice of the change by forwardable mail that includes a postage-prepaid, pre-addressed return form by which the registrant may verify or correct the address information. *Id.* § 20507(c)(1)(B)(i). Where it appears from the NCOA information that a registrant has moved to a new address in a different jurisdiction, the procedure set out in Section 8(d)(2), described above, is used to confirm the address change. *Id.* § 20507(c)(1)(B)(ii).

15. Section 8(i) of the NVRA provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

*Id.* § 20507(i)(1). Section 8(i)(2) further specifies:

> The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 20507(i)(2).

16. Section 10 of the NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. *Id.* § 20509.

6

ER-173

B. *Help America Vote Act*

17. The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). "Historically, elections in this country have been administered at the state and local level[,]" but Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32.

18. HAVA imposes "minimum requirements" for the conduct of federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA. *Id.* at 35.

19. HAVA required all states to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State . . . ." 52 U.S.C. § 21083(a)(1)(A).

20. The computerized list required by HAVA "shall be coordinated with other agency databases within the State." *Id.* § 21083(a)(1)(A)(iv).

21. HAVA further established a "[m]inimum standard for accuracy of State voter registration records[.]" *Id.* § 21083(a)(4). Section 303 of the statute provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4)(A)-(B).

22. HAVA mandates that a state may not process a voter registration application without the

7

applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number. *Id.* § 21083(a)(5)(A)(i). For applicants who have neither a driver's license nor a social security number, a state must assign a unique identifying number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii). A state must determine the validity of the information provided by the applicant. *Id.* § 21083(a)(5)(A)(iii).

23. HAVA also provides specific rules for voters who register to vote by mail. *Id.* § 21083(b). An individual who registers to vote by mail and has not previously voted in a federal election must comply with certain identification requirements. *Id.*

24. HAVA applies to all fifty states, including Oregon. *Id.* § 21141.

25. Section 303 of HAVA incorporates by reference certain provisions of the NVRA. *See, e.g.*, *id.* § 21083(a)(4)(A). These provisions, unless explicitly noted otherwise, apply to all states covered under HAVA. *See id.*

26. In passing HAVA, Congress invested the Attorney General of the United States with sole authority to "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a[.]" *Id.* § 21111.

27. HAVA contains no private right of action. *See id.* §§ 20901 to 21145.

C. *Civil Rights Act of 1960*

28. Congress vested the Attorney General with the power to request records pursuant to Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701, *et seq.*

29. Section 301 of the CRA requires state and local election officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a

8

ER-175

period of twenty-two months after any federal general, special, or primary election.  *See* 52 U.S.C. § 20701.

30.  Section 303 of the CRA provides: "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative.  This demand shall contain a statement of the basis and the purpose therefor."  52 U.S.C. § 20703.

   D. *Voter List Maintenance and Records Procedures under Oregon State Law*

31.  As relevant to this lawsuit, Oregon's law provides that the clerk of each county fulfills significant responsibilities with respect to ensuring the accuracy and currency of official lists of eligible voters and maintaining records regarding the same.

32. The county clerk "at any time, may inquire into the validity of the registration of any elector" and "shall mail a written statement to the elector[1] that describes the nature of the inquiry . . . ."  Or. Rev. Stat. § 247.195.  The county clerk is responsible for, among other duties, updating "the registration of an elector in the county upon receiving evidence from" the elector, the U.S. Postal Service, or the state secretary of state, *id.* § 247.292; verifying the accuracy of addresses of electors in the county clerk's records, *id.* § 247.296; sending notices to electors "whenever it appears to the county clerk that an elector needs to update the elector's registration or that the elector has changed residence address to another county," *id.* § 247.563; and canceling the registration of persons upon receiving a report of death from a county registrar if the person was

---

[1] Oregon state law defines an "elector" as "an individual qualified to vote" under the Oregon state constitution.  Or. Rev. Stat. § 247.002.

registered to vote in the county and providing this information from the county registrar to the Oregon Secretary of State, *id.* § 247.570.[2]

33.  As relevant to Section 8(i) of the NVRA, Oregon state law requires that the county clerks retain for two years "[c]opies of all notices and other correspondence issued under" sections 247.195, 247.292, 247.296, 247.563, and 247.570 of Oregon's Revised Statutes.  *Id.* § 247.580(1); *see also* Or. Admin. Code § 166-150-0035(15) (specifying minimum retention requirement for voter registration records).[3]  Oregon state law also specifies that "[i]f the elector registration records of a county are mechanically maintained, the county clerk may satisfy" the record retention requirements of § 247.580(1) by maintaining for two years "[c]omputer listings of electors to whom the clerk issued notices or any other correspondence under [§§ 247.195, 247.292, 247.296, 247.563, and 247.570] and facsimile copies of notices and correspondence" or "[m]icrofilm records of the listings and copies."  Or. Rev. Stat. § 247.580(2)(a)-(b).

## V.  FACTUAL ALLEGATIONS

34.  On July 16, 2025, the United States Department of Justice, Civil Rights Division, Voting

---

[2] A county clerk "may cancel the registration of an elector" in certain enumerated circumstances, Or. Rev. Stat. § 247.555(1)(a)-(d), including at the request of the elector, *id.* § 247.555(1)(a); upon the death of the elector, *id.* § 247.555(1)(b); if the county clerk receives written evidence that the elector has registered to vote in another state, *id.* § 247.555(1)(c); and "[i]f the elector has not responded to a notice described in [§ 247.563] and has not voted or updated a registration during the period beginning on the date the notice is sent and ending on the day after the date of the second regular general election that occurs after the date the notice was sent[,]" *id.* § 247.555(1)(d).

[3] In addition, Oregon's Administrative Code provides that county elections officials "shall record" certain information regarding voter registration "in the Oregon Centralized Voter Registration System (OCVR) allowing the Secretary of State to compile the information and report [it] to the Election Assistance Commission . . . ."  Or. Admin. Code § 165-005-0065(3). The specified information includes the "number of confirmation notices mailed out between the two most recent federal general elections and the number of responses to these notices received during that same period[.]"  Or. Admin. Code § 165-005-0065(3)(c).

Section, sent a letter to the Oregon Secretary of State Read requesting information regarding Oregon's procedures for complying with the statewide voter registration list maintenance provisions of the NVRA ("July 16 letter").  The Department's letter requested, among other information and documents, a list of the election officials who are responsible for implementing Oregon's general program of voter registration list maintenance from November 2022 through receipt of the letter and a description of the steps that Oregon has taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA, including actions taken by Oregon officials as well as county officials.

35.  The July 16 letter also requested, pursuant to Section 20507(i) of the NVRA, the current electronic copy of Oregon's computerized, statewide voter registration list required by Section 303(a) of HAVA, 52 U.S.C. § 21083(a).  The letter specifically requested: "Please include all fields contained within the list."

36.  The United States Election Assistance Commission (EAC) was established by HAVA to "serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections."  EAC website, "About the EAC," "Help America Vote Act," https://www.eac.gov/about/help_america_vote_act.aspx.  The EAC "is an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process."  *Id.*, "About the EAC," https://www.eac.gov/about.

37.  The EAC conducts a biennial Election Administration and Voting Survey ("EAVS"), "an analysis of state-by-state data that covers various topics related to the administration of federal elections[,]" including voter registration and list maintenance.  *Id.*, "Studies and Reports," https://www.eac.gov/research-and-data/studies-and-reports.   The EAC's most recent report,

11

ER-178

"Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" ("2024 EAVS Report"), explains that as part of the 2024 EAVS, states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from its voter lists. EAC, 2024 EAVS Report, https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf, at 7.

38. The July 16 letter also included six detailed inquiries based on the data and answers that the State of Oregon provided in response to the EAC's EAVS questionnaire. The period for the inquiries was the close of registration for the November 2022 general election through the close of registration for the November 2024 general election.

39. For example, the July 16 letter noted that based on a review of the most recent EAVS report, there are nearly as many registered voters listed as active as the citizen voting age population in Oregon, with a registration rate in 2024 of 95.3 percent of the citizen voting age population. The letter further noted that the EAVS report indicated that the ratio of active registered voters to citizen voting age population has been unusually high for several years, with Oregon reporting a registration rate of 93.3 percent of citizen voting age population in 2022 and 93.1 percent in 2020. The letter requested details regarding Oregon's general program for removing ineligible voters from the official lists of eligible voters.

40. The July 16 letter also noted that, according to the information provided by Oregon to the EAC, Oregon sent 357,959 confirmation notices to registered voters. In reporting the results of the confirmation notices, Oregon categorized the results as "Other." The letter asked Oregon to explain what "Other" means for the results of these confirmation notices and to describe Oregon's

12

ER-179

process for keeping track of the results of Confirmation Notices.

41. The July 16 letter noted that in the EAVS data for Question A12a, Oregon removed 111,621 voters, or 3.6% of registered voters, from the list of eligible voters, which was well below the national average of 9.1%. Accordingly, the letter requested that Oregon explain what actions Oregon is taking to ensure that ineligible voters are removed from the official lists of eligible voters and why Oregon's number of removals was so low.

42. According to the 2024 EAVS Report, the State of Oregon reported that it removed only 4,417 voters out of a total of 3,060,374 registered voters for failure to respond to a confirmation notice and not voting in the two consecutive federal elections following the notice. The July 16 letter noted that the State of Oregon had the lowest number of removals in this category as compared to the total number of registered voters, of all NVRA-covered states reporting data to the EAC's survey. Accordingly, the letter asked Oregon to explain how Oregon uses the confirmation notice process to remove voters and why the number of removals was so low.

43. The July 16 letter also noted that Oregon did not report each county's number of inactive voters and asked Oregon to explain if it has any processes for determining if a voter should be categorized as "inactive" and its process for tracking voters when they fail to respond to a confirmation notice.

44. The July 16 letter also noted that Oregon reported to the EAC survey that the state determined there were 1,585 total duplicate registrations on the statewide voter registration list. Yet, in response to the EAC's survey question on the number of voters removed for the reason of a duplicate voter registration record, Oregon reported, "Does not apply," for all counties. However, Oregon reported that 1,256 voter records were merged. Therefore, the letter asked Oregon to explain what actions Oregon took with respect to the 1,585 duplicate registrations and information

13

ER-180

explaining Oregon's process for removing duplicate registrations and merging records.  The letter also asked whether Oregon checks the voter rolls for duplicate registrations, and, if so, how often that check is performed.

45.  The July 16 letter also requested a description of the steps that Oregon has taken, and when those steps were taken, to identify registered voters who are ineligible to vote because they are a non-citizen, are adjudicated incompetent, or have a felony conviction, and a description of the procedures Oregon used to remove those ineligible voters from the registration list.  The letter asked Oregon to identify the number of registered voters identified as ineligible to vote, for the time period of the close of registration for the November 2022 general election through the present, for each of the three reasons.  For each voter identified in one of the three categories, the letter asked that Oregon provide their registration information on the statewide voter registration list, including their vote history.

46.  The July 16 letter provided Oregon with fourteen days to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

47.  On August 14, 2025, the Department of Justice, Civil Rights Division, sent an updated letter to Secretary Read, which provided clarifications regarding his previous request for information and records related to Oregon's statewide voter list maintenance ("August 14 letter").

48.  Specifically, the August 14 letter stated that the Department of Justice "requested Oregon's [statewide voter registration list ("VRL")] to assess [the] state's compliance with the statewide VRL maintenance provisions of the [NVRA]" and that the request was "pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions."

49.  The August 14 letter stated that the Attorney General's sole authority under Section 401 of

HAVA to enforce HAVA's list maintenance requirements "also provides authority for the Justice Department to seek the State's VRL[.]"

50. The August 14 letter further advised that: "In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq.* Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701."

51. The August 14 letter stated: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Oregon's complete and current VRL. The purpose of the request is to ascertain Oregon's compliance with the list maintenance requirements of the NVRA and HAVA." The letter specified: "When providing the electronic copy of the statewide VRL, Oregon must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA") to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i)." (footnote omitted).

52. By letter dated August 21, 2025, Secretary Read responded to the Department of Justice, Civil Rights Division, stating that he was in receipt of the Department's letters requesting information regarding Oregon's compliance with the list maintenance provisions of the NVRA and HAVA ("Secretary Read's August 21 letter").

53. Secretary Read's August 21 letter stated: "Each of Oregon's 36 counties administers its own voter-registration program and maintains its own voter list. Historically, this created

challenges for statewide data reporting and analysis, including in connection with the [EAC's] [EAVS]." The letter further stated: "Since taking office in January, my administration has been working to improve our statewide data-collection practices by developing uniform data-entry standards and reporting procedures across all counties. These changes will improve the quality, consistency, and transparency of the data, allowing Oregon to produce more detailed statewide reports moving forward."

54. Secretary Read's August 21 letter acknowledged "challenges for statewide data reporting and analysis" in connection with county-by-county administration of voter registration and stating his administration was working on improvements in data-related practices. However, Secretary Read did not explain what the current data-collection, data-entry, and reporting procedures were across Oregon's counties and what changes were being implemented, how, or when.

55. Secretary Read's August 21 letter also refused to produce the current electronic copy of Oregon's computerized statewide voter registration list with all fields, including each voter's name, date of birth, residential address, and state driver's license number or partial Social Security number, as requested by the Department, asserting, "no federal law compels the production of state voter rolls."

56. Secretary Read's August 21 letter stated, "I see no federal authority for your request[,]" but "[n]onetheless, if the DOJ complies with the applicable provisions of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, then my office will produce the voter-registration data required by state law." The letter added that: "Oregon allows for public access to certain voter-registration data, including a voter's residence address and birth year, for a fee. . . . If the DOJ intends to follow the process outlined in OAR 165-002-0020, and pay the fee mandated by ORS 247.945, then my agency will arrange to securely produce the publicly available portions of its statewide voter-

16

ER-183

registration list.  Please note that ORS 247.948 prohibits the disclosure of, among other things, a voter's birth month, birth day, Social Security number, and driver's license number."

57. Oregon is a member of the Electronic Registration Information Center (ERIC), an organization comprised of states whose stated mission "is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens."4  ERIC is funded by its members, who pay a one-time membership fee and annual dues.  Id.  ERIC's website explains that "[a]t least every 60 days, each member submits their voter registration data and licensing and identification data from motor vehicle departments (MVD) to ERIC."  Id.  ERIC's website states: "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC after applying a cryptographic one-way hash to these data points."

58.  Oregon provides the identical information that the Attorney General has requested to ERIC, a private organization which lacks any enforcement authority, yet refuses to adhere to federal law and provide that same information to the Attorney General of the United States.

59.  With respect to the Privacy Act, Secretary of State Read stated in his August 21, 2025 letter: "While I appreciate your assurances that Oregonians' sensitive personal information will be protected by the Privacy Act, I cannot release the data unless and until the DOJ publishes a System of Records Notice in the Federal Register that explains what data your agency is collecting, why you need it, and how you intend to use and store it."

60.  With respect to a list of the voters to whom county election offices sent confirmation notices under Ore. Rev. Stat. chapter 247, Secretary Read's August 21 letter stated: "Again, if the DOJ intends to comply with the applicable provisions of the Privacy Act and also follow the

---

4 *FAQ's*, ERIC, (Sept. 15, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/.

17

process outlined in, and pay the fee mandated by, OAR 165-002-0020, then my agency will arrange to securely produce the publicly available portions of this less-than-statewide voter list for the previous two years."

61. As explained in the August 14 letter from the Department of Justice to Oregon, the Civil Rights Division is required to comply with the Privacy Act, including the provisions of 5 U.S.C. § 552a, and has practices and procedures to ensure compliance with the Privacy Act.

62. The information that the Department collects pursuant to its request to Oregon and similar requests to other states will be maintained consistent with Privacy Act protections as explained on DOJ's website at https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.. The full list of routine uses for this collection of information can be found in the System of Records Notice (SORN) titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the NVRA, HAVA, and CRA. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

63. Secretary Read's August 21 letter refused to answer any of the Department's highly detailed inquiries about Oregon's voter list maintenance program based on the Department's review of Oregon's EAVS data, *see supra*, paragraphs 38-45. The letter only referred generally to the relevant chapter and provisions of Oregon state law.

64. Secretary Read's August 21 letter also refused to disclose the registration information for any ineligible voters, claiming "that would both exceed my obligations under federal law and

18

ER-185

almost certainly violate state law."

## CAUSES OF ACTION

### COUNT I: NATIONAL VOTER REGISTRATION ACT, 52 U.S.C. § 20507(i)

65. The United States incorporates the allegations set forth above.

66. Defendants have refused to answer the Department's specific inquiries regarding Oregon's list maintenance procedures, despite the Attorney General's authority to enforce these requirements under both the NVRA and HAVA.

67. Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered[,]" in violation of 52 U.S.C. § 20507(i)(1).

68. This information is necessary for the Attorney General to determine if Oregon is conducting "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" as required by 52 U.S.C. § 20507(a)(4), including to evaluate issues raised by the data and answers provided by the State of Oregon to the Election Assistance Commission's 2024 EAVS and reflected in the EAC's June 30, 2025 report.

### COUNT II: HELP AMERICA VOTE ACT, 52 U.S.C. § 21083

69. The United States incorporates the allegations set forth above.

70. Defendants have failed to take the actions necessary for the State of Oregon to comply with Section 303 of HAVA.  Defendants have failed to provide sufficient information in response to the Department of Justice, Civil Rights Division's July 16 and August 14, 2025 letters requesting information and documents to evaluate the State of Oregon's compliance with HAVA pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111.

19

ER-186

71. Defendants' refusal to provide the requested information prevents the Attorney General from evaluating Oregon's procedures to ensure that duplicate names are eliminated from the computerized list, as required by 52 U.S.C. § 21083(a)(2)(B), and prevents the Attorney General from enforcing the list maintenance procedures required by the NVRA and HAVA.

72. Defendants' refusal to provide to the United States the current electronic copy of Oregon's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number, prevents the Attorney General from determining Oregon's compliance with the list maintenance requirements of HAVA, 52 U.S.C. § 21083(a)(5)(A).

### COUNT III: CIVIL RIGHTS ACT OF 1960, 52 U.S.C. § 20703

73. On August 14, 2025, the Attorney General of the United States, through the Assistant Attorney General, Civil Rights Division, sent a written demand to Defendants for the production of specific election records, as authorized by 52 U.S.C. § 20703.

74. Secretary of State Read's August 21, 2025, letter refused to provide the records requested.

### PRAYER FOR RELIEF

Wherefore, the United States prays that the Court enter an order that:

A. Declares that Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered[,]" in violation of the NVRA, 52 U.S.C. § 20507(i);

B. Declares that Defendants' refusal to provide the requested records concerning the State

20

ER-187

of Oregon's voter registration and list maintenance prevents the Attorney General from enforcing its authority under HAVA, 52 U.S.C. § 21111;

C.  Declares that Defendants' refusal to provide voter registration records upon a demand by the Attorney General violates Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703;

D. Orders Defendants to provide to the United States the current electronic copy of Oregon's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number as required by HAVA, 52 U.S.C. § 21083, and the CRA, 52 U.S.C. § 20703; and

E. Awards such additional relief as the interests of justice may require.

ER-188

Dated: September 16, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division


/s/ David D. Vandenberg
MAUREEN S. RIORDAN
Acting Chief, Voting Section
Civil Rights Division
TIMOTHY F. MELLETT
DAVID D. VANDENBERG
Attorneys, Voting Section
Civil Rights Division
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

ER-189

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

(see attachment)

**DEFENDANTS**

THE STATE OF OREGON; and TOBIAS READ, in his official capacity as Oregon Secretary of State

County of Residence of First Listed Defendant   Marion County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' Liability | Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 345 Marine Product Liability | **PERSONAL PROPERTY** | | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 350 Motor Vehicle | 370 Other Fraud | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 360 Other Personal Injury | 380 Other Personal Property Damage | 720 Labor/Management Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 196 Franchise | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| | | | 751 Family and Medical Leave Act | 862 Black Lung (923) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 893 Environmental Matters |
| 220 Foreclosure | [X] 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | **FEDERAL TAX SUITS** | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | | 870 Taxes (U.S. Plaintiff or Defendant) | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| | 448 Education | 540 Mandamus & Other | 462 Naturalization Application | | |
| | | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
52 U.S.C. § 20501, et. seq.; 52 § 20901, et. seq.; 52 U.S.C. § 20701, et seq.

Brief description of cause:
Wrongful withholding of statewide voter registration list

**VII. REQUESTED IN COMPLAINT:**

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [X] No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*

JUDGE _____         DOCKET NUMBER _____

DATE   Sept. 16, 2025

SIGNATURE OF ATTORNEY OF RECORD   *David J. Vandenberg*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ER-190

**Attachment to Civil Cover Sheet**
(Attorney Names, Addresses, and Phone Numbers)

I.(c)

Counsel for Plaintiffs:

MAUREEN RIORDAN
TIMOTHY F. MELLETT
DAVID D. VANDENBERG
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20002
Telephone: (202) 514-3847
Fax: (202) 307-3961
Email: David.Vandenberg@usdoj.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

**EUGENE DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.

THE STATE OF OREGON; and
TOBIAS READ, in his official capacity as the
Oregon Secretary of State,

                Defendants.

Civil Case No. 6:25-cv-1666-MTK

**NOTICE OF APPEAL**

Plaintiff United States appeals to the United States Court of Appeals for the Ninth Circuit from this Court's Opinion and Order (Doc. 73), granting defendants' and defendant-intervenors' motions to dismiss, and from this Court's Judgment (Doc. 74), entered in this action on February 5, 2026.

Dated: February 25, 2026

                Respectfully submitted,

                HARMEET K. DHILLON
                Assistant Attorney General
                Civil Rights Division

                /s/ Eric Neff
                ERIC V. NEFF
                Acting Chief, Voting Section
                Civil Rights Division
                150 M St. NE 8th floor
                Washington, DC 20002
                Eric.Neff@usdoj.gov
                Tel. (202) 307-2767
                Attorneys for the United States

1

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 25, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

 

_____

Eric V. Neff

ER-193



## *6:25cv1666, United States Of America V. State Of Oregon, Et Al*

US District Court Docket

United States District Court, Oregon

(Eugene 6)

**This case was retrieved on 03/17/2026**

## Header

**Case Number:** 6:25cv1666
**Date Filed:** 09/16/2025
**Assigned To:** Judge Mustafa T. Kasubhai
**Nature of Suit:** Voting (441)
**Cause:** Civil Rights Act
**Lead Docket:** None
**Other Docket:** *6:24cv01783*, Ninth Circuit, 26-01231
**Jurisdiction:** U.S. Government Plaintiff

**Class Code:** Closed
**Closed:** 02/05/2026
**Statute:** 42:1983
**Jury Demand:** None
**Demand Amount:** $0
**NOS Description:** Voting

## Participants

### Litigants

United States of America
**Plaintiff**

### Attorneys

David D. Vandenberg
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
DOJ-Crt
Vot 950 Pennsylvania Ave., Nw
Washington, DC 20530
USA
202-307-2767 Email:David.Vandenberg@usdoj.Gov

Timothy Mellett
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
DOJ-Crt
950 Pennsylvania Ave, N.W. 4con
Washington, DC 20530
USA
800-253-3931 Email:Timothy.F.Mellett@usdoj.Gov

Eric Neff
ATTORNEY TO BE NOTICED
DOJ-Crt
Civil Rights Division 150 M St. Ne Ste 8-142
Washington, DC 20002
USA
202-532-3628 Email:Eric.Neff@usdoj.Gov

Christopher J. Gardner

ER-194

United States Of America V. State Of Oregon, Et Al

| Litigants | Attorneys |
|---|---|
| | ATTORNEY TO BE NOTICED<br>DOJ-Crt<br>150 M St Ne<br>Washington, DC 20002<br>USA<br>202-812-2631 Email:Christopher.Gardner@usdoj.Gov |
| | James Thomas Tucker<br>ATTORNEY TO BE NOTICED<br>DOJ-Crt<br>U.S. Department Of Justice 950 Pennsylvania Avenue Nw<br>4con 8th Floor<br>Washington, DC 20530<br>USA<br>202-307-2767 Email:James.T.Tucker@usdoj.Gov |
| State of Oregon<br>**Defendant** | Thomas H. Castelli<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Oregon Department of Justice<br>Special Litigation Unit 100 Sw Market Street<br>Portland, OR 97201<br>USA<br>971-673-1880 Email:Thomas.Castelli@doj.Oregon.Gov |
| | Kate Elizabeth Morrow<br>ATTORNEY TO BE NOTICED<br>Oregon Department of Justice<br>Trial Division 100 Sw Market Street<br>Portland, OR 97201<br>USA<br>971-673-1880 Email:Kate.E.Morrow@doj.Oregon.Gov |
| Tobias Read<br>in his official capacity as the Oregon Secretary of State \|<br>**Defendant** | Thomas H. Castelli<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Oregon Department of Justice<br>Special Litigation Unit 100 Sw Market Street<br>Portland, OR 97201<br>USA<br>971-673-1880 Email:Thomas.Castelli@doj.Oregon.Gov |
| | Kate Elizabeth Morrow<br>ATTORNEY TO BE NOTICED<br>Oregon Department of Justice<br>Trial Division 100 Sw Market Street<br>Portland, OR 97201<br>USA<br>971-673-1880 Email:Kate.E.Morrow@doj.Oregon.Gov |
| Our Oregon<br>**Intervenor Defendant** | Dallas S. DeLuca<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR 97201<br>USA<br>503-295-3085 Fax: 503-323-9105<br>Email:Dallasdeluca@markowitzherbold.Com |
| | Harry B. Wilson<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR 97201 |

ER-195

United States Of America V. State Of Oregon, Et Al

| Litigants | Attorneys |
|---|---|
| | USA<br>503-295-3085 Email:Harrywilson@markowitzherbold.Com |
| | Abha Khanna<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Avenue Suite 2100<br>Seattle, WA  98101<br>USA<br>206-656-0177 Email:Akhanna@elias.Law |
| | Branden D Lewiston<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>250 Massachusetts Nw Ste 400<br>Washington, DC  20001<br>USA<br>202-998-8667 Email:Blewiston@elias.Law |
| | Christopher D. Dodge<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>250 Massachusetts Ave Nw Suite 400<br>Washington, DC  20001<br>USA<br>202-987-4928 Email:Cdodge@elias.Law |
| | Walker Roy McKusick<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Ave Ste 2100<br>Seattle, WA  98101<br>USA<br>202-968-4659 Email:Wmckusick@elias.Law |
| Dan DiIulio<br>**Intervenor Defendant** | Dallas S. DeLuca<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR  97201<br>USA<br>503-295-3085 Fax: 503-323-9105<br>Email:Dallasdeluca@markowitzherbold.Com |
| | Harry B. Wilson<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR  97201<br>USA<br>503-295-3085 Email:Harrywilson@markowitzherbold.Com |
| | Abha Khanna<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Avenue Suite 2100<br>Seattle, WA  98101<br>USA<br>206-656-0177 Email:Akhanna@elias.Law |

ER-196

United States Of America V. State Of Oregon, Et Al

## Litigants

## Attorneys

Branden D Lewiston
PRO HAC VICE;ATTORNEY TO BE NOTICED
Elias Law Group LLP
250 Massachusetts Nw Ste 400
Washington, DC  20001
USA
202-998-8667 Email:Blewiston@elias.Law

Christopher D. Dodge
PRO HAC VICE;ATTORNEY TO BE NOTICED
Elias Law Group LLP
250 Massachusetts Ave Nw Suite 400
Washington, DC  20001
USA
202-987-4928 Email:Cdodge@elias.Law

Walker Roy McKusick
PRO HAC VICE;ATTORNEY TO BE NOTICED
Elias Law Group LLP
Litigation 1700 Seventh Ave Ste 2100
Seattle, WA  98101
USA
202-968-4659 Email:Wmckusick@elias.Law

**Emma Craddock**
**Intervenor Defendant**

Dallas S. DeLuca
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Markowitz Herbold PC
1455 Sw Broadway Suite 1900
Portland, OR  97201
USA
503-295-3085 Fax: 503-323-9105
Email:Dallasdeluca@markowitzherbold.Com

Harry B. Wilson
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Markowitz Herbold PC
1455 Sw Broadway Suite 1900
Portland, OR  97201
USA
503-295-3085 Email:Harrywilson@markowitzherbold.Com

Abha Khanna
PRO HAC VICE;ATTORNEY TO BE NOTICED
Elias Law Group LLP
Litigation 1700 Seventh Avenue Suite 2100
Seattle, WA  98101
USA
206-656-0177 Email:Akhanna@elias.Law

Branden D Lewiston
PRO HAC VICE;ATTORNEY TO BE NOTICED
Elias Law Group LLP
250 Massachusetts Nw Ste 400
Washington, DC  20001
USA
202-998-8667 Email:Blewiston@elias.Law

Christopher D. Dodge

ER-197

United States Of America V. State Of Oregon, Et Al

| Litigants | Attorneys |
|---|---|
| | PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>250 Massachusetts Ave Nw Suite 400<br>Washington, DC  20001<br>USA<br>202-987-4928 Email:Cdodge@elias.Law<br><br>Walker Roy McKusick<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Ave Ste 2100<br>Seattle, WA  98101<br>USA<br>202-968-4659 Email:Wmckusick@elias.Law |
| Stephen Gomez<br>**Intervenor Defendant** | Dallas S. DeLuca<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR  97201<br>USA<br>503-295-3085 Fax: 503-323-9105<br>Email:Dallasdeluca@markowitzherbold.Com<br><br>Harry B. Wilson<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Markowitz Herbold PC<br>1455 Sw Broadway Suite 1900<br>Portland, OR  97201<br>USA<br>503-295-3085 Email:Harrywilson@markowitzherbold.Com<br><br>Abha Khanna<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Avenue Suite 2100<br>Seattle, WA  98101<br>USA<br>206-656-0177 Email:Akhanna@elias.Law<br><br>Branden D Lewiston<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>250 Massachusetts Nw Ste 400<br>Washington, DC  20001<br>USA<br>202-998-8667 Email:Blewiston@elias.Law<br><br>Christopher D. Dodge<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>250 Massachusetts Ave Nw Suite 400<br>Washington, DC  20001<br>USA<br>202-987-4928 Email:Cdodge@elias.Law<br><br>Walker Roy McKusick<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>Elias Law Group LLP<br>Litigation 1700 Seventh Ave Ste 2100 |

ER-198

United States Of America V. State Of Oregon, Et Al

## Litigants                          ## Attorneys

|  |  |
|---|---|
|  | Seattle, WA  98101 |
|  | USA |
|  | 202-968-4659 Email:Wmckusick@elias.Law |
| **Democratic National Committee**<br>**Amicus** | Misha Isaak |
|  | LEAD ATTORNEY;ATTORNEY TO BE NOTICED |
|  | Stoel Rives LLP |
|  | 760 S.W. Ninth Ave. Suite 3000 |
|  | Portland, OR  97205 |
|  | USA |
|  | 503-224-3380 Fax: 503-220-2480 |
|  | Email:Misha.Isaak@stoel.Com |
|  |  |
|  | Daniel J. Freeman |
|  | PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Democratic National Committee |
|  | 430 South Capitol St Se #3 |
|  | Washington, DC  20003 |
|  | USA |
|  | 202-923-6429 Email:Freemand@dnc.Org |
| **American Civil Liberties Union of Oregon**<br>**Amicus** | Eri Andriola |
|  | ATTORNEY TO BE NOTICED |
|  | ACLU of Oregon |
|  | Po Box 40585 |
|  | Portland, OR  97240 |
|  | USA |
|  | 503-227-3186 Email:Eandriola@aclu-Or.Org |
|  |  |
|  | Sophia Lin Lakin |
|  | PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | American Civil Liberties Union Foundation |
|  | Voting Rights Project 125 Broad Street Ste 18th Floor |
|  | New York, NY  10004 |
|  | USA |
|  | 212-519-7836 Email:Slakin@aclu.Org |
| **League of Women Voters of Oregon**<br>**Amicus** | Eri Andriola |
|  | ATTORNEY TO BE NOTICED |
|  | ACLU of Oregon |
|  | Po Box 40585 |
|  | Portland, OR  97240 |
|  | USA |
|  | 503-227-3186 Email:Eandriola@aclu-Or.Org |
|  |  |
|  | Kate Hamilton |
|  | PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Campaign Legal Center |
|  | 1101 14th St. Nw Suite 400 |
|  | Washington, DC  20005 |
|  | USA |
|  | 202-360-2864 Email:Khamilton@campaignlegalcenter.Org |
|  |  |
|  | Patrick Berry |
|  | PRO HAC VICE;ATTORNEY TO BE NOTICED |
|  | Brennan Center for Justice at NYU School of Law |
|  | 120 Broadway, Suite 1750 |
|  | New York, NY  10271 |
|  | USA |
|  | 646-925-8754 Fax: 212-463-7308 |
|  | Email:Berryp@brennan.Law.Nyu.Edu |
| Phil Keisling | Chloe Nakaya |

ER-199

United States Of America V. State Of Oregon, Et Al

| Litigants | Attorneys |
|---|---|
| **Amicus** | LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com<br><br>Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Mary  Estill Buchanan<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com<br><br>Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Miles Rapoport<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com<br><br>Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Joan Anderson Growe<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com<br><br>Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100 |

ER-200

United States Of America V. State Of Oregon, Et Al

| Litigants | Attorneys |
|---|---|
| | Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| John Gale<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com |
| | Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Kathy Boockvar<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com |
| | Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Sam Reed<br>**Amicus** | Chloe Nakaya<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2108 Email:Nakayac@ballardspahr.Com |
| | Pilar C. French<br>ATTORNEY TO BE NOTICED<br>Ballard Spahr LLP<br>601 Sw Second Avenue Suite 2100<br>Portland, OR  97204-3158<br>USA<br>503-778-2170 Fax: 503-778-2200<br>Email:Frenchp@ballardspahr.Com |
| Maryland<br>**Amicus** | Daniel Michael Kobrin<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Office of the Attorney General- State of Maryland<br>Civil Litigation Division 200 Saint Paul Place 20th Floor<br>Baltimore, MD  21202<br>USA<br>410-576-6472 Email:Dkobrin@oag.Maryland.Gov |

ER-201

| Litigants | Attorneys |
|---|---|

United States Of America V. State Of Oregon, Et Al

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 09/16/2025 | Complaint. (fee exempt status selected) Jury Trial Requested: No. Filed by United States of America against All Defendants (Attachments: # 1 Civil Cover Sheet, # 2 Attachment). (Vandenberg, David) (Entered: 09/16/2025) | |
| 2 | 09/16/2025 | Notice of Case Assignment to Judge Mustafa T. Kasubhai and Discovery and Pretrial Scheduling Order. NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5. Discovery is to be completed by 1/14/2026. Joint Alternate Dispute Resolution Report is due by 2/13/2026. Pretrial Order is due by 2/13/2026. Ordered by Judge Mustafa T. Kasubhai. (jw) (Entered: 09/16/2025) | |
| 3 | 09/17/2025 | Case Management Order signed on 09/17/2025 by Judge Mustafa T. Kasubhai. (bd) (Entered: 09/17/2025) | |
| 4 | 09/18/2025 | Amended Civil Cover Sheet regarding Complaint 1 . Filed by United States of America. (Vandenberg, David) (Entered: 09/18/2025) | |
| 5 | 09/19/2025 | Proposed Summons for Secretary of State Read Filed by United States of America. (Vandenberg, David) (Entered: 09/19/2025) | |
| 6 | 09/19/2025 | Proposed Summons for the State of Oregon Filed by United States of America. (Vandenberg, David) (Entered: 09/19/2025) | |
| 7 | 09/19/2025 | Amended Proposed Summons (Attachments: # 1 Proposed Summons) Filed by United States of America. (Vandenberg, David) (Entered: 09/19/2025) | |
| 8 | 09/22/2025 | Second Amended Proposed Summons (Attachments: # 1 Proposed Summons) Filed by United States of America. (Vandenberg, David) (Entered: 09/22/2025) | |
| 9 | 09/22/2025 | Summons Issued Electronically as to State of Oregon, Tobias Read. NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5. (Attachments: # 1 Summons Tobias Read) (jw) (Entered: 09/22/2025) | |
| 10 | 09/25/2025 | Notice of Appearance of Thomas H. Castelli appearing on behalf of State of Oregon, Tobias Read. Filed by on behalf of State of Oregon, Tobias Read. (Castelli, Thomas) (Entered: 09/25/2025) | |
| 11 | 09/25/2025 | Notice of Appearance of Kate Elizabeth Morrow appearing on behalf of State of Oregon, Tobias Read. Filed by on behalf of State of Oregon, Tobias Read. (Morrow, Kate) (Entered: 09/25/2025) | |
| 12 | 09/26/2025 | Motion to Intervene . Harry B. Wilson,Dallas S. DeLuca for Our Oregon,Harry B. Wilson,Dallas S. DeLuca for Dan DiIulio,Harry B. Wilson,Dallas S. DeLuca for Emma Craddock,Harry B. Wilson,Dallas S. DeLuca for Stephen Gomez,Harry B. Wilson,Harry B. Wilson,Dallas S. DeLuca,Harry B. Wilson,Dallas S. DeLuca,Harry B. Wilson,Dallas S. DeLuca,Harry B. Wilson,Dallas S. DeLuca. Filed by Our Oregon, Dan DiIulio, Emma Craddock, Stephen Gomez. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Wilson, Harry) (Attachment 6 replaced on 9/29/2025) (cw). (Entered: 09/26/2025) | |
| 13 | 09/29/2025 | Certificate of Service by United States of America of Complaint 1 for Tobias Read (1) Filed by United States of America. (Vandenberg, David) (Entered: 09/29/2025) | |
| 14 | 09/29/2025 | Certificate of Service by United States of America of Complaint 1 for Tobias Read (2) Filed by United States of America. | |

ER-202

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | (Vandenberg, David) (Entered: 09/29/2025) | |
| 15 | 09/29/2025 | Certificate of Service by United States of America of Complaint 1 on the State of Oregon Filed by United States of America. (Vandenberg, David) (Entered: 09/29/2025) | |
| 16 | 09/29/2025 | Notice of Directly Related Case Filed by United States of America. (Vandenberg, David) (Entered: 09/29/2025) | |
| 17 | 09/29/2025 | Notice of Correction by Clerk regarding 12 Motion to intervene. A Clerical error has been discovered in the case record: An incorrect PDF was attached to the entry (exhibit F). The following corrections were made to the record: A corrected PDF has been uploaded to replace the incorrect one. The Notice of Electronic Filing (NEF) will be regenerated to all parties. (cw) (Entered: 09/29/2025) | |
| 18 | 09/30/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Abha Khanna. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006976. Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Khanna, Abha) (Entered: 09/30/2025) | |
| 19 | 09/30/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Christopher D. Dodge. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006979. Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Dodge, Christopher) (Entered: 09/30/2025) | |
| 20 | 09/30/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Walker Roy McKusick. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006981. Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (McKusick, Walker) (Entered: 09/30/2025) | |
| 21 | 09/30/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Branden D Lewiston. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006983. Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Lewiston, Branden) (Entered: 09/30/2025) | |
| | 09/30/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Abha Khanna. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006976 18 : Reviewed and Ready for Ruling. (jw) (Entered: 09/30/2025) | |
| | 09/30/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Christopher D. Dodge. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006979 19 : Reviewed and Ready for Ruling. (jw) (Entered: 09/30/2025) | |
| | 09/30/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Walker Roy McKusick. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006981 20 : Reviewed and Ready for Ruling. (jw) (Entered: 09/30/2025) | |
| | 09/30/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Branden D Lewiston. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10006983 21 : Reviewed and Ready for Ruling. (jw) (Entered: 09/30/2025) | |
| 22 | 10/01/2025 | Motion for Stay for Lack of Appropriations. Filed by United States of America. (Vandenberg, David) (Entered: 10/01/2025) | |
| 23 | 10/01/2025 | ORDER by Judge Mustafa T. Kasubhai: GRANTING Motion for Leave to Appear Pro Hac Vice 18 requested by attorney Abha Khanna; GRANTING Motion for Leave to Appear Pro Hac Vice 19 requested by attorney Christopher D. Dodge; GRANTING Motion | |

ER-203

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | for Leave to Appear Pro Hac Vice 20 requested by attorney Walker Roy McKusick; GRANTING Motion for Leave to Appear Pro Hac Vice 21 requested by attorney Branden D Lewiston. (bd) (Entered: 10/01/2025) | |
| 24 | 10/02/2025 | ORDER by Judge Mustafa T. Kasubhai: Defendant's Unopposed Motion for Stay (ECF No. 22 ) is GRANTED as follows: This matter is stayed until (1) funding is restored to the Department of Justice or (2) 30 days from the date of this order, whichever comes sooner. Within 3 days of the end of the stay, the parties are ordered to submit joint proposed case management deadlines. (bd) (Entered: 10/02/2025) | |
| 25 | 10/24/2025 | Second Motion for Stay Due to Lapse of Appropriations. Filed by United States of America. (Vandenberg, David) (Entered: 10/24/2025) | |
| 26 | 10/28/2025 | ORDER by Judge Mustafa T. Kasubhai: Before the Court is Plaintiff's Unopposed Second Motion for Stay (ECF No. 25 ). The Court declines to exercise its discretion to extend the stay, and Plaintiff's motion is DENIED. Per the Court's prior order (ECF No. 24 ), the stay in this case lifts on November 3, 2025, and the parties are ordered to submit joint proposed case management deadlines by November 6, 2025. (bd) (Entered: 10/28/2025) | |
| 27 | 10/31/2025 | ORDER by Judge Mustafa T. Kasubhai: The Court understands that Plaintiff's counsel needs additional clarity regarding the Court's orders. Accordingly, this case is set for a telephonic status conference on November 3, 2025, at 10:30AM. The parties are ordered to call into the Court's conference line at least 5 minutes prior to the scheduled hearing. Call-in information will be sent by separate order. Please use a land line connection without external noise. The Court prohibits speaker phones due to the greatly diminished sound quality. (bd) (Entered: 10/31/2025) | |
| 28 | 10/31/2025 | Proposed Joint Case Management Schedule . Filed by United States of America. (Vandenberg, David) (Entered: 10/31/2025) | |
| 29 | 11/03/2025 | MINUTES of Proceedings: Telephonic Status Conference held before Judge Mustafa T. Kasubhai. Defendants' Motion to Dismiss is due November 17, 2025. Plaintiff's Response to the Motion to Intervene is due November 17, 2025. Plaintiff's Response to Defendants' Motion to Dismiss is due December 8, 2025. Defendants' Reply in support of their Motion to Dismiss is due December 22, 2025. The case deadlines set forth in ECF No. 2 are VACATED and will be reset once pleadings are settled. In response to Plaintiff's "Notice of Directly Related Case" (ECF No. 16 ), the Court declines to assign the two cases to a single judge. Timothy Mellett present as counsel for plaintiff. Thomas Castelli, Kate Morrow present as counsel for defendants. Harry Wilson, Abha Khanna, Branden Lewiston and Walker McKusick present as counsel for intervenors. (FTR - Eugene Courtroom 1.) (bd) (Entered: 11/03/2025) | |
| 30 | 11/17/2025 | Response in Opposition  to Motion to Intervene  12 . Filed by United States of America. (Attachments: # 1 NC Consent Decree) (Vandenberg, David) (Entered: 11/17/2025) | |
| 31 | 11/17/2025 | Proposed Motion to Dismiss for Failure to State a Claim and Memorandum in Support. Filed by Dan DiIulio, Our Oregon, Stephen Gomez, Emma Craddock. (Khanna, Abha) (Entered: 11/17/2025) | |
| 32 | 11/17/2025 | Motion to Dismiss . Filed by State of Oregon, Tobias Read. (Castelli, Thomas) (Entered: 11/17/2025) | |
| 33 | 11/17/2025 | Declaration of Thomas H. Castelli In Support of State Defendants' Motion To Dismiss. Filed by Tobias Read, State of Oregon. (Related document(s): Motion to Dismiss 32 .) (Attachments: # 1 | |

ER-204

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Exhibit Castelli Decl, Exhibit 1, # 2 Exhibit Castelli Decl, Exhibit 2, # 3 Exhibit Castelli Decl, Exhibit 3, # 4 Exhibit Castelli Decl, Exhibit 4, # 5 Exhibit Castelli Decl, Exhibit 5, # 6 Exhibit Castelli Decl, Exhibit 6, # 7 Exhibit Castelli Decl, Exhibit 7, # 8 Exhibit Castelli Decl, Exhibit 8, # 9 Exhibit Castelli Decl, Exhibit 9, # 10 Exhibit Castelli Decl, Exhibit 10) (Castelli, Thomas) (Entered: 11/17/2025) | |
| 34 | 11/18/2025 | Motion for Leave to File Amicus Brief. Filed by Democratic National Committee. (Isaak, Misha) (Entered: 11/18/2025) | |
| 35 | 11/18/2025 | Memorandum of Amicus Curiae entered by Misha Isaak on behalf of Democratic National Committee . Filed by Democratic National Committee. (Isaak, Misha) Modified docket text on 11/19/2025 to reflect title of document. Notice of Electronic Filing regenerated. (jw) (Entered: 11/18/2025) | |
| 36 | 11/20/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Daniel J. Freeman. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10070807. Filed by Democratic National Committee. (Freeman, Daniel) (Entered: 11/20/2025) | |
| | 11/20/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Daniel J. Freeman. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10070807 36 : Reviewed and Ready for Ruling. (jw) (Entered: 11/20/2025) | |
| 37 | 11/21/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Motion for Leave to Appear Pro Hac Vice 36 requested by attorney Daniel J. Freeman. (bd) (Entered: 11/21/2025) | |
| 38 | 11/21/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Motion for Leave to File Amicus Brief 34 . (bd) (Entered: 11/21/2025) | |
| 39 | 11/24/2025 | Motion for Leave to File Amici Curiae Brief. Filed by American Civil Liberties Union of Oregon, League of Women Voters of Oregon. (Attachments: # 1 Proposed Document Proposed Amici Curiae Brief) (Andriola, Eri) (Entered: 11/24/2025) | |
| 40 | 11/24/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Patrick Berry. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10075424. Filed by League of Women Voters of Oregon. (Berry, Patrick) (Entered: 11/24/2025) | |
| | 11/25/2025 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Patrick Berry. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10075424 40 : Reviewed and Ready for Ruling. (jw) (Entered: 11/25/2025) | |
| 41 | 11/26/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Motion for Leave to Appear Pro Hac Vice 40 requested by attorney Patrick Berry. (bd) (Entered: 11/26/2025) | |
| 42 | 11/26/2025 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Kate Hamilton. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10078146. Filed by League of Women Voters of Oregon. (Hamilton, Kate) (Entered: 11/26/2025) | |
| 43 | 11/26/2025 | NOTICE OF DEFICIENT PRO HAC VICE APPLICATION of Attorney Katherine Ramsey Hamilton. A Corrected Motion for Leave to Appear Pro Hac Vice must be filed that addresses the following deficiencies: Date incorrect. For instructions visit ord.uscourts.gov/prohac. (hm) Modified on 12/2/2025 to add the deficiency, NEF not regenerated (hm). (Entered: 11/26/2025) | |
| 44 | 12/01/2025 | Unopposed Motion to Appear as Amicus Curiae . Filed by Phil Keisling, Mary Estill Buchanan, Miles Rapoport, Joan Anderson | |

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Growe, John Gale, Kathy Boockvar, Sam Reed. (Attachments: # 1 Exhibit A) (French, Pilar) (Entered: 12/01/2025) | |
| 45 | 12/01/2025 | Reply to Response in Opposition to Motion to Intervene 12 . Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Khanna, Abha) (Entered: 12/01/2025) | |
| 46 | 12/01/2025 | Notice of Appearance of Pilar C. French appearing on behalf of Joan Anderson Growe, Kathy Boockvar, Mary Estill Buchanan, John Gale, Sam Reed, Phil Keisling, Miles Rapoport. Filed by on behalf of Joan Anderson Growe, Kathy Boockvar, Mary Estill Buchanan, John Gale, Sam Reed, Phil Keisling, Miles Rapoport. (French, Pilar) (Entered: 12/01/2025) | |
| 47 | 12/01/2025 | Notice of Appearance of Chloe Nakaya appearing on behalf of Joan Anderson Growe, Kathy Boockvar, Mary Estill Buchanan, John Gale, Sam Reed, Phil Keisling, Miles Rapoport. Filed by on behalf of Joan Anderson Growe, Kathy Boockvar, Mary Estill Buchanan, John Gale, Sam Reed, Phil Keisling, Miles Rapoport. (Nakaya, Chloe) (Entered: 12/01/2025) | |
| 48 | 12/01/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Motion for Leave to File Amici Curiae Brief 39 . (bd) (Entered: 12/01/2025) | |
| 49 | 12/02/2025 | Corrected Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Kate Hamilton. Related Document: 43 Notice of Deficient Pro Hac Vice Application,. Filed by League of Women Voters of Oregon. (Hamilton, Kate) (Entered: 12/02/2025) | |
| | 12/02/2025 | Clerk's Review of Corrected Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Kate Hamilton. Related Document: 43 Notice of Deficient Pro Hac Vice Application 49 : Reviewed and Ready for Ruling. (jw) (Entered: 12/02/2025) | |
| 50 | 12/03/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Corrected Motion for Leave to Appear Pro Hac Vice 49 requested by attorney Kate Hamilton. (bd) (Entered: 12/03/2025) | |
| 51 | 12/03/2025 | Motion for Leave to Appear by Special Admission, Motion for Leave . Filed by Maryland. (Attachments: # 1 Exhibit Exhibit A-Certificate of Good Standing, # 2 Proposed Order Proposed Order) (Kobrin, Daniel) (Entered: 12/03/2025) | |
| 52 | 12/05/2025 | OPINION AND ORDER signed on 12/5/2025 by Judge Mustafa T. Kasubhai: Our Oregon, Dan DiIulio, Stephen Gomez, and Emma Craddock's Motion to Intervene (ECF No. 12 ) is GRANTED. (bd) (Entered: 12/05/2025) | |
| 53 | 12/05/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Unopposed Motion to Appear as Amicus Curiae 44 . (bd) (Entered: 12/05/2025) | |
| 54 | 12/05/2025 | SCHEDULING ORDER by Judge Mustafa T. Kasubhai regarding Proposed Motion to Dismiss for Failure to State a Claim and Memorandum in Support 31 , Motion to Dismiss 32 . Oral Argument is set for 1/14/2026 at 09:30AM in Eugene Courtroom 1 before Judge Mustafa T. Kasubhai. Each party is ordered to submit to chambers bench copies of all exhibits offered in support of their motion or opposition as soon as practicable after briefing on the motion is complete, but at latest 7 days before the date of oral argument. (bd) (Entered: 12/05/2025) | |
| 55 | 12/05/2025 | Unopposed Motion to Appear as Amicus Curiae . Filed by Maryland. (Attachments: # 1 Exhibit Multistate Amicus Brief, # 2 Proposed Order) (Kobrin, Daniel) (Entered: 12/05/2025) | |
| 56 | 12/05/2025 | Amicus Brief . Filed by Kathy Boockvar, Mary Estill Buchanan, John Gale, Joan Anderson Growe, Phil Keisling, Miles Rapoport, Sam Reed. (Related document(s): Motion to Dismiss 32 .) (French, Pilar) (Entered: 12/05/2025) | |

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 57 | 12/08/2025 | Response in Opposition to Motion to Dismiss 32 . Filed by United States of America. (Vandenberg, David) (Entered: 12/08/2025) | |
| 58 | 12/08/2025 | ORDER by Judge Mustafa T. Kasubhai GRANTING Unopposed Motion to Appear as Amicus Curiae 55 . (bd) (Entered: 12/08/2025) | |
| 59 | 12/10/2025 | ORDER by Judge Mustafa T. Kasubhai: Before the Court is the State of Maryland's Motion for Special Admission by Governmental Attorney Daniel Kobrin. ECF No. 51 . Admission of government attorneys to practice in the District of Oregon is governed by LR 83-4. Government attorneys need not file a formal motion, but instead follow the instructions for application are provided at https://ord.uscourts.gov/index.php/attorneys/attorney-admissions#instructions-for-special-admission-as-a-government-attorney. However, according to Court records, Attorney Kobrin was already admitted as a government attorney in this district as of December 3, 2025. Accordingly, the State of Maryland's Motion for Special Admission by Governmental Attorney (ECF No. 51 ) is DENIED AS MOOT. (bd) (Entered: 12/10/2025) | |
| 60 | 12/22/2025 | Reply in Response to Opposition to Proposed Motion to Dismiss for Failure to State a Claim and Memorandum in Support 31 . Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Khanna, Abha) (Entered: 12/22/2025) | |
| 61 | 12/22/2025 | Reply to Motion to Dismiss 32 . Filed by Tobias Read, State of Oregon. (Castelli, Thomas) (Entered: 12/22/2025) | |
| 62 | 01/07/2026 | Notice of Appearance of James Thomas Tucker appearing on behalf of United States of America. Filed by on behalf of United States of America. (Tucker, James) (Entered: 01/07/2026) | |
| 63 | 01/14/2026 | MINUTES of Proceedings: Motion Hearing Held regarding Proposed Motion to Dismiss for Failure to State a Claim and Memorandum in Support 31 and Motion to Dismiss 32 . Motions are taken under advisement. James Tucker; David Vandenberg present as counsel for Plaintiff. Thomas Castelli; Kate Morrow present as counsel for Defendants. Branden Lewiston; Abha Khanna; Walker McKusick; Harry Wilson present as counsel for Intervenor Defendants. Judge Mustafa T. Kasubhai presiding. Court Reporter: Dennis Apodaca. (jk) (Entered: 01/15/2026) | |
| 64 | 01/15/2026 | Notice of Appearance of Christopher J. Gardner appearing on behalf of United States of America. Filed by on behalf of United States of America. (Gardner, Christopher) (Entered: 01/15/2026) | |
| 65 | 01/16/2026 | Notice of Supplemental Authority re Motion to Dismiss for Failure to State a Claim 31 Filed by Emma Craddock, Dan DiIulio, Stephen Gomez, Our Oregon. (Related document(s): Motion to Dismiss for Failure to State a Claim 31 .) (Attachments: # 1 Exhibit 1 - Order, U.S. v. Weber) (Khanna, Abha) (Entered: 01/16/2026) | |
| 66 | 01/26/2026 | ORDER by Judge Mustafa T. Kasubhai: The Court is aware of correspondence from Attorney General Pamela Bondi addressed to Minnesota Governor Tim Walz, dated January 24, 2026. The letter explains, inter alia, the purported reason for ICE enforcement activities in Minnesota. The letter further urges Governor Walz to cooperate with the Department of Justice on three points, one of which is to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960." The letter explains that "[f]ulfilling this common sense request will better guarantee free and fair elections and boost confidence in the rule of law." The Court orders counsel to appear by videoconference at 3:00pm PST on January 26, 2026, to provide supplemental argument on the relevance of this letter in interpreting "basis and purpose" in | |

ER-207

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|---|---|---|
| | | the context of Plaintiff's claim under Title III of The Civil Rights Act of 1960 in this case. (bd) (Entered: 01/26/2026) | |
| 67 | 01/26/2026 | Notice of Supplemental Authority  Filed by United States of America. (Attachments: # 1 Exhibit 1 - USA v. GA Complaint, # 2 Exhibit 2 - USA v. GA Consent Decree, # 3 Exhibit 3 - USA v. TX Memorandum of Understanding) (Tucker, James) (Entered: 01/26/2026) | |
| 68 | 01/26/2026 | MINUTES of Proceedings: Motion Hearing Held by videoconference before Judge Mustafa T. Kasubhai. For the reasons articulated on the record at oral argument and supplemental oral argument, Defendants' Motion to Dismiss (ECF No. 32 ) and Defendant-Intervenors' Motion to Dismiss (ECF No. 31 ) are GRANTED. A formal opinion providing further detail on the Court's reasoning will follow. James Tucker present as counsel for plaintiff. Thomas Castelli present as counsel for defendants. Harry Wilson, Abha Khanna, Branden Lewiston and Christopher Dodge present as counsel for Intervenor Defendants. Daniel Freeman present as counsel for Amici Curiae. (Court Reporter: Ryan White.) (bd) (Entered: 01/26/2026) | |
| 69 | 01/28/2026 | Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Sophia Lin Lakin. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10142502. Filed by American Civil Liberties Union of Oregon. (Lakin, Sophia) (Entered: 01/28/2026) | |
| 70 | 01/28/2026 | A duplicate payment in the amount of $300.00 was submitted by American Civil Liberties Union of Oregon in the above-referenced case. For information on refund procedures, visit Requesting a Refund of Electronically Paid Fees on the Court's website. Refund Request is Due 2/9/2026. (has) (Entered: 01/29/2026) | |
| | 01/29/2026 | Clerk's Review of Motion for Leave to Appear Pro Hac Vice. Pro Hac Vice admission requested by attorney Sophia Lin Lakin. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10142502 69 : Reviewed and Ready for Ruling. (le) (Entered: 01/29/2026) | |
| 71 | 01/30/2026 | ORDER by Judge Mustafa T. Kasubhai GRANTING Motion for Leave to Appear Pro Hac Vice 69 requested by attorney Sophia Lin Lakin. (bd) (Entered: 01/30/2026) | |
| 72 | 02/02/2026 | Request for Refund of Fees Paid Electronically regarding Refund Request Due, 70 . Filed by American Civil Liberties Union of Oregon. (Attachments: # 1 Attachment Electronic Payment Receipt) (Lakin, Sophia) (Entered: 02/02/2026) | |
| 73 | 02/05/2026 | OPINION AND ORDER signed on 2/5/2026 by Judge Mustafa T. Kasubhai: Defendants' and Intervenors' Motions to Dismiss (ECF Nos. 31 , 32 ) are GRANTED. This case is DISMISSED WITHOUT LEAVE TO AMEND. (bd) (Entered: 02/05/2026) | |
| 74 | 02/05/2026 | JUDGMENT signed on 02/05/2026 by Judge Mustafa T. Kasubhai: Based on the record, IT IS ORDERED AND ADJUDGED this action is dismissed without leave to amend. Pending motions, if any, are denied as moot. (bd) (Entered: 02/05/2026) | |
| 75 | 02/06/2026 | Clerk's Notice of Pay.gov Refund regarding Agency Tracking ID: AORDC-10142481. The request has been granted and the amount of $300.00 will be refunded to Sophia Lin Lakin Related Doc 69 Motion for Leave to Appear Pro Hac Vice,. (has) (Entered: 02/06/2026) | |
| 76 | 02/25/2026 | Notice of Appeal to the 9th Circuit from Opinion and Order 73 , Judgment 74 , Order on Motion for Leave to Appear Pro Hac Vice 71 (fee exempt status selected) . Filed by All Plaintiffs. (Neff, Eric) (Entered: 02/25/2026) | |

United States Of America V. State Of Oregon, Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 77 | 02/27/2026 | OFFICIAL COURT TRANSCRIPT OF PROCEEDINGS FILED Oral Argument held on 1/26/2026 before Judge Mustafa T. Kasubhai, Court Reporter Ryan White, telephone number 503-826-8184 or ryan_white@ord.uscourts.gov. Transcript may be viewed at Court's public terminal or purchased from the Court Reporter before the deadline for Release of Transcript Restriction. Afterwards it may be obtained from the Court Reporter or through PACER. See Policy at ord.uscourts.gov. Notice of Intent to Redact Transcript is due by 3/6/2026. Redaction Request due 3/20/2026. Redacted Transcript Deadline set for 3/30/2026. Release of Transcript Restriction set for 5/28/2026. (White, Ryan) (Entered: 02/27/2026) | |
| | 03/03/2026 | USCA Case Number and Notice confirming Docketing Record on Appeal re Notice of Appeal 76 . Case Appealed to Ninth Circuit Case Number 26-1231 assigned. (jw) (Entered: 03/03/2026) | |
| 78 | 03/12/2026 | Transcript Designation and Order Form regarding Notice of Appeal 76 . Eric Neff. Filed by United States of America. Transcript is due by 4/13/2026. (Neff, Eric) (Entered: 03/12/2026) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

ER-209