IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

No. 26-1231

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

THE STATE OF OREGON, et al.,

Defendants-Appellees

OUR OREGON; DAN DIIULIO; EMMA CRADDOCK; STEPHEN GOMEZ,

Defendants-Intervenors-Appellees
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
_____

UNITED STATES' MOTION TO TAKE JUDICIAL NOTICE
OF COURT FILINGS IN SEPARATE CASES AND A MEMORANDUM
OF UNDERSTANDING
_____

Appellant United States respectfully moves this Court to take judicial notice that the documents attached to this motion, including three complaints the United States filed in separate cases, a letter filed as an exhibit in one of those cases, and a memorandum of understanding between the United States and Texas, are true and accurate documents

relevant to the instant appeal. In support of this request, the United States submits the following:

1. Appellant United States filed its Reply Brief in this case on April 24, 2026. In its argument section, the Brief cited a Complaint the United States filed, and an Order the district court issued, in United States v. Alabama, No. 2:08-cv-920 (M.D. Ala.); a Complaint the United States filed, and an exhibit defendants filed, in United States v. Alabama, No. 2:24-cv-1329 (N.D. Ala.); a Complaint the United States filed, and a Consent Judgment the district court entered, in United States v. Georgia, No. 1:06-cv-2442 (N.D. Ga.); and a Memorandum of Understanding Between the United States and Texas that was signed May 13, 2008. The United States included all documents in an Addendum at the end of its Reply Brief.

2. On April 27, 2026, this Court informed the United States that the Court could not process the filing of the Reply Brief because some of these documents were not federal judicial dispositions and thus were not permitted to be attached to the Brief under Ninth Circuit Rule 28-2.7 or Federal Rule of Appellate Procedure 32.1. The Court instructed the United States to remove these documents from the Brief and file them

- 3 -

separately with either a motion to take judicial notice or a motion to supplement the record on appeal.

3.      The three complaints, letter exhibit, and memorandum of understanding are true and accurate documents that are relevant to, and necessary for, the appeal in this case.

4.      Counsel for the defendants has not responded to our request for their position on this motion.

WHEREFORE, the United States respectfully requests that the Court grant its motion and take judicial notice of the attached Complaint filed in United States v. Alabama, No. 2:08-cv-920 (M.D. Ala.); Complaint and letter exhibit filed in United States v. Alabama, No. 2:24-cv-1329 (N.D. Ala.); Complaint in United States v. Georgia, No. 1:06-cv-2442 (N.D. Ga.); and Memorandum of Understanding Between the United States and Texas.

<div style="margin-left:50%">

Respectfully submitted,

HARMEET K. DHILLON
 Assistant Attorney General

JESUS A. OSETE
 Principal Deputy Assistant
 Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 P.O. Box 14403
 Ben Franklin Station
 Washington, D.C. 20044-4403
 (202) 532-3803

</div>

Date: April 28, 2026

CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 389 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
 Attorney

Date: April 28, 2026

# ATTACHMENTS

## TABLE OF CONTENTS

**PAGE**

Complaint, *United States v. Alabama*,
No. 2:08-cv-920 (M.D. Ala.), filed November 19, 2008
(Doc. 1) ...................................................................... 1

Complaint, *United States v. Alabama*,
No. 2:24-cv-1329 (N.D. Ala.), filed September 27, 2024
(Doc. 1) ...................................................................... 5

DOJ Letter to Alabama's Director of Elections,
*United States v. Alabama*, No. 2:24-cv-1329 (N.D. Ala.),
dated September 24, 2024, filed October 1, 2024
(Doc. 11-7) ................................................................ 23

Complaint, *United States v. Georgia*,
No. 1:06-cv-2442 (N.D. Ga.), filed October 12, 2006
(Doc. 1) ...................................................................... 27

Memorandum of Understanding Between the United States
and Texas, signed May 13, 2008, *available at*
https://www.justice.gov/media/1173461/dl?inline
(last visited Apr. 24, 2026) ........................................ 32

RECEIVED

IN THE UNITED STATES DISTRICT COURT NOV 19 P 1: 5*
FOR THE MIDDLE DISTRICT OF ALABAMA

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _2:08 CV 920 -_ WKW |
| | ) | |
| THE STATE OF ALABAMA; BETH | ) | |
| CHAPMAN, SECRETARY OF STATE OF | ) | |
| ALABAMA, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America alleges:

1.      This action is brought by the Attorney General on behalf of the United States

pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") 42 U.S.C.

§ 1973ff-1(c) (2003).

2.      42 U.S.C. § 1973ff-1(c) mandates that States (and local governments through their

respective States) report to the Election Assistance Commission the "[n]ot later than 90 days

after the date of each regularly scheduled general election for Federal office" the "combined

number of absentee ballots that are transmitted to absent uniformed services voters and overseas

voters for the election and the combined number of such ballots which were returned by such

voters and cast."  The States "shall make such a report available to the general public." Id.

3.      The Attorney General of the United States is given authority to ensure that states

comply with 42 U.S.C. § 1973ff-1(c) and report the number of UOCAVA ballots transmitted,

FOK 11.19.08

# MJN 1

returned, and cast. Under 42 U.S.C. § 1973ff-4, "[t]he Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out this subchapter [UOCAVA]."

4.     This Court has jurisdiction pursuant to 42 U.S.C. § 1973ff-4 and 28 U.S.C. §§ 1345 and 2201(a).

5.     The Defendant State of Alabama (the "State") is responsible for complying with UOCAVA, and ensuring required information is transmitted to the Election Assistance Commission within 90 days of a Federal Election.

6.     Defendant Beth Chapman is sued in her official capacity as the Secretary of State of the State of Alabama.   As the Secretary of State, she is the chief election officer for Alabama. See Ala. Code 1975 § 17-1-3.  The principal office of the Secretary of State elections division is in Montgomery, Alabama.

7.     Alabama failed to comply with § 1973ff-1(c) in 2006 and did not report any data as required.

8.     Alabama has not provided any information demonstrating that there are any new efforts to obtain compliance with § 1973ff-1(c) in 2008.

9.     The failure of election officials in Alabama to comply with § 1973ff-1(c) results in an absence of information as to whether or not UOCAVA's guarantees that overseas citizens and those serving in the armed forces are effectively exercising the franchise.

10.     An order of this Court is necessary requiring Defendants to take corrective action for the November 4, 2008, election in order to protect the rights granted by UOCAVA.

WHEREFORE, Plaintiff prays that this Court hear this action pursuant to  42 U.S.C. §

**MJN 2**

1973ff-1(c); issue a declaratory judgment under 28 U.S.C. § 2201 that Alabama officials failed to track and report data about the number of UOCAVA ballots requested, transmitted and cast; and issue injunctive relief ordering the Defendants, their agents and successors in office, and all persons acting in concert with them:

(1)    to require all election officials to implement procedures to record data about the number of UOCAVA ballots requested, transmitted and cast by UOCAVA voters; and,

(2)    to report data required by § 1973ff-1(c) to the Election Assistance Commission to the Election Assistance Commission and general public within 90 days after the November 4, 2008 election and in future federal general elections.

The United States of America further prays that this Court order such other relief as the interests of justice may require, together with the costs and disbursements of this action.

3

**MJN 3**

MICHAEL B. MUKASEY
Attorney General


LEURA G. CANARY
United States Attorney


By:

R. RANDOLPH NEELY
Assistant United States Attorney
Middle District of Alabama
One Court Square
Suite 201
Montgomery, Alabama 36104
(334) 223-7280

GRACE CHUNG BECKER
Acting Assistant Attorney General


CHRISTOPHER COATES
Chief, Voting Section

REBECCA J. WERTZ
Principal Deputy Chief
TIMOTHY F. MELLETT
Deputy Chief
J. CHRISTIAN ADAMS
CHRISTY A. McCORMICK
Trial Attorneys
United States Department of Justice
Civil Rights Division, Voting Section
950 Pennsylvania Ave., NW
Room NWB-7254
Washington, D.C.  20530
Phone: (202) 305-0609
Fax:    (202) 307-3961
christy.mccormick@usdoj.gov


4


**MJN 4**

FILED
2024 Sep-28  AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF ALABAMA and WES ALLEN, in his official capacity as Alabama Secretary of State, <br><br> Defendants. | Civil Action No. |

## COMPLAINT

The United States of America alleges:

1.     Only U.S. citizens are eligible to vote in U.S. federal elections.  That fact is not in dispute, and there is no evidence of widespread non-citizen voting in the United States.  But that is not what this case is about.

2.     This case is about Section 8(c)(2) of the National Voter Registration Act (NVRA), also known as the Quiet Period Provision, which requires states to complete systematic programs intended to remove the names of ineligible voters from registration lists by no later than 90 days before federal elections.  52 U.S.C. § 20507(c)(2).

**MJN 5**

3.     The Quiet Period Provision helps to mitigate the risk that errors in systematic list maintenance will disenfranchise, confuse, or deter eligible voters by ensuring that they have adequate time to address errors and understand their rights.

4.     On August 13, 2024—84 days before the November 5, 2024, federal general election—the State of Alabama commenced a process to remove from its voter rolls 3,251 individuals through what it termed a "Process to Remove Noncitizens registered to vote in Alabama" (the Program).  This list of impacted individuals included both natural-born and naturalized U.S. citizens who were registered, eligible voters in the State.

5.     While more than 700 individuals impacted by the Program have since re-registered and returned to active status in the State's voter registration records, potentially several hundred or even thousands more registered, eligible voters from the list—U.S. citizens—remain in inactive status, stand to be harmed, and risk disenfranchisement just weeks before the upcoming federal election.

6.     In this action, the United States alleges that the implementation of the Program, which has included communications directed by the State to voters containing insufficient or contradictory information, violates the Quiet Period Provision.

7.     The Quiet Period Provision embodies Congress's clear and considered judgment to restrict states from systematically removing voters from the rolls in

2

**MJN 6**

the final days before an election.  And for good reason: Systematic removal programs are more error-prone than other forms of list maintenance, and eligible voters placed on the path to removal days or weeks before Election Day may be deterred from voting or unable to correct the State's error before the election.

8.     The State's unlawful actions here have confused and deterred U.S. citizens who are fully eligible to vote—the very scenario that Congress tried to prevent when it enacted the Quiet Period Provision.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 52 U.S.C. § 20510(a) and 28 U.S.C. §§ 1331 and 1345.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 81(a)(3) and 1391(b).

## PARTIES

11.     The United States brings this civil action for declaratory or injunctive relief necessary to carry out the NVRA.  52 U.S.C. § 20510(a).

12.     The State of Alabama is a state of the United States and is obligated to comply with Section 8 of the NVRA.  52 U.S.C. §§ 20503(a)(1), 20504.

13.     Defendant Wes Allen is the Alabama Secretary of State, the chief election officer of the State of Alabama.  Ala. Code § 17-1-3(a).  As Alabama's chief state election official, Secretary Allen is responsible for coordinating State

3

**MJN 7**

responsibilities under the NVRA.  52 U.S.C. § 20509; Ala. Code § 17-4-60(a).  He is sued in his official capacity.

<div align="center">

**FACTUAL ALLEGATIONS**
</div>

**Section 8(c)(2) of the National Voter Registration Act**

14. Section 8 of the NVRA establishes requirements for the administration of voter registration for elections for federal office.  52 U.S.C. § 20507.

15. Section 8(c)(2) of the NVRA, the Quiet Period Provision, specifically directs that a "State shall complete, not later than 90 days prior to the date of a primary or general election for federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

16. The Quiet Period Provision does not preclude the removal of names from official lists of voters at the request of the registrant, by reason of criminal conviction or mental incapacity (as provided by State law), or by reason of the death of the registrant.  52 U.S.C. § 20507(c)(2)(B)(i); *see also* 52 U.S.C. § 20507(a)(3)(A)-(B), (4)(A).

17. The Quiet Period Provision also does not preclude correction of registration records pursuant to the NVRA.  52 U.S.C. § 20507(c)(2)(B)(ii).

<div align="center">

4

**MJN 8**
</div>

18.     The Quiet Period Provision applies to systematic programs intended to remove the names of ineligible voters based on failure to meet initial eligibility requirements—including citizenship—at the time of registration.  *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343-48 (11th Cir. 2014).

19.     The Quiet Period Provision thus strikes a careful balance: It permits systematic removal programs at any time *except* for the 90 days before an election because that is when the risk of disfranchising eligible voters is the greatest.

**Secretary Allen's "Process to Remove Noncitizens Registered to Vote in Alabama"**

20.     On August 13, 2024, Alabama Secretary of State Wes Allen announced that his office had begun implementing a process to remove from Alabama's voter rolls 3,251 individuals who have allegedly been issued "noncitizen identification numbers."

21.     Secretary Allen used the term "noncitizen identification numbers" to refer to alien registration numbers, unique seven-, eight-, or nine-digit numbers assigned by the U.S. Department of Homeland Security to noncitizens, including legal permanent residents and other immigrants potentially eligible to become U.S. citizens.  An alien registration number is also known as an "A-number."

22.     The Alabama Secretary of State's office announced the Program 84 days before the November 5, 2024, general election.

**MJN 9**

23.     The press release announcing the Program conceded that "it is possible" that some of these 3,251 individuals have become naturalized citizens. The press release did not explain what efforts, if any, had been taken to determine the current citizenship or immigration status of impacted individuals.

24.     At the commencement of the Program, Secretary Allen instructed county boards of registrars to place the 3,251 individuals in "inactive" status and to send each targeted individual a form letter.

25.     Being placed in inactive status meant that the 3,251 targeted individuals could not cast votes that counted without submitting paperwork to reactivate their voter registration status.

26.     The initial form letter told the recipient, "Secretary of State Wes Allen has provided our Office with information that shows you have been issued a noncitizen identification number by the Department of Homeland Security.  You are also a registered voter in Alabama."

27.     The form letter then explained, "This letter is informing you that only eligible United States citizens that reside in Alabama may register to vote in the state.  Therefore, your voter record has been made inactive and you have been placed on the path for removal from the statewide voter list."

**MJN 10**

28.     The form letter then directed each recipient, "Please complete and submit the enclosed Voter Removal Request form to immediately be removed from the voter list and become compliant with state and federal law requirements."

29.     The form letter then noted, "If you are a citizen of the United States and are otherwise eligible to register to vote in Alabama, please complete and submit the enclosed State of Alabama Voter Registration Form and include your current Alabama driver license number or nondriver ID number, or the last four of your social security number (if you do not have an Alabama driver license)."

30.     The enclosed State of Alabama Voter Registration Form prominently stated that a voter cannot register in the 14 days prior to an election in Alabama.

31.     The form letter did not instruct recipients that they could complete a voter registration form online to restore their voter record to active status.

32.     The letter did not instruct recipients that they could restore their voter record to active status at their assigned polling place on Election Day by completing a distinct document, the Alabama Voter's Reidentification/Update Form.

**The 3,251 Individuals Targeted by the Program**

33.     Secretary Allen developed a list of 3,251 purported noncitizens on Alabama's voter registration list by comparing voter rolls against driver's license

**MJN 11**

and ID card data from the Alabama Law Enforcement Agency (ALEA) and unemployment data from the Alabama Department of Labor (ADOL).

***ALEA Driver's License Records***

34.     ALEA may associate an A-number with the record of an individual who was recorded as a foreign national at the time that they applied for an identification document, such as a driver's license or non-driver identification card.

35.     Driver's licenses issued by ALEA to foreign nationals remain valid for up to four years.

36.     Non-driver identification cards issued by ALEA to foreign nationals remain valid for up to eight years.

37.     ALEA does not require a newly naturalized U.S. citizen to update agency records or obtain a new identification document if their foreign national driver's license or identification card has not yet expired.

38.     The Program matched ALEA records of individuals for which the last credential issued by ALEA was a foreign national driver's license or identification card against the Alabama voter registration list.

39.     The Program placed all voter registration records that matched against ALEA records for individuals for which the last credential issued by ALEA was a foreign national driver's license or identification card in inactive status.

**MJN 12**

40.     ALEA data were matched to data in the voter registration list using the following criteria: driver's license number, date of birth, first name, last name, and last four digits of the individual's social security number.

41.     The Program did not distinguish between ALEA records predating a voter's submission of a voter registration application and ALEA records postdating a voter's submission of a voter registration application.

42.     The ALEA component of the Program failed to account for voters who became naturalized U.S. citizens after obtaining a foreign national driver's license or identification cards.

### ADOL Unemployment Records

43.     ADOL may associate an A-number with an individual record of an unemployment claimant.

44.     The Program relied on records of unemployment claims dating back to January 10, 2020.

45.     The Program relied on records of unemployment claims for individuals who selected a box denoting that they were a "noncitizen" in their application paperwork.

46.     The Program used the following match criteria to compare against Alabama's voter registration list: first name, last name, date of birth, and last four digits of the individual's social security number.

9

**MJN 13**

47.   ADOL does not require a newly naturalized U.S. citizen who previously received unemployment benefits to update agency records.

48.   The Program placed all voter registration records that matched against ADOL records containing an A-number in inactive status.

49.   The Program did not distinguish between ADOL records predating a voter's submission of a voter registration application and ADOL records postdating a voter's submission of a voter registration application.

50.   The Program included ADOL records associated with an A-number due to paperwork errors, even if those errors had been corrected prior to the commencement of the Program.

51.   The ADOL component of the Program failed to account for voters who became naturalized U.S. citizens since January 10, 2020.

***Alabama Agency Databases***

52.   Alabama agency databases contain well-documented data errors.  For example, a January 13, 2023, report on ADOL unemployment benefits payments highlighted shortcomings in ADOL's process to verify the accuracy of submitted paperwork.  *See* Special Report, Ala. Dep't of Pub. Examiners, *Special Report on Unemployment Compensation Payments Issued by the Alabama Department of Labor* (Jan. 13, 2023).

**MJN 14**

53.     Alabama agency databases contain potentially obsolete data.  For example, the ALEA driver's license database incorporates data received since 1970.  *See* Press Release, Off. of the Ala. Governor, *Governor Ivey Announces New Statewide Driver License System* (Feb. 4, 2022).

**Impact of the Program**

54.     The 3,251 individuals targeted by the Program include American citizens.

55.     As of September 19, 2024, 717 of the 3,251 individuals targeted by the Program had Alabama voter registration records that had been restored from inactive status to active status.

56.     To return to active status, Alabama law and procedures require inactive voters to submit paperwork that includes confirmation of U.S. citizenship.

57.     Therefore, at least 717 individuals targeted by the Program have so far confirmed that they are in fact U.S. citizens.

58.     As of September 19, 2024, only approximately 106 individuals targeted by the Program had submitted a voter removal request form.

59.     Submission of a voter removal request form does not establish that a registered voter is not a U.S. citizen; nor does it establish that a registered voter is ineligible to vote in the State of Alabama.

**MJN 15**

60.     The voter removal request form includes check boxes allowing voters to indicate the reason they seek removal (for example, because they no longer reside in the county where they are registered), but it does not require voters to identify the specific reason they wish to be removed.  Although the form does not include a check box to indicate that a registrant is a noncitizen, voters may provide additional information elsewhere on the form.

61.     When processing voter removal requests submitted in response to the Program, some officials at county boards of registrars have placed voter registration records in "disqualified" status and marked "Not a US Citizen" as the basis for disqualification, even without specific additional information concerning citizenship.

62.     Secretary Allen's office has directed individual officials at county boards of registrars who have marked "Not a US Citizen" as the basis for disqualification of a voter without citizenship evidence beyond submission of a voter removal request to correct the recorded basis for disqualification.  However, Secretary Allen has not provided general guidance to all county boards of registrars concerning the processing of voter removal request forms by individuals targeted by the Program.

63.     Natural-born citizens were incorrectly identified by the Program based on errors in ADOL records.

12

**MJN 16**

64.     Naturalized citizens were incorrectly identified by the Program based on outdated ALEA and ADOL records.

65.     The broad reach of the Program, combined with insufficient or contradictory information provided to voters, has confused voters targeted by the Program.

66.     Some voters targeted based on ADOL records never completed or submitted an application for unemployment benefits.

67.     Some voters targeted based on ADOL records had previously corrected paperwork errors regarding their citizenship status in ADOL records.

68.     Some county officials have been unable to explain to voters the basis for inclusion in the Program.

69.     Secretary Allen's office told one voter that she was included in the Program due to an interaction with ALEA during a traffic violation, even though the voter does not drive.

70.     Secretary Allen's office has responded to some voters seeking information regarding the Program by redirecting them to the U.S. Department of Homeland Security.

71.     The August form letter confused some voters by directing all recipients to submit a voter removal request form to "become compliant with state

**MJN 17**

and federal law requirements" and also directing eligible U.S. citizens to complete a voter registration form.

72.    Some voters targeted by the Program did not trust the process for re-registration outlined in the August form letter and elected instead to visit their local board of registrars and submit a new voter registration form in person.

73.    The implementation of and public reaction to the Program illustrates the immediate problems that the Quiet Period Provision seeks to prevent.

**Secretary Allen's September Form Letter to Targeted Voters**

74.    On September 18, 2024, Secretary Allen's office sent a message directing local boards of registrars to send another form letter to the 2,428 voters targeted by the Program who had, to date, neither re-registered to vote nor submitted a voter removal request form.

75.    The September form letter informs U.S. citizens that they have three options to ensure that they can vote in the upcoming November 5, 2024, federal general election: (1) submit a voter registration form, postmarked by the October 21, 2024, Alabama voter registration deadline; (2) complete a voter registration form online by the October 21, 2024, Alabama voter registration deadline if the voter has an Alabama driver's license or non-driver ID; or (3) complete an Alabama Voter's Reidentification/Update form at the voter's assigned polling place on Election Day prior to voting.

**MJN 18**

76.     The September form letter then notes that voters who vote absentee "are encouraged to first update" their information with their local Board of Registrar as described in the above second option.

77.     The September form letter then provides, "Regardless, you will be allowed to vote absentee pursuant to the normal process."

78.     These differing requirements exacerbate the confusion created by the Program.

79.     Secretary Allen's office did not provide a deadline by which local boards of registrars were to mail the September form letter.

## CAUSE OF ACTION

80.     The United States re-alleges and incorporates by reference the allegations set forth above.

81.     Defendants' commencement of a process to remove purported noncitizens registered to vote in Alabama on August 13, 2024—less than 90 days before the November 5, 2024, federal general election—violated Section 8(c)(2) of the NVRA, 52 U.S.C. § 20507(c)(2).

82.     Secretary Allen's September form letter does not cure the violation of the Quiet Period Provision or eliminate the need for relief.

83.     Unless and until ordered to do so by this Court, Defendants will not resolve and remedy this violation of Section 8(c)(2) of the NVRA.

**MJN 19**

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an ORDER:

(1)  Declaring that Defendants have violated Section 8(c)(2) of the NVRA;

(2)  Enjoining Defendants, their agents and successors in office, and all persons acting in concert with them from future non-compliance with Section 8(c)(2) of the NVRA;

(3)  Requiring Defendants, their agents and successors in office, and all persons acting in concert with them, to restore to active status the registration records of voters whose records were inactivated as part of the Program and who have not subsequently submitted a voter removal request;

(4)  Requiring Defendants, their agents and successors in office, and all persons acting in concert with them, to provide a remedial mailing to voters who received letters as part of the Program and who have not subsequently submitted a voter removal request

  a.  Informing the voters that they have been restored to active status;

  b.  Explaining that these voters may cast a regular ballot on Election Day in the same manner as other eligible voters;

  c.  Advising individuals who are U.S. citizens, including naturalized citizens, that their inclusion in the Program does not establish that they are ineligible to vote or subject them to criminal prosecution for

**MJN 20**

registering to vote or for voting; and

d.  Advising individuals who are not U.S. citizens that they remain ineligible to cast a ballot in elections in Alabama;

(5)  Requiring Defendants, their agents and successors in office, and all persons acting in concert with them, to provide a remedial mailing to each registrant inactivated as part of the Program who subsequently submitted a voter removal request but did not expressly state on that form or in related communications that they are not a U.S. citizen, advising these individuals that if they are U.S. citizens and otherwise meet voter qualifications, they have the right to vote and are encouraged to re-register;

(6)  Requiring Defendants, their agents and successors in office, and all persons acting in concert with them to provide prompt and clear information to the general public concerning the halting and reversal of the Program and the ability of impacted eligible voters to vote unimpeded on Election Day;

(7)  Requiring Defendants, their agents and successors in office, and all persons acting in concert with them to take all reasonable and practicable efforts to educate county officials and poll workers concerning the cessation of the Program, the restoration of impacted voters to active status, and the ability of impacted voters to cast a regular ballot without submitting supplemental paperwork or documentation; and

**MJN 21**

(8)     Ordering any such additional relief as the interests of justice may require.

Date:  September 26, 2024

                                        Respectfully submitted,

                                          KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s/ Daniel J. Freeman*
R. TAMAR HAGLER
RICHARD A. DELLHEIM
DANIEL J. FREEMAN
KELLI M. SLATER
Attorneys
Voting Section, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W
Washington, D.C. 20530
(202) 305-5451
daniel.freeman@usdoj.gov

18

**MJN 22**

**U.S. Department of Justice**

Civil Rights Division

_Voting Section_
_950 Pennsylvania Ave, NW_
_4CON 8th Floor_
_Washington, DC 20530_

September 4, 2024

Jeff Elrod
Director of Elections
Alabama Secretary of State, Elections Division
600 Dexter Ave, Suite E-208
Montgomery, AL 36130
jeff.elrod@sos.alabama.gov

Mr. Elrod:

The United States Department of Justice has reviewed reports that the Alabama Secretary of State has implemented a process to remove 3,251 individuals who have allegedly been issued "noncitizen identification numbers" (_i.e._, alien registration numbers) by United States Citizenship and Immigration Services or its predecessor agency from Alabama's voter rolls.  The Alabama Secretary of State's office announced this voter removal program on August 13, 2024, 84 days before the November 5, 2024, general election.  The press release announcing this program concedes that "it is possible" that some of these individuals have become naturalized citizens since receiving noncitizen identification numbers and are thus eligible to vote.  The press release does not explain what efforts, if any, were taken to determine the current citizenship or immigration status of impacted individuals prior to initiating this voter removal program.

The Justice Department supports and takes seriously states' efforts and obligations to ensure accurate and current voting rolls, including efforts undertaken to ensure that voter registration rolls include only eligible voters.  Critically, these efforts must be accomplished in compliance with federal law and in a nondiscriminatory manner.  The timing and nature of Alabama's voter removal program raise serious concerns under those requirements.

The Department enforces several voting laws, including the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501-20511 (NVRA), and the Voting Rights Act of 1965, 52 U.S.C. §10301-10314, 10501-10508, 10701-10702 (VRA), that govern voter registration list maintenance.  Section 8 of the NVRA mandates that any "State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll" be done in a uniform and nondiscriminatory manner that complies with the VRA.  52 U.S.C. §20507(b).  Section 8 also requires that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. §20507(c)(2).  Among other things, the VRA prohibits voting practices that discriminate on the basis of race, color, or membership in a language minority



DEFENDANT'S
EXHIBIT
**G**

**MJN 23**

group, and bars efforts to "intimidate, threaten, or coerce" any person for voting or attempting to vote.

Based on an initial review of available materials, it appears that Alabama's voter renewal program has "systematically remove[d] the names of ineligible voters from the official lists of eligible voters" less than 90 days before the November 5, 2024, federal general election. 52 U.S.C. § 20507(c)(2); *see also Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1343-48 (11th Cir. 2014). If that is so, we ask that you provide an explanation of your office's decision to implement and continue this program after August 8, 2024.

To ensure our review is complete, we also respectfully request the following documents and information:

1. A list of the 3,251 registered voters publicly identified on August 13, 2024, as having been issued an alien registration number, including the voter's full name (including first, middle, and last names and any suffixes), address, voter identification number, social security number (if available), driver's license number (if available), date of voter registration, date marked as inactive, whether the voter has since provided documentary proof of citizenship, and whether the voter has since been marked as active.

2. A list of any additional voters, beyond the 3,251 registered voters publicly identified on August 13, 2024, who have been issued an alien registration number and have been marked as inactive or removed from the voter rolls as part of this voter removal program, including the same information for these individuals as described in the preceding paragraph.

3. A complete description of the process by which you obtained alien registration numbers and any accompanying personally identifying information used in the noncitizen removal program announced on August 13, 2024, including contacts with and requests made to any federal agencies.

4. A complete description of the process by which you incorporated information from the Alabama Law Enforcement Agency in the noncitizen removal program announced on August 13, 2024, including any consideration of the date of the voter's last interaction with ALEA and whether that interaction required the voter to update their citizenship status.

5. A complete description of the methodology used to compare alien registration numbers with voter registration records and information provided by other agencies, including all comparison criteria or entity resolution methodologies used.

6. A list of the voters excluded from the 3,251 registered voters as a result of the methodologies described in the preceding paragraph.

2

**MJN 24**

7. Copies of any communications with federal agencies regarding your office's efforts to identify registered voters who have been issued alien registration numbers, including United States Citizenship and Immigration Services.

8. Copies of any communications, guidance materials, and instructions sent to county boards of registrars and other election officials regarding the implementation of this program, including the communications in which your office first notified county boards of registrars that specific voters in their counties may be noncitizens.

9. A copy of the letter sent by county boards of registrars to the 3,251 registered voters publicly identified on August 13, 2024, and any other notice these voters received regarding the implementation of this program.

10. Copies of any documents related to the process by which naturalized citizens subject to the removal process announced on August 13, 2024, can update their voter registration information and verify their citizenship, along with a complete description of the process by which your office or a county board of registrars may determine that a registrant should be reinstated as an active voter.

11. A complete description of any steps your office took to determine whether the 3,251 registered voters had become naturalized citizens since receiving their alien registration numbers prior to the announcement of this voter removal program on August 13, 2024.

12. A complete description of the steps being taken in your current review of when the 3,251 registered voters were issued alien registration numbers and your investigation into whether these registered voters have since been naturalized.

13. Copies of all communications (not subject to the attorney-client privilege) with the Office of the Alabama Attorney General regarding the implementation of this program.

Please direct your response via email to Kelli Slater (kelli.slater@usdoj.gov) within seven days of this letter. To the extent that you are unable to compile the full set of communications responsive to Requests 7, 8, or 13 by that date, please provide such materials by no later than September 18, 2024. We welcome the opportunity to arrange a meeting to discuss this matter further.

Thank you for your prompt attention to this important matter.

Sincerely,

R. Tamar Hagler
Chief

3

**MJN 25**

By:

*/s/ Kelli M. Slater*
Richard A. Dellheim
Daniel J. Freeman
Kelli M. Slater
Attorneys
Voting Section
Civil Rights Division
U.S. Department of Justice

4

**MJN 26**

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U S D C   Atlanta

**OCT 1 2 2006**

JAMES N HATTEN, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| The UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| The STATE of GEORGIA; and | ) | **06 CV 2442** |
| CATHY COX, Secretary of State, | ) | |
| in her official capacity, | ) | |
| | ) | **CC** |
| Defendants. | ) | |

## COMPLAINT

The plaintiffs UNITED STATES OF AMERICA herein, alleges:

1. The United States hereby files this action on behalf of the United States of America to enforce the requirements of the Civil Rights Act of 1960, 42 U.S.C. § 1974 *et seq.* ("CRA"), with respect to the production of voter registration data for federal office in the State of Georgia. 42 U.S.C. §§1974 and 1974b.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 1974d.

**MJN 27**

3. Venue for this action is proper in the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. §§ 90 and 1391(b).

## PARTIES

4. Plaintiff the UNITED STATES OF AMERICA seeks to compel production of records pursuant to 42 U.S.C. §§ 1974b and 1974d, which authorize the Attorney General of the United States to bring suit when a jurisdiction fails to maintain and/or make available all records and papers relating to voter registration for federal elections.

5. Defendant STATE of GEORGIA is a State of the United States of America and is subject to the requirements of 42 U.S.C. § 1974.

6. Defendant CATHY COX is the Secretary of State and the chief State elections official for the defendant STATE of GEORGIA and is responsible for custody and maintenance of voter registration records for all persons eligible to vote under State law. O.C.G.A. § 21-2-210; 42 U.S.C. § 1974e.

## CLAIM FOR RELIEF

7. Under Section 1974, every officer of election shall retain and

2

**MJN 28**

preserve, for a period of twenty-two (22) months from the date of any federal election, all records and papers relating to voter registration. 42 U.S.C. § 1974.

8.     Any record or paper required to be retained and preserved under 42 U.S.C. § 1974, upon written demand by the Attorney General or his representatives, must be made available to the Attorney General or his representatives for inspection, reproduction and copying. 42 U.S.C. § 1974b.

9.     On July 11, 2006, attorneys for the Department of Justice ("Department"), representatives of the Attorney General, sent a letter ("demand letter"), pursuant to 42 U.S.C. § 1974b, to the Deputy Attorney General of Georgia, Counsel for the Secretary of State, formally demanding, among other things, the current Georgia voter registration list including the voters' social security numbers, and providing a basis for that demand, specifically to assess compliance by the State with the procedures for voter registration at motor vehicle licensing and other State agencies, as well as the list maintenance provisions of the National Voter Registration Act, 42 U.S.C. § 1973gg *et seq.* ("NVRA").

10.     The July 11, 2006, demand letter requested the voter registration list including the full social security number for each voter regularly maintained by

3

**MJN 29**

the State as part of voter registration.

11.     The State has declined to provide the records absent an Order from a Court of the United States in light of a State statute limiting access to such records. O.C.G.A. § 21-2-225. This statute is superseded, however, by the relevant federal statute. See 42 U.S.C. § 1974b; U.S. CONST. art VI, cl.2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the UNITED STATES OF AMERICA prays for an order:

1.     Declaring that Defendants are in violation of 42 U.S.C. § 1974b with respect to the production of voter registration data, which they are required to provide upon demand in writing to the Attorney General;

2.     Compelling Defendants to immediately make available for inspection, reproduction and copying, the requested voter registration records, in electronic format pursuant to 42 U.S.C. § 1974b.

3.     Plaintiff further prays that this Court order such relief as the interest of justice may require, together with the costs and disbursements of this action.

Dated: October 10 , 2006.

4

**MJN 30**

Respectfully submitted,

ALBERTO R. GONZALES
Attorney General

By:

WAN J. KIM
Assistant Attorney General
Civil Rights Division

DAVID E. NAHMIAS
United States Attorney

SHARON D. STOKES
GA Bar No. 227475
Assistant U.S. Attorney

JOHN TANNER
DC Bar No. 318873
Chief, Voting Section

ROBERT D. POPPER
NY Bar No. 2357275
Special Litigation Counsel
CHRISTY A. McCORMICK
VA Bar No. 44328
NICOLE S. MARRONE
PA Bar No. 89863
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
Room 7254-NWB
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: 202-305-0526
Facsimile: 202-307-3961

**MJN 31**

## MEMORANDUM OF UNDERSTANDING

The following memorandum of understanding ("MOU") is entered into by and between the United States Department of Justice ("DOJ") and Secretary of State Phil Wilson, acting in his official capacity as the Secretary of State ("SOS") of the State of Texas.

WHEREAS, in the absence of this MOU, DOJ would, pursuant to 42 U.S.C. §§ 1974b and 1974d, seek to compel the production of the current Texas voter registration list, including, *inter alia*, voters' driver license numbers, social security numbers, and other personal information, from the SOS in order to assess compliance by the State of Texas with the procedures for voter registration at motor vehicle licensing and other state agencies, as well as the list maintenance provisions of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg *et seq.*; and

WHEREAS, Texas law, specifically TEX. ELEC. CODE §§ 13.004(c); 18.066(b), provides that information, including social security numbers and driver license numbers, furnished on a voter registration application is confidential and is not subject to public disclosure under the Texas Public Information Act, TEX. GOVT. CODE chapter 552; and

WHEREAS, the SOS has an interest, duty and desire to ensure compliance with these and other statutory provisions that are intended to protect the privacy of Texas residents; and

WHEREAS, DOJ and SOS acknowledge that DOJ is entitled to receive and that SOS is required to provide the requested information under the relevant statutes and pursuant to the Supremacy Clause of the United States Constitution; and

WHEREAS, neither DOJ nor the SOS consider DOJ's request under 42 U.S.C. § 1974b to be a request for public information for purposes of the Texas Public Information Act; and

WHEREAS, neither DOJ nor the SOS consider SOS's compliance with this request to be a release of public information to a member of the public for purposes of Tex. Elec. Code § 13.004(c), Tex. Elec. Code § 18.066(b) or the Texas Public Information Act; and

WHEREAS DOJ and SOS are desirous of resolving this matter without the need for litigation which, in the absence of this MOU, both DOJ and the SOS believe would be imminent;

ACCORDINGLY, DOJ and SOS have engaged in good faith negotiations and have agreed to the terms of this Memorandum of Understanding, as follows:

1.    SOS shall immediately make available to DOJ the full statewide voter registration list including, where available, the following information: each registered voters' full name, address, full date of birth, social security number, driver license number, race, voter status (*i.e.*, active or inactive), and voting history. SOS shall produce such data in electronic format on a CD-ROM or DVD formatted in consultation and full agreement with DOJ.

1

**MJN 32**

2.     DOJ shall use the voter registration list information to assess the State's compliance with the federal voting laws, including, but not limited to, the NVRA.

3.     Pursuant to 42 U.S.C. § 1974c, unless otherwise ordered by a court of the United States, neither the Attorney General, nor any employee of DOJ, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to 42 U.S.C. § 1974, or any reproduction or copy, except to Congress and any committee thereof, or in the presentation of any case or proceeding before any court or grand jury; provided, however, that in the event that DOJ receives a request to provide or disclose this information to anyone outside of DOJ, then DOJ will make reasonable efforts to inform the SOS of this request, and provide SOS with the opportunity to take whatever action SOS considers necessary to ensure that this information remains confidential and is not disclosed to the public.

4.     The DOJ shall retain exclusive possession and control over any and all voter registration records and information during the term of its use of the information, and shall then destroy the records and information pursuant to appropriate and approved DOJ procedures for destruction of sensitive data.

IN WITNESS WHEREOF, the parties have executed this MOU as of the date set forth below. Each party represents that its respective signatory is duly authorized to execute this MOU on its behalf.

FOR THE OFFICE OF THE TEXAS SECRETARY OF STATE

Date: 5/7/08

By:    The Honorable Phil Wilson
Title:   Texas' Secretary of State

FOR THE DEPARTMENT OF JUSTICE:

Date: 5/13/08

CHRISTOPHER COATES
Acting Chief
ROBERT POPPER
Acting Deputy Chief
AMANDA E. GREGORY
STEVEN WRIGHT
Trial Attorneys
Voting Section; Civil Rights Division
U.S. Department of Justice
Room 7254NWB
950 Pennsylvania Avenue
Washington, D.C. 20530
(202) 616-4227 (phone)
(202) 307-3961 (facsimile)
Attorneys for United States of America

2

**MJN 33**